WILLARD K. TOM
General Counsel

JOHN D. JACOBS, Bar No. 134154
jjacobs@ftc.gov, (310) 824-4360 (tel.)
Federal Trade Commission
10877 Wilshire Boulevard, Suite 700
Los Angeles, CA 90024
(310) 824-4380 (fax)

MARK MORELLI
mmorelli@ftc.gov, (202) 326-2601 (tel.)
ELIZABETH TUCCI
etucci@ftc.gov, (202) 326-2402 (tel.)
ZACHARY V. HUNTER
zhunter@ftc.gov, (202) 326-3235 (tel.)
Federal Trade Commission
600 Pennsylvania Avenue, NW, Rm. 2122
Washington, DC 20004
(202) 326-2558 (fax)

ATTORNEYS FOR PLAINTIFF
FEDERAL TRADE COMMISSION

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**, <br><br> Plaintiff, <br><br> v. <br><br> **EDEBITPAY, LLC, et al.,** <br> Defendants. | CV-07-4880 ODW (AJWx) <br><br> **Exhibits – Volume I** <br><br> **To Memoranda in Support of Federal Trade Commission's Application For An Order to Show Cause Why Defendants Should Not Be Held in Contempt** |

# TABLE OF CONTENTS

**VOLUME I**:                   **Exhibits**

Exhibit 1                       FTC Complaint against Defendants – Jul. 30, 2007

Exhibit 2                       Order signed by Defendants  – Jan. 15, 2008

Exhibit 3                       Order signed by Hon. Otis D. Wright II – Jan. 22, 2008

Exhibit 4                       Defendants' Affidavits of Receipt of Order

Exhibit 5                       Declaration of Dr. Kenneth H. Kelly, CFA

<u>Attachments to Exhibit 5:</u>

Attachment A                    Curriculum Vitae of Dr. Kenneth H. Kelly, CFA
Attachment B                    Catalog vs. Retail Price Comparisons

Exhibit 6                       Declaration of Naomi Parnes


**VOLUME II**:

Exhibit 7                       Declaration of Ronald D. Lewis

<u>Attachments to Exhibit 7:</u>

Attachment A                    NV Sec. of State records – EDebitPay, LLC
Attachment B                    CA Sec. of State records – Platinum Online Group, LLC
Attachment C                    Website capture (snake) – StarterCreditDirect.com
                                (manually filed)
Attachment D                    Website printout – StarterCreditDirect.com
Attachment E                    Website printout – StarterCreditDirect.com Terms & Conditions

i

Attachment F                    Website printout – Century Platinum Terms & Conditions

Attachment G                    Website screenshot – StarterCreditDirect.com (top)

Attachment H                    Website screenshot – StarterCreditDirect.com (bottom)


**VOLUME III**:

Attachment I                    Website screenshot - StarterCreditDirect.com (Terms & Conditions pop-up)

Attachment J                    Website video (camtasia) – ePlatinumDirect.com (manually filed)

Attachment K                    Camtasia screenshot – ePlatinumDirect.com (collapsed)

Attachment L                    Camtasia screenshot – ePlatinumDirect.com (expanded)

Attachment M                    Website printout – ePlatinumDirect.com Terms & Conditions

Attachment N                    Website printout and screenshots - YourSupportDepartment.com

Attachment O                    Website capture (camtasia) – YourSupportDepartment.com (manually filed)

Attachment P                    Website capture (snake) – EDebitPay.com (manually filed)

Attachment Q                    Relevant portions from the FTC's Oct. 23, 2009 CID to Insite Marketing Group, LLC

Attachment R                    Relevant portions of the response from Insite Marketing Group, LLC to the FTC's Oct. 23, 2009 CID

Exhibit 8                          Declaration of Elizabeth Tucci

<u>Attachments to Exhibit 8:</u>

Attachment A                       Deposition Notice

Attachment B                       Wilson excerpts

Attachment C                       Cleveland excerpts

Attachment D                       Defs' certification

# EXHIBIT 1

EXHIBIT 1
-1-

1   WILLIAM BLUMENTHAL
    General Counsel

2

3   RAYMOND E. MCKOWN, Bar # 150975
    BARBARA Y. K. CHUN, Bar # 186907
    Federal Trade Commission
4   10877 Wilshire Blvd., Ste. 700
    Los Angeles, CA 90024
5   (310) 824-4343 (voice)
    (310) 824-4380 (fax)
6   rmckown@ftc.gov
    bchun@ftc.gov

7   ALBERTO RIVERA-FOURNIER
    Federal Trade Commission
8   600 Pennsylvania Ave., N.W., N.J. 3158
    Washington, D.C. 20580
9   (202) 326-2445 (voice)
    (202) 326-3629 (fax)
10  ariverafournier@ftc.gov

11  Attorneys for Plaintiff FTC

12                    UNITED STATES DISTRICT COURT
13                    CENTRAL DISTRICT OF CALIFORNIA

14  FEDERAL TRADE COMMISSION

15

16              Plaintiff,

17

18  EDEBITPAY, LLC; EDP REPORTING,          CV.  CV-07-4880  ODW (AJWx)
    LLC; EDP TECHNOLOGIES
19  CORPORATION; SECURE DEPOSIT
    CARD, INC.; and

20                                          **COMPLAINT FOR INJUNCTIVE
    DALE PAUL CLEVELAND and                 AND OTHER EQUITABLE RELIEF**
21  WILLIAM RICHARD WILSON;

22              Defendants.

23

24

25

26          Plaintiff, the Federal Trade Commission, through its undersigned attorneys,

27  alleges as follows:

28

                                            **EXHIBIT 1**
                                            -2-

1. Plaintiff brings this action under Sections 5(a) and 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a) and 53(b), to secure temporary, preliminary, and permanent injunctive relief, rescission of contracts, restitution, disgorgement of ill-gotten monies, and other equitable relief from Defendants for engaging in acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over the Federal Trade Commission's claims pursuant to 15 U.S.C. §§ 45(a) and 53(b), and 28 U.S.C. §§ 1331, 1337(a) and 1345.

3. Venue in the Central District of California is proper under 15 U.S.C.§ 53(b) and 28 U.S.C. § 1391(b) and (c).

## PLAINTIFF

4. Plaintiff, Federal Trade Commission ("FTC") is an independent agency of the United States government created by statute, 15 U.S.C. §§ 41 et seq. The FTC enforces the FTC Act, which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC may initiate federal district court proceedings, through its own attorneys, to enjoin violations of the FTC Act and to secure such other equitable relief, including rescission of contracts, restitution, and disgorgement of ill-gotten monies, as may be appropriate in each case. 15 U.S.C. § 53(b).

## DEFENDANTS

5. Defendants EDebitPay, LLC ("EDP"), EDP Reporting, LLC ("EDP Reporting"), EDP Technologies Corporation ("EDP Technologies"), and Secure Deposit Card, Inc. ("SDC"), hereinafter the "Business Entity Defendants," are business entities created under Nevada law, with their principal places of business at 5301 Laurel Canyon Boulevard, Suite 132, Valley Village, California, 91607, and 10 Universal City Plaza, 20th Floor, Universal City, California, 91608. All the Business Entity Defendants transact or have transacted business in this district.

6. Defendant Dale Paul Cleveland is a member, manager, president, and the

**EXHIBIT 1**

-3-

2

1  majority owner of EDP; a managing member of EDP Reporting; a director and the

2  president of EDP Technologies; and the president and treasurer of SDC. At all times

3  material to this Complaint, acting alone or in concert with others, he has formulated,

4  directed, controlled, or participated in the acts and practices of the Business Entity

5  Defendants alleged in this Complaint. Cleveland resides in and transacts or has

6  transacted business in this district.

7       7. Defendant William Richard Wilson is the managing member of EDP; a

8  managing member of EDP Reporting; the secretary and treasurer of EDP

9  Technologies; and a director and the secretary of SDC. At all times material to this

10  Complaint, acting alone or in concert with others, he has formulated, directed,

11  controlled, or participated in the acts and practices of the Business Entity Defendants

12  alleged in this Complaint. Wilson resides in and transacts or has transacted business

13  in this district.

### COMMON ENTERPRISE

14       8. EDP, EDP Reporting, EDP Technologies, and SDC have operated together

15  as a common enterprise while engaging in the unfair and deceptive acts and practices

16  alleged below. These Defendants have conducted the business practices described

17  below through an interrelated network of companies with common ownership,

18  officers, managers, employees, locations, and business functions. Individual

19  Defendants Cleveland and Wilson have formulated, directed, and/or controlled, or had

20  authority to control, or participated in the acts and practices of the Business Entity

21  Defendants that comprise the common enterprise. Because the Business Entity

22  Defendants have acted as a common enterprise, each of them is jointly and severally

23  liable for the unfair and deceptive acts and practices alleged below. The common

24  enterprise transacts or has transacted business in this district and a substantial part of

25  the events or omissions giving rise to the claims asserted herein have occurred in this

26  district.

27  \\

28  \\

**EXHIBIT 1**

-4-

3

## COMMERCE

9.  At all times material to this Complaint, Defendants' course of business, including the acts and practices alleged herein, have been and are in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS PRACTICES

### Introduction

10.  Since early 2002, Defendants' core business operation has been online marketing of MasterCard- and Visa-branded reloadable prepaid cards and other financial services products, such as short-term loans, to consumers in the subprime market.  Consumers may apply for prepaid cards marketed by Defendants by completing an online application.

11.  Defendants charge a $159.95 one-time application and processing fee for their prepaid cards, which is inadequately disclosed in individual prepaid card websites and not disclosed at all in other online advertisements.  Defendants debit, or cause to be debited, the $159.95 fee from consumers' bank accounts using the Automated Clearing House Network (ACH) and through remotely created checks (RCCs), also known as demand drafts.

12.  Defendants have injured numerous consumers nationwide by debiting the $159.95 fee, and other fees such as $29.95 for a related offer, from consumers' bank accounts without their express informed consent.  In particular, Defendants have debited the $159.95 fee from the bank accounts of consumers who have not applied for or requested Defendants' prepaid cards.  Defendants have also injured consumers by failing to disclose, or to disclose clearly and prominently, that consumers who submit an application will have the $159.95 fee debited from their bank accounts.  In addition, many consumers incurred bank penalties or overdraft fees for insufficient funds caused by Defendants' $159.95 debits.

### Defendants' Business Operation

13.  Since at least April 2002, Defendants EDP, Cleveland, and Wilson began marketing Visa- or MasterCard- branded prepaid cards under a variety of names.  In

**EXHIBIT 1**

July 2003, Defendant SDC began marketing Visa-branded prepaid cards to consumers under a variety of names. Both EDP and SDC have agreements with various banks who issue the Visa- or MasterCard-branded prepaid cards.

14. In November 2004, Defendant EDP Reporting began assisting EDP and SDC by providing customer service functions and making representations to consumers who complained of unauthorized withdrawals to convince consumers to halt efforts to obtain money refunds.

15. In June 2005, Defendant EDP Technologies began acting as the parent company for EDP, SDC, and EDP Reporting by supervising and coordinating the marketing efforts for the prepaid cards and other financial services products such as short-term loans.

16. Collectively, Defendants currently market at least 22 prepaid cards, including but not limited to the Acclaim Visa, Impact Visa, Sterling Visa, VIP Advantage Visa, Vue Visa, Elite Plus MasterCard, Impact MasterCard, Secure Deposit MasterCard, VIP MasterCard, and Vue MasterCard. Each card has its own individual website, examples of which are found at: https://superacclaim.com; https://builderimpact.com; www.sterlingcardnow.com; www.vipadvantagecard.com; https://eliteplusapp.com; https://execpluscard.com; https://sdcapp.com; https://vipcardnow.com; and https://instantvuecard.com.

17. Each individual website includes an application that can be submitted to obtain the particular prepaid card. Defendants charge $159.95 for their prepaid cards, which covers a $59.95 "application" fee, a $90 "processing" fee, and a "bonus rebate" of $10 (which is purportedly loaded to the prepaid card if consumers activate it within 30 days of receipt.) As part of the online application process, Defendants require that consumers provide personally identifiable information, including but not limited to name, address, and personal financial information such as bank account information. Defendants use this information to debit the fee from consumers' bank accounts by ACH or by RCCs. Defendant EDP has contracted with various payment processors to electronically debit consumers' bank accounts using the ACH network, and either

**EXHIBIT 1**

**-6-**

prints RCCs on its own or contracts with vendors to create RCCs.

18. Defendants have marketed their prepaid cards through Internet website, Internet pop-up, and email advertisements, each of which directs consumers to the cards' individual websites.

19. Defendants also market short-term loans online. The short-term loan offers and applications are found at Internet sites such as www.SuperAutoSource.com and www.SuperCashSource.com. These short-term loan sites require consumers to provide their bank account information, address, date of birth, employment information including income, social security number, and driver's license number to facilitate the consumer's request for the loan.

20. In numerous instances, Defendants have debited, or caused to be debited, a $159.95 fee from the bank accounts of consumers who have had no contact or transaction with Defendants.

21. In numerous instances, Defendants have debited, or caused to be debited, a $159.95 fee from the bank accounts of consumers who visited short-term loan websites and filled out online applications unrelated to Defendants' prepaid card offers. The sites do not indicate that the consumer is applying for a prepaid card and do not disclose the $159.95 prepaid card fee.

22. In numerous instances, Defendants have debited, or caused to be debited, a $159.95 fee from the bank accounts of consumers who partially completed but did not submit an online application for one of Defendants' prepaid cards.

23. In each of these instances, Defendants have debited, or caused to be debited, the $159.95 fee from consumers' bank accounts without obtaining the consumers' express informed consent. Consumers usually discover Defendants' unauthorized debits when they review their bank account statements, or when banks notify consumers of bank penalty fees or overdraft charges due to insufficient funds.

24. Defendants' email advertisements do not mention or disclose the $159.95 fee to obtain the card. In addition, many independent cafeteria-style websites (websites that promote different brands of credit or debit cards) also fail to disclose the

**EXHIBIT 1**

-7-

1   (websites that promote different brands of credit or debit cards) also fail to disclose the

2   $159.95 fee.

3       25.  Defendants' email and online advertisements lead consumers to

4   Defendants' individual prepaid card websites that fail to clearly and prominently

5   disclose the $159.95 fee.  Although the look of the prepaid card websites differ, the

6   representations on each of the cards' individual websites are similar or identical.  The

7   individual card websites typically consist of two application webpages and links to

8   other webpages.  The websites' first webpages have a typical heading banner featuring

9   a large picture of a MasterCard- or Visa-branded card.

10      26.  None of the websites' first webpages discloses the $159.95 fee for the card.

11      27.  The heading of the first webpage typically includes a Frequently Asked

12  Questions ("FAQ") link.  Although the FAQ discloses there are card usage fees and

13  provides a link to the Terms and Conditions where these fees are disclosed, the FAQ

14  does not disclose the $159.95 fee.

15      28.  The websites' application webpages represent that consumers must provide

16  personally identifiable information to apply for and obtain the card.  The first webpage

17  of the MasterCard or Visa prepaid card application requires, at a minimum, the

18  applicant's name, address, phone number, and email address.  After supplying the

19  required information consumers advance to the second webpage of the application by

20  clicking on a "Next" or "Continue" or "Receive Your Card" button.

21      29.  The application's second webpage requires that consumers provide more

22  sensitive personal information, including consumers' date of birth, social security

23  number, and banking information.  Some websites ask for additional information such

24  as the maiden name of the consumer's mother.  In many cases, the application's

25  second webpage includes the same or similar heading banner as found on the first

26  webpage.  The banking information required, at a minimum, includes an account

27  number, account type, and routing number, i.e., information sufficient to debit a

28  consumer's bank account.

        30.  On most websites, after the information fields where consumers input their

**EXHIBIT 1**

-8-

7

bank account information, there are three check-off statements.  The first check-off statement is automatically defaulted to "Yes," is not prominently distinguished or signaled, is in similar font size as the fee disclosure, and is followed by this language: "I am at least 18 years and a U.S. citizen or permanent resident of the U.S. (excluding Wisconsin), and I authorize you to debit my bank account for my one-time purchase cost."  The section does not disclose the amount of the fee that will be debited.

31.  There are two places on the individual websites where Defendants disclose the $159.95 fee, although the disclosures are not clearly and prominently displayed.  The first is in an inconspicuous paragraph, usually on the middle of the second webpage of the application.  In some instances the disclosure is cryptic.  For example, "VIPCARD will appear on your account, $159.95 includes your new card and all handling or shipping fees or costs."  In other instances the disclosure remains inconspicuous, but the language is more straight forward.  In some instances the fee amount is in bold and in other instances it is not.

32.  On a substantial number of websites, the inconspicuous paragraph is preceded by intervening offers for a product such as a cell phone or for a cash rebate, that are in large font size and usually highlighted by prominent pronouncements such as: "You Are Almost Finished: 2 Simple Questions: Would you like a FREE Audiovox 8912 Cellular Phone with color display from Sprint?" or "BONUS REBATE! We will deposit a $10 value to your card if you activate it within 30 days after you receive it."   In addition, the inconspicuous paragraph is not highlighted or distinguished by any prominent representation concerning the fee.   In some cases the fee disclosure paragraph appears after the "Click Here" button that submits the application and takes consumers to a different webpage.

33.  The only other location on Defendants' websites where the $159.95 fee is disclosed is on an "Application and Processing" webpage that is inaccessible to consumers except indirectly through nondescript, small print "Terms and Conditions" ("T&C") links, which are found on the websites' first and second webpage.  However, the T&C links do not take consumers directly to the "Application and Processing"

**EXHIBIT 1**
**-9-**

8

webpage where the fee is disclosed.  Instead, clicking on a T&C link takes consumers to an intermediate webpage that displays icons for two to four different website sections, e.g., (1) "Prepaid Visa [or MasterCard] Debit Card" or "Cardholder Agreement"; (2) "The Executive Benefits Package"; (3) "Privacy Policy"; and (4) "Application and Processing."

34.  None of the icon descriptions alerts or informs consumers that fee information can be found on these links, or that only the "Application and Processing" link contains information about the $159.95 fee.   Indeed, none of the other sections, including the multi-page "Cardholder Agreement" (aka "Prepaid Visa [or MasterCard] Debit Card") or "Executive Benefits Package" sections disclose the $159.95 fee. Thus, Defendants' website format effectively conceals the $159.95 fee from consumers.

35.  At the end of the second webpage, consumers must click a "Submit" button to finish the card application process.  If consumers do not provide the required personally identifiable information, including social security number, date of birth, and banking information, and try to submit the application, a pop-up window alerts consumers that they need to provide the required information to apply for and obtain the card.  A verification and confirmation page follows the end of the application process but it does not disclose the fee charged.

36.  In numerous instances, consumers provided the required personally identifiable information and applied for the cards because Defendants represent the information is required to apply for and obtain the card.  This representation creates an impression on consumers that the personally identifiable information will only be used for application and approval purposes.  Defendants' fail to clearly and conspicuously disclose, however, that they will use the information to debit a $159.95 fee. Accordingly, Defendants debit, or cause to be debited, the $159.95 fee from consumers' banks accounts without obtaining the consumers' express informed consent.

37.  Defendants' email and online advertisements and individual card websites

**EXHIBIT 1**

-10-

9

also make representations about the cards that give the impression to consumers that they can apply for and obtain the card without cost.

38. For example, one email for Defendants' Acclaim Visa Card encourages consumers to apply with large, bold pronouncements of "Claim Your Card Today!" or "Guaranteed Approval!!" accompanied by other representations such as "No Annual Fees" and "No Credit Checks." Similarly, Defendants' cafeteria-style ads usually include representations encouraging consumers to apply including, among others, "Guaranteed Approval," "No Credit Checks," and "No Security Deposit."

39. The individual card websites' first pages feature a heading banner with prominent representations, such as the following:

"Approval Guaranteed, Executive Plus Prepaid MasterCard Card. No Credit Checks. No Annual Fees. No Security Deposit. No Employment Required." [Executive Plus MasterCard at https:execpluscard.com].

"All Approved. VIP Prepaid MasterCard Card. Get the Power of a MasterCard Today. No Credit Checks. No Turndowns. No Annual Fees. No Security Deposit. No Employment Required. Get Pre-approved in the next 3 minutes." [VIP MasterCard at https://vipcardnow.com/index.asp].

"Approved $10,000. Get the Power of Plastic. Everyone is Now 100% Approved! No Credit Checks. No Turndowns. No Security Deposit. No Employment Required. Bad Credit? Bankruptcy? Apply Now!" [Sterling VIP Visa at www.sterlingcardnow.com/index.asp].

EXHIBIT 1
-11-

10

"No Credit. No Credit Checks. No Turndowns. No Annual Fees. No Security Deposit. No Employment Required. No Credit? Bad Credit? Bankruptcy? No Problem! Apply Now!" [VIP Advantage Visa at www.vipadvantagecard.com].

40. Defendants' prominent representations concerning the costs that consumers will not have to pay up front for the card, including but not limited to "No Annual Fees" or "No Security Deposit," gives an impression to consumers that they can apply for and obtain the card without cost. Defendants fail to clearly and conspicuously disclose, however, that a $159.95 fee will be debited from consumers' bank accounts to apply for and obtain the card. Accordingly, Defendants debit, or cause to be debited, the $159.95 fee from consumers' banks accounts without obtaining the consumers' express informed consent.

41. When consumers ask for a refund of the $159.95 debits, Defendants misrepresent the consumers' obligation to pay the fee and ratify the withdrawal. Defendants insist, by email, telephone, or otherwise, that consumers must pay the $159.95 fee even if consumers assert they did not submit an application for one of Defendants' prepaid cards, and even if consumers assert they did not give their express informed consent.

42. Consumers who try to reach Defendant EDP Reporting by telephone to contest the debits face significant difficulty in reaching a customer service representative ("CSR"). Consumers are routinely placed on hold and are not connected to a CSR within any reasonable time period. Consumers also try to reach Defendant EDP Reporting by email.

43. Consumers who are able to reach Defendant EDP Reporting via telephone or email to request a refund for the $159.95 unauthorized debits because they did not apply for the prepaid cards are routinely denied refunds by CSRs who represent that consumers authorized the withdrawals by submitting an Internet application for one of

**EXHIBIT 1**
**-12-**

11

Defendants' prepaid debit cards, and assert that EDP Reporting has proof of authorization.

44. CSRs also deny refund requests to consumers who applied for the prepaid card believing it was free by asserting there are clear and adequate website disclosures regarding the $159.95 fee and that it was the consumer's fault for not seeing them.

45. EDP Reporting advises consumers who persistently complain that they would only consider a refund due to an unauthorized debit if the consumer completes a fraud package sent by EDP Reporting. As part of the fraud package, consumers must file a report with the police and the police must find fraud was involved. In such instances, EDP Reporting will allegedly issue a refund check but only to the police. Consumers rarely file such a report with the police. Based on these representations, some consumers simply abandon their efforts to obtain a refund from the company.

46. At that stage other consumers file complaints with the Better Business Bureau ("BBB"). EDP Reporting representatives routinely make the same assertions to the BBB and deny the refund requests. If this approach is not successful in deterring additional refund requests, EDP Reporting representatives state that they are willing to issue a "courtesy refund," i.e., one that will not cover any bank penalty fee, but only if consumers forward bank statements that document Defendants' withdrawals. Of those who complained to the BBB, only those consumers who overcome their reluctance to turn over additional personal information to Defendants and submit the bank account records obtain partial or full refunds from Defendants.

47. Defendants' representations and conditions to those who directly or indirectly complain about the debits stave off providing many refunds, allowing defendants to retain much of their ill-gotten gains.

## THE FEDERAL TRADE COMMISSION ACT

48. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), provides that "unfair or deceptive acts or practices in or affecting commerce, are hereby unlawful." Misrepresentations or omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act. Moreover, under Section 5(n) of the FTC

**EXHIBIT 1**
**-13-**

12

Act, an act or practice is unfair if it causes or is likely to cause substantial injury to consumers that is not outweighed by countervailing benefits to consumers or to competition and that consumers could not reasonably have avoided.

15 U.S.C. § 45(n).

# VIOLATIONS OF THE FTC ACT

## COUNT I - Unauthorized Bank Account Debiting

49. In numerous instances since April 2002, in connection with the marketing of prepaid cards and short-term loans, Defendants have debited, or caused to be debited, consumers' bank accounts without obtaining the consumers' express informed consent.

50. Defendants' practice of debiting, or causing to be debited, consumers' bank accounts without obtaining the consumers' express informed consent causes or is likely to cause substantial injury to consumers that is not outweighed by countervailing benefits to consumers or competition and that is not reasonably avoidable by the consumers.

51. Therefore, Defendants' practice as alleged in Paragraph 49 is unfair and in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT II - Failure to Disclose, or to Adequately Disclose, Material Facts

52. In numerous instances since April 2002, in connection with the marketing of prepaid cards, Defendants have represented to consumers in their online card applications, expressly or by implication, that consumers must provide personally identifiable information, including but not limited to name, address, date of birth, social security number, and personal banking information to apply for and obtain a card.

53. Defendants have failed to disclose clearly and conspicuously that Defendants will use the personally identifiable information to debit a $159.95 fee from the consumer's bank account for application and processing. This fact would be material to consumers in their decision whether to apply for and obtain Defendants' prepaid cards.

**EXHIBIT 1**

-14-

13

54. In light of the representation in Paragraph 52, Defendants' failure to disclose, or to disclose clearly and conspicuously, the material information set forth in Paragraph 53 constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### COUNT III - Failure to Disclose, or to Adequately Disclose, Material Facts

55. In numerous instances since April 2002, in connection with the marketing of prepaid cards, Defendants have made various representations, including but not limited to "No Annual Fees" and "No Security Deposit," in their email, online advertisements, and individual card websites to encourage consumers to apply for and obtain Defendants' prepaid cards.

56. Defendants have failed to disclose, or to disclose clearly and conspicuously, in their email, online advertisements, and individual card websites that upon applying for Defendants' prepaid cards, Defendants will debit, or cause to be debited, a $159.95 fee from the consumer's bank account for application and processing.

57. In light of the representations set forth in Paragraph 55, Defendants' failure to disclose, or to disclose clearly and conspicuously, the material information set forth in Paragraph 56 constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### COUNT IV - Misrepresentation of Material Facts

58. In numerous instances since April 2002, in connection with the debiting of consumers' bank accounts, Defendants have represented, expressly or by implication, that consumers are obligated to pay Defendants' $159.95 prepaid card fee.

59. In truth and in fact, in numerous instances, consumers were not obligated to pay Defendants' $159.95 prepaid card fee because:

(a) consumers did not complete or submit an application for a prepaid card and therefore did not give their express informed consent to pay a fee to acquire a prepaid card; or

(b) consumers who did complete and submit an application for a prepaid card

**EXHIBIT 1**
**-15-**

14

1   did not give their express informed consent to pay a fee to acquire a prepaid card due

2   to Defendants' failure to clearly and conspicuously disclose the fee.

3         60.  Therefore, the representation set forth in Paragraph 58 is false and

4   deceptive and constitutes a deceptive act or practice in violation of Section 5(a) of the

5   FTC Act, 15 U.S.C. § 45(a).

6                               **CONSUMER INJURY**

7         61.  Numerous consumers throughout the United States have suffered and

8   continue to suffer substantial monetary loss as a result of Defendants' unlawful acts or

9   practices.  In addition, Defendants have been unjustly enriched as a result of their

10  unlawful practices.  Absent injunctive relief by this Court, Defendants are likely to

11  continue to injure consumers, reap unjust enrichment, and harm the public interest.

12                    **THIS COURT'S POWER TO GRANT RELIEF**

13        62.  Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to

14  grant injunctive and other ancillary relief, including rescission of contracts, restitution,

15  and the disgorgement of ill-gotten monies, to prevent and remedy violations of any

16  provision of law enforced by the Commission.

17               **PRAYER FOR INJUNCTIVE AND MONETARY RELIEF**

18        WHEREFORE, Plaintiff Federal Trade Commission, pursuant to Section 13(b)

19  of the FTC Act, 15 U.S.C. § 53(b), and the Court's own equitable powers, requests

20  that the Court:

21        1.  Award Plaintiff such preliminary injunctive and ancillary relief as may be

22  necessary to avert the likelihood of consumer injury during the pendency of this action

23  and to preserve the possibility of effective final relief, including, but not limited to,

24  temporary and preliminary injunctions, an order freezing assets, immediate access to

25  business premises, expedited discovery of assets and documents, and the appointment

26  of a receiver;

27        2.  Enter a permanent injunction to prevent future violations of the FTC Act by

28  Defendants;

      3.  Award such relief as the Court finds necessary to redress injury to

                                          **EXHIBIT 1**
                                          **-16-**                    15

1 consumers resulting from Defendants' violations of the FTC Act, including but not

2 limited to, rescission or reformation of contracts, restitution, the refund of monies

3 paid, and the disgorgement of ill-gotten monies; and

4     4. Award Plaintiff the costs of bringing this action, as well as such other

5 additional relief as the Court may determine to be just and proper.

6

7 Dated: July 17, 2007                 Respectfully submitted,

8

9                               Raymond E. McKown

10                               Alberto Rivera-Fournier
Barbara Y. K. Chun

11                               Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 1**
-17-

16

# EXHIBIT 2

EXHIBIT 2
-18-

WILLIAM BLUMENTHAL
General Counsel

RAYMOND E. MCKOWN, Bar # 150975
BARBARA Y. K. CHUN, Bar # 186907
Federal Trade Commission
10877 Wilshire Blvd., Ste. 700
Los Angeles, CA 90024
(310) 824-4343 (voice)
(310) 824-4380 (fax)
rmckown@ftc.gov
bchun@ftc.gov

BEVIN MURPHY
Federal Trade Commission
601 New Jersey Avenue, N.W.
Washington, D.C. 20580
(202)326-2191 (voice)
(202) 326-3629 (fax)
bmurphy1@ftc.gov

Attorneys for Plaintiff FTC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION<br><br>Plaintiff,<br><br>EDEBITPAY, LLC; EDP REPORTING, LLC; EDP TECHNOLOGIES CORPORATION; SECURE DEPOSIT CARD, INC.; and<br><br>DALE PAUL CLEVELAND and WILLIAM RICHARD WILSON;<br><br>Defendants. | CV 07-4880 ODW (AJWx)<br><br>SETTLEMENT AGREEMENT AND [Proposed] STIPULATED FINAL ORDER FOR PERMANENT INJUNCTION AND MONETARY RELIEF |

Plaintiff Federal Trade Commission ("FTC" or "Commission") commenced this civil action on July 30, 2007, pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), to secure temporary, preliminary, and permanent injunctive relief, rescission of contracts, restitution, disgorgement of ill-gotten monies, and other equitable relief alleging that Defendants engaged in unfair

**EXHIBIT 2**
**-19-**

or deceptive acts or practices in violation of Section 5(a) of the FTC Act,

15 U.S.C. § 45(a).

Defendants, without any findings of fact except as expressly provided herein or admission of any wrongdoing or violation of law, hereby agree to resolve this matter as set forth herein and agree to the entry of this Settlement Agreement and Stipulated Final Order for Permanent Injunction and Monetary Relief ("Order").

FINDINGS OF FACT

1. This Court has jurisdiction over the subject matter of this case and over Defendants.

2. Venue as to Defendants in the Central District of California is proper.

3. The activities of Defendants are in or affecting commerce, as defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

4. The Complaint states a claim upon which relief can be granted, and the Commission has the authority to seek the relief it has requested.

5. Defendants waive: (a) all rights to seek appellate review or otherwise challenge or contest the validity of this Order; (b) any claim Defendants may have against the Commission, its employees, representatives, or agents; (c) any claim Defendants may have against the Receiver, his employees, representatives, or agents; (d) all claims under the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended by Pub. L. 104-121, 110 Stat. 847, 863-64 (1996); and (e) any rights to attorneys' fees that may arise under said provision of law.

6. This Order was drafted jointly by Plaintiff and Defendants and reflects the negotiated agreement of the parties.

7. Defendants have not admitted any cause of action in the Complaint and their agreement to settle and resolve this action shall not be interpreted to constitute an admission that they have engaged in any violation of any law or regulation.

8. The relief set forth in this Order is remedial in nature and shall not be construed as the payment of any fine, penalty, punitive assessment, or forfeiture.

9. Entry of this Order is in the public interest and in the interest of the parties.

**EXHIBIT 2**
**-20-**

2

DEFINITIONS

For purposes of this Order, the following definitions shall apply:

1. "Assisting Others" means knowingly providing any of the following goods or services to another entity:

    a. performing customer service functions, including but not limited to, receiving or responding to consumer complaints;

    b. formulating or providing, or arranging for the formulation or provision of, any marketing materials;

    c. providing names of, or assisting in the generation of, potential customers; or

    d. performing marketing services of any kind.

2. "Billing Information" means data, including but not limited to, name, address, telephone number, email address, account number, routing number, date of birth, or social security number, that enable any person to access a customer's or donor's account, including but not limited to credit card, debit card, prepaid card, checking, savings, utility, mortgage loan, share draft, or similar accounts.

3. "Business Entity Defendants" means EDebitpay, LLC; EDP Reporting, LLC; EDP Technologies Corporation; and Secure Deposit Card, Inc., and each of them by whatever names each might be known.

4. "Clearly and Conspicuously" means:

    a. in textual communications (e.g., printed publications or words displayed on the screen of an electronic device), the required disclosures are of a type size and location sufficiently noticeable for an ordinary consumer to read and comprehend them, in print that contrasts with the background on which they appear;

    b. in communications disseminated orally or through audible means (e.g., radio or streaming audio), the required disclosures are delivered in a volume and cadence sufficient for an ordinary consumer to hear and comprehend them;

    c. in communications disseminated through video means (e.g., television or streaming video), the required disclosures are in writing in a form

**EXHIBIT 2**
**-21-**

3

consistent with subparagraph (a) of this definition and shall appear on the screen for a duration sufficient for an ordinary consumer to read and comprehend them;

      d.  in communications made through interactive media such as the Internet, online services, and software:

          i.  the required disclosures are unavoidable and presented in a form consistent with subparagraph (a) of this definition in addition to any audio or video presentation of them; and

          ii.  "in close proximity" shall mean on the same webpage, online service page, or other electronic page, and proximate to the triggering representation, and shall not be accessed or displayed through hyperlinks, pop-ups, interstitials, or other means; and

      e.  in all instances, the required disclosures are presented prior to the consumer incurring any financial obligation, in an understandable language and syntax, and with nothing contrary to, inconsistent with, or in mitigation of the disclosures used in any communication with them.

5.  "Defendants" means EDebitpay, LLC; EDP Reporting, LLC; EDP Technologies Corporation; Secure Deposit Card, Inc.; Dale Paul Cleveland; and William Richard Wilson, and each of them by whatever names each might be known.

6.  "Document" is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from which the information can be obtained and translated, if necessary, through detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

7.  "Individual Defendants" means Dale Paul Cleveland and William Richard Wilson, and each of them by whatever names each might be known.

8.  "Marketing Affiliate" means any third party with which any Defendant has an agreement under which:

      a.  the Defendant agrees to pay a commission or other compensation to

**EXHIBIT 2**
**-22-**

4

the Marketing Affiliate because the Marketing Affiliate has driven or referred customers or potential customers to the Defendant; or

b. the Marketing Affiliate agrees to pay a commission or other compensation to the Defendant because the Defendant has driven or referred customers or potential customers to the Marketing Affiliate.

9. "Material" means likely to affect a person's choice of, or conduct regarding, goods or services.

## I. RESTRICTIONS ON BUSINESS ACTIVITIES

**IT IS THEREFORE ORDERED** that in connection with the advertising, promotion, marketing, offering, or sale of goods or services by Internet or otherwise, Defendants and their officers, directors, agents, servants, employees, salespersons, independent contractors, corporations, subsidiaries, branches or business divisions, attorneys, successors, assigns, and all other persons or entities in active concert or participation with them who receive actual notice of this Order by personal service, facsimile, email, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other entity are hereby restrained and enjoined from, directly or indirectly:

A. Debiting or causing consumers' bank or financial accounts to be debited, or assessing any fee or charge against consumers or their bank or financial accounts, without first obtaining the consumers' express informed consent for the debit, charge, or fee;

B. Misrepresenting, or assisting others in misrepresenting, expressly or by implication, any fact material to a consumer's decision to apply for or purchase any product or service offered by any Defendant, including but not limited to:

1. that consumers can obtain any product or service, including but not limited to a prepaid card, debit card, or credit card, at no cost or obligation;

2. the amount of any fee, charge, or bill, including but not limited to the cost of any prepaid card, debit card, or credit card;

3. that a consumer will not be assessed a fee, or be charged or billed;

**EXHIBIT 2**
**-23-**

4. that a consumer is legally obligated to pay a fee, charge, or bill;

5. any material provision relating to the acquisition or purchase of a prepaid card, debit card, or credit card marketed or offered by any Defendant;

6. that consumers purchased or agreed to purchase goods or services, and therefore owe money to any Defendant;

C. Failing to clearly and conspicuously disclose the costs, fees, or charges to obtain and use any prepaid card, debit card, or credit card, and that Defendants will use consumers' personally identifiable information to impose such costs, fees, or charges, in close proximity to any instruction to provide personally identifiable information, including but not limited to name, address, date of birth, social security number, personal banking information, or billing information;

D. Failing to clearly and conspicuously disclose the costs, fees, or charges to obtain and use any prepaid card, debit card, or credit card, in close proximity to statements such as "No Annual Fees" or "No Security Deposit" that represent that a prepaid card, debit card, or credit card can be obtained "free," without obligation, or at a reduced cost;

E. Failing to clearly and conspicuously disclose prior to the time when a consumer applies for or purchases any good or service offered by any Defendant, the following material information, where applicable:

1. any fee, charge, or bill that will be assessed against consumers, their financial accounts, or their bank accounts;

2. any method that will be used to debit, charge, or bill consumers' bank or other financial accounts;

3. that consumers' billing information will be used to debit consumers' bank or other financial accounts;

4. that consumers' billing information or other information will be sold or transferred to third parties for marketing purposes;

5. the material attributes of the product or service offered or marketed,

e.g., that the product has the characteristics of a credit card, debit card, or stored value card; and

      6. if a representation is made about a refund or cancellation policy, a statement of all material terms and conditions of such policy; or if there is a policy of not making refunds or cancellations, this policy;

    F. Directly or indirectly causing billing information to be submitted for payment, in connection with the marketing or sale of any good or service, unless Defendants first obtain the express informed consent of the customer for the fee, charge or debit to or from a specified financial account, and Defendants adhere to the requirements of Section I.E.;

    G. Failing to investigate and resolve, within thirty (30) days of receipt, any consumer complaint or request for refund pertaining to Defendants that is received by Defendants, their successors, assigns, officers, agents, servants, salespersons, employees, independent contractors, and attorneys, as well as those persons in active concert or participation with them, whether acting directly or through any sole proprietorship, partnership, limited liability company, corporation, subsidiary, branch, division, or other entity, and to notify the consumer of the resolution of the complaint or request and the reason therefor; and

    H. Failing to take reasonable steps sufficient to monitor and ensure that all Defendants' agents, representatives, employees, independent contractors, and Marketing Affiliates comply with the requirements of Subsections I.A - I.G.  Such steps shall require, at a minimum, that prior to Defendants' acceptance of any prospective Marketing Affiliate, Defendants shall:

      1. provide the Marketing Affiliate with a copy of this Order;

      2. obtain a signed and dated acknowledgment from the Marketing Affiliate in which the Marketing Affiliate:

        a. acknowledges receipt of this Order;

        b. expressly agrees to distribute a copy of the Order to the Marketing Affiliate's owners, managers, and division heads;

c. expressly agrees to comply with the terms of Section I; and

3. provide written notice to the Marketing Affiliate that failing to comply with the terms of Section I will result in immediate termination of Defendants' agreement with the Marketing Affiliate and the forfeiture of all monies earned or owed.

## II. MONETARY RELIEF

**IT IS FURTHER ORDERED** that:

A. In accordance with directions provided by the Federal Trade Commission, Defendants shall pay to the Commission Two Million, Two Hundred Fifty-Eight Thousand, Two Hundred Fifty-Eight Dollars ($2,258,258), plus the net proceeds, if any, from the sale of one automobile, VIN No. xxxxxxxxx04458. No portion of any payment under this Order shall be deemed a payment of any fine, penalty, or punitive assessment. The payment and the transfer of any net proceeds from the sale of the identified automobile shall be made as follows:

1. The Temporary Receiver's settlement account currently holds Two Million, One Hundred Twenty-Two Thousand, Twenty-Nine Dollars ($2,122,029) that is frozen pursuant to the Court's asset freeze. Upon Defendants' execution of this Order, Defendants shall transfer an additional One Hundred Thirty-Six Thousand, Two Hundred Twenty-Nine Dollars ($136,229), and any other funds that are necessary to bring the Temporary Receiver's settlement account holdings to Two Million, Two Hundred Fifty-Eight Thousand, Two Hundred Fifty-Eight Dollars ($2,258,258). In addition, upon entry of this Order by the Court, Defendants shall provide a power of attorney to the Temporary Receiver, which shall give the Temporary Receiver full authority to sell the identified automobile, pay any outstanding liens, and pay any net proceeds to the Commission as soon as practicable after the sale of the identified automobile;

2. Within five (5) business days after entry of this Order, the Temporary Receiver shall pay Two Million, Two Hundred Fifty-Eight Thousand, Two Hundred Fifty-Eight Dollars ($2,258,258), less any Court authorized payments to the

Temporary Receiver, from the Temporary Receiver's settlement account to the Commission by wire transfer in accordance with directions provided by the Commission. The Temporary Receiver shall remain in place at least through the period during which the Temporary Receiver shall sell the identified automobile and deliver to the Commission all payments identified in this Section II.A;

3. If the Commission or the Court fails to accept or approve this Order, the Temporary Receiver's authority to hold the non-frozen funds, i.e., those in excess of Two Million, One Hundred Twenty-Two Thousand, Twenty-Nine Dollars ($2,122,029), which Defendants transferred to the Temporary Receiver upon Defendants' execution of this Order, shall terminate;

B. In addition to his obligations under Section II.A, by April 15, 2008, or within ninety (90) days after entry of this Order, whichever is later, Defendant Cleveland shall transfer and pay to the taxing authorities listed in the November 26, 2007, letter from defense counsel Michael Mallow to FTC counsel Raymond E. McKown, a total of Six Hundred Sixty-Seven Thousand, Two Hundred Eighty-Eight Dollars ($667,288) distributed to those authorities in the manner described in said letter from defense counsel. Within five (5) business days after such payments are made, Defendant Cleveland shall provide proof of such payments to the FTC.

C. If, by April 15, 2008, or within ninety (90) days after entry of this Order, whichever is later, Defendant Cleveland has paid less than Six Hundred Sixty-Seven Thousand, Two Hundred Eighty-Eight Dollars ($667,288) to the taxing authorities identified in the November 26, 2007, letter from defense counsel Michael Mallow to FTC counsel Raymond E. McKown, he shall pay the amount of such underpayment, along with the amount of any interest or credit he receives on account of such underpayment, to the FTC by April 29, 2008, or within one hundred five (105) days after entry of this Order, whichever is later;

D. If Defendant Cleveland fails to pay the Six Hundred Sixty-Seven Thousand, Two Hundred Eighty-Eight Dollar ($667,288) total to the identified taxing authorities or to the Commission, with interest if applicable, as required by Sections II.B and

II.C, then judgment in the amount of Twenty-Three Million, Six Hundred Ninety-Seven Thousand, Nine Hundred Sixty Dollars ($23,697,960) shall be entered and will become immediately due and payable, less any amounts already paid, against Defendant Cleveland. Provided however, Defendant Cleveland shall have a fourteen (14) day period in which to cure his default on the Six Hundred Sixty-Seven Thousand, Two Hundred Eighty-Eight Dollar ($667,288) payment;

E. All funds paid to or received by the Commission pursuant to this Section shall be deposited into a fund administered by the Commission or its agent. Funds paid to or received by the Commission pursuant to this Section shall be used first to pay Temporary Receiver Howard Camhi, all of the Temporary Receiver's reasonable fees, expenses, and liabilities that have been or will be incurred in this action, including any that may be paid after the Temporary Receiver has been discharged, and second, for equitable relief, including but not limited to restitution to consumers, and any attendant expenses for the administration of such equitable relief. In the event that direct restitution to consumers is wholly or partially impracticable or funds remain after restitution is completed, the Commission may apply any remaining funds for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices as alleged in the Complaint. Any funds not used for such equitable relief will be deposited with the United States Treasury as disgorgement. Defendants shall have no right to challenge the Commission's choice of remedies under this Section. Defendants shall have no right to contest the manner of distribution chosen by the Commission;

F. Defendants acknowledge and agree that all money paid pursuant to this Order is irrevocably paid to the Commission for purposes of settlement between the parties, and Defendants shall make no claim or demand for return of the funds, directly or indirectly, through counsel or otherwise. In the event of bankruptcy of any Defendant, such Defendant acknowledges that the funds are not part of the debtor's estate, nor does the estate have any claim or interest therein;

G. Defendants shall provide the Commission, or its agent, within thirty (30)

days of such a request, the name, last known address, telephone number, e-mail address, date of purchase, total amount paid to Defendants, amount of any full or partial refund, and the complete file record, including computer records and correspondence, for each consumer from whom Defendants debited funds, or who paid Defendants or any entity owned or controlled, in full or in part, by any Defendant, for any prepaid card or debit card, and any further information the Commission deems necessary to effectuate any restitution program for consumers;

H. Unless already provided, each Defendant is hereby required, in accordance with 31 U.S.C. § 7701, to furnish to the Commission their respective taxpayer identifying numbers (social security numbers or employer identification numbers), which will be used for purposes of collecting and reporting on any delinquent amount arising out of such Defendant's relationship with the government; and

I. Any Redress Administrator shall destroy all records relating to this matter six (6) years after the transfer of any remaining funds to the FTC Treasury account or the closing of the account from which such funds were disbursed, whichever is earlier, provided that no records shall be destroyed unless and until a representative of the Commission has received and approved the Administrator's final accounting report. Records shall be destroyed in accordance with disposal methods and procedures to be specified by the Commission. The Commission may, in its sole discretion, require that such records, in whole or in part, be transferred, in lieu of destruction, to the Commission.

## III. RIGHT TO REOPEN

**IT IS FURTHER ORDERED** that:

A. The Commission's agreement to this Order is expressly premised upon: (1) timely payment pursuant to Section II of this Order; and (2) the truthfulness, accuracy, and completeness of the individual and business financial statements and other documents and information provided by Defendants that are identified in Attachment A. Such financial statements, documents, and information constitute

material information upon which the FTC has relied in negotiating and agreeing to the terms of this Order;

B. If, upon motion by the Commission, this Court finds that a Defendant has (1) failed to disclose any material asset, materially misrepresented the value of any asset, or made any other material misrepresentation in or omission from the submitted financial statements, documents, or information identified in Attachment A, or (2) failed to make timely payment to the FTC pursuant to Section II.A of this Order, then, as to that Defendant, judgment in the amount of Twenty-Three Million, Six Hundred Ninety-Seven Thousand, Nine Hundred Sixty Dollars ($23,697,960) shall be entered and will become immediately due and payable, less any amounts already paid. In addition to modifying such Defendant's monetary liability pursuant to Section II.A of this Order, the Court may order such Defendant to turn over any asset that he or it has misrepresented or failed to disclose, or its liquid value, to the Commission, the value of which shall be credited against the remaining balance of any judgment obtained by the FTC pursuant to this Section. Provided however, that in all other respects this Order shall remain in full force and effect, unless otherwise modified by the Court. Modification of such Defendant's monetary liability as provided herein shall be in addition to, and not in lieu of, any other remedies that may lie for any misrepresentation in or omission from such Defendant's financial statement, documents, or information as identified in Attachment A; and

C. While Defendants do not admit any of the allegations in the FTC's Complaint, they nonetheless waive the right to contest those allegations in any proceedings to enforce payment or in response to any motion brought under this Section, including without limitation in any response to a nondischargeability complaint filed in a bankruptcy proceeding.

## IV. TERMINATION OF ASSET FREEZE

**IT IS FURTHER ORDERED** that the freeze on Defendants' assets ordered by this Court shall terminate when the Commission files notice with the Court that the payments identified in Section II.A, above, have been made.

# V. COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring and investigating compliance with any provision of this Order:

A. Within ten (10) days of receipt of written notice from a representative of the Commission, Dale Paul Cleveland, William Richard Wilson, EDebitPay, LLC, EDP Reporting, LLC, EDP Technologies Corporation, and Secure Deposit Card, Inc., each shall submit additional written reports, sworn to under penalty of perjury; produce documents for inspection and copying; appear for deposition; and/or provide entry during normal business hours to any business location in such Defendant's possession or direct or indirect control, to inspect the business operation;

B. In addition, the Commission is authorized to monitor compliance with this Order by all other lawful means, including but not limited to the following:

1. obtaining discovery from any person, without further leave of Court, using the procedures prescribed by Fed. R. Civ. P. 30, 31, 33, 34, 36, and 45;

2. posing as consumers and suppliers to Dale Paul Cleveland, William Richard Wilson, EDebitPay, LLC, EDP Reporting, LLC, EDP Technologies Corporation, or Secure Deposit Card, Inc., their employees, or any other entity managed or controlled in whole or in part by Dale Paul Cleveland, William Richard Wilson, EDebitPay, LLC, EDP Reporting, LLC, EDP Technologies Corporation, or Secure Deposit Card, Inc., without the necessity of identification or prior notice; and

C. Dale Paul Cleveland, William Richard Wilson, EDebitPay, LLC, EDP Reporting, LLC, EDP Technologies Corporation, and Secure Deposit Card, Inc., shall permit representatives of the Commission to interview any employer, consultant, independent contractor, representative, agent, or employee who has agreed to such an interview, relating in any way to any conduct subject to this Order. The person interviewed may have counsel present;

provided however, that nothing in this Order shall limit the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1, to obtain any documentary material, tangible things, testimony,

or information relevant to unfair or deceptive acts or practices in or affecting commerce (within the meaning of 15 U.S.C. § 45(a)(1)).

## VI. COMPLIANCE REPORTING BY DEFENDANTS

**IT IS FURTHER ORDERED** that, in order that compliance with the provisions of this Order may be monitored:

A. For a period of five (5) years from the date of entry of this Order,

1. Dale Paul Cleveland and William Richard Wilson shall each notify the Commission of the following:

a. any changes in his residence, mailing addresses, and telephone numbers within ten (10) days of the date of such change;

b. any changes in his employment status (including self-employment) and any change in his ownership interest in any business entity, within ten (10) days of the date of such change. Such notice shall include the name and address of each business that the Individual Defendant is affiliated with, employed by, creates or forms, or performs services for; a statement of the nature of the business; and a statement of his duties and responsibilities in connection with the business or employment; and

c. any change in Dale Paul Cleveland's or William Richard Wilson's name or use of any aliases or fictitious names;

2. Dale Paul Cleveland, William Richard Wilson, EDebitPay, LLC, EDP Reporting, LLC, EDP Technologies Corporation, and Secure Deposit Card, Inc., shall notify the Commission of any changes in the corporate or business structure of EDebitPay, LLC, EDP Reporting, LLC, EDP Technologies Corporation, or Secure Deposit Card, Inc., or any business entity that Dale Paul Cleveland or William Richard Wilson directly or indirectly controls, or has an ownership interest in, that may affect compliance obligations arising under this Order, including but not limited to a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor entity; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices that are subject to this Order; the filing of

a bankruptcy petition; or a change in the corporate or business entity name or address, at least thirty (30) days prior to such change, provided that, with respect to any proposed change in the corporation or business entity about which the Defendants learn of less than thirty (30) days prior to the date such action is to take place, Defendants shall notify the Commission as soon as is practicable after obtaining such knowledge;

   B. One hundred eighty (180) days after the date of entry of this Order, Dale Paul Cleveland, William Richard Wilson, EDebitPay, LLC, EDP Reporting, LLC, EDP Technologies Corporation, and Secure Deposit Card, Inc., shall each provide a written report to the FTC, sworn to under penalty of perjury, setting forth in detail the manner and form in which they have complied and are complying with this Order. This report shall include, but not be limited to:

      1. for Dale Paul Cleveland and William Richard Wilson:

         a. the then-current residence address, mailing addresses, and telephone numbers of each;

         b. the then-current employment and business addresses and telephone numbers of Dale Paul Cleveland and William Richard Wilson, a description of the business activities of each such employer or business, and the title and responsibilities of each Individual Defendant for each such employer or business; and

         c. any other changes required to be reported under subparagraph A of this Section VI;

      2. for all Defendants:

         a. a copy of each acknowledgment of receipt of this Order obtained pursuant to Sections I and VIII; and

         b. any other changes required to be reported under subparagraph A of this Section VI;

   C. For the purposes of this Order, Defendants shall, unless otherwise directed by the Commission's authorized representatives, mail all written notifications to the Commission to:

Associate Director, Division of Enforcement
Federal Trade Commission
601 New Jersey Avenue, N. W.,
Washington, DC 20580
RE: <u>FTC v. EDebitPay</u>

D.  For purposes of the compliance reporting and monitoring required by this Order, the Commission is authorized to communicate directly with Defendants, subject to Defendant's expressed request to have counsel present.

## VII.  RECORD KEEPING

**IT IS FURTHER ORDERED** that, for a period of eight (8) years from the date of entry of this Order, in connection with any business where Dale Paul Cleveland, William Richard Wilson, EDebitPay, LLC, EDP Reporting, LLC, EDP Technologies Corporation, or Secure Deposit Card, Inc., is the majority owner of the business or directly or indirectly manages or controls the business, in connection with the marketing or sale of prepaid cards, debit cards, or credit cards, each Defendant and its agents, employees, officers, corporations, successors, and assigns, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from failing to create and retain the following records:

A.  Accounting records that reflect the cost of goods or services sold, revenues generated, and the disbursement of such revenues;

B.  Personnel records accurately reflecting: the name, address, and telephone number of each person employed in any capacity by such business, including as an independent contractor; that person's job title or position; the date upon which the person commenced work; and the date and reason for the person's termination, if applicable;

C.  Customer files containing the names, addresses, phone numbers, dollar amounts paid, quantity of items or services purchased, and description of items or services purchased, to the extent such information is obtained in the ordinary course of business;

D.  Complaints and refund requests (whether received directly, indirectly or through any third party) and any responses to those complaints or requests;

E.  Copies of all sales scripts, training materials, advertisements, or other marketing materials; and

F.  All records and documents necessary to demonstrate full compliance with each provision of this Order, including but not limited to, copies of acknowledgments of receipt of this Order, required by Sections I, VIII, and IX, and all reports submitted to the FTC pursuant to Section VI.

## VIII.  DISTRIBUTION OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that, for a period of five (5) years from the date of entry of this Order, Defendants shall deliver copies of this Order as directed below:

A.  Business Entity Defendants: EDebitPay, LLC, EDP Reporting, LLC, EDP Technologies Corporation, and Secure Deposit Card, Inc., must each deliver a copy of this Order to all of its principals, officers, directors, and managers.  These Business Entity Defendants must also deliver a copy of this Order to all of their employees who are engaged in conduct related to the advertising, marketing, sale, or delivery of, prepaid cards, debit cards, credit cards, consumer information, or other products or services sold by Defendants, or any division that responds to consumer complaints or inquiries regarding such products.  For current personnel, delivery shall be within five (5) days of service of this Order upon Defendants.  For new personnel, delivery shall occur prior to them assuming their responsibilities;

B.  Dale Paul Cleveland or William Richard Wilson as control person: For any business that Dale Paul Cleveland or William Richard Wilson controls, directly or indirectly, or in which Dale Paul Cleveland or William Richard Wilson has a majority ownership interest, the Individual Defendant must deliver a copy of this Order to all principals, officers, directors, and managers of that business.  The Individual Defendant must also deliver copies of this Order to all employees, agents, and representatives of that business who engage in conduct related to the subject matter of the Order.  For current personnel, delivery shall be within five (5) days of service of this Order upon Defendants.  For new personnel, delivery shall occur prior to them assuming their responsibilities;

C.  Dale Paul Cleveland or William Richard Wilson as employee or non-control person: For any business where Dale Paul Cleveland or William Richard Wilson is not

a controlling person of a business but otherwise supervises or engages in conduct related to the subject matter of this Order, the Individual Defendant must deliver a copy of this Order to all principals and managers of such business before engaging in such conduct; and

D.  EDebitPay, LLC, EDP Reporting, LLC, EDP Technologies Corporation, and Secure Deposit Card, Inc., Dale Paul Cleveland, and William Richard Wilson must secure a signed and dated statement acknowledging receipt of this Order, within thirty (30) days of delivery, from all persons receiving a copy of the Order pursuant to this Section.

## IX.  ACKNOWLEDGMENT OF RECEIPT OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that each Defendant, within five (5) business days of receipt of this Order as entered by the Court, must submit to the Commission a truthful sworn statement acknowledging receipt of this Order.  An example of such a form is provided as Attachment B.

## X.  RESTRICTIONS ON ACTS INVOLVING PREVIOUS CUSTOMERS AND OTHER PERSONS

**IT IS FURTHER ORDERED** that Defendants and their officers, directors, agents, servants, employees, salespersons, independent contractors, corporations, subsidiaries, branches or business divisions, attorneys, successors, assigns, and all other persons or entities in active concert or participation with them who receive actual notice of this Order by personal service, facsimile, email, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other entity are hereby permanently restrained and enjoined from:

A.  Selling, renting, leasing, transferring, or otherwise disclosing the name, address, telephone number, email address, financial account number, social security number, or other information that identifies a consumer, where such information was obtained by Defendants prior to August 13, 2007; and

B.  Soliciting or assisting others to solicit any consumer whose identifying information was obtained by Defendants prior to August 13, 2007;

1   provided however, that nothwithstanding the foregoing, Defendants may not sell, rent,

2   lease, transfer, or otherwise disclose the name, address, telephone number, email

3   address, financial account number, social security number, or other information that

4   identifies a consumer, or solicit or assist others to solicit any consumer, if at the time

    of such action Defendants are not complying with any provision of Section I.

5

6              **XI.  RETENTION OF JURISDICTION**

          **IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this

7   matter for purposes of construction, modification, and enforcement of this Order.

8            **XII.  COSTS AND ATTORNEYS' FEES**

9          **IT IS FURTHER ORDERED** that each party shall bear its own costs and

10   attorneys' fees incurred in connection with this action.

11

12   Date: 1-15-2008

                        Raymond E. McKown, Esq.

13                     Barbara Y.K. Chun, Esq.

                      Bevin Murphy, Esq.

14                     Attorneys for Plaintiff

                     Federal Trade Commission

15

16   Date: 11/26/07

                       Dale Paul Cleveland, Individually, and as

17                     an officer of EDebitPay, LLC, EDP

                     Reporting, LLC, EDP Technologies

18                     Corporation, and Secure Deposit Card,

                     Inc.

19   Date: 11/26/07

20                       William Richard Wilson, individually,

                     and as an officer of EDebitPay, LLC,

21                     EDP Reporting, LLC, EDP Technologies

                     Corporation, and Secure Deposit Card,

22                         Inc.

23   Date: 11/26/07

                     EDebitPay, LLC by its officer

24                     Dale Paul Cleveland or William Richard

                     Wilson

25   Date: 11/26/07

26                     EDP Reporting, LLC by its officer

                     Dale Paul Cleveland or William Richard

27                     Wilson

28

**EXHIBIT 2**

-37-

Date: 11/26/07

_(signature)_
EDP Technologies Corporation, by its officer Dale Paul Cleveland or William Richard Wilson

Date: 11/26/07

_(signature)_
Secure Deposit Card, Inc., by its officer Dale Paul Cleveland or William Richard Wilson

APPROVED AS TO FORM:

Date: 11/26/07

_(signature)_
Michael L. Mallow, Esq.
Loeb & Loeb, LLP
Attorney for Defendants
EDebitPay, LLC, EDP Reporting, LLC, EDP Technologies Corporation, Secure Deposit Card, Inc., Dale Paul Cleveland, and William Richard Wilson

Date:

Howard Camhi, Esq., Temporary Receiver for EDebitPay, LLC, EDP Reporting, LLC, EDP Technologies Corporation, and Secure Deposit Card, Inc.

**IT IS SO ORDERED.**

Date:

Honorable Otis D. Wright II
United States District Judge

**EXHIBIT 2**
-38-

Date: _____          _____
                               EDP Technologies Corporation, by its
                               officer Dale Paul Cleveland or
                               William Richard Wilson


Date: _____          _____
                               Secure Deposit Card, Inc., by its officer
                               Dale Paul Cleveland or William Richard
                               Wilson


APPROVED AS TO FORM:

Date: _____          _____
                               Michael L. Mallow, Esq.
                               Loeb & Loeb, LLP
                               Attorney for Defendants
                               EDebitPay, LLC, EDP Reporting, LLC,
                               EDP Technologies Corporation, Secure
                               Deposit Card, Inc., Dale Paul Cleveland,
                               and William Richard Wilson


Date: _____          _____
                               Howard Camhi, Esq., Temporary
                               Receiver for EDebitPay, LLC, EDP
                               Reporting, LLC, EDP Technologies
                               Corporation, and Secure Deposit Card,
                               Inc.


    **IT IS SO ORDERED.**


Date: _____          _____
                               Honorable Otis D. Wright II
                               United States District Judge

ATTACHMENT A
[List of Documents and Information Relied On By the Commission]

EdebitPay:

    Form Re: Financial Statement for Business Entity Defendant with attachments, signed 8/10/07 by Dale Paul Cleveland

    09/26/07 Email from Michael Langston, Van Nuys Flight Center, to Paul Cleveland, and 09/20/07 Fax from Cessna Finance

Dale Paul Cleveland:

    Form Re: Financial Statement for Individual Defendant with attachments, signed 8/6/07 by Dale Paul Cleveland

    11/13/07 Letter from Nathan Pratt re: Emergency Sale of 12027 Talus Place

William Richard Wilson:

    Form Re: Financial Statement for Individual Defendant with attachments, signed 8/8/07 by William Richard Wilson

    9/25/07 Letter from Nathan Pratt re: Emergency Sale of 953 Laurel, Los Angeles, CA 90046

**EXHIBIT 2**
-40-

ATTACHMENT B

UNITED STATES DISTRICT COURT

_____ DISTRICT OF _____

```
_____   )
                                     )
FEDERAL TRADE COMMISSION,            )      CIVIL ACTION NO.
                                     )
                Plaintiff,           )
                                     )
                                     )      AFFIDAVIT  OF
        v.                           )      DEFENDANT --------
                                     )
DEFENDANT, et al.                    )
                                     )
                Defendants.          )
_____   )
```

[*Name of defendant*], being duly sworn, hereby states and affirms as follows:

1.     My name is_____. My current residence address is _____. I am a citizen of the United States and am over the age of eighteen. I have personal knowledge of the facts set forth in this Affidavit.

2.     I am a defendant in <u>FTC v. Defendant, et al.</u> (United States District Court for the _____ District of _____).

3.     On [*date*], I received a copy of the [*state full name of the Final Order as it appears on the Order itself*], which was signed by the Honorable [*name of U.S.

*District Judge*] and entered by the Court on [*date of entry of Order*].

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed on [*date*], at [*city and state*].

_____

[*Full name of defendant*]

State of _____, City of _____

Subscribed and sworn to before me this _____ day of _____, 2007____.

_____
Notary Public
My Commission Expires:
_____

acknowledging receipt of this Order.

**EXHIBIT 2**
**-42-**
23

# EXHIBIT 3

EXHIBIT 3
-43-

1   WILLIAM BLUMENTHAL
    General Counsel

2

3   RAYMOND E. MCKOWN, Bar # 150975
    BARBARA Y. K. CHUN, Bar # 186907                    JS - 6
    Federal Trade Commission

4   10877 Wilshire Blvd., Ste. 700
    Los Angeles, CA  90024

5   (310) 824-4343 (voice)
    (310) 824-4380 (fax)

6   rmckown@ftc.gov
    bchun@ftc.gov

7   BEVIN MURPHY

8   Federal Trade Commission
    601 New Jersey Avenue, N.W.

9   Washington, D.C.  20580
    (202)326-2191 (voice)
    (202) 326-3629 (fax)

10  bmurphy1@ftc.gov

11

12  Attorneys for Plaintiff FTC

13              UNITED STATES DISTRICT COURT
               CENTRAL DISTRICT OF CALIFORNIA

14

15  FEDERAL TRADE COMMISSION            CV 07-4880 ODW (AJWx)

16              Plaintiff,              ~~SETTLEMENT AGREEMENT AND~~
                                        ~~[Proposed]~~
17                                      STIPULATED FINAL ORDER FOR
                                        PERMANENT INJUNCTION AND
18  EDEBITPAY, LLC; EDP REPORTING,      MONETARY RELIEF
    LLC; EDP TECHNOLOGIES
19  CORPORATION; SECURE DEPOSIT
    CARD, INC.; and
20

21  DALE PAUL CLEVELAND and             cc: FISCAL
    WILLIAM RICHARD WILSON;
22

23              Defendants.

24

25      Plaintiff Federal Trade Commission ("FTC" or "Commission") commenced this

26  civil action on July 30, 2007, pursuant to Section 13(b) of the Federal Trade

27  Commission Act ("FTC Act"), 15 U.S.C. § 53(b), to secure temporary, preliminary,

28  and permanent injunctive relief, rescission of contracts, restitution, disgorgement of

    ill-gotten monies, and other equitable relief alleging that Defendants engaged in unfair

**EXHIBIT 3**
**-44-**

or deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

Defendants, without any findings of fact except as expressly provided herein or admission of any wrongdoing or violation of law, hereby agree to resolve this matter as set forth herein and agree to the entry of this Settlement Agreement and Stipulated Final Order for Permanent Injunction and Monetary Relief ("Order").

FINDINGS OF FACT

1. This Court has jurisdiction over the subject matter of this case and over Defendants.

2. Venue as to Defendants in the Central District of California is proper.

3. The activities of Defendants are in or affecting commerce, as defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

4. The Complaint states a claim upon which relief can be granted, and the Commission has the authority to seek the relief it has requested.

5. Defendants waive: (a) all rights to seek appellate review or otherwise challenge or contest the validity of this Order; (b) any claim Defendants may have against the Commission, its employees, representatives, or agents; (c) any claim Defendants may have against the Receiver, his employees, representatives, or agents; (d) all claims under the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended by Pub. L. 104-121, 110 Stat. 847, 863-64 (1996); and (e) any rights to attorneys' fees that may arise under said provision of law.

6. This Order was drafted jointly by Plaintiff and Defendants and reflects the negotiated agreement of the parties.

7. Defendants have not admitted any cause of action in the Complaint and their agreement to settle and resolve this action shall not be interpreted to constitute an admission that they have engaged in any violation of any law or regulation.

8. The relief set forth in this Order is remedial in nature and shall not be construed as the payment of any fine, penalty, punitive assessment, or forfeiture.

9. Entry of this Order is in the public interest and in the interest of the parties.

**EXHIBIT 3**
**-45-**

2

DEFINITIONS

For purposes of this Order, the following definitions shall apply:

1. "Assisting Others" means knowingly providing any of the following goods or services to another entity:

  a. performing customer service functions, including but not limited to, receiving or responding to consumer complaints;

  b. formulating or providing, or arranging for the formulation or provision of, any marketing materials;

  c. providing names of, or assisting in the generation of, potential customers; or

  d. performing marketing services of any kind.

2. "Billing Information" means data, including but not limited to, name, address, telephone number, email address, account number, routing number, date of birth, or social security number, that enable any person to access a customer's or donor's account, including but not limited to credit card, debit card, prepaid card, checking, savings, utility, mortgage loan, share draft, or similar accounts.

3. "Business Entity Defendants" means EDebitpay, LLC; EDP Reporting, LLC; EDP Technologies Corporation; and Secure Deposit Card, Inc., and each of them by whatever names each might be known.

4. "Clearly and Conspicuously" means:

  a. in textual communications (e.g., printed publications or words displayed on the screen of an electronic device), the required disclosures are of a type size and location sufficiently noticeable for an ordinary consumer to read and comprehend them, in print that contrasts with the background on which they appear;

  b. in communications disseminated orally or through audible means (e.g., radio or streaming audio), the required disclosures are delivered in a volume and cadence sufficient for an ordinary consumer to hear and comprehend them;

  c. in communications disseminated through video means (e.g., television or streaming video), the required disclosures are in writing in a form

**EXHIBIT 3**
**-46-**

3

consistent with subparagraph (a) of this definition and shall appear on the screen for a duration sufficient for an ordinary consumer to read and comprehend them;

d.  in communications made through interactive media such as the Internet, online services, and software:

i.  the required disclosures are unavoidable and presented in a form consistent with subparagraph (a) of this definition in addition to any audio or video presentation of them; and

ii.  "in close proximity" shall mean on the same webpage, online service page, or other electronic page, and proximate to the triggering representation, and shall not be accessed or displayed through hyperlinks, pop-ups, interstitials, or other means; and

e.  in all instances, the required disclosures are presented prior to the consumer incurring any financial obligation, in an understandable language and syntax, and with nothing contrary to, inconsistent with, or in mitigation of the disclosures used in any communication with them.

5.  "Defendants" means EDebitpay, LLC; EDP Reporting, LLC; EDP Technologies Corporation; Secure Deposit Card, Inc.; Dale Paul Cleveland; and William Richard Wilson, and each of them by whatever names each might be known.

6.  "Document" is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from which the information can be obtained and translated, if necessary, through detection devices into reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of the term.

7.  "Individual Defendants" means Dale Paul Cleveland and William Richard Wilson, and each of them by whatever names each might be known.

8.  "Marketing Affiliate" means any third party with which any Defendant has an agreement under which:

a.  the Defendant agrees to pay a commission or other compensation to

the Marketing Affiliate because the Marketing Affiliate has driven or referred customers or potential customers to the Defendant; or

b. the Marketing Affiliate agrees to pay a commission or other compensation to the Defendant because the Defendant has driven or referred customers or potential customers to the Marketing Affiliate.

9. "Material" means likely to affect a person's choice of, or conduct regarding, goods or services.

## I. RESTRICTIONS ON BUSINESS ACTIVITIES

**IT IS THEREFORE ORDERED** that in connection with the advertising, promotion, marketing, offering, or sale of goods or services by Internet or otherwise, Defendants and their officers, directors, agents, servants, employees, salespersons, independent contractors, corporations, subsidiaries, branches or business divisions, attorneys, successors, assigns, and all other persons or entities in active concert or participation with them who receive actual notice of this Order by personal service, facsimile, email, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other entity are hereby restrained and enjoined from, directly or indirectly:

A. Debiting or causing consumers' bank or financial accounts to be debited, or assessing any fee or charge against consumers or their bank or financial accounts, without first obtaining the consumers' express informed consent for the debit, charge, or fee;

B. Misrepresenting, or assisting others in misrepresenting, expressly or by implication, any fact material to a consumer's decision to apply for or purchase any product or service offered by any Defendant, including but not limited to:

1. that consumers can obtain any product or service, including but not limited to a prepaid card, debit card, or credit card, at no cost or obligation;

2. the amount of any fee, charge, or bill, including but not limited to the cost of any prepaid card, debit card, or credit card;

3. that a consumer will not be assessed a fee, or be charged or billed;

**EXHIBIT 3**
**-48-**

5

4.  that a consumer is legally obligated to pay a fee, charge, or bill;

5.  any material provision relating to the acquisition or purchase of a prepaid card, debit card, or credit card marketed or offered by any Defendant;

6.  that consumers purchased or agreed to purchase goods or services, and therefore owe money to any Defendant;

C.  Failing to clearly and conspicuously disclose the costs, fees, or charges to obtain and use any prepaid card, debit card, or credit card, and that Defendants will use consumers' personally identifiable information to impose such costs, fees, or charges, in close proximity to any instruction to provide personally identifiable information, including but not limited to name, address, date of birth, social security number, personal banking information, or billing information;

D.  Failing to clearly and conspicuously disclose the costs, fees, or charges to obtain and use any prepaid card, debit card, or credit card, in close proximity to statements such as "No Annual Fees" or "No Security Deposit" that represent that a prepaid card, debit card, or credit card can be obtained "free," without obligation, or at a reduced cost;

E.  Failing to clearly and conspicuously disclose prior to the time when a consumer applies for or purchases any good or service offered by any Defendant, the following material information, where applicable:

1.  any fee, charge, or bill that will be assessed against consumers, their financial accounts, or their bank accounts;

2.  any method that will be used to debit, charge, or bill consumers' bank or other financial accounts;

3.  that consumers' billing information will be used to debit consumers' bank or other financial accounts;

4.  that consumers' billing information or other information will be sold or transferred to third parties for marketing purposes;

5.  the material attributes of the product or service offered or marketed,

**EXHIBIT 3**
**-49-**

6

e.g., that the product has the characteristics of a credit card, debit card, or stored value card; and

       6.  if a representation is made about a refund or cancellation policy, a statement of all material terms and conditions of such policy; or if there is a policy of not making refunds or cancellations, this policy;

F.  Directly or indirectly causing billing information to be submitted for payment, in connection with the marketing or sale of any good or service, unless Defendants first obtain the express informed consent of the customer for the fee, charge or debit to or from a specified financial account, and Defendants adhere to the requirements of Section I.E.;

G.  Failing to investigate and resolve, within thirty (30) days of receipt, any consumer complaint or request for refund pertaining to Defendants that is received by Defendants, their successors, assigns, officers, agents, servants, salespersons, employees, independent contractors, and attorneys, as well as those persons in active concert or participation with them, whether acting directly or through any sole proprietorship, partnership, limited liability company, corporation, subsidiary, branch, division, or other entity, and to notify the consumer of the resolution of the complaint or request and the reason therefor; and

H.  Failing to take reasonable steps sufficient to monitor and ensure that all Defendants' agents, representatives, employees, independent contractors, and Marketing Affiliates comply with the requirements of Subsections I.A - I.G.  Such steps shall require, at a minimum, that prior to Defendants' acceptance of any prospective Marketing Affiliate, Defendants shall:

       1.  provide the Marketing Affiliate with a copy of this Order;

       2.  obtain a signed and dated acknowledgment from the Marketing Affiliate in which the Marketing Affiliate:

           a.  acknowledges receipt of this Order;

           b.  expressly agrees to distribute a copy of the Order to the Marketing Affiliate's owners, managers, and division heads;

c. expressly agrees to comply with the terms of Section I; and

3. provide written notice to the Marketing Affiliate that failing to comply with the terms of Section I will result in immediate termination of Defendants' agreement with the Marketing Affiliate and the forfeiture of all monies earned or owed.

## II. MONETARY RELIEF

**IT IS FURTHER ORDERED** that:

A. In accordance with directions provided by the Federal Trade Commission, Defendants shall pay to the Commission Two Million, Two Hundred Fifty-Eight Thousand, Two Hundred Fifty-Eight Dollars ($2,258,258), plus the net proceeds, if any, from the sale of one automobile, VIN No. xxxxxxxxx04458. No portion of any payment under this Order shall be deemed a payment of any fine, penalty, or punitive assessment. The payment and the transfer of any net proceeds from the sale of the identified automobile shall be made as follows:

1. The Temporary Receiver's settlement account currently holds Two Million, One Hundred Twenty-Two Thousand, Twenty-Nine Dollars ($2,122,029) that is frozen pursuant to the Court's asset freeze. Upon Defendants' execution of this Order, Defendants shall transfer an additional One Hundred Thirty-Six Thousand, Two Hundred Twenty-Nine Dollars ($136,229), and any other funds that are necessary to bring the Temporary Receiver's settlement account holdings to Two Million, Two Hundred Fifty-Eight Thousand, Two Hundred Fifty-Eight Dollars ($2,258,258). In addition, upon entry of this Order by the Court, Defendants shall provide a power of attorney to the Temporary Receiver, which shall give the Temporary Receiver full authority to sell the identified automobile, pay any outstanding liens, and pay any net proceeds to the Commission as soon as practicable after the sale of the identified automobile;

2. Within five (5) business days after entry of this Order, the Temporary Receiver shall pay Two Million, Two Hundred Fifty-Eight Thousand, Two Hundred Fifty-Eight Dollars ($2,258,258), less any Court authorized payments to the

**EXHIBIT 3**
**-51-**

8

Temporary Receiver, from the Temporary Receiver's settlement account to the Commission by wire transfer in accordance with directions provided by the Commission. The Temporary Receiver shall remain in place at least through the period during which the Temporary Receiver shall sell the identified automobile and deliver to the Commission all payments identified in this Section II.A;

3. If the Commission or the Court fails to accept or approve this Order, the Temporary Receiver's authority to hold the non-frozen funds, i.e., those in excess of Two Million, One Hundred Twenty-Two Thousand, Twenty-Nine Dollars ($2,122,029), which Defendants transferred to the Temporary Receiver upon Defendants' execution of this Order, shall terminate;

B. In addition to his obligations under Section II.A, by April 15, 2008, or within ninety (90) days after entry of this Order, whichever is later, Defendant Cleveland shall transfer and pay to the taxing authorities listed in the November 26, 2007, letter from defense counsel Michael Mallow to FTC counsel Raymond E. McKown, a total of Six Hundred Sixty-Seven Thousand, Two Hundred Eighty-Eight Dollars ($667,288) distributed to those authorities in the manner described in said letter from defense counsel. Within five (5) business days after such payments are made, Defendant Cleveland shall provide proof of such payments to the FTC.

C. If, by April 15, 2008, or within ninety (90) days after entry of this Order, whichever is later, Defendant Cleveland has paid less than Six Hundred Sixty-Seven Thousand, Two Hundred Eighty-Eight Dollars ($667,288) to the taxing authorities identified in the November 26, 2007, letter from defense counsel Michael Mallow to FTC counsel Raymond E. McKown, he shall pay the amount of such underpayment, along with the amount of any interest or credit he receives on account of such underpayment, to the FTC by April 29, 2008, or within one hundred five (105) days after entry of this Order, whichever is later;

D. If Defendant Cleveland fails to pay the Six Hundred Sixty-Seven Thousand, Two Hundred Eighty-Eight Dollar ($667,288) total to the identified taxing authorities or to the Commission, with interest if applicable, as required by Sections II.B and

**EXHIBIT 3**
**-52-**

9

II.C, then judgment in the amount of Twenty-Three Million, Six Hundred Ninety-Seven Thousand, Nine Hundred Sixty Dollars ($23,697,960) shall be entered and will become immediately due and payable, less any amounts already paid, against Defendant Cleveland.  Provided however, Defendant Cleveland shall have a fourteen (14) day period in which to cure his default on the Six Hundred Sixty-Seven Thousand, Two Hundred Eighty-Eight Dollar ($667,288) payment;

E.  All funds paid to or received by the Commission pursuant to this Section shall be deposited into a fund administered by the Commission or its agent.  Funds paid to or received by the Commission pursuant to this Section shall be used first to pay Temporary Receiver Howard Camhi, all of the Temporary Receiver's reasonable fees, expenses, and liabilities that have been or will be incurred in this action, including any that may be paid after the Temporary Receiver has been discharged, and second, for equitable relief, including but not limited to restitution to consumers, and any attendant expenses for the administration of such equitable relief.  In the event that direct restitution to consumers is wholly or partially impracticable or funds remain after restitution is completed, the Commission may apply any remaining funds for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices as alleged in the Complaint.  Any funds not used for such equitable relief will be deposited with the United States Treasury as disgorgement.  Defendants shall have no right to challenge the Commission's choice of remedies under this Section.  Defendants shall have no right to contest the manner of distribution chosen by the Commission;

F.  Defendants acknowledge and agree that all money paid pursuant to this Order is irrevocably paid to the Commission for purposes of settlement between the parties, and Defendants shall make no claim or demand for return of the funds, directly or indirectly, through counsel or otherwise.  In the event of bankruptcy of any Defendant, such Defendant acknowledges that the funds are not part of the debtor's estate, nor does the estate have any claim or interest therein;

G.  Defendants shall provide the Commission, or its agent, within thirty (30)

**EXHIBIT 3**
**-53-**

days of such a request, the name, last known address, telephone number, e-mail address, date of purchase, total amount paid to Defendants, amount of any full or partial refund, and the complete file record, including computer records and correspondence, for each consumer from whom Defendants debited funds, or who paid Defendants or any entity owned or controlled, in full or in part, by any Defendant, for any prepaid card or debit card, and any further information the Commission deems necessary to effectuate any restitution program for consumers;

H.  Unless already provided, each Defendant is hereby required, in accordance with 31 U.S.C. § 7701, to furnish to the Commission their respective taxpayer identifying numbers (social security numbers or employer identification numbers), which will be used for purposes of collecting and reporting on any delinquent amount arising out of such Defendant's relationship with the government; and

I.  Any Redress Administrator shall destroy all records relating to this matter six (6) years after the transfer of any remaining funds to the FTC Treasury account or the closing of the account from which such funds were disbursed, whichever is earlier, provided that no records shall be destroyed unless and until a representative of the Commission has received and approved the Administrator's final accounting report. Records shall be destroyed in accordance with disposal methods and procedures to be specified by the Commission.  The Commission may, in its sole discretion, require that such records, in whole or in part, be transferred, in lieu of destruction, to the Commission.

### III.  RIGHT TO REOPEN

**IT IS FURTHER ORDERED** that:

A.  The Commission's agreement to this Order is expressly premised upon: (1) timely payment pursuant to Section II of this Order; and (2) the truthfulness, accuracy, and completeness of the individual and business financial statements and other documents and information provided by Defendants that are identified in Attachment A.  Such financial statements, documents, and information constitute

H:\ODW\CV\2007\4880 Final Order 1-17-08.wpd

**EXHIBIT 3**
**-54-**
11

material information upon which the FTC has relied in negotiating and agreeing to the terms of this Order;

B.  If, upon motion by the Commission, this Court finds that a Defendant has (1) failed to disclose any material asset, materially misrepresented the value of any asset, or made any other material misrepresentation in or omission from the submitted financial statements, documents, or information identified in Attachment A, or (2) failed to make timely payment to the FTC pursuant to Section II.A of this Order, then, as to that Defendant, judgment in the amount of Twenty-Three Million, Six Hundred Ninety-Seven Thousand, Nine Hundred Sixty Dollars ($23,697,960) shall be entered and will become immediately due and payable, less any amounts already paid.  In addition to modifying such Defendant's monetary liability pursuant to Section II.A of this Order, the Court may order such Defendant to turn over any asset that he or it has misrepresented or failed to disclose, or its liquid value, to the Commission, the value of which shall be credited against the remaining balance of any judgment obtained by the FTC pursuant to this Section.  Provided however, that in all other respects this Order shall remain in full force and effect, unless otherwise modified by the Court. Modification of such Defendant's monetary liability as provided herein shall be in addition to, and not in lieu of, any other remedies that may lie for any misrepresentation in or omission from such Defendant's financial statement, documents, or information as identified in Attachment A; and

C.  While Defendants do not admit any of the allegations in the FTC's Complaint, they nonetheless waive the right to contest those allegations in any proceedings to enforce payment or in response to any motion brought under this Section, including without limitation in any response to a nondischargeability complaint filed in a bankruptcy proceeding.

## IV.  TERMINATION OF ASSET FREEZE

**IT IS FURTHER ORDERED** that the freeze on Defendants' assets ordered by this Court shall terminate when the Commission files notice with the Court that the payments identified in Section II.A, above, have been made.

# V. COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring and investigating compliance with any provision of this Order:

A.  Within ten (10) days of receipt of written notice from a representative of the Commission, Dale Paul Cleveland, William Richard Wilson, EDebitPay, LLC, EDP Reporting, LLC, EDP Technologies Corporation, and Secure Deposit Card, Inc., each shall submit additional written reports, sworn to under penalty of perjury; produce documents for inspection and copying; appear for deposition; and/or provide entry during normal business hours to any business location in such Defendant's possession or direct or indirect control, to inspect the business operation;

B.  In addition, the Commission is authorized to monitor compliance with this Order by all other lawful means, including but not limited to the following:

1.  obtaining discovery from any person, without further leave of Court, using the procedures prescribed by Fed. R. Civ. P. 30, 31, 33, 34, 36, and 45;

2.  posing as consumers and suppliers to Dale Paul Cleveland, William Richard Wilson, EDebitPay, LLC, EDP Reporting, LLC, EDP Technologies Corporation, or Secure Deposit Card, Inc., their employees, or any other entity managed or controlled in whole or in part by Dale Paul Cleveland, William Richard Wilson, EDebitPay, LLC, EDP Reporting, LLC, EDP Technologies Corporation, or Secure Deposit Card, Inc., without the necessity of identification or prior notice; and

C.  Dale Paul Cleveland, William Richard Wilson, EDebitPay, LLC, EDP Reporting, LLC, EDP Technologies Corporation, and Secure Deposit Card, Inc., shall permit representatives of the Commission to interview any employer, consultant, independent contractor, representative, agent, or employee who has agreed to such an interview, relating in any way to any conduct subject to this Order.  The person interviewed may have counsel present;

provided however, that nothing in this Order shall limit the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1, to obtain any documentary material, tangible things, testimony,

**EXHIBIT 3**
**-56-**
13

or information relevant to unfair or deceptive acts or practices in or affecting commerce (within the meaning of 15 U.S.C. § 45(a)(1)).

## VI. COMPLIANCE REPORTING BY DEFENDANTS

**IT IS FURTHER ORDERED** that, in order that compliance with the provisions of this Order may be monitored:

A. For a period of five (5) years from the date of entry of this Order,

1. Dale Paul Cleveland and William Richard Wilson shall each notify the Commission of the following:

a. any changes in his residence, mailing addresses, and telephone numbers within ten (10) days of the date of such change;

b. any changes in his employment status (including self-employment) and any change in his ownership interest in any business entity, within ten (10) days of the date of such change. Such notice shall include the name and address of each business that the Individual Defendant is affiliated with, employed by, creates or forms, or performs services for; a statement of the nature of the business; and a statement of his duties and responsibilities in connection with the business or employment; and

c. any change in Dale Paul Cleveland's or William Richard Wilson's name or use of any aliases or fictitious names;

2. Dale Paul Cleveland, William Richard Wilson, EDebitPay, LLC, EDP Reporting, LLC, EDP Technologies Corporation, and Secure Deposit Card, Inc., shall notify the Commission of any changes in the corporate or business structure of EDebitPay, LLC, EDP Reporting, LLC, EDP Technologies Corporation, or Secure Deposit Card, Inc., or any business entity that Dale Paul Cleveland or William Richard Wilson directly or indirectly controls, or has an ownership interest in, that may affect compliance obligations arising under this Order, including but not limited to a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor entity; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices that are subject to this Order; the filing of

a bankruptcy petition; or a change in the corporate or business entity name or address, at least thirty (30) days prior to such change, provided that, with respect to any proposed change in the corporation or business entity about which the Defendants learn of less than thirty (30) days prior to the date such action is to take place, Defendants shall notify the Commission as soon as is practicable after obtaining such knowledge;

B.  One hundred eighty (180) days after the date of entry of this Order, Dale Paul Cleveland, William Richard Wilson, EDebitPay, LLC, EDP Reporting, LLC, EDP Technologies Corporation, and Secure Deposit Card, Inc., shall each provide a written report to the FTC, sworn to under penalty of perjury, setting forth in detail the manner and form in which they have complied and are complying with this Order. This report shall include, but not be limited to:

1.  for Dale Paul Cleveland and William Richard Wilson:

a.  the then-current residence address, mailing addresses, and telephone numbers of each;

b.  the then-current employment and business addresses and telephone numbers of Dale Paul Cleveland and William Richard Wilson, a description of the business activities of each such employer or business, and the title and responsibilities of each Individual Defendant for each such employer or business; and

c.  any other changes required to be reported under subparagraph A of this Section VI;

2.  for all Defendants:

a.  a copy of each acknowledgment of receipt of this Order obtained pursuant to Sections I and VIII; and

b.  any other changes required to be reported under subparagraph A of this Section VI;

C.  For the purposes of this Order, Defendants shall, unless otherwise directed by the Commission's authorized representatives, mail all written notifications to the Commission to:

**EXHIBIT 3**
**-58-**

15

Associate Director, Division of Enforcement
Federal Trade Commission
601 New Jersey Avenue, N. W.,
Washington, DC 20580
RE:  <u>FTC v.  EDebitPay</u>

D.  For purposes of the compliance reporting and monitoring required by this Order, the Commission is authorized to communicate directly with Defendants, subject to Defendant's expressed request to have counsel present.

## VII.  RECORD KEEPING

**IT IS FURTHER ORDERED** that, for a period of eight (8) years from the date of entry of this Order, in connection with any business where Dale Paul Cleveland, William Richard Wilson, EDebitPay, LLC, EDP Reporting, LLC, EDP Technologies Corporation, or Secure Deposit Card, Inc., is the majority owner of the business or directly or indirectly manages or controls the business, in connection with the marketing or sale of prepaid cards, debit cards, or credit cards, each Defendant and its agents, employees, officers, corporations, successors, and assigns, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from failing to create and retain the following records:

A.  Accounting records that reflect the cost of goods or services sold, revenues generated, and the disbursement of such revenues;

B.  Personnel records accurately reflecting: the name, address, and telephone number of each person employed in any capacity by such business, including as an independent contractor; that person's job title or position; the date upon which the person commenced work; and the date and reason for the person's termination, if applicable;

C.  Customer files containing the names, addresses, phone numbers, dollar amounts paid, quantity of items or services purchased, and description of items or services purchased, to the extent such information is obtained in the ordinary course of business;

D.  Complaints and refund requests (whether received directly, indirectly or through any third party) and any responses to those complaints or requests;

E.  Copies of all sales scripts, training materials, advertisements, or other marketing materials; and

F.  All records and documents necessary to demonstrate full compliance with each provision of this Order, including but not limited to, copies of acknowledgments of receipt of this Order, required by Sections I, VIII, and IX, and all reports submitted to the FTC pursuant to Section VI.

## VIII.  DISTRIBUTION OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that, for a period of five (5) years from the date of entry of this Order, Defendants shall deliver copies of this Order as directed below:

A.  Business Entity Defendants: EDebitPay, LLC, EDP Reporting, LLC, EDP Technologies Corporation, and Secure Deposit Card, Inc., must each deliver a copy of this Order to all of its principals, officers, directors, and managers.  These Business Entity Defendants must also deliver a copy of this Order to all of their employees who are engaged in conduct related to the advertising, marketing, sale, or delivery of, prepaid cards, debit cards, credit cards, consumer information, or other products or services sold by Defendants, or any division that responds to consumer complaints or inquiries regarding such products.  For current personnel, delivery shall be within five (5) days of service of this Order upon Defendants.  For new personnel, delivery shall occur prior to them assuming their responsibilities;

B.  Dale Paul Cleveland or William Richard Wilson as control person: For any business that Dale Paul Cleveland or William Richard Wilson controls, directly or indirectly, or in which Dale Paul Cleveland or William Richard Wilson has a majority ownership interest, the Individual Defendant must deliver a copy of this Order to all principals, officers, directors, and managers of that business.  The Individual Defendant must also deliver copies of this Order to all employees, agents, and representatives of that business who engage in conduct related to the subject matter of the Order.  For current personnel, delivery shall be within five (5) days of service of this Order upon Defendants.  For new personnel, delivery shall occur prior to them assuming their responsibilities;

C.  Dale Paul Cleveland or William Richard Wilson as employee or non-control person: For any business where Dale Paul Cleveland or William Richard Wilson is not

a controlling person of a business but otherwise supervises or engages in conduct related to the subject matter of this Order, the Individual Defendant must deliver a copy of this Order to all principals and managers of such business before engaging in such conduct; and

   D.  EDebitPay, LLC, EDP Reporting, LLC, EDP Technologies Corporation, and Secure Deposit Card, Inc., Dale Paul Cleveland, and William Richard Wilson must secure a signed and dated statement acknowledging receipt of this Order, within thirty (30) days of delivery, from all persons receiving a copy of the Order pursuant to this Section.

## IX.  ACKNOWLEDGMENT OF RECEIPT OF ORDER BY DEFENDANTS

   **IT IS FURTHER ORDERED** that each Defendant, within five (5) business days of receipt of this Order as entered by the Court, must submit to the Commission a truthful sworn statement acknowledging receipt of this Order.  An example of such a form is provided as Attachment B.

## X.  RESTRICTIONS ON ACTS INVOLVING
## PREVIOUS CUSTOMERS AND OTHER PERSONS

   **IT IS FURTHER ORDERED** that Defendants and their officers, directors, agents, servants, employees, salespersons, independent contractors, corporations, subsidiaries, branches or business divisions, attorneys, successors, assigns, and all other persons or entities in active concert or participation with them who receive actual notice of this Order by personal service, facsimile, email, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other entity are hereby permanently restrained and enjoined from:

   A.  Selling, renting, leasing, transferring, or otherwise disclosing the name, address, telephone number, email address, financial account number, social security number, or other information that identifies a consumer, where such information was obtained by Defendants prior to August 13, 2007; and

   B.  Soliciting or assisting others to solicit any consumer whose identifying information was obtained by Defendants prior to August 13, 2007;

provided however, that nothwithstanding the foregoing, Defendants may not sell, rent, lease, transfer, or otherwise disclose the name, address, telephone number, email address, financial account number, social security number, or other information that identifies a consumer, or solicit or assist others to solicit any consumer, if at the time of such action Defendants are not complying with any provision of Section I.

## XI.  RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

## XII.  COSTS AND ATTORNEYS' FEES

**IT IS FURTHER ORDERED** that each party shall bear its own costs and attorneys' fees incurred in connection with this action.

**IT IS SO ORDERED.**


Date: January 17, 2008

_____

Honorable Otis D. Wright II

United States District Judge


Date: _____

_____

Raymond E. McKown, Esq.
Barbara Y.K. Chun, Esq.
Bevin Murphy, Esq.
Attorneys for Plaintiff
Federal Trade Commission


Date: _____

_____

Dale Paul Cleveland, individually, and as an officer of EDebitPay, LLC, EDP Reporting, LLC, EDP Technologies Corporation, and Secure Deposit Card, Inc.


Date: _____

_____

William Richard Wilson, individually,

and as an officer of EDebitPay, LLC,
EDP Reporting, LLC, EDP Technologies
Corporation, and Secure Deposit Card,
Inc.

Date: _____

EDebitPay, LLC by its officer
Dale Paul Cleveland or William Richard
Wilson

Date: _____

EDP Reporting, LLC by its officer
Dale Paul Cleveland or William Richard
Wilson

Date: _____

EDP Technologies Corporation, by its
officer Dale Paul Cleveland or
William Richard Wilson

Date: _____

Secure Deposit Card, Inc., by its officer
Dale Paul Cleveland or William Richard
Wilson

APPROVED AS TO FORM:

Date: _____

Michael L. Mallow, Esq.
Loeb & Loeb, LLP
Attorney for Defendants
EDebitPay, LLC, EDP Reporting, LLC,
EDP Technologies Corporation, Secure
Deposit Card, Inc., Dale Paul Cleveland,
and William Richard Wilson

Date: _____

Howard Camhi, Esq., Temporary
Receiver for EDebitPay, LLC, EDP
Reporting, LLC, EDP Technologies
Corporation, and Secure Deposit Card,
Inc.

**EXHIBIT 3**
**-63-**
20

ATTACHMENT A

[List of Documents and Information Relied On By the Commission]

EdebitPay:

    Form Re: Financial Statement for Business Entity Defendant with attachments, signed 8/10/07 by Dale Paul Cleveland

    09/26/07 Email from Michael Langston, Van Nuys Flight Center, to Paul Cleveland, and 09/20/07 Fax from Cessna Finance


Dale Paul Cleveland:

    Form Re: Financial Statement for Individual Defendant with attachments, signed 8/6/07 by Dale Paul Cleveland

    11/13/07 Letter from Nathan Pratt re: Emergency Sale of 12027 Talus Place


William Richard Wilson:

    Form Re: Financial Statement for Individual Defendant with attachments, signed 8/8/07 by William Richard Wilson

    9/25/07 Letter from Nathan Pratt re: Emergency Sale of 953 Laurel, Los Angeles, CA 90046

**EXHIBIT 3**
**-64-**

21

1

2

3

4

5

ATTACHMENT B

6

7

UNITED STATES DISTRICT COURT

8

9

_____ DISTRICT OF _____

10

11

12 _____

)

13                                   )

FEDERAL TRADE COMMISSION,            )          CIVIL ACTION NO.

14                                   )

                    Plaintiff,       )

15                                   )

16                                   )          AFFIDAVIT  OF

    v.                               )          DEFENDANT --------

17                                   )

18 DEFENDANT, et al.                 )

19                                   )

                    Defendants.      )

20 _____ )

21

22     [*Name of defendant*], being duly sworn, hereby states and affirms as follows:

23

24     1.     My name is_____.  My current residence address

25

is _____.  I am a citizen

26

of the United States and am over the age of eighteen.  I have personal knowledge of

27

28

**EXHIBIT 3**
**-65-**

22

the facts set forth in this Affidavit.

2.    I am a defendant in <u>FTC v. Defendant, et al.</u> (United States District Court

for the _____ District of _____).

3.    On [*date*], I received a copy of the [*state full name of the Final Order as

it appears on the Order itself*], which was signed by the Honorable [*name of U.S.

District Judge*] and entered by the Court on [*date of entry of Order].*

I declare under penalty of perjury under the laws of the United States that the

foregoing is true and correct.  Executed on [*date*], at [*city and state*].

_____

[*Full name of defendant*]

State of _____, City of _____

Subscribed and sworn to before me this _____ day of _____, 2007___.

_____
Notary Public
My Commission Expires:
_____

acknowledging receipt of this Order.

**EXHIBIT 3** 23

# EXHIBIT 4

EXHIBIT 4
-67-



# F A X



**EDebitPay, L.L.C.**
15165 Ventura Boulevard, Suite 200
Sherman Oaks, CA 91607
(818) 487-0672
www.edebitpay.com

| To: Michael Mallow |
|---|
| Fax number: (310) 919-3883 |

From: Paul Cleveland
Fax number: 818-255-9963

Date: 1/23/2008              Pages: 3

Regarding:
declaration

Phone number for follow-up:
818-255-9980

**Comments:**
Do you need the hard copies sent to you via fedex?

Thanks,

Dale Paul Cleveland



**EXHIBIT 4**
**-68-**

1     **IN THE UNITED STATES DISTRICT COURT**
      **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
2

3    FEDERAL TRADE COMMISSION,    )   Case No. CV 07-4880 ODW (AJWx)

4            Plaintiff,          )   **DECLARATION OF**
                               )   **DEFENDANT DALE PAUL**
5       v.                         )   **CLEVELAND**

6    EDEBITPAY, LLC, et al.,        )

7            Defendants.        )

8    ――――――――――――――――― )

9

10      I, DALE PAUL CLEVELAND declare as follows:

11        1.     I am a citizen of the United States and am over the age of eighteen. I

12   have personal knowledge of the facts set forth in this Declaration.

13        2.     I am a Defendant in the above-captioned case, *FTC v. EDebitPay,*

14   *LLC., et al.* I am also the CEO of Defendants EDebitPay, LLC, EDP Reporting

15   LLC, EDP Technologies Corp and Secure Deposit Card, Inc. ("Corporate

16   Defendants").

17        3.     On January 23, 2008, I received, individually and in my capacity as

18   the CEO of Corporate Defendants, a copy of the Settlement Agreement and

19   Stipulated Final Order for Permanent Injunction and Monetary Relief in the above-

20   captioned case ("Order"), which was entered by the Court on January 17, 2008. A

21   true and correct copy of the Order is attached to this Declaration.

22

23      I declare under penalty of perjury that the foregoing is true and correct.

24

25   Executed on January 23, 2008

26                                     DALE PAUL CLEVELAND

27

28

LA1735992.1
211465-10001

**EXHIBIT 4**
**-69-**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

FEDERAL TRADE COMMISSION,          )  Case No.  CV 07-4880 ODW (AJWx)
                                   )
            Plaintiff,             )  **DECLARATION OF**
                                   )  **WILLIAM RICHARD WILSON**
    v.                             )
                                   )
EDEBITPAY, LLC, et al.,            )
                                   )
            Defendants.            )
                                   )

I, WILLIAM RICHARD WILSON declare as follows:

1.      I am a citizen of the United States and am over the age of eighteen. I have personal knowledge of the facts set forth in this Declaration.

2.      I am a Defendant in the above-captioned case, *FTC v. EDebitPay, LLC., et al.* I am also the President of Defendants EDebitPay, LLC, EDP Reporting LLC, EDP Technologies Corp and Secure Deposit Card, Inc. ("Corporate Defendants").

3.      On January 23, 2008, I received, individually and in my capacity as the President of Corporate Defendants, a copy of the Settlement Agreement and Stipulated Final Order for Permanent Injunction and Monetary Relief in the above-captioned case ("Order"), which was entered by the Court on January 17, 2008. A true and correct copy of the Order is attached to this Declaration.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 23, 2008

_____
William Richard Wilson

LA1735992.1
211465-10001

1

**EXHIBIT 4**
**-70-**

# EXHIBIT 5

EXHIBIT 5
-71-

1   WILLARD K. TOM
    General Counsel
2
    JOHN D JACOBS, Bar No. 134154
3   jjacobs@ftc.gov
    Federal Trade Commission
4   10877 Wilshire Boulevard, Suite 700
    Los Angeles, CA 90024
5   (310) 824-4360 (tel.)
    (310) 824-4380 (fax)
6
    MARK MORELLI
7   mmorelli@ftc.gov (202) 326-2601 (tel.)
    ELIZABETH TUCCI
8   etucci@ftc.gov, (202) 326-2402 (tel.)
    ZACHARY V. HUNTER
9   zhunter@ftc.gov, (202) 326-3235 (tel.)
    Federal Trade Commission
10  600 Pennsylvania Avenue, N.W., Rm. M-8102B
    Washington, DC 20580
11  (202) 326-2558 (fax)

12  ATTORNEYS FOR PLAINTIFF
    FEDERAL TRADE COMMISSION
13
                    UNITED STATES DISTRICT COURT
14                  CENTRAL DISTRICT OF CALIFORNIA

15  | **FEDERAL TRADE COMMISSION,** | CV-07-4880 ODW (AJWx) |
16  | Plaintiff, | **DECLARATION OF DR. KENNETH H. KELLY, CFA** |
17  | v. | |
18  | **EDEBITPAY, LLC, et al.,** | Judge: Hon. Otis D. Wright II |
19  | Defendants. | |

20

21

22

23

24

25

26

27

28

**EXHIBIT 5**
**-72-**

## DECLARATION OF DR. KENNETH H. KELLY, CFA

Pursuant to 28 U.S.C. § 1746

1. I, Kenneth H. Kelly, hereby state that I have personal knowledge of the facts set forth below and am competent to testify about them. I hold a doctorate from the State University of New York at Stony Brook in Economics and a Master of Science degree in Applied Mathematics and Statistics from the same institution. I have been a Chartered Financial Analyst since 1992. For 29 years I have been employed by the Federal Trade Commission as an economist and, during that time, I have advised the Commission in numerous antitrust and consumer protection matters. In addition, I have advised other federal and state regulatory agencies on the effects of government regulation on competition and on consumers. I have published articles in economic, business, and legal journals. A true and correct copy of my curriculum vitae is attached as Appendix A. I have previously submitted sworn testimony in several cases, as described in my curriculum vitae.

2. I am a full time, salaried employee of the Federal Trade Commission. I do not anticipate receiving any additional compensation for my work on this matter.

### THE DATA

3. Bureau of Consumer Protection, Division of Enforcement staff ("BCP staff") asked for my assistance in their work in the matter of *FTC* v. *EDebitPay, LLC*, Docket Number CV-07-4880 ODW (AJWX) (Central District of California). In particular, BCP staff asked me to examine, summarize and perform calculations regarding price data of products offered for sale by Insite Marketing Group, LLC ("Insite") through the Century Platinum Online Shopping Club. BCP staff informed me that Insite offered

Kelly Declaration Page 2 of 5

**EXHIBIT 5**

-73-

1  these products to consumers who joined the Century Platinum Online

2  Shopping Club through the EDebitPay website,

3  www.startercreditdirect.com.

4  4.  BCP staff informed me that on or about January 22, 2010, they received a

5  CD marked "Insite Catalog Inventory Spreadsheet IMG00406" in response

6  to a Civil Investigative Demand issued to Insite.  Specifically, Insite

7  produced this CD in response to FTC Document Request E:

8      Provide a copy of the online catalog of all products or

9      services offered to persons who are or were members of

10      Century Platinum at any time since January 18, 2008

11      (hereinafter "Century Platinum consumers").  To the

12      extent the catalog has materially changed at any time

13      since January 18, 2008, provide representative copies of

14      each version of the catalog.

15  The CD consisted of a voluminous Excel spreadsheet that listed, among

16  other things, the product number, product description, price, and down

17  payment for 1,085 items.  BCP staff copied this spreadsheet, called "Insite

18  Catalog Inventory," from the CD onto a network drive.  I saved this

19  spreadsheet as a new Excel spreadsheet called "Insite Catalog Inventory

20  Worksheet."  On April 29, 2010 I verified that the data that I used to produce

21  "Insite Catalog Inventory Worksheet" was identical to that on the CD

22  provided by Insite.

23        **DOWN PAYMENT AS PERCENT OF CATALOG PRICE**

24  5.  For each of the 1,085 items in "Insite Catalog Inventory Worksheet," I

25  computed the ratio of down payment to total member price.  The average

26  down payment was 49% of the total member price.

27          **PRICE COMPARISONS**

28  6.  I compared the prices and down payments in the "Insite Catalog Inventory"

Kelly Declaration Page 3 of 5

**EXHIBIT 5**

**-74-**

1  spreadsheet to the prices of other retailers. Given the large amount of data
2  involved, I decided to limit my analysis of price comparisons to a 10 percent
3  sample. I used the statistical software program STATA to select a random
4  sample from the "Insite Catalog Inventory" file. I first converted the file
5  into a format that would be readable by the STATA program, and then used
6  STATA to select a 10% random sample, or 109 items. I converted the
7  STATA output file into an Excel file.

8  7.  I searched on the internet for alternative retailers of the products in the
9  random sample. I used two websites to conduct this search: Google and
10  Amazon. I recorded the lowest price found on Google from among those
11  sellers from whom a consumer would be able to purchase a single item that
12  was in-stock.  Similarly, I recorded the lowest price found on Amazon.com,
13  whether it was directly from Amazon or from another retailer.  A
14  spreadsheet ("Random Sample Catalog") summarizing my results and
15  calculations described below is provided in Appendix B.

16  8.  Of the 109 products in the sample, I found alternative sellers for 97 products
17  on Google, and for 66 products on Amazon.

18  9.  For all 97 products found on Google, the price was lower than the catalog
19  member price. I computed the catalog member price as a percentage of the
20  Google price, and averaged it across all 97 products. On average, the
21  catalog member price was 326.54% of the Google price.

22  10.  I also compared the Google price to the catalog member down payment.
23  The Google price was less than the catalog member down payment for 83 of
24  97 products, or 85.57%. On average, the catalog member down payment
25  was 155.79% of the Google price.

26  11.  I did similar computations for the 66 products found on Amazon.com.  The
27  Amazon price was lower than the catalog member price for 65 products, or
28  98.48%.  On average, the catalog member price was 244.16% of the Amazon

Kelly Declaration Page 4 of 5

**EXHIBIT 5**
**-75-**

1    price.

2  12.   For the 66 products, the Amazon price was less than the catalog member

3        down payment for 49 products, or 74.24%.  On average, the catalog member

4        down payment was 115.4% of the Amazon price.

5  13.   All of the 66 items found on Amazon.com were also found using Google.

6        There were 8 items for which the lowest price found on Amazon.com was

7        lower than the lowest price found on Google and 58 for which the lowest

8        price found on Google was lower than the lowest price found on

9        Amazon.com.  On average, the catalog member price was 330.05% of the

10       lowest on-line price (that is, the lower of the Google and Amazon prices)

11       and on average the catalog member down payment was 157.42% of the

12       lowest on-line price.  The lowest on-line price was lower than the catalog

13       member down payment for 84 of the 97 items, or 86.6%.

14

15  **I declare under penalty of perjury that the foregoing is true and correct.**

16

17  _9/29/10_

18  Date                                    Dr. Kenneth H. Kelly, CFA

19

20

21

22

23

24

25

26

27

28

Kelly Declaration Page 5 of 5

**EXHIBIT 5**
**-76-**

# ATTACHMENT A

**EXHIBIT 5, ATT. A**

**Dr. Kenneth Kelly, CFA**

## EXPERIENCE

**Economist, Division of Consumer Protection, Bureau of Economics, Federal Trade Commission** (October, 2004-present): In recent years, I have been asked to testify on behalf of the FTC and for the Department of Justice in a number of consumer protection matters. I have testified, or prepared to do so, in litigation involving pyramid schemes, advertising substantiation, investment fraud, deceptive advertising, and mortgage lending. Because of this, I transferred officially to the Division of Consumer Protection in October, 2004. In addition to my testimony, I produce economic, statistical, and financial analysis in consumer protection and antitrust investigations. I produced a study of the financial services industry that was part of a report to Congress. I have trained antitrust enforcers from Central and South America through seminars in Venezuela (1995, 2003), Peru (2004), Columbia (2005), El Salvador (2008) and Panama (2008), and consumer protection enforcers in Egypt (2006), South Africa (2009), and Ecuador (forthcoming, 2010). I taught all of these seminars with FTC attorneys. I conduct independent research on antitrust and industrial organization, commercial policy, and forensic economics.

**Adjunct Professor, Department of Applied Economics, Johns Hopkins University** (January, 2006-May 2007): I taught graduate Financial Economics in the Spring 2006 and Spring 2007 semesters.

**Economist, Division of Economic Policy Analysis, Bureau of Economics, Federal Trade Commission** (July, 1986-June, 1988; November 1988-October, 2004): My primary official responsibility was to conduct economic and financial research. This research has included a review of the effectiveness of the Commission's merger enforcement program, the impact of unfair trade practices on domestic industries, and the effect of state restrictions on airline advertising. I presented this research in the form of legal briefs and live testimony to federal, state, and local agencies through the Commission's regulatory intervention program, as well as through presentations at professional meetings and scholarly journals. However, most of my time was spent working in antitrust and consumer protection enforcement, both as lead economist and as an expert witness. I provided statistical expertise to the FTC's General Counsel and to the Assistant U.S. Attorney defending the FTC in a discrimination suit, as well as to Commission staff in enforcement investigations. After earning the Chartered Financial Analyst designation in 1992, I worked in enforcement and litigation as a financial analyst, both in the role of advising the Commission and as an expert witness. I have drafted congressional testimony, speeches, and articles for the Chairman, Commissioners, and the Director of the Bureau of Economics.

**Economic Advisor to Commissioner, U.S. International Trade Commission** (March, 1986-June, 1986; June, 1988-October, 1988): In the Spring of 1986 the Federal Trade Commission faced a severe funding crisis, and I was detailed to the office of Susan W. Liebeler, then Vice Chairman of the U.S. International Trade Commission, to fill a temporary opening on her staff. I advised Vice Chairman (and then Chairman) Liebeler on policy matters and appropriate actions in antidumping, countervailing duty, escape clause and unfair competition investigations, and I reviewed economic

studies of the ITC's Office of Economics and Office of Industries.  During this time I developed an economic methodology for measuring injury to domestic industries as the result of imports and other causes, and later published this work.  I drafted opinions, speeches and other written materials for the Commissioner.  In June of 1988 I returned to the ITC when Commissioner Liebeler asked that I be detailed to her staff for the remainder of her term.

**Economist, Division of Consumer Protection, Bureau of Economics, Federal Trade Commission** (September, 1984-February, 1986): In this position I conducted investigations of a wide variety of possible violations of federal law and FTC regulations.  In cooperation with Commission attorneys, I identified relevant data, and developed investigational plans. I calculated optimal penalties in civil enforcement actions, and made recommendations to the Bureau of Consumer Protection and the Commission.  I participated in several rule making proceedings.  These cases, investigations and rule making proceedings covered a broad range of American industries.

**Economist, Division of Antitrust, Bureau of Economics, Federal Trade Commission** (January, 1981-August, 1984): I took a leave from my academic position at Rensselaer for the Spring, 1981 through Spring, 1982 semesters for what I expected to be a temporary position at the Federal Trade Commission.  My principal task was to provide economic analysis in antitrust investigations in a broad range of industries.  In cooperation with FTC attorneys, I wrote subpoenas, interviewed investigation subjects, competitors, suppliers, and customers, negotiated information requests, conducted economic, econometric, and financial analysis on the data gathered, and made enforcement recommendations to the Commission.  Possible violations included mergers, joint ventures, resale price maintenance, non-price vertical restraints, collusion, group boycotts, predation and price discrimination (the Robinson-Patman Act).  I developed a methodology for assessing the effect of antitrust enforcement on consumer welfare.

**Assistant Professor of Economics, Rensselaer Polytechnic Institute** (September, 1978-December, 1980): In the fall of 1978 I started in a tenure track position in the Department of Economics, during which time I completed my doctoral dissertation.  I taught undergraduate and graduate courses in the economics of technological change, microeconomics and macroeconomics, and developed a graduate level course in managerial economics.

**Adjunct Instructor of Economics, Hofstra University** (July, 1976-August, 1977): While in graduate school I taught introductory economics, intermediate macroeconomics and consumer economics at nearby Hofstra University.

**Economist, U.S. Bureau of Labor Statistics** (December, 1973-August, 1974): After completing a four year undergraduate program in two years, I went to work as an economist for the Department of Labor.  In this position I designed surveys of employment by occupation in industry and government, analyzed and verified estimates obtained in these surveys, and wrote reports on the results.

## EDUCATION

| Degree | Subject | Attended | University |
|--------|---------|----------|------------|
| Ph.D. | Economics | 9/74-5/79 | SUNY at Stony Brook |
| M.S. | Applied Math & Statistics | " | " |
| B.S. | Economics-Business | 9/71-8/73 | Hofstra University |

Ph.D. Preliminary Examinations: Microeconomics, Macroeconomics, Econometrics, International Economics, Advanced Microeconomics
Doctoral Dissertation: The Economics of Risky Innovation
Dissertation Committee: Edward Ames (supervisor), John Hause, Thomas Muench, Sheldon S.L. Chang

Non-degree student, Northern Virginia Community College, September, 1985 to present; classes in Spanish, German, Real Estate, Woodworking, and Photography.

## PROFESSIONAL CERTIFICATION

In September, 1992, I was awarded the Chartered Financial Analyst (CFA) designation. This charter is awarded by the Institute of Chartered Financial Analysts, a branch of the Association for Investment Management and Research (AIMR), to those individuals who have (i) a minimum of three years' experience as a financial analyst, defined as a person who has spent, and/or is spending, a substantial portion of his/her professional time collecting, evaluating, or applying financial, economic and related data for direct application to the investment process, (ii) sequentially passed a series of three examinations covering securities law, ethical and professional standards, equity and fixed income securities analysis, portfolio management, economics, financial accounting, and quantitative techniques, and (iii) agreed to comply with the AIMR's Code of Ethics and Standards of Professional Conduct. I passed all three examinations on the first effort.

## TESTIMONY

I have frequently volunteered my services to the government as a witness, both in antitrust and consumer protection matters. I have testified, in writing and/or in deposition, in the following cases:

*FTC* v. *Dayton Family Productions, Inc., et al.,* Case No. CV-5-97-00750-PMP (D. Nev.) (Hon. Philip M. Pro) (1997-98) - I calculated earnings in an investment fraud, and produced affidavits of my findings.

*In Re R.J. Reynolds Tobacco*, Docket No. 9285 (Federal Trade Commission) (Commissioners Robert Pitofsky, Sheila F. Anthony, Mozelle W. Thomson, and Orson Swindle) (1998) - I was asked

to calculate the gains to the company from sales of tobacco products to underage purchasers, and produced an affidavit on the firm's marketing.  I was desposed.

*FTC v. Lightfoot, also d/b/a Universal Direct et al.,* Case No. C-3-02-145 (S.D. Ohio) (Hon. Walter Herbert Rice) (2002) - I wrote an affidavit that this firm was operating a pyramid scheme.

*FTC* v. *The Tungsten Group et al.*, Case No. 2:01 CV 773 (E.D. Va.) (Hon. Raymond A. Jackson) (2002) - I wrote an affidavit that this firm was operating a pyramid scheme.

*FTC* v. *Travel Express International, Inc*., Case No. 1:01-cv-0906-GET (N.D. Ga.) (Hon. G. Ernest Tidwell) (2002) - I calculated losses to consumers from alleged deceptive practices.  I was deposed.

*FTC* v. *K4 Global Publishing, Inc., also d/b/a Instant Internet Empires et al.,* Case No. 5:03-CV-0140-3-CAR (M.D. Ga.) (Hon. C. Ashley Royal) (2003) - I wrote an affidavit that this firm was operating a pyramid scheme.

*FTC* v. *NEXGEN3000.com, et al.*, Case No. 4:03-cv-00120-WDB (D. Ariz.) (Hon. William D. Browning) (2004) - I wrote an expert's report and affidavits stating that this firm had operated a pyramid scheme.

*FTC* v. *Network Services Depot, Inc., et al.*, Case No. 2:05-cv-0440-LDG-LRL (D. Nev.) (Hon. Lloyd D. George) (2005-07) - I traced funds transferred from defendant companies to individual defendants and their relatives, explained the financial interrelationships between these companies, calculated consumer injury, and presented this in a series of declarations and an expert report.

*FTC v. Seismic Entertainment Productions, Inc., et al.*, Case No. 04-377-JD (D. N.H.) (Hon. Joseph A. DiClerico, Jr.) (2005-06) - I wrote a declaration that showed the earnings of Sanford Wallace from a "spyware" scheme.

*FTC* v. *Lane Labs-USA, Inc., et. al.*, Case No. 00CV3174 (D. N.J.) (Hon. Dennis M. Cavanaugh) (2008-09) - I wrote a report critiquing the work of an expert for the other side who calculated what he claimed were appropriate damages, and a sur-rebuttal report that critiqued that expert's response. I was deposed.

*FTC* v. *Alternatel, Inc., et. al.*, Case No. 08-21433-CIV-Jordan (S.D. Fla.) (2008) I wrote a declaration that examined the financial statements and tax returns of defendant companies, and performed a statistical analysis of tests of the defendants' products.  I was deposed.

*FTC* v. *Home Assure, LLC, et. al.,* Case No. 8:09-cv-547-T-23 TBM (M.D. Fla.) (2009) I wrote an expert report that described how I selected a random sample of 10% of the defendant firm's clients, analyzed documents for these clients, determined which clients were or may have been assisted by the defendant firm, and performed sensitivity analysis.  I also wrote a supplemental report that updated my earlier report to include new information.  I was deposed.

4

**EXHIBIT 5, ATT. A**

*FTC* v. *Federal Loan Modification Law Center, LLP et al.*, Case No. SACV09-401 CJC (MLGx) (Hon. Cormac Carney) (2009) I wrote a declaration that described how I selected a random sample of customer files, and performed a statistical analysis of the sample.

## PUBLICATIONS

### Articles

"One Lump or Two: Unitary versus Bifurcated Measures of Injury at the USITC," *Economic Inquiry*, Vol. 44, No. 4, October, 2006 (with Morris E. Morkre).

"Competition and Quality in Deregulated Industries: Lessons for the Education Debate," *Texas Review of Law & Politics*, Spring, 2002 (with Jerry Ellig).

"Do Unfairly Traded Imports Injure Domestic Industries?," *Review of International Economics* Vol. 6, No. 2, May, 1998 (with Morris E. Morkre); reprinted in Douglas R. Nelson and Hylke Vandenbussche, eds., *The WTO and Antidumping*, Edward Elgar Publishing, 2005.

"Empirical Analysis for Antitrust and International Trade Law," *University of Cincinnati Law Review*, Vol. 61, No. 3, 1993.

"Some Perspectives Concerning the Effects of Unfair Imports on Domestic Industries," *University of Cincinnati Law Review*, Vol. 61, No. 3, 1993 (with Morris E. Morkre).

"Merger Efficiencies: The Prodigal Son of Antitrust?," *The Journal of Reprints for Antitrust Law and Economics*, Vol. 21, No. 1, 1991.

"The Antitrust Analysis of Grocery Slotting Allowances: The Procompetitive Case," *Journal of Public Policy & Marketing*, Vol. 10, No. 1, Spring, 1991.

"Can Imports Injure a Domestic Industry When They Decline?," *Research in Law and Economics*, Vol. 12, 1989.

"The Analysis of Causality in Escape Clause Cases," *Journal of Industrial Economics*, Vol. 37, No. 2, December, 1988. Reviewed in *Business Economics*, Vol. 24, No. 2, April, 1989.

"The Role of the Free Rider in Resale Price Maintenance: The Loch Ness Monster of Antitrust Captured," *George Mason University Law Review*, Vol. 10, No. 1, Spring, 1988. Reviewed in *Washington Antitrust Report*, Vol. 2, No. 4, Summer, 1988.

"The Role of Risk Aversion in the Allocation of Resources to Invention," *Federal Trade Commission Working Paper No. 51*, March, 1982.

### Monographs

**EXHIBIT 5, ATT. A**
**-82-**

*QUANTIFYING CAUSES OF INJURY TO U.S. INDUSTRIES COMPETING WITH UNFAIRLY TRADED IMPORTS: 1989 TO 1994*, Bureau of Economics, Federal Trade Commission, 2002 (with Morris E. Morkre).

*EFFECTS OF UNFAIR IMPORTS ON DOMESTIC INDUSTRIES: U.S. Antidumping and Countervailing Duty Cases, 1980 to 1988*, Bureau of Economics, Federal Trade Commission, 1994 (with Morris E. Morkre).

*OCCUPATIONAL EMPLOYMENT: AGRICULTURAL CHEMICALS INDUSTRY, APRIL 1971*, Report 430-61, U.S. Department of Labor/Bureau of Labor Statistics, November, 1974.

*OCCUPATIONAL EMPLOYMENT: MISCELLANEOUS CHEMICAL INDUSTRY, APRIL 1971*, U.S. Department of Labor/Bureau of Labor Statistics, November, 1974.

**Reviews**

P.K.M. Tharakan, ed., *Policy Implications of Antidumping Measures*, in *Public Choice*, Vol. 75, No. 3, March, 1993.

William B. Tye, *The Theory of Contestable Markets*, in *Business Economics*, Vol. 27, No. 4, October, 1992.

Donald Dewey, *The Antitrust Experiment in America*, in *The Manual of Antitrust Economics*, 1992.

**Professional Presentations**

"The Event Study as a Investigative Tool in Merger Enforcement: The Case of Palladium," International Industrial Organization Conference, Atlanta, Georgia, April, 2005 (discussant and conference chair at same conference).

"One Lump or Two: Unitary vs. Bifurcated Measures of Injury from Unfairly Traded Imports," (with Morris E. Morkre), Western Economics Association, Vancouver, British Columbia, July, 2004.

Invited Participant, Workshop on Competition and Investment, Yale Center for the Study of Globalization," April 1, 2003.

"Are Slotting Allowances Anticompetitive?," The American Consumer and the Changing Structure of the Food System, Economic Research Service, U.S. Department of Agriculture, May, 2000.

Panelist, Discussion of Slotting Allowances, Marketing and Public Policy Conference, American Marketing Association, Washington, DC, May, 1996.

**EXHIBIT 5, ATT. A**

**-83-**

Discussant, Marketing and Public Policy Conference, American Marketing Association, Atlanta, GA, May, 1995.

"Empirical Analysis for Antitrust and International Trade Law," and "Perspectives on the Effects of Unfair Imports on Domestic Industries," (with Morris E. Morkre),  Western Economics Association, Seattle, WA, July, 1991.

"The Antitrust Analysis of Grocery Slotting Allowances: The Procompetitive Case," Marketing and Public Policy Conference, American Marketing Association, Washington, DC, June, 1990.

"Escape Clause Relief: A Decision Theoretic Approach," presented at the Operations Research Society of America/The Institute of Management Science Joint National Meeting, New York, October, 1989.

"Firm Size and Research Productivity," presented at the North American meeting of the Econometric Society, Denver, CO, September, 1980.

## HONORS AND AWARDS

Janet Steiger Award, Federal Trade Commission, 2004

Outstanding Scholarship Award, Federal Trade Commission, 1993

Phi Beta Kappa, 1974

Letter of Commendation, National Science Foundation Graduate Fellowship Program, 1974-75.

Bachelor of Science *summa cum laude* with Highest Honors in Economics, Hofstra University, 1974.

Omicron Delta Epsilon, International Honor Society in Economics, 1973.

New York State Regents College Scholarship, 1971-1973.

Hofstra University Distinguished Academic Scholarship, 1971-1973.


## PROFESSIONAL ASSOCIATIONS

CFA Institute

## PERSONAL


Address:        Bureau of Economics

600 Pennsylvania Avenue, NW
Federal Trade Commission
Washington, DC 20580
Phone: (202) 326-3358
Fax:   (202) 326-3443
E-MAIL: kkelly@ftc.gov

8

# ATTACHMENT B

| | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Row | Product# | Description1 | Description2 | PriceMember | DownPayment | ClaimedPriceRetail | Google Price | Time/Date Google | Count G |
| 2 | 9 | JETURQ2 | Turquoise and Sterling Silver Necklace and Bracelet Set | Necklace has an 18" chain. Bracelet measures 8" adjustable to 10". Comes nestled in a beautiful velour gift box. | $ 105.00 | $ 48.00 | $ 132.95 | na | na | |
| 3 | 13 | LUPSKIN54 | Embassy™ Black Faux Snakeskin Purse | Features include front flap with snap closure, one pocket with zippered closure on the back and a privacy pocket with zippered closure inside. Purse measures 9-1/8" x 5-1/4" x 1-1/2". | $ 32.00 | $ 16.00 | $ 40.95 | $ 9.29 | 4/29/2010 9:45 | 1 |
| 4 | 30 | GFHAT2 | UNIFORMD LMBSKN LTHR HAT CN | Giovanni NavarreÂ¨ Solid Genuine Leather Driving Cap. The buttery soft feel of genuine leather will make you feel as if you arenÂ•t wearing a hat at all. If you need to protect your head from the sunÂ•s damaging UV rays, why not do it in a stylish way? Th | $ 23.00 | $ 9.50 | $ 26.95 | $ 6.93 | 4/8/2010 17:17 | 1 |
| 5 | 35 | YP6 | Circle Charm Bracelet | Stylishly selected, this bracelet features different sizes of rings chained together by oval-shaped links. The alternating rose gold and white gold plating of the rings will surely draw attention. 0.925 Sterling silver core bonded with 18k white gold (Palladium alloy) or 18k rose gold. Approximate measurements 8 " L. Circle Largest: 3/4". Smallest 1/2" | $ 58.00 | $ 30.00 | $ 69.99 | na | na | |
| 6 | 39 | GFLADMJ3X | Diamond Plate™ Ladies Solid Genuine Leather Motorcycle Jacket | Diamond PlateÂª Solid Genuine Leather LadiesÂ• Motorcycle Jacket has conchos, fringe, a shirt collar, slit pockets, and a zip out liner with lambskin touch.  The sides of the jacket have drawstrings to adjust the fit, and there are adjustable zip closure | $ 210.00 | $ 99.00 | $ 267.95 | $ 54.95 | 4/8/2010 17:26 | 1 |
| 7 | 52 | GFRIN4X | Giovanni Navarre Leather Fringed Vest | Giovanni Navarre® Italian Stone® Design Genuine Leather Fringed Vest with silver hardware and diamond pattern lining. Free-spirited, with "buffalo fringe" front and back, 4-snap closure, 2 watch pockets and new lace-up side closures brings motorcycle fashions to a new height. Or if your prefer, add this to your jean ensemble and wear to the rodeo finals. The crisp look of silver hardware and diamond pattern lining punctuate this vest in all the right places. Size 4X. 2 lbs each. | $ 28.00 | $ 12.00 | $ 35.95 | $ 16.99 | 4/8/2010 17:43 | 1 |

EXHIBIT 5, ATT. B

-87-

| | K | L | M | N | O | P | Q | R | S | T | U | V | W | X |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Amazon Price | Time/Date Amazon | Count A | Notes | Cat/Google | Cat/Amazon | DP/Google | Google<DP | DP/Amazon | Amazon < DP | Minimum | Cat/Min | DP/Min | Min < DP |
| 2 | na | na | | | | | | | | | | | | |
| 3 | $12.60 | 4/8/2010 17:09 | 1 | | 3.444564047 | 2.53968254 | 1.72228202 | 1 | 1.26984127 | 1 | $ 9.29 | 3.444564 | 1.722282 | 1 |
| 4 | $9.18 | 4/8/2010 17:20 | 1 | | 3.318903319 | 2.505446623 | 1.37085137 | 1 | 1.03485839 | 1 | $ 6.93 | 3.318903 | 1.370851 | 1 |
| 5 | na | na | | | | | | | | | | | | |
| 6 | $95.73 | 4/8/2010 17:31 | 1 | | 3.821656051 | 2.193669696 | 1.80163785 | 1 | 1.03415857 | 1 | $ 54.95 | 3.821656 | 1.801638 | 1 |
| 7 | na | na | | | 1.648028252 | | 0.70629782 | | | | $ 16.99 | 1.648028 | 0.706298 | |

**EXHIBIT 5, ATT. B**

**-88-**

EXHIBIT 5, ATT. B
-89-

|   | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 8 | 58 | DPRSKA22 | Gigi Chantal™ Small Black Jacquard Purse | Features back zippered pocket, 2 front zippered coin pockets, zippered closure with snap flap, inside zippered privacy pocket, and cell phone pouch. Measures 10-1/2" x 5" x 4-1/2". | $ 45.00 | $ 22.00 | $ 57.95 | $ 15.27 | 4/21/2010 14:12 | 1 |
| 9 | 72 | LUFIRE | Embassy™ Black Hand-Sewn Pebble Grain Genuine Leather 20" Fire Rescue Duffle Bag | Features the words "FIRE RESCUE" embroidered in white on each side, one large interior compartment with zippered closure, and three pockets on each side covered by a large flap with snap closure. Measures 20" x 12-1/4" x 9-3/4". | $ 47.00 | $ 23.00 | $ 60.95 | $ 15.03 | 4/21/2010 14:18 | 1 |
| 10 | 74 | HHFVIOLIN | FULL LENGTH VIOLIN    CN | MaxamÂª Full Size Violin with case and bow. This is a beautiful combination of spruce topboard and maple back board for a sweet, clear resonating sound. Violin measures 23-1/2 long, bow 28-3/4. | $ 207.00 | $ 95.00 | $ 265.95 | $ 65.63 | 4/12/2010 12:42 | 1 |
| 11 | 87 | GFMOTLTR2 | Diamond Plate™ Mens Hand-Sewn Pebble Grain Genuine Buffalo Leather Jacket | Features zip-out polyester lining, gunmetal zipper and buckle with black snaps, large eagle patch on the back, multiple small patches, belted waist, leather laces, shirt collar that snaps down, slash pockets, and snap epaulets on the shoulder. Embroidered patches are included and already sewn in place! | $ 100.00 | $ 45.00 | $ 128.95 | $ 32.88 | 4/12/2010 12:56 | 1 |
| 12 | 105 | LUPACK6 | Combo Backpack/Rolling Cart | Maxam™ Combination Backpack/Rolling Cart. Backpack is 20" tall and features adjustable straps, a telescoping handle that extends to 18"tall, it features a waist belt and 2 mesh water bottle pockets. There are also multiple pockets to hold books, school papers and files. Polypropylene feet and rests help protect the bottom from scuffs and damage.  5 lbs each. | $ 29.99 | $ 13.00 | $ 39.95 | $ 20.99 | 4/12/2010 13:40 | 1 |
| 13 | 119 | LUPUMB | LADIES PURSE W/UMBRELLA CN | EmbassyÂª Solid Genuine Leather Purse and Telescoping Umbrella. The base of the purse holds a flat umbrella for sudden downpours. Base measures 3-1/2 x 9-3/4 and purse stands 9 tall. | $ 23.99 | $ 10.00 | $ 28.95 | $ 8.95 | 4/12/2010 13:50 | 1 |
| 14 | 130 | DPRSUA2 | Gigi Chantal™ Blue and White Canvas Shopping Bag | Reusable canvas shopping bag with the wording "I&apos;m A Canvas Bag" printed on front, rope like carrying handles, roomy interior with one pocket. Measures 12-3/4" x 14-1/2" x 4-3/4". | $ 18.99 | $ 8.00 | $ 21.95 | $ 5.00 | 4/12/20101:52 PM | 1 |
| 15 | 138 | SKMAXAMK | MAXAM KNIFE DISPLAY    US | Display Case for Maxam Knives. Displays 14 lockback or liner lock knives in the 2-sided display case. Knives not included. | $ 200.00 | $ 75.00 | $ 344.95 | $ 53.95 | 4/12/2010 14:12 | 1 |

| | K | L | M | N | O | P | Q | R | S | T | U | V | W | X |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8 | $17.96 | 4/21/2010 14:10 | 1 | | 2.946954813 | 2.505567929 | 1.44073346 | 1 | 1.22494432 | 1 | $ 15.27 | 2.946955 | 1.440733 | 1 |
| 9 | $20.12 | 4/21/2010 14:21 | 1 | | 3.127079175 | 2.335984095 | 1.53027279 | 1 | 1.14314115 | 1 | $ 15.03 | 3.127079 | 1.530273 | 1 |
| 10 | $68.18 | 4/12/2010 12:42 | 1 | | 3.154045406 | 3.036080962 | 1.44750876 | 1 | 1.39337049 | 1 | $ 65.63 | 3.154045 | 1.447509 | 1 |
| 11 | $89.99 | 4/12/2010 12:59 | 1 | | 3.04136253 | 1.111234582 | 1.36861314 | 1 | 0.50005556 | | $ 32.88 | 3.041363 | 1.368613 | 1 |
| 12 | $26.99 | 4/12/2010 13:38 | 1 | | 1.428775607 | 1.111152279 | 0.61934254 | | 0.48165987 | | $ 20.99 | 1.428776 | 0.619343 | |
| 13 | na | na | | | 2.680446927 | | 1.11731844 | 1 | | | $ 8.95 | 2.680447 | 1.117318 | 1 |
| 14 | na | na | | | 3.798 | | 1.6 | 1 | | | $ 5.00 | 3.798 | 1.6 | 1 |
| 15 | $51.71 | 4/12/2010 14:02 | 1 | | 3.707136237 | 3.867723845 | 1.39017609 | 1 | 1.45039644 | 1 | $51.71 | 3.867724 | 1.450396 | 1 |

EXHIBIT 5, ATT. B

-90-

|   | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 16 | 155 | SPBINC10 | Magnacraft® 10x25 Camouflage Binoculars | These binoculars feature shotgun hinged barrels, center-wheel focus, fold down rubber eye cups, neck strap, and matching camouflage carrying case with belt loop and hook and loop fastener. Sapphire blue coating on lenses helps cut down on glare. Barrels measure 4-1/2" long. Limited ten year warranty. Gift boxed. | $ 21.95 | $ 11.00 | $ 28.95 | $ 2.99 | 4/12/2010 14:15 | 1 |
| 17 | 157 | SPSCOPE | Magnacraft® Riflescope | Designed with high quality optics this MagnacraftÂ® Rifle Scope features 3-9 power, with a 25' to infinity focus adjustment, wide field of view, shock and recoil proof, fully coated lens, fog and water proof. Measures 13. Heavy duplex. Precise 1Ã…4  MOA ( | $ 145.00 | $ 72.00 | $ 181.95 | $ 37.37 | 4/12/2010 14:39 | 1 |
| 18 | 159 | SPSEAT2 | Club Fun™ Blue Stadium Seat | Features padded back support and multiple pockets for a micro umbrella, binoculars, drink cans, snacks, and sunglasses. Also includes a large pocket area behind back support. Measures 41" long and 17-1/2" wide. Fold and carry with the attached handles. | $ 29.99 | $ 13.00 | $ 38.95 | $ 10.93 | 4/12/2010 15:09 | 1 |
| 19 | 160 | LUPVTB20 | Embassy 20" Brown Man-Made Angola Trolley Bag. | Features roomy main compartment 4 exterior zippered pockets carrying handles adjustable removable shoulder strap and extendable handle for easy rolling. Measures 20-3/4" x 12-1/2" x 11-3/4" including front pocket. | $ 62.00 | $ 28.00 | $ 78.95 | 13.52 | 4/21/2010 15:02 | 1 |
| 20 | 162 | 64792 | Zippo Leather Lighter Pouch w/Loop, Brown | Carry your lighter in this attractive brown leather lighter pouch with loop. | $ 15.00 | $ 9.99 | $ 19.99 | $ 4.05 | 4/12/2010 16:38 | 1 |
| 21 | 175 | GFGLCUFL | Diamond Plate™ Solid Genuine Leather Gloves | Feature Thinsulate™ insulation, large cuffs, zippered closures, and elastic wrists. | $ 28.00 | $ 14.00 | $ 34.95 | $ 9.58 | 4/14/2010 15:23 | 1 |
| 22 | 181 | UBCRKIT | EMERGENCY ROAD KIT | RUGGED CANVAS BAG FOR EASY STORAGE; ROLL OF 1.875\-THICK ELECTRICAL TAPE ; PAIR OF COTTON KNIT GLOVES ; 24\" BUNGEE TIE-DOWN STRAP ; SOFT HANDLE 2-IN-1 SCREWDRIVER; RED REFLECTIVE EMERGENCY TRIANGLE ; 300 PSI AIR COMPRESSOR ; 50 PSI AIR GAUGE ; FLAT-NOSE PLIERS ; MULTI-FUNCTION FLASHLIGHT ; SET OF 8-FT JUMPER CABLES | $ 50.00 | $ 28.00 | $ 59.99 | $ 25.54 | 4/14/2010 15:30 | 1 |

**EXHIBIT 5, ATT. B**

-91-

| | K | L | M | N | O | P | Q | R | S | T | U | V | W | X |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 16 | $9.95 | 4/12/2010 14:18 | 1 | | 7.341137124 | 2.206030151 | 3.67892977 | 1 | 1.10552764 | 1 | $  2.99 | 7.341137 | 3.67893 | 1 |
| 17 | $29.95 | 4/12/2010 14:35 | 1 | | 3.880117742 | 4.841402337 | 1.92667915 | 1 | 2.40400668 | 1 | $29.95 | 4.841402 | 2.404007 | 1 |
| 18 | $12.50 | 4/12/2010 15:11 | 1 | | 2.743824337 | 2.3992 | 1.18938701 | 1 | 1.04 | 1 | $  10.93 | 2.743824 | 1.189387 | 1 |
| 19 | $22.61 | 4/21/2010 14:57 | 1 | | 4.585798817 | 2.742149491 | 2.07100592 | 1 | 1.23839009 | 1 | 13.52 | 4.585799 | 2.071006 | 1 |
| 20 | $5.50 | 4/12/2010 15:37 | 1 | | 3.703703704 | 2.727272727 | 2.46666667 | 1 | 1.81636364 | 1 | $  4.05 | 3.703704 | 2.466667 | 1 |
| 21 | $12.03 | 4/14/2010 15:23 | 1 | Driven tech v | 2.922755741 | 2.327514547 | 1.46137787 | 1 | 1.16375727 | 1 | $  9.58 | 2.922756 | 1.461378 | 1 |
| 22 | $21.59 | 4/14/2010 15:33 | 1 | | 1.957713391 | 2.315886985 | 1.0963195 | 1 | 1.29689671 | 1 | $21.59 | 2.315887 | 1.296897 | 1 |

EXHIBIT 5, ATT. B
-93-

| | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 23 | 183 | HWGIN0481 | Ginsu 14PC Bakelite Traditional Block Set | Features: •Unique double edge blade for precision cutting   •Serrated knives never need sharpening for strength and durability •Commercial Quality   •Convenient hardwood storage block keeps your knives organized, safe and ready to use •Limited Lifetime Warranty Set Includes: •Chef's Knife •Santoku  •6 Steak Knives  •Bread Knife •Boning Knife •Utility Knife  •Paring Knife •Shears  •Versatile Hardwood Storage Block | $ 49.95 | $ 25.00 | $ 59.99 | $ 26.19 | 4/14/2010 15:54 | 1 |
| 24 | 208 | LUPURSE14 | Embassy™ Gold Polyester Purse | Features zippered closure, cell phone pocket, privacy pocket, and a small third pocket. Exterior features small pocket with zippered closure. Includes one long adjustable, removable shoulder strap and one short removable strap. Measures 10" x 6" x 5-3/4". | $ 21.00 | $ 9.50 | $ 24.95 | $ 3.41 | 4/14/2010 16:07 | 1 |
| 25 | 214 | GFMJSCB2X | Diamond Plate™ Rock Design Genuine Buffalo Leather Motorcycle Jacket with Skull and Crossbones Embroidered Patch | Features large skull and crossbones patch on back, zippered closure, leather side laces for an adjustable fit, zippered front slash pockets, Nehru collar, zippered cuffs and skull shaped snap closure. | $ 69.99 | $ 35.00 | $ 81.95 | $ 24.87 | 4/14/2010 16:35 | 1 |
| 26 | 237 | GFCRLTRL | Diamond Plate™ Rock Design Genuine Buffalo Leather Motorcycle Jacket | Features patches on front and back, zippered front, nylon lining, Nehru collar, and zippered closure wrists. Embroidered patches are included and already sewn in place! | $ 75.00 | $ 35.00 | $ 95.95 | $ 23.13 | 4/14/2010 16:40 | 1 |
| 27 | 241 | GFVAPM | Diamond Plate™ Rock Design Genuine Buffalo Leather Concealed Carry Vest with Patches | Features chrome plated genuine brass buffalo snaps, side laces and 2 inside gun pockets with one interchangeable holster. Patches include: extra large eagle flag; BIKERS AGAINST DUMB DRIVERS; I'M THE PERSON YOUR PARENTS WARNED YOU ABOUT!; All I want is a little more than I'll ever get!; IT'S NOT THE SPEED, ITS THE SUDDEN STOPS!; and more. Embroidered patches are included and already sewn in place! | $ 51.00 | $ 24.00 | $ 64.95 | $ 15.18 | 4/14/2010 17:17 | 1 |

| | K | L | M | N | O | P | Q | R | S | T | U | V | W | X |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 23 | $25.59 | 4/14/2010 15:54 | 1 | | 1.907216495 | 1.951934349 | 0.95456281 | | 0.97694412 | | $25.59 | 1.951934 | 0.976944 | |
| 24 | $6.54 | 4/14/2010 4/14/2 | 1 | | 6.158357771 | 3.211009174 | 2.78592375 | 1 | 1.45259939 | 1 | $ 3.41 | 6.158358 | 2.785924 | 1 |
| 25 | $30.58 | 4/14/2010 16:36 | 1 | | 2.814234017 | 2.288750818 | 1.40731805 | 1 | 1.14453891 | 1 | $ 24.87 | 2.814234 | 1.407318 | 1 |
| 26 | $27.14 | 4/14/2010 16:56 | 1 | | 3.242542153 | 2.763448784 | 1.51318634 | 1 | 1.28960943 | 1 | $ 23.13 | 3.242542 | 1.513186 | 1 |
| 27 | na | na | | | 3.359683794 | | 1.58102767 | 1 | | | $ 15.18 | 3.359684 | 1.581028 | 1 |

| | A | B | C | D | E | F | G | H | I | J |
|---|-----|------------|---------------------------------------------------------------------|------|------|------|------|------|------|---|
| 28 | 243 | GFVAPXL | Diamond Plate™ Rock Design Genuine Buffalo Leather Concealed Carry Vest with Patches | Features chrome plated genuine brass buffalo snaps, side laces and 2 inside gun pockets with one interchangeable holster. Patches include: extra large eagle flag; BIKERS AGAINST DUMB DRIVERS; I'M THE PERSON YOUR PARENTS WARNED YOU ABOUT!; All I want is a little more than I'll ever get!; IT'S NOT THE SPEED, ITS THE SUDDEN STOPS!; and more. Embroidered patches are included and already sewn in place! | $   51.00 | $   24.00 | $   64.95 | $   15.18 | 4/14/2010 | 1 |
| 29 | 249 | GFVBIKE3X | Diamond Plate™ Rock Design Genuine Buffalo Leather Biker Vest | Features multiple patches, black snaps and laced sides. Patches on the front of vest read: Born To Be Wild, Freedom Isn&apos;t Free, and USA. Back patches read: These Colors Don't Run, Loud Pipes Save Lives, Route 66, Ride Free and Large Eagle. Embroidered patches are included and already sewn in place! | $   35.00 | $   17.00 | $   44.95 | $   9.71 | 4/14/2010 17:36 | 1 |
| 30 | 265 | GFVLADY2X | Diamond Plate™ Ladies Rock Design Genuine Leather Vest | Features multiple patches, black snaps and laced sides. Patches on the front of vest read: Born To Be Wild, Lady Rider, It Aint Easy To Be Me, and Deal with it! Girls ride too. Back patches read: Love to Ride, I&apos;m Perfect Just The Way I Am, I&apos;m Not Spoiled. . . I&apos;m Just Rewarded!, High Maintenance, and Life is Good. Embroidered patches are included and already sewn in place! | $   34.00 | $   17.00 | $   43.95 | $   10.90 | 4/16/2010 10:53 | 1 |
| 31 | 271 | DGJ-DJ0443 | Dolce & Gabbana  Silver Tone Rim Bracelet | Add a touch of style to your wardrobe with this Dolce and Gabbana silver tone bracelet. Features:  Silver tone with white plastic inserts Finish: Polished  Dimensions: Bracelet 6 mm wide x 4 mm thick x 8.5 inches long (incl. closure)  Jewelry clasp | $   149.95 | $   72.00 | $   175.00 | $   79.99 | 4/16/2010 11:04 | 1 |
| 32 | 288 | GFCHAPPAT | Diamond Plate™ Hand-Sewn Pebble Grain Genuine Leather Motorcycle Chaps | Features six patches: USA, RT66, SO MANY ROADS, IT'S NOT THE DESTINATION, HANG-UP, LIVE TO RIDE. Cut for comfort and trimmed with silver tone hardware. Embroidered patches are included and already sewn in place! | $   79.99 | $   36.00 | $   98.95 | $   25.40 | 4/16/2010 11:11 | 1 |
| 33 | 298 | 184388 | Swarovski Out of Africa Bracelet | Add some glitter and maybe some animal magnetism to your accessories with this Out of Africa bracelet from Swarovski. The artistic design features black and gold crystals set in an animal print on a suede base. | $   200.00 | $   120.00 | $   466.00 | na | 4/16/2010 11:16 | |

| | K | L | M | N | O | P | Q | R | S | T | U | V | W | X |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 28 | na | na | | | 3.359683794 | | 1.58102767 | 1 | | | $ 15.18 | 3.359684 | 1.581028 | 1 |
| 29 | $36.00 | 4/14/2010 17:36 | 1 | | 3.604531411 | 0.972222222 | 1.7507724 | 1 | 0.47222222 | | $ 9.71 | 3.604531 | 1.750772 | 1 |
| 30 | $13.51 | 4/16/2010 10:54 | 1 | | 3.119266055 | 2.51665433 | 1.55963303 | 1 | 1.25832717 | 1 | $ 10.90 | 3.119266 | 1.559633 | 1 |
| 31 | $99.00 | 4/16/2010 11:02 | 1 | | 1.874609326 | 1.514646465 | 0.90011251 | | 0.72727273 | | $ 79.99 | 1.874609 | 0.900113 | 1 |
| 32 | $29.68 | 4/16/2010 11:12 | 1 | | 3.149212598 | 2.695080863 | 1.41732283 | 1 | 1.21293801 | 1 | $ 25.40 | 3.149213 | 1.417323 | 1 |
| 33 | na | 4/16/2010 11:16 | | | | | | | | | | | | |

**EXHIBIT 5, ATT. B**
**-97-**

|   | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 34 | 302 | LB47136 | Luca Bella Home Moroccan Wrought Iron Wall Sconce. | Hinged plate holds 3" candle (not included). Measures 7-3/4" x 8" x 5-1/8". | $ 10.00 | $ 5.00 | $ 18.95 | $ 7.38 | 4/16/2010 11:21 | 1 |
| 35 | 357 | 112558 | Gucci Rush - Eau De Toilette Spray (1 oz) | Launched by the design house of Gucci in 1999, GUCCI RUSH is classified as a sharp, oriental, woody fragrance. This feminine scent possesses a blend of floral gardenia, coriander seeds, jasmine, rose, and vanilla. It is recommended for casual wear. | $ 52.50 | $ 40.00 | $ 60.99 | $ 31.51 | 4/16/2010 4/16/2010 | 1 |
| 36 | 362 | ELSCALE | HealthSmart Glass Electronic Body Fat Scale. | This is loaded with outstanding features. Strengthen your diet and training regimen with a scale that accurately measures body fat, weight, hydration and muscle mass for a holistic analysis. Set with your personal data, it determines ideal levels and suggests a course of action to help you meet your goals. Comes equipped with 4 highly precise strain gauge sensors, 1" LCD display, 8mm tempered safety glass platform, auto zero-auto off, stores up to 10 users, and low battery indicator. For ages 10+, weight capacity is 330 lbs (150kgs), weight graduation 100g, fat graduation .5%. Includes battery. Gift boxed. | $ 59.99 | $ 29.95 | $ 67.95 | $ 36.99 | 4/16/2010 11:47 | 1 |
| 37 | 374 | GFSPASAK | Spa Sak Set | SpaSak™ Spa Set includes natural exfoliating loofah, nylon mesh sponge, pumice stone, 3 wooden massagers and storage bag. 2 lbs each. | $ 19.00 | $ 8.50 | $ 21.95 | $ 9.98 | 4/16/2010 13:15 | 1 |
| 38 | 377 | GFTAN3X | Giovanni Navarre Tan Suede Leather Jacket | Giovanni Navarre® Italian Stone® Design Genuine Suede Leather Jacket. Ladies and gentlemen take a step forward in this fashionable, fully lined tan leather jacket. The jackets are rustic, comfortable and casual with the fashionable distressed look. Due to the handcrafted nature of this product you may have a few loose ends to trim. 3X size. 5 lbs each. | $ 28.00 | $ 12.50 | $ 35.95 | $ 12.15 | 4/16/2010 13:34 | 1 |
| 39 | 385 | LUPEVE | Embassy Quilted Evening Bag. | This soft stylish bag can be worn as a shoulder bag with the plaited strap or carried as a clutch by removing the strap. Features zippered closure roomy interior and privacy pocket inside. Oval shaped this bag is 8-1/4" wide and 4-1/2" tall. | $ 21.00 | $ 9.50 | $ 24.95 | $ 4.13 | 4/16/2010 13:39 | 1 |
| 40 | 404 | GFUSAXL | Diamond Plate USA/Eagle Genuine Leather Bomber Jacket. | Features adjustable wrist snaps, slash pockets, quilted lining, zip out liner and the elastic waist extends completely around the waist. | $ 105.00 | $ 49.00 | $ 134.95 | $ 27.95 | 4/16/2010 14:52 | 1 |

|    | K | L | M | N | O | P | Q | R | S | T | U | V | W | X |
|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|
| 34 | na | 4/16/2010 11:20 |   |   | 1.35501355 |   | 0.67750678 |   |   |   | $ 7.38 | 1.355014 | 0.677507 |   |
| 35 | $37.38 | 4/16/2010 11:40 | 1 |   | 1.666137734 | 1.404494382 | 1.26943827 | 1 | 1.07009096 | 1 | $ 31.51 | 1.666138 | 1.269438 | 1 |
| 36 | na | 4/16/2010 11:46 |   |   | 1.621789673 |   | 0.80967829 |   |   |   | $ 36.99 | 1.62179 | 0.809678 |   |
| 37 | $6.99 | 4/16/2010 13:21 | 1 |   | 1.903807615 | 2.718168813 | 0.85170341 |   | 1.21602289 | 1 | $6.99 | 2.718169 | 1.216023 | 1 |
| 38 | na | 4/16/2010 13:35 |   |   | 2.304526749 |   | 1.02880658 | 1 |   |   | $ 12.15 | 2.304527 | 1.028807 | 1 |
| 39 | $6.91 | 4/16/2010 13:40 | 1 |   | 5.084745763 | 3.039073806 | 2.30024213 | 1 | 1.3748191 | 1 | $ 4.13 | 5.084746 | 2.300242 | 1 |
| 40 | $33.00 | 4/16/2010 14:54 | 1 |   | 3.756708408 | 3.181818182 | 1.75313059 | 1 | 1.48484848 | 1 | $ 27.95 | 3.756708 | 1.753131 | 1 |

EXHIBIT 5, ATT. B
-99-

| | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 41 | 407 | DPRSBA27 | Gigi Chantal™ Brown Jacquard Patchwork Envelope Purse | Features front snap pocket, detachable, adjustable shoulder strap, inside zippered privacy pocket, and cell phone pouch. Measures 7-3/4" x 8-1/4". | $ 31.00 | $ 14.00 | $ 39.95 | na | 4/16/2010 17:08 | |
| 42 | 413 | CBYCD377B | SLIM CD PLYR W/ AM/FM/AUX | VERTICAL LOADING CD PLAYER; MULTI-FUNCTION BACKLIT LCD DISPLAY; ELECTRONIC VOLUME CONTROL; ANALOG AM/FM RADIO; DYNAMIC BASS BOOST SYSTEM (DBBS); FULL-RANGE SPEAKER SYSTEM; AUX INPUT FOR ADDITIONAL AUDIO DEVICES; 110/220V DUAL VOLTAGE | $ 65.00 | $ 32.00 | $ 69.99 | na | 4/16/2010 17:11 | |
| 43 | 429 | SMLANTERN | Wyndham House™ Tower Candle Lantern | Create a warm ambiance with this metal and glass panel candle lantern for indoor or outdoor use. Suitable for hanging or use as a tabletop lantern. Candle not included. Measures 4-5/8" x 11-3/4" x 4-5/8". | $ 21.95 | $ 12.50 | $ 27.95 | $ 4.76 | 4/16/2010 17:14 | 1 |
| 44 | 430 | SMLANTERN | Wyndham House™ Square Candle Lantern | Create a warm ambiance with this rustic metal and glass panel candle lantern for indoor or outdoor use. Suitable for hanging or use as a tabletop lantern. Candle not included. Measures 6" x 11-5/8" x 6". | $ 18.95 | $ 11.00 | $ 26.95 | na | 4/16/2010 17:21 | |
| 45 | 443 | GFCOATXXL | Maxam® Brand Italian Mosaic™ Design Genuine Top Grain Lambskin Leather Jacket | This leather jacket was designed with two goals in mind - style and comfort. The generous padding wraps you in warmth and gives you a snuggly, comfortable fit that will make you want to wear it every chance you get. This sleek, black jacket also features adjustable wrist snaps for added comfort, 2 zippered chest pockets, 2 slash pockets and one inside pocket for billfold, wallet, sunglasses, or cell phone. | $ 59.95 | $ 27.00 | $ 71.95 | $ 18.03 | 4/18/2010 15:39 | 1 |
| 46 | 459 | LUMBB16 | LTHR MTRCYCLE BRREL BAG CN | Diamond Plateª Rock Design Genuine Buffalo Leather Motorcycle Barrel Bag. This 16 bag is for the luggage rack and has one outside snap pocket 10-1/2 in diameter, 2 hidden pockets on each end, additional straps for strapping on extra stuff like bedrolls. | $ 27.00 | $ 12.00 | $ 34.95 | $ 8.22 | 4/18/2010 16:00 | 1 |
| 47 | 460 | KTBQJUM19 | Chefmaster™ 19pc Jumbo Barbeque Set | Set includes: 28" spatula, wire grill cleaning brush/scraper, basting brush, meat fork, knife, tongs, 4 skewers, 8 corncob holders, and nylon carrying case. Features: oversized, handy hang-up design, wood handles and brass rivets. 30-3/4" x 8" x 3-1/2" nylon carrying case features zippered pocket on back. Boxed. | $ 76.00 | $ 34.00 | $ 97.95 | $ 23.95 | 4/18/2010 16:16 | 1 |

| | K | L | M | N | O | P | Q | R | S | T | U | V | W | X |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 41 | na | 4/16/2010 17:08 | | | | | | | | | | | | |
| 42 | na | 4/16/2010 17:11 | | | | | | | | | | | | |
| 43 | na | 4/16/2010 17:14 | | | 4.611344538 | | 2.62605042 | 1 | | | $ 4.76 | 4.611345 | 2.62605 | 1 |
| 44 | na | 4/16/2010 17:22 | | | | | | | | | | | | |
| 45 | na | 4/18/2010 15:39 | | | 3.325013866 | | 1.49750416 | 1 | | | $ 18.03 | 3.325014 | 1.497504 | 1 |
| 46 | $10.75 | 4/18/2010 16:00 | 1 | | 3.284671533 | 2.511627907 | 1.45985401 | 1 | 1.11627907 | 1 | $ 8.22 | 3.284672 | 1.459854 | 1 |
| 47 | $28.79 | 4/18/2010 16:16 | 1 | | 3.173277662 | 2.639805488 | 1.41962422 | 1 | 1.18096561 | 1 | $ 23.95 | 3.173278 | 1.419624 | 1 |

|    | A   | B       | C                                                                                           | D                                                                                                                                                                                                                                                                                                  | E          | F         | G           | H         | I                    | J   |
|----|-----|---------|---------------------------------------------------------------------------------------------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|------------|-----------|-------------|-----------|----------------------|-----|
| 48 | 471 | DPRSTA3 | Gigi Chantal™ Tan Faux Snakeskin Handbag                                                    | Features zippered closure, roomy interior with zippered privacy pocket and cell phone pouch. Measures 15-7/8" x 9" x 5-3/4".                                                                                                                                                                        | $ 42.00    | $ 20.00   | $ 53.95     | $ 11.65   | 4/19/2010 8:48       | 1   |
| 49 | 482 | KTBQSS22| Chefmaster™ 22pc Stainless Steel Barbeque Set                                               | Aluminum Storage Case Measures 18-5/8" x 10" x 3-1/8" Limited lifetime warranty. $118.50 Open Stock Value. Gift boxed.                                                                                                                                                                              | $ 75.00    | $ 34.50   | $ 82.95     | $ 23.95   | 4/19/2010 8:59       | 1   |
| 50 | 496 | KTSV3   | Sterlingcraft 5pc Coffee/Tea Set                                                            | Sterlingcraft® Silverplated 5pc Tea/Coffee Set. Includes tea/coffee server, creamer, sugar bowl with lid and a 12" round tray. The round tray can double as a serving tray or cake plate. Gift boxed 5 lbs.                                                                                         | $ 54.00    | $ 25.00   | $ 88.95     | $ 49.95   | 4/19/2010 9:05       | 1   |
| 51 | 499 | KTSP5   | Steam Control 12qt Stock Pot                                                                | The Steam Control™ 12qt 5-Ply 304 Surgical Stainless Steel Stock Pot is popular because of its large 3 gallon size. Great for roasts, chickens, or stews. The unique steam control valve allows minimum moisture cooking. The 5-ply spreads heat evenly for fast cooking. The phenolic handles are resistant to heat, cold and detergents. Lifetime warranty. 11 lbs each. | $ 200.00   | $ 75.00   | $ 249.95    | $ 47.91   | 4/19/2010 9:18       | 1   |
| 52 | 515 | LUPSKIN7| Embassy™ Large Black Genuine Leather Handbag with Snakeskin Embossing                        | Features zippered main compartment, padded handstraps, two large exterior pockets with snap closure and multiple interior pockets. Measures 16-1/4" x 13-5/8" x 4-1/2".                                                                                                                             | $ 55.00    | $ 26.00   | $ 70.95     | $ 18.54   | 4/19/20109:39 AM     | 1   |
| 53 | 516 | 112036  | Donna Karan  DKNY Energy - Eau De Toilette Spray (1.7 oz)                                    | DKNY Energy by DKNY is an alluring summer scent, with inspiration from New York City. A beautiful fresh scent that is fresh and enticing. This feminine scent possesses a blend of fig, and cucumber. DKNY Energy is recommended for daytime wear.                                                    | $ 55.00    | $ 46.00   | $ 60.00     | $ 32.95   | 4/19/2010 9:56       | 1   |
| 54 | 518 | LUPXLG  | Embassy™ Extra Large Purse with Crocodile Embossing                                         | Features zippered main compartment, multiple interior pockets, one exterior pocket with flap and snap closure, and padded handstraps. Measures 17-1/2" x 12-1/4" x 5".                                                                                                                              | $ 62.00    | $ 27.00   | $ 79.95     | $ 15.52   | 4/19/2010 10:03      | 1   |
| 55 | 519 | LUSECURITY| Embassy™ Italian Stone™ Design Genuine Lambskin Leather Security Equipment Bag              | Features "SECURITY" logo on each side, double zippered closure on main compartment, removable, adjustable shoulder strap, padded hand straps and two saddle bags on each end. Measures 23" wide with saddle bags x 12" x 10-3/4".                                                                    | $ 35.00    | $ 15.00   | $ 44.95     | $ 12.26   | 4/19/2010 10:12      | 1   |

|    | K       | L                | M | N | O           | P           | Q          | R | S          | T | U       | V        | W        | X |
|----|---------|------------------|---|---|-------------|-------------|------------|---|------------|---|---------|----------|----------|---|
| 48 | $15.03  | 4/19/2010 8:48   | 1 |   | 3.605150215 | 2.794411178 | 1.7167382  | 1 | 1.33067199 | 1 | $ 11.65 | 3.60515  | 1.716738 | 1 |
| 49 | $28.42  | 4/19/2010 8:59   | 1 |   | 3.131524008 | 2.638986629 | 1.44050104 | 1 | 1.21393385 | 1 | $ 23.95 | 3.131524 | 1.440501 | 1 |
| 50 | na      | 4/19/2010 9:04   |   |   | 1.081081081 |             | 0.5005005  |   |            |   | $ 49.95 | 1.081081 | 0.500501 |   |
| 51 | $43.46  | 4/19/2010 9:17   | 1 |   | 4.174493843 | 4.601932812 | 1.56543519 | 1 | 1.7257248  | 1 | $43.46  | 4.601933 | 1.725725 | 1 |
| 52 | na      | 4/19/2010 9:39   |   |   | 2.966558792 |             | 1.40237325 | 1 |            |   | $ 18.54 | 2.966559 | 1.402373 | 1 |
| 53 | $36.99  | 4/19/2010 9:53   | 1 |   | 1.669195751 | 1.486888348 | 1.39605463 | 1 | 1.24357935 | 1 | $ 32.95 | 1.669196 | 1.396055 | 1 |
| 54 | na      | 4/19/2010 10:01  |   |   | 3.994845361 |             | 1.73969072 | 1 |            |   | $ 15.52 | 3.994845 | 1.739691 | 1 |
| 55 | na      | 4/19/2010 10:14  |   |   | 2.854812398 |             | 1.22349103 | 1 |            |   | $ 12.26 | 2.854812 | 1.223491 | 1 |

**EXHIBIT 5, ATT. B**
**-102-**

EXHIBIT 5, ATT. B
-103-

|  | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 56 | 535 | TM6292670 | Acer Computers  Intel Core2 Duo ProcessorT7300 | The TravelMate 6292-6700 Notebook -- Intel Core 2 Duo Processor T7300 (4MB L2 Cache, 2.0GHz, 800MHz FSB); 1GB (1/0) DDR2 667 SDRAM; 120GB hard drive; Modular Super-Multi drive (DVD+R, DVD-R, DVD-RAM); 5-in-1 card reader; 12.1" WXGA (1280 x 800) Display; Integrated Intel Graphics Media Accelerator X3100; 802.11a/b/g WLAN, gigabit LAN, V.92 modem; Fingerprint reader; Microsoft Windows XP Professional, Windows Vista capable, Bluetooth included., Integrated webcam | $ 1,225.00 | $ 985.00 | $ 1,562.95 | na | 4/19/2010 10:16 | |
| 57 | 537 | ELSCALE3 | HealthSmart™ Glass Electronic Bathroom Scale | Features 4 strain gauge sensors, 2-7/8" x 1-1/8" LCD display, 1/4" tempered safety glass platform, auto on/off, and low battery indicator. Weight capacity is 330lbs (150kgs), weight graduation 100g. 3-volt lithium battery included. Measures 11-3/8" x 11" x 1-3/4". Gift boxed. | $ 32.00 | $ 14.50 | $ 36.95 | $ 8.95 | 4/19/2010 10:39 | 1 |
| 58 | 539 | CTCBF7 | Maxam 7pc Forged Style Cutlery Set. | Set Contents:  Ham/Bread Knife  Carving Knife  Utility Knife  Santoku Knife  Paring Knife  Cutting Board  16-1/4" x 9-3/4" x 1-7/8" Blow-Molded Case  Limited lifetime warranty. $149.65 Open Stock Value. Gift boxed. | $ 31.00 | $ 16.00 | $ 39.95 | $ 18.00 | 4/19/2010 10:48 | 1 |
| 59 | 563 | LB5089 | Luca Bella Home™ Wrought Iron Centerpiece | A centerpiece for all occasions pairs wrought iron scrollwork with the glow of candlelight. Accommodates eight tealight candles (not included). Eight clear glass tealight cups included. Rustic brown finish. Measures 13" diameter x 9" high. Gift boxed 5 lbs. | $ 29.99 | $ 13.00 | $ 37.95 | $ 13.91 | 4/19/2010 11:08 | 1 |
| 60 | 581 | LUDUFIC | Extreme Pak™ Invisible™ 39" Camo Pattern Duffle Bag | Features zippered closure and removable, adjustable shoulder strap.  Dimensions : 20.50" Length, 20.00" Width, 2.00" Height  Weight : 3.46 Lbs. | $ 46.00 | $ 22.00 | $ 58.95 | $ 12.50 | 4/19/2010 11:17 | 1 |

| | K | L | M | N | O | P | Q | R | S | T | U | V | W | X |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 56 | na | 4/19/2010 10:16 | | | | | | | | | | | | |
| 57 | na | 4/19/2010 10:40 | | | 3.575418994 | | 1.62011173 | 1 | | | $ 8.95 | 3.575419 | 1.620112 | 1 |
| 58 | na | 4/19/2010 10:48 | | | 1.722222222 | | 0.88888889 | | | | $ 18.00 | 1.722222 | 0.888889 | |
| 59 | na | 4/19/2010 11:08 | | | 2.156002876 | | 0.93457944 | | | | $ 13.91 | 2.156003 | 0.934579 | |
| 60 | na | 4/19/2010 11:18 | | | 3.68 | | 1.76 | 1 | | | $ 12.50 | 3.68 | 1.76 | 1 |

EXHIBIT 5, ATT. B
-104-

|  | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 61 | 582 | SPB1060 | Magnacraft® 10x60 Binoculars with Sapphire Blue Coated Lenses | These binoculars feature brilliant distortion-free images, even in low light, at dawn, or dusk. They are ideal for viewing rare birds, distant scenery, and your favorite athletes at sporting events or in search of elusive game hidden deep in the woods. Features center wheel focus, sapphire blue lenses for glare reduction, and grooved finger rests for added security. Carrying case with shoulder strap and lens cloth included. Barrels measure 7-7/8" long. Limited ten year warranty. Gift boxed. | $ 55.00 | $ 25.00 | $ 67.95 | $ 15.57 | 4/19/2010 11:31 | 1 |
| 62 | 585 | CTSZ82 | Slitzer™ 8pc Steak Knife Set | All knives in this set feature phenolic handles, full tang, and half-serrated blades. Limited lifetime warranty. Gift boxed. | $ 28.00 | $ 13.00 | $ 34.95 | $ 8.13 | 4/19/2010 11:47 | 1 |
| 63 | 615 | ELWEATHER | Mitaki-Japan® Indoor/Outdoor Weather Station and Alarm Clock | Features indoor and outdoor temperature and humidity displays, 12/24 hour clock with alarm and snooze, calendar with day of the week, month, and year, lunar phase, and a remote sensor that measures temperature in Fahrenheit and Celsius. Requires 4 AAA batteries (not included). Measures 4-1/2" x 5-1/2" x 1-7/8", remote sensor measures 2-3/8" x 3-3/4" x 1". Gift boxed. | $ 35.00 | $ 15.00 | $ 44.95 | $ 5.17 | 4/19/2010 12:08 | 1 |
| 64 | 619 | GFEPS3 | Alex Navarre™ 3pc Pen, Pencil and Letter Opener in a Wood and Glass Case from the "Hanover Collection" | Measures 5-1/4" x 9" x 1-3/4". Limited lifetime warranty. Gift boxed. | $ 44.00 | $ 18.50 | $ 55.95 | $ 12.84 | 4/19/2010 13:53 | 1 |
| 65 | 625 | GFMOTLTRL | Diamond Plate™ Mens Hand-Sewn Pebble Grain Genuine Buffalo Leather Jacket | Features zip-out polyester lining, gunmetal zipper and buckle with black snaps, large eagle patch on the back, multiple small patches, belted waist, leather laces, shirt collar that snaps down, slash pockets, and snap epaulets on the shoulder. Embroidered patches are included and already sewn in place! | $ 100.00 | $ 45.00 | $ 128.95 | $ 30.79 | 4/19/2010 14:08 | 1 |

| | K | L | M | N | O | P | Q | R | S | T | U | V | W | X |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 61 | $23.53 | 4/19/2010 11:38 | 1 | | 3.532434168 | 2.337441564 | 1.60565189 | 1 | 1.06247344 | 1 | $ 15.57 | 3.532434 | 1.605652 | 1 |
| 62 | $10.25 | 4/19/2010 11:48 | 1 | | 3.44403444 | 2.731707317 | 1.59901599 | 1 | 1.26829268 | 1 | $ 8.13 | 3.444034 | 1.599016 | 1 |
| 63 | $7.99 | 4/19/2010 12:11 | 1 | | 6.769825919 | 4.380475594 | 2.90135397 | 1 | 1.87734668 | 1 | $ 5.17 | 6.769826 | 2.901354 | 1 |
| 64 | $24.00 | 4/19/2010 13:54 | 1 | | 3.426791277 | 1.833333333 | 1.44080997 | 1 | 0.77083333 | | $ 12.84 | 3.426791 | 1.44081 | 1 |
| 65 | $51.27 | 4/19/2010 14:08 | 1 | | 3.24780773 | 1.950458358 | 1.46151348 | 1 | 0.87770626 | | $ 30.79 | 3.247808 | 1.461513 | 1 |

EXHIBIT 5, ATT. B

-106-

| | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 66 | 638 | HHGLB150 | Kassel™ 6" (150mm) Diameter World Globe | Features ornate brass finished pedestal stand, hand-cut semi-precious stones representing the countries of the world and territories. They are expertly inlaid in a mosaic of countries of the "Water Planet" Earth. The deep blues of the vast oceans are recreated using the gemstone Lapis Lazuli, "the sapphire of the ancients." Measures 6-1/2" wide and 12-1/2" tall. | $  105.00 | $  48.00 | $  134.95 | $  33.98 | 4/19/2010 14:20 | 1 |
| 67 | 646 | JELOCK4 | 4-Way Opening 925 Sterling Silver Heart Shaped Locket Necklace | Features 17-3/4" silver box chain. Gift boxed. | $  70.00 | $  32.00 | $  89.95 | $  23.63 | 4/19/2010 14:31 | 1 |
| 68 | 652 | LB47143 | Luca Bella Home™ Lindsey Wrought Iron Wall Sconce | A pleasing light source for any environment. Place this inspired design element in an entry hall, above a fireplace or on a main wall. Holds 3 tealights (not included). Measures 17-3/4" x 18" x 3". Color gift box. | $  24.00 | $  10.00 | $  28.95 | $  6.76 | 4/19/2010 15:04 | 1 |
| 69 | 658 | HHKNOTSM | Shadow Box Frame with Glass Front from the "Hanover Collection" by Alex Navarre™ | For the retired Navy man or the weekend sailor, this shadow box contains nautical knots. Measures 14 " wide and 10-1/4 " tall. Boxed. | $  23.50 | $  10.00 | $  27.95 | $  3.84 | 4/19/2010 15:23 | 1 |
| 70 | 662 | LUPURSE17 | Leather Hobo Sling/Backpack Purse | Embassy™ Genuine Leather Hobo Sling/Backpack Purse by Navarre Leather Company. This innovative purse design allows you to carry it as a stylish Hobo Sling or, by unzipping the strap, it converts into a backpack! The luxurious leather purse has a side zipper opening, 190D nylon lining, outside zippered pocket and one outside snap pocket. 2 lbs each. | $  29.00 | $  14.00 | $  36.95 | $  9.53 | 4/19/2010 15:35 | 1 |
| 71 | 669 | GFAMEAGX | Giovanni Navarre® Italian Stone™ Design Genuine Leather Men's Eagle Jacket | Features large eagle patch on back with USA above, zippered closure and two front slash pockets. Embroidered patches are included and already sewn in place! | $  49.99 | $  24.00 | $  58.95 | $  15.52 | 4/19/2010 15:55 | 1 |
| 72 | 671 | GFAMEAG3 | Giovanni Navarre® Italian Stone™ Design Genuine Leather Men's Eagle Jacket | Features large eagle patch on back with USA above, zippered closure and two front slash pockets. Embroidered patches are included and already sewn in place! | $  49.99 | $  24.00 | $  58.95 | $  16.84 | 4/19/2010 16:19 | 1 |
| 73 | 673 | HHWWC10 | Kassel™ Linden Wood Wall Clock with Roman Numerals | Features weight driven mechanical movement. Measures 12-1/8" x 33-1/2" x 6-3/8". Limited one year warranty. | $  245.00 | $  105.00 | $  314.95 | $  55.74 | 4/19/2010 16:29 | 1 |

EXHIBIT 5, ATT. B
-107-

| | K | L | M | N | O | P | Q | R | S | T | U | V | W | X |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 66 | $36.27 | 4/19/2010 14:23 | 1 | | 3.090052972 | 2.894954508 | 1.41259564 | 1 | 1.32340778 | 1 | $ 33.98 | 3.090053 | 1.412596 | 1 |
| 67 | $27.07 | 4/19/2010 14:40 | 1 | | 2.962336014 | 2.585888437 | 1.35421075 | 1 | 1.18212043 | 1 | $ 23.63 | 2.962336 | 1.354211 | 1 |
| 68 | $20.09 | 4/19/2010 15:06 | 1 | | 3.550295858 | 1.194624191 | 1.47928994 | 1 | 0.49776008 | | $ 6.76 | 3.550296 | 1.47929 | 1 |
| 69 | $6.60 | 4/19/2010 15:28 | 1 | | 6.119791667 | 3.560606061 | 2.60416667 | 1 | 1.51515152 | 1 | $ 3.84 | 6.119792 | 2.604167 | 1 |
| 70 | $11.80 | 4/19/2010 15:38 | 1 | | 3.043022036 | 2.457627119 | 1.46904512 | 1 | 1.18644068 | 1 | $ 9.53 | 3.043022 | 1.469045 | 1 |
| 71 | $14.99 | 4/19/2010 16:09 | 1 | | 3.221005155 | 3.334889927 | 1.54639175 | 1 | 1.60106738 | 1 | $14.99 | 3.33489 | 1.601067 | 1 |
| 72 | na | 4/19/2010 16:21 | | | 2.968527316 | | 1.42517815 | 1 | | | $ 16.84 | 2.968527 | 1.425178 | 1 |
| 73 | $63.50 | 4/19/2010 16:30 | 1 | | 4.395407248 | 3.858267717 | 1.88374596 | 1 | 1.65354331 | 1 | $ 55.74 | 4.395407 | 1.883746 | 1 |

EXHIBIT 5, ATT. B

-109-

| | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 74 | 698 | SPTENT4 | Maxam® 4 Person Family Tent | Features fiberglass support rods with metal connectors, metal tent stakes, zippered fine mesh door for ventilation, zippered solid door, and detachable rain fly. Tent is waterproof. Comes packed in a polyester carrying bag. Measures 94" x 82". | $ 99.95 | $ 60.00 | $ 127.95 | $ 29.46 | 4/19/2010 16:38 | 1 |
| 75 | 701 | JEW1463 | Wood Stretch Watch | Features precise Japanese quartz movement and wood face with black Arabic numerals and hands. Water resistant. | $ 33.00 | $ 16.50 | $ 41.95 | na | 4/19/2010 16:48 | |
| 76 | 709 | 759358 | Sterling Silver Puzzle Braided Ring | Try this amazing sterling silver puzzle braided ring on for size! This ring is made of sterling silver! This allows you to save money and keep style! This is a puzzle ring! Have fun taking it apart and putting it back together again!This ring is designed for comfort! This remarkable sterling silver braided ring will really move you! RING SIZE: 7.5  RING SIZING RANGE: can be sized 1/2 size up or down | $ 35.00 | $ 20.00 | $ 49.99 | na | 4/19/2010 16:52 | |
| 77 | 710 | GFTRXL | Giovanni Navarre Leather Trench Coat | The buttery soft feel of this Giovanni Navarre® Italian Stone® Design Genuine Leather Trench Coat will make you look and feel like a million bucks. Not only is this coat incredibly soft, it features big, roomy slash pockets, hidden inner pocket, button front closure and adjustable belt. This fully lined trench coat will keep you warm from head to toe on the coldest of days. Whether you are on your way to the office, going to a sporting event  or going to your favorite ski resort, this coat is a must for you to stay your warmest. Size X-large. 7 lbs each. | $ 72.00 | $ 35.00 | $ 91.95 | $ 21.95 | 4/19/2010 17:20 | 1 |
| 78 | 723 | GFROSES | Giovanni Navarre® Ladies Hand-Sewn Pebble Grain Genuine Buffalo Leather Jacket | This radical design features alligator embossing, embroidered roses on the back, decorative braiding, laced arms and sides, slash pockets, and is fully lined. | $ 75.00 | $ 35.00 | $ 94.95 | $ 24.20 | 4/19/2010 17:35 | 1 |
| 79 | 726 | GFROSEXL | Giovanni Navarre® Ladies Hand-Sewn Pebble Grain Genuine Buffalo Leather Jacket | This radical design features alligator embossing, embroidered roses on the back, decorative braiding, laced arms and sides, slash pockets, and is fully lined. | $ 75.00 | $ 35.00 | $ 94.95 | $ 29.09 | 4/19/2010 17:42 | 1 |
| 80 | 728 | SMPETMUG | Farberware® Cat and Dog Mugs | One set of six Farberware® cat and dog ceramic mugs. Each mug is 14oz. Not sold individually. Only sold in complete sets of 6. Farberware® is a proud sponsor of the Humane Society of Dallas County. | $ 24.95 | $ 14.00 | $ 30.95 | $ 6.23 | 4/20/2010 9:07 | 1 |

| | K | L | M | N | O | P | Q | R | S | T | U | V | W | X |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 74 | na | 4/19/2010 16:41 | | | 3.392735913 | | 2.03665988 | 1 | | | $ 29.46 | 3.392736 | 2.03666 | 1 |
| 75 | na | 4/19/2010 16:48 | | | | | | | | | | | | |
| 76 | na | 4/19/2010 16:52 | | | | | | | | | | | | |
| 77 | $60.00 | 4/19/2010 17:20 | 1 | | 3.280182232 | 1.2 | 1.59453303 | 1 | 0.58333333 | | $ 21.95 | 3.280182 | 1.594533 | 1 |
| 78 | $44.99 | 4/19/2010 17:39 | 1 | | 3.099173554 | 1.667037119 | 1.44628099 | 1 | 0.77795066 | | $ 24.20 | 3.099174 | 1.446281 | 1 |
| 79 | $44.99 | 4/19/2010 17:42 | 1 | | 2.578205569 | 1.667037119 | 1.2031626 | 1 | 0.77795066 | | $ 29.09 | 2.578206 | 1.203163 | 1 |
| 80 | na | 4/20/2010 9:10 | | | 4.004815409 | | 2.24719101 | 1 | | | $ 6.23 | 4.004815 | 2.247191 | 1 |

| | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 81 | 735 | LUCOMP | Embassy Italina Stone&#65533; Design Genuine Leather Computer/Backpack. | Embassy Italina Stone&#65533; Design Genuine Leather Computer/Backpack. | $ 27.99 | $ 12.00 | $ 33.95 | na | 4/20/2010 9:13 | |
| 82 | 744 | GFMETL | Casual Outfitters™ Ladies Fashion Jacket with Metallic Gold Finish | Jacket features include zippered front, Nehru collar, zippered wrists, two front slash pockets, and two button closure breast pockets. | $ 55.00 | $ 25.00 | $ 67.95 | $ 38.23 | 4/20/2010 9:18 | 1 |
| 83 | 771 | GFSWBLK3X | Casual Outfitters™ Solid Genuine Suede Leather Jacket | A distinct southwestern flair enhances the look of this jacket. Features snap closure, elastic wrists and waist, slash pockets, and a 100% polyester quilted lining. It also has faux sheepskin on the collar and lapels. | $ 65.00 | $ 32.00 | $ 82.95 | $ 23.41 | 4/20/2010 9:23 | 1 |
| 84 | 815 | LURCTB1 | Royal Crest™ 18" Black Nylon Tote Bag | Features zippered main pocket containing two pockets and one zippered pocket, one zippered pocket on each end, a zippered pocket on both front and back, detachable shoulder strap, and padded hand straps. Measures 18" x 10" x 7-1/2". | $ 46.00 | $ 19.50 | $ 58.95 | $ 12.26 | 4/20/2010 10:04 | 1 |
| 85 | 818 | LUSDSB18 | Extreme Pak™ 18" Black Sport Duffle Bag | This sturdy durable 600D nylon bag features black hardware, zippered closure main compartment, one small exterior pocket with zippered closure, padded handles, and a removable, adjustable shoulder strap. Measures 18" x 10" x 8-1/2". | $ 29.99 | $ 12.50 | $ 37.95 | $ 6.47 | 4/20/2010 10:08 | 1 |
| 86 | 833 | SKAKIT | Royal Crest™ 3pc Executive Gift Set in Aluminum Case | Set includes: one 16-function knife with can opener, corkscrew, reamer, manicure, blade, sturdy reamer, Phillips screwdriver, hook disgorger, fish scaler, wood/rope saw, scissors, cutting blade, cap lifter, slotted screwdriver, key ring, toothpick, and tweezers. Knife measures 3-3/4" closed and 5-7/8" open. One 5-function knife measuring 2-3/8" closed and 3-7/8" open with blade. Small knife features honed blade, file, scissors, toothpick and tweezers. LED light, medallion and 6 extra batteries also included. Aluminum storage case measures 5-7/8" x 1-3/8" x 4-3/8". Limited lifetime warranty. Gift boxed. | $ 16.00 | $ 10.00 | $ 31.95 | $ 6.69 | 4/20/2010 10:17 | 1 |
| 87 | 839 | 389341 | Oregon Scientific  Oregon Scientific DS6200 2.0 Megapixel ThinCam Digital Camera with Cradle | The perfect combination of size, image quality, and value! This micro-size digital camera takes great 2 megapixel pictures anytime, anywhere. It is small enough to carry in your pocket, has a built-in flash, 4x digital zoom and a 1.5? color TFT screen    Weight: 0.8 lbs. | $ 86.00 | $ 69.00 | $ 99.95 | $ 19.40 | 4/20/2010 10:20 | 1 |

| | K | L | M | N | O | P | Q | R | S | T | U | V | W | X |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 81 | na | 4/20/2010 9:13 | | | | | | | | | | | | |
| 82 | na | 4/20/2010 9:20 | | | 1.438660738 | | 0.6539367 | | | | $ 38.23 | 1.438661 | 0.653937 | |
| 83 | $44.99 | 4/20/2010 9:25 | 1 | | 2.7765912 | 1.444765503 | 1.36693721 | 1 | 0.71126917 | | $ 23.41 | 2.776591 | 1.366937 | 1 |
| 84 | $24.95 | 4/20/2010 10:04 | 1 | | 3.752039152 | 1.843687375 | 1.59053834 | 1 | 0.78156313 | | $ 12.26 | 3.752039 | 1.590538 | 1 |
| 85 | na | 4/20/2010 10:09 | | | 4.635239567 | | 1.93199382 | 1 | | | $ 6.47 | 4.63524 | 1.931994 | 1 |
| 86 | na | 4/20/2010 10:18 | | | 2.391629297 | | 1.49476831 | 1 | | | $ 6.69 | 2.391629 | 1.494768 | 1 |
| 87 | $89.99 | 4/20/2010 10:28 | 1 | | 4.432989691 | 0.95566174 | 3.55670103 | 1 | 0.76675186 | | $ 19.40 | 4.43299 | 3.556701 | 1 |

EXHIBIT 5, ATT. B
-112-

EXHIBIT 5, ATT. B
-113-

| | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 88 | 853 | 90195 | Bamboo and Tiger's Eye Dangle Earrings (Peru) | Infuse your jewelry collection with the colorful charm of Worldstock's bamboo and tiger's eye dangle earrings.   These gorgeous creations feature a series of colorful bamboo dangles suspended from a central ring of silver plated brass. Below each dangle a silver spiral evokes the mystery of the Incas. Suspended in the center of the ring is a polished tiger's eye gemstone. The earrings attach with traditional shepherd's hooks. | $  40.00 | $  21.00 | $  59.99 | na | 4/20/2010 10:51 | |
| 89 | 858 | LUMSADDLE | Diamond Plate™ 2pc Slanted Motorcycle Saddle Bag Set | Features three adjustable buckles with clip closure and roomy interior. Universal fit. Each bag measures 18" x 12" x 7-3/8". | $  180.00 | $  85.00 | $  223.95 | $  51.74 | 4/20/2010 11:00 | 1 |
| 90 | 881 | SKBELT | Maxam® Belt Buckle with Removable Liner Lock Knife | Knife features honed blade with oval hole for easy one-hand opening. Measures 2-7/8" closed, 5-1/8" open. Limited lifetime warranty. Gift boxed. | $  11.00 | $  7.00 | $  21.95 | $  3.65 | 4/20/2010 11:17 | 1 |
| 91 | 894 | GFCHAPXL | Diamond Plate™ Rock Design Genuine Buffalo Leather Motorcycle Chaps | Picture yourself on the open road astride your favorite cycle, on a late Autumn day with a chill in the air. These fully lined chaps will afford the protection your legs will crave. Cut for comfort and trimmed with silver tone hardware, they are double stitched at stress points. | $  63.00 | $  29.00 | $  80.95 | $  18.95 | 4/20/2010 11:24 | 1 |
| 92 | 897 | SMSPACKBR | Maxam® Genuine Suede Leather Backpack | Features flap with clip closure, padded shoulder straps, hand strap, and exterior pocket with zippered closure. Measures 10" x 14" x 5". | $  23.00 | $  10.00 | $  27.95 | $  12.23 | 4/20/2010 11:36 | 1 |
| 93 | 898 | LUPIC302 | Maxam® 30pc Picnic Bag Set | Set includes: 4 stainless steel forks, 4 stainless steel knives, 4 stainless steel spoons, 4 - 9" melamine plates, 4 plastic goblets, 4 cotton napkins, salt & pepper shakers, bottle opener, cutting board, and cooler bag. Bag measures 12" x 16-3/8" x 8". | $  65.00 | $  30.00 | $  83.95 | $  19.24 | 4/20/2010 12:03 | 1 |
| 94 | 913 | LUPOLICE | Embassy™ Black Hand-Sewn Pebble Grain Genuine Leather Duffle Bag | Features a white "POLICE" logo embroidered on both sides, adjustable/removable shoulder strap, padded handle, and roomy interior. Measures 20" x 11" x 10-1/4". | $  53.00 | $  25.00 | $  67.95 | $  16.98 | 4/20/2010 12:15 | 1 |
| 95 | 915 | JEGB | GLD OVR SLVR TENNIS BRCL TH | Jessica Rose" 18kt Gold over Sterling Silver Tennis Bracelet. With110 genuine sapphires and 22 single cut genuine diamonds set in a double row; this bracelet makes a simple statement of elegance and sophistication. The instant you feel this gorgeous piec | $  198.97 | $  83.00 | $  322.95 | $  100.00 | 4/20/2010 12:25 | 1 |

| | K | L | M | N | O | P | Q | R | S | T | U | V | W | X |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 88 | na | 4/20/2010 10:51 | | | | | | | | | | | | |
| 89 | $61.00 | 4/20/2010 11:01 | 1 | | 3.478933127 | 2.950819672 | 1.64282953 | 1 | 1.39344262 | 1 | $ 51.74 | 3.478933 | 1.64283 | 1 |
| 90 | $6.20 | 4/20/2010 11:21 | 1 | | 3.01369863 | 1.774193548 | 1.91780822 | 1 | 1.12903226 | 1 | $ 3.65 | 3.013699 | 1.917808 | 1 |
| 91 | $27.03 | 4/20/2010 11:27 | 1 | | 3.324538259 | 2.330743618 | 1.53034301 | 1 | 1.07288198 | 1 | $ 18.95 | 3.324538 | 1.530343 | 1 |
| 92 | na | 4/20/2010 11:41 | | | 1.880621423 | | 0.81766149 | | | | $ 12.23 | 1.880621 | 0.817661 | |
| 93 | na | 4/20/2010 12:04 | | | 3.378378378 | | 1.55925156 | 1 | | | $ 19.24 | 3.378378 | 1.559252 | 1 |
| 94 | $34.30 | 4/20/2010 12:20 | 1 | | 3.121319199 | 1.545189504 | 1.47232038 | 1 | 0.72886297 | | $ 16.98 | 3.121319 | 1.47232 | 1 |
| 95 | na | 4/20/2010 12:30 | | | 1.9897 | | 0.83 | | | | $ 100.00 | 1.9897 | 0.83 | |

EXHIBIT 5, ATT. B
-114-

EXHIBIT 5, ATT. B
-115-

| | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 96 | 919 | LUOB405RD | Extreme Pak™ Heavy-Duty Red Multi-Purpose Backpack | Features multiple pockets with zippered closure and cell phone pocket on padded adjustable shoulder straps. Measures 13" x 17" x 7-3/4". Limited lifetime warranty. | $ 25.00 | $ 12.00 | $ 30.95 | $ 7.05 | 4/20/2010 12:40 | 1 |
| 97 | 923 | GFLMCOSS | Diamond Plate™ Ladies Hand-Sewn Pebble Grain Genuine Leather Jacket | Features orange stripe accents, zippered closure, Nehru snap closure collar, zippered slash pockets and a full lining that unzips for removal. | $ 55.00 | $ 25.00 | $ 67.95 | $ 34.95 | 4/20/2010 13:05 | 1 |
| 98 | 953 | GFMETXL | Casual Outfitters™ Ladies Fashion Jacket with Metallic Gold Finish | Jacket features include zippered front, Nehru collar, zippered wrists, two front slash pockets, and two button closure breast pockets. | $ 55.00 | $ 25.00 | $ 67.95 | $ 22.95 | 4/20/2010 12:50 | 1 |
| 99 | 970 | GFEUCTM | Napoline Leather Bomber Jacket | Napoline™ Roman Rock™ Design Genuine Leather Jacket. The "bomber jacket" design of this jacket affords style and function in one garment.  Features two large, front snap pockets, an added convenience in keeping up with your car keys or sunglasses, and snap closures at the wrists. Fully lined. Size medium. 5 lbs each. | $ 49.99 | $ 23.00 | $ 60.95 | $ 14.80 | 4/20/2010 13:15 | 1 |
| 100 | 977 | LU30CAMO | Extreme Pak™ Water Repellent 30" Camouflage Duffle Bag | Features zippered main compartment, interior "wet sack" to keep any dirty or wet clothing away from rest of contents, multiple zippered pockets, removable, adjustable shoulder strap, and padded handles. Measures 29-1/2" x 13-1/2" x 11-1/2". | $ 42.00 | $ 20.00 | $ 53.95 | $ 13.56 | 4/20/2010 13:29 | 1 |
| 101 | 995 | CTDC19 | Diamond Cut 19pc Cutlery Set | Diamond Cut® 19pc Cutlery Set. This set can only be called phenomenal. It features never needs sharpening, surgical stainless steel blades and polypropylene handles. Includes butcher knife, cleaver, filet knife, utility knife, tomato knife, boning knife, chef knife, ham/bread slicer, 3pc paring knives and 8 steak knives. This cutlery is 100% dishwasher safe and has a lifetime warranty. Gift boxed 5 lbs. | $ 28.00 | $ 13.00 | $ 34.95 | $ 7.24 | 4/20/2010 14:08 | 1 |
| 102 | 997 | CTDC22 | Diamond Cut Ultra 21pc Cutlery Set w/ Knife Block | This Diamond Cut Ultra™ 21pc Cutlery and Wood Block is truly the ultra in knife sets. It includes chef knife, ham/bread slicer, cleaver, carving, boning, utility, paring, kitchen scissors and 6 steak knives. All fit in the custom wood block. There are also 7 bonus pieces that include 6 additional steak knives and a curved blade paring knife. Lifetime warranty. Gift boxed 10 lbs. | $ 33.00 | $ 15.00 | $ 42.95 | $ 13.50 | 4/21/2010 10:00 | 1 |

| | K | L | M | N | O | P | Q | R | S | T | U | V | W | X |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 96 | $9.85 | 4/20/2010 12:42 | 1 | | 3.546099291 | 2.538071066 | 1.70212766 | 1 | 1.21827411 | 1 | $  7.05 | 3.546099 | 1.702128 | 1 |
| 97 | $26.13 | 4/20/2010 13:06 | 1 | | 1.573676681 | 2.104860314 | 0.71530758 | | 0.95675469 | | $26.13 | 2.10486 | 0.956755 | |
| 98 | na | 4/20/2010 12:51 | | | 2.396514161 | | 1.08932462 | 1 | | | $ 22.95 | 2.396514 | 1.089325 | 1 |
| 99 | na | 4/20/2010 13:17 | | | 3.377702703 | | 1.55405405 | 1 | | | $ 14.80 | 3.377703 | 1.554054 | 1 |
| 100 | $16.70 | 4/20/2010 13:31 | 1 | | 3.097345133 | 2.51497006 | 1.47492625 | 1 | 1.19760479 | 1 | $ 13.56 | 3.097345 | 1.474926 | 1 |
| 101 | $9.45 | 4/20/2010 14:09 | 1 | | 3.867403315 | 2.962962963 | 1.79558011 | 1 | 1.37566138 | 1 | $  7.24 | 3.867403 | 1.79558 | 1 |
| 102 | $14.54 | 4/21/2010 10:01 | 1 | | 2.444444444 | 2.2696011 | 1.11111111 | 1 | 1.03163686 | 1 | $ 13.50 | 2.444444 | 1.111111 | 1 |

| | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 103 | 1013 | GFLZPBL | Giovanni Navarre Ladies 3/4 length Genuine Leather Jacket | Giovanni Navarre® Italian Stone™ Design Genuine Leather Ladies' Jacket. Fully lined, it zips up the front and has slash pockets and leather belt tie. Size large. 4 lbs each. | $  55.00 | $  25.00 | $  65.95 | $  19.95 | 4/21/2010 10:27 | 1 |
| 104 | 1017 | GFMAN5 | Manicure Set | L'Davinchi™ 5pc Manicure Set. Stored in a beautiful aluminum cylindrical shape this set includes tweezers, cuticle scissors, nail clippers, cuticle pusher and nail cleaner. Cylinder measures 4-5/8" tall. 1 lb each. | $  14.50 | $  6.00 | $  19.95 | $  1.95 | 4/21/2010 11:23 | 1 |
| 105 | 1024 | GFMNSTJM | Giovanni Navarre Italian Stone Design Genuine Leather Coat. | Features quilted lining, hidden zipper in front, adjustable snap closure on wrists, and 2 slash pockets. Fully lined. | $  37.49 | $  18.00 | $  56.95 | na | 4/21/2010 | |
| 106 | 1042 | LULWAL16 | Embassy™ Men's Genuine Leather Bi-Fold Wallet | Features genuine leather exterior and man-made interior. Fits easily into your front or back pocket. Space for credit cards and license. Measures 3-3/4" x 4". | $  11.00 | $  7.00 | $  21.95 | $  3.41 | 4/21/2010 11:41 | 1 |
| 107 | 1061 | LURC23 | Royal Crest™ 22" Black Tote Bag | Features multiple pockets, adjustable/detachable carrying strap and padded hand straps. Measures 22" x 12-3/4" x 12-1/4". Limited 25 year warranty. | $  29.99 | $  14.00 | $  37.95 | $  9.48 | 4/21/2010 11:44 | 1 |
| 108 | 1069 | LUMCOOLB | Diamond Plate™ Motorcycle Cooler Bag and Backpack | Cooler bag features soft sided zippered cooler compartment within trunk bag featuring two end pockets, chrome studs, multiple straps for attaching to motorcycle, handle, and flap with hook and loop fastener and clip closure. Measures 15" x 9" x 9-1/4". Backpack features studded exterior pocket, zippered closure, multiple pockets, and padded adjustable shoulder straps. Measures 15-1/2" x 16-3/4" x 17-1/2". | $  105.00 | $  49.00 | $  134.95 | $  31.13 | 4/21/2010 11:54 | 1 |
| 109 | 1077 | LUCAMWB | Extreme Pak™ Invisible® Pattern Camo Water Repellent Waist Bag | Measures 14-3/4" x 5-3/4" x 3-3/4" and features five zippered pockets. Strap will adjust to a maximum of 48". | $  16.99 | $  7.50 | $  21.95 | $  3.35 | 4/21/2010 12:01 | 1 |

EXHIBIT 5, ATT. B
-117-

|  | K | L | M | N | O | P | Q | R | S | T | U | V | W | X |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 103 | na | 4/21/2010 10:27 |  |  | 2.756892231 |  | 1.25313283 | 1 |  |  | $  19.95 | 2.756892 | 1.253133 | 1 |
| 104 | $6.78 | 4/21/2010 10:38 | 1 |  | 7.435897436 | 2.138643068 | 3.07692308 | 1 | 0.88495575 |  | $  1.95 | 7.435897 | 3.076923 | 1 |
| 105 | na | 4/21/2010 |  |  |  |  |  |  |  |  |  |  |  |  |
| 106 | na | 4/21/2010 11:39 |  |  | 3.225806452 |  | 2.05278592 | 1 |  |  | $  3.41 | 3.225806 | 2.052786 | 1 |
| 107 | $11.95 | 4/21/2010 11:47 | 1 |  | 3.16350211 | 2.509623431 | 1.47679325 | 1 | 1.17154812 | 1 | $  9.48 | 3.163502 | 1.476793 | 1 |
| 108 | $41.71 | 4/21/2010 11:55 | 1 |  | 3.372952136 | 2.517381923 | 1.57404433 | 1 | 1.17477823 | 1 | $  31.13 | 3.372952 | 1.574044 | 1 |
| 109 | $5.29 | 4/21/2010 12:03 | 1 |  | 5.071641791 | 3.211720227 | 2.23880597 | 1 | 1.41776938 | 1 | $  3.35 | 5.071642 | 2.238806 | 1 |

**EXHIBIT 5, ATT. B**
**-118-**

|    | A    | B        | C                     | D                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                   | E         | F         | G         | H       | I                 | J  |
|----|------|----------|-----------------------|---------|-----------|-----------|-----------|---------|-------------------|----|
| 110 | 1086 | 25-51621 | Red Fang Viper Dagger | This amazingly designed fantasy blade features double the sting with a blade protruding from mouth of the snake handle as well as the tail. The blade in the mouth of the viper is stainless steel and 10.75 inches in length with a resilient red and black finish. The guard itself is a highly detailed viper design with the head cast from durable zinc aluminum. The snakelike handle of the knife fits comfortably in to your hand and is composed of contoured black plastic. Finally the knife ends in yet another blade constructed for stainless steel in a resilient red and black finish at 3.75 inches long. This incredible fantasy dagger is overall 21.5 inches in length and comes with a black stand so that you can proudly display it.  Incredible viper design handle. | $    65.00 | $    33.00 | $    79.99 | 20.76 | 4/21/2010 12:10 | 1 |
| 111 |      |          |                       |         |           |           |           |         |                   | 97 |
| 112 |      |          |                       |         |           |           |           |         |                   |    |

EXHIBIT 5, ATT. B
-119-

|     | K      | L              | M  | N          | O           | P           | Q          | R      | S          | T    | U  |       | V        | W        | X      |
|-----|--------|----------------|----|------------|-------------|-------------|------------|--------|------------|------|----|-------|----------|----------|--------|
| 110 | $29.77 | 4/21/2010 12:12 | 1  |            | 3.131021195 | 2.183406114 | 1.58959538 | 1      | 1.10849849 | 1    | $  | 20.76 | 3.131021 | 1.589595 | 1      |
| 111 |        |                | 66 | Average    | 3.265374902 | 2.441630347 | 1.5579236  | 83     | 1.15402152 | 49   |    |       | 3.300546 | 1.574225 | 84     |
| 112 |        |                |    | Percentage | 326.54%     | 244.16%     | 155.79%    | 85.57% | 115.40%    | 74.24% |   |       | 330.05%  | 157.42%  | 86.60% |

# EXHIBIT 6

EXHIBIT 6
-121-

## DECLARATION OF NAOMI PARNES

### Pursuant to 28 U.S.C. § 1746

I, Naomi Parnes, declare and state as follows:

1.  My name is Naomi Parnes. I am over 18 years of age and I am a citizen of the United States. I am employed by the Federal Trade Commission (FTC) as an Honors Paralegal in the Bureau of Consumer Protection. My work address is 600 Pennsylvania Ave. NW, Washington, DC 20580. I have worked at the FTC since July 2009. I have personal knowledge of the facts set forth herein.

2.  Staff with the Bureau of Consumer of Protection, Division of Enforcement, asked me for assistance on the matter of *FTC v. EDebitPay, LLC, et al.*, CV-07-4880 ODW (AJWx) (C.D. Cal.). In particular, staff asked me to review and summarize voluminous complaints received by EDebitPay, LLC ("EDP") in connection with the Century Platinum online shopping club, which EDP marketed on its website, StarterCreditDirect.com ("Starter Credit Direct") and the Monterey County Bank prepaid debit card ("debit card").

3.  I was instructed to review a copy of two Microsoft Excel spreadsheets that the FTC received from EDP on or about October 2009. I determined that the spreadsheets contained 6,257 descriptions of consumer complaints relating to two products marketed by EDP, Starter Credit Direct and the debit card.

4.  I was instructed to carefully review each complaint and identify whether it related to Starter Credit Direct, the debit card, neither, or both. I was also instructed to identify complaints that fell within one or more categories, including but not limited to:

Parnes Decl.

**EXHIBIT 6**
-122-

a.   Consumers who indicated that they thought they applied for or were getting a loan;

b.   Consumers who indicated that they thought they applied for or were getting a payday loan or cash advance;

c.   Consumers who indicated that they thought they applied for or were getting a credit card;

d.   Consumers who said that they did not apply for Starter Credit Direct or authorize charges relating to it;

e.   Consumers who did not understand why they were charged by EDP;

f.   Consumers who wanted to know where the charge on their bill was coming from; and

g.   Consumers who mentioned that they had insufficient funds ("NSF") as a result of EDP charges or consumers who were informed about EDP's NSF policy.

5.   Pursuant to the instructions described above, I carefully reviewed each consumer complaint description and I noted in a column on the spreadsheets whether each complaint was related to Starter Credit Direct, the debit card, neither, or both.  In addition, I placed each complaint into one or more categories, including but not limited to those identified in Paragraph 4.

6.   I consolidated the two spreadsheets into one file and sorted the complaints based on what offer they related to (*e.g.*, Starter Credit Direct, the debit card, neither, or both).  Then, using an Excel formula, I calculated the number of complaints in each category for each product and the total number of Starter Credit Direct complaints (2,497).

7.   With regard to the Starter Credit Direct complaints, I determined that:

a.   417 complaint descriptions indicated that consumers thought they were applying for a loan, payday loan, cash advance, or credit card;

b.   540 complaint descriptions, excluding those counted in Paragraph 7.a,

Parnes Decl.                                        2

EXHIBIT 6
-123-

1         indicated that consumers either did not apply for Starter Credit Direct,

2         did not authorize charges relating to Starter Credit Direct, did not

3         understand why they were charged by EDP, or wanted to know where

4         the charge on their bill was coming from; and

5     c.     569 complaint descriptions mentioned insufficient funds charges.

6

7 I declare under penalty of perjury that the foregoing is true and correct.

8

9 Executed on May 25 , 2010.

10                       Naomi Parnes

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Parnes Decl.                   3

**EXHIBIT 6**
**-124-**