MARK MORELLI
mmorelli@ftc.gov, (202) 326-2601 (tel.)
ELIZABETH TUCCI
etucci@ftc.gov, (202) 326-2402 (tel.)
Federal Trade Commission
600 Pennsylvania Avenue, NW, Rm. M-8102B
Washington, DC 20580
(202) 326-2558 (fax)

JOHN D. JACOBS, Bar No. 134154
jjacobs@ftc.gov, (310) 824-4343 (tel.)
Federal Trade Commission
10877 Wilshire Boulevard, Suite 700
Los Angeles, CA 90024
(310) 824-4380 (fax)

ATTORNEYS FOR PLAINTIFF
FEDERAL TRADE COMMISSION

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**, Plaintiff, <br><br> v. <br><br> **EDEBITPAY, LLC**, *et al.*, Defendants. | CV-07-4880 ODW (AJWx) <br> JOINT STIPULATION RE: PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES AND DEPOSITION <br><br> Date: October 18, 2010 <br> Time: 10 a.m. <br> Courtroom: 690 <br> Disc. cutoff: N/A <br> Pretrial conf.: N/A <br> Trial: N/A <br> Contempt hearing: Nov. 19, 2010 |

I.    INTRODUCTORY STATEMENTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
      A.    FTC's Introductory Statement  . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
      B.    Defendants' Introductory Statement . . . . . . . . . . . . . . . . . . . . . . . 4

II.   FTC'S CONTENTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
      A.    Defendants must supplement their responses to the FTC's
            Interrogatories and Requests for Production. . . . . . . . . . . . . . . . . 10
            1.    Defendants must provide information about how consumers
                  were directed to their Starter Credit Direct website.  . . . . . . . 12
            2.    Defendants must provide discovery about their similar
                  marketing of other shopping clubs and "no cost" debit cards
                  because it relates to the FTC's claims and Defendants'
                  defenses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
      B.    The Court should order Defendant Dale Paul Cleveland to appear for
            deposition. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
            1.    Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
            2.    The Final Order requires Cleveland to appear for depositions.
                  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
            3.    Defendant Cleveland is not entitled to a protective order. . . . 25
            4.    Even if Cleveland had "already been deposed in the case" under
                  Rule 30(a)(2)(A)(ii), the Court should grant leave for his
                  deposition. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

III.  DEFENDANTS' RESPONSE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
            1.    Defendants Have Not Violated the "Compliance Monitoring"
                  Provision of the Final Order By Not Providing Certain Discovery
                  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
            2.    Defendants Have Not Waived the Attorney-Client Privilege or Work
                  Product Doctrine . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
            3.    The FTC is Not Entitled to Information About How Consumers May
                  Have Arrived at the Starter Credit Direct Website . . . . . . . . . . . . . 36
            4.    The FTC is Not Entitled to Discovery Regarding Defendants'
                  Marketing of Other Shopping Catalog Clubs or Debit Cards Not
                  Noticed in the FTC's Contempt Application  . . . . . . . . . . . . . . . . . 41
            5.    Mr. Cleveland Should Not be Ordered to Appear for a Second
                  Deposition in Connection with this Contempt Action  . . . . . . . . . . 53

i

i.    <u>Background</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

ii.    <u>The Final Order Allowed For Depositions But Only As</u>
<u>Proscribed By The Federal Rules of Civil Procedure</u> . . . . . . 59

iii.   <u>Mr. Cleveland Need Not Seek A Protective Order Where He</u>
<u>Already Has Been Deposed Because The FTC Is Required To</u>
<u>Obtain Leave To Conduct Another Deposition</u> . . . . . . . . . . . 60

iv.   <u>Leave Should Not Be Granted To Depose Mr. Cleveland Again</u>
<u>As The FTC Seeks To Take Duplicative Discovery And Had</u>
<u>Ample Opportunity To Obtain The Information Sought</u> . . . . 61

IV.   VERBATIM COPIES OF INTERROGATORIES, DOCUMENT
REQUESTS, RESPONSES, AND PARTIES' CONTENTIONS . . . . . . . 67

A.    Discovery Regarding How Consumers Reached EDP Websites: Ints.
1, 2, and 3 and RFP No. 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67

B.    Written Discovery Re. Defendants' Marketing of Century Platinum
Shopping Club Through Means Other than Startercreditdirect
Website: Ints. 6, 7, 8, 10, and 11, and RFPs 1, 2, 3, 4, 5, 6, 7, 11, 14,
and 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 92

C.    Requests for Documents Re. Defendants' Marketing of "No Cost"
Debit Cards Through Means Other Than Netspend Card Offered with
ePlatinum+ Catalog Membership on ePlatinumDirect.com: RFPs 16,
17, 18, 19, 20, 21, 22, and 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 151

V.    FTC'S CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 185

VI.   DEFENDANTS' CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 185

Pursuant to Local Rule 37-2, Plaintiff, Federal Trade Commission ("FTC" or "Commission"), and Defendants EDebitPay, LLC ("EDP"), Dale Paul Cleveland ("Cleveland"), and William Richard Wilson (collectively, "Defendants"), submit this Joint Stipulation setting forth all issues in dispute, contentions of the parties and points and authorities concerning Plaintiff's Motion to Compel Defendants' Discovery Responses and Depositions. This Joint Stipulation is submitted following the FTC's meet-and-confer letter to defense counsel dated September 9, 2010, and the parties' discovery conference on September 15, 2010, regarding these matters.

## I.   INTRODUCTORY STATEMENTS

### A.   FTC's Introductory Statement

In this civil contempt proceeding, the FTC alleges that Defendants' internet marketing of online shopping club memberships and prepaid debit cards violated core provisions of the Stipulated Final Order for Permanent Injunction and Monetary Relief ("Final Order") entered January 22, 2008. The Final Order is attached as Exhibit A. As described in the FTC's Memorandum in Support of Its Application for an Order to Show Cause Why Defendants Should Not Be Held in Contempt ("Show Cause Memo"), attached as Exhibit B, EDP marketed various financial products on the Internet, including payday and auto loans as well as

1

shopping club memberships and prepaid debit cards.  (Ex. B at 3-4.)  The Show

Cause Memo further noted that EDP involuntarily transferred consumers who

applied for one EDP product to another EDP website and that many consumers

who were charged for applying to the Starter Credit Direct shopping club

complained that they thought they were applying for a loan, payday loan, cash

advance, or credit card.  (*Id*. at 4, 9.)  The FTC alleges that Defendants violated the

Final Order by, *inter alia*, failing to obtain express, informed consent before

charging consumers' bank accounts; misrepresenting that a shopping club

membership was a credit line and that debit cards carried no fees; and failing to

make clear and conspicuous disclosures of material terms.  (*Id*. at 12-20.)

In discovery, Defendants have refused to disclose information and produce

documents that relate directly to the FTC's contempt claims, such as how EDP

directed consumers to certain shopping club websites and whether EDP

involuntarily transferred consumers who initially applied for products such as

payday loans to shopping club applications.  Remarkably, Defendants also have

refused to produce discovery on their own substantial compliance defense.   For

example, while Defendants maintain that their failure to disclose certain fees

charged on a debit card marketed as "no cost" resulted from a brief, technical

glitch, (Opposition to the Federal Trade Commission's Application for an Order to

Show Cause Why Defendants Should Not Be Held in Contempt ("Opposition"),

attached as Exhibit C, at 19), they have refused to produce records of their

marketing of similar debit cards.

Similarly, Defendants have blocked the FTC's efforts to obtain such

information through deposition.  Specifically, Defendants have refused to produce

Defendant Cleveland for his noticed deposition on the flimsy ground that

Cleveland previously testified, for thirty minutes in his individual capacity and for

less than three hours total, in a November 2009 deposition, more than six months

prior to the initiation of this contempt proceeding on May 27, 2010.  Notably,

Defendants' Opposition relied on a declaration from Cleveland supporting their

defenses.  (June 14, 2010 Declaration of Dale Paul Cleveland in Support of

Defendants' Opposition to the Federal Trade Commission's Application for an

Order to Show Cause Why Defendants Should Not Be Held in Contempt, attached

as Exhibit D.)

Defendants' obfuscation runs afoul not only of the Federal Rules of Civil

Procedure but also of the Final Order itself.  The Final Order requires Defendants

to produce documents and sworn reports and to appear for deposition within ten

days of written notice by the FTC.  (Ex. A, Section V.A.)  Yet, more than 45 days

after the FTC sought information relating directly to Defendants' compliance with

3

the Final Order and the claims and defenses in this contempt proceeding,

Defendants have produced only frivolous objections.  Accordingly, the FTC moves

to compel.

        B.      <u>Defendants' Introductory Statement</u>

This case began when the FTC filed a complaint and *ex parte* application for

a temporary restraining order ("TRO") on July 30, 2007 regarding Defendants'

advertising with respect to certain debit card products.  Specifically, the FTC

alleged that Defendants failed to adequately disclose fees in connection with

certain debit card products and failed to obtain consumers' express informed

consent prior to debiting their financial accounts.  Defs.' Exh. G [FTC Complaint

For Injunctive and Other Equitable Relief filed July 30, 2007], ¶¶ 10-11, 16, 20,

23, 25, 36, 40, 49-60.  EDP operated under a Court-appointed Receiver from the

time the Court entered a TRO on July 30, 2007 until the Court signed the Final

Order on January 22, 2008.  During this time, the FTC, the Court-appointed

Receiver, and Defendants worked cooperatively to improve EDP's debit card

marketing.  Mallow Decl., ¶ 3, Atts. 1-7 [emails to FTC and Receiver re EDP debit

card advertising].  As debit cards were the only type of product at issue in the case

filed by the FTC against EDP, the parties negotiated a settlement pertaining to

EDP's marketingt of debit cards and similar type cards and framed a settlement

4

agreement to resolve the issue presented in the case.  No other types of products were negotiated or discussed.  Mallow Decl., ¶ 4.

In turn, the final negotiated settlement, which the Court approved, specifically addressed EDP's debit card advertising.  *See* FTC Exh. A [Final Order], Section I.C. (enjoining Defendants from "[f]ailing to clearly and conspicuously disclose the costs, fees, or charges to obtain and use any prepaid card, debit card, or credit card"), Section I.D. (enjoining Defendants from "[f]ailing to clearly and conspicuously disclose the costs, fees, or charges to obtain and use any prepaid card, debit card, or credit card, in close proximity to statements such as 'No Annual Fees' or 'No Security Deposit' that represent that a prepaid card, debit card, or credit card can be obtained 'free,' without obligation, or at a reduced cost"); Section VII ("[F]or a period of eight (8) years from the date of entry of this Order . . . in connection with the marketing or sale of prepaid cards, debit cards, or credit cards, [Defendants and others] are hereby restrained and enjoined from failing to create and retain the following records...").

The FTC Enforcement Division's compliance investigation began in approximately July 2008.  On July 23, 2009, the FTC served Defendants with a formal request for documents and information concerning a variety of EDP advertising, which Defendants responded to in August 2009 both in writing via a

99-page document and by providing several banker boxes of responsive material. Reilly Decl., Att. 6 [FTC's July 23, 2009 Request for Documents and Information]. The FTC inquired about and Defendants provided a plethora of information and links to various advertising, including but not limited to shopping catalog products and debit cards, many of which the FTC ironically now seeks again. *Id.* (see Requests generally and Attachment 1 listing 12 websites); Reilly Decl., Att. 7 [Defendants' Responses to FTC's July 23, 2009 Request for Documents and Information] (see Responses to Requests 3.c.i, 4.b, 4.e, 5.f).

The FTC also deposed Mssrs. Wilson and Cleveland regarding these documents and responses on November 17, 2009. Notably, the captions on the transcripts of these depositions made clear that Mssrs. Wilson and Cleveland were deposed in connection with this case and Defendants did not set limits on the length of depositions (i.e., it was the FTC's own choice to question Mr. Cleveland for only "three hours total," not Defendants). The FTC spent over nine months reviewing the information and documents produced by Defendants and the case laid deafly silent for six months after the November 2009 depositions.

It was not until May 27, 2010, nearly two years after the FTC's compliance investigation began, that the FTC filed its contempt application. Despite a protracted nearly two-year investigation, and having been provided a multitude of

advertising printouts and links for shopping catalog clubs, debit cards, and other products, the FTC decided to pursue contempt against Defendants for only *two* advertising pieces—the marketing of the Century Platinum shopping catalog line of credit on the StarterCreditDirect.com website (herein "Starter Credit" marketing) and the marketing of the Netspend debit card that could be obtained at "no cost" on the ePlatinumDirect.com website (herein "Netspend" marketing). FTC Ex. B; Mallow Decl., ¶ 5, Att. 8 [Email communications with FTC Attorney Zachary Hunter, Esq. on May 11 and 14, 2010 confirming that the FTC intends to move for contempt based only on the Starter Credit and Netspend marketing pieces]. This contempt proceeding has never been about "Defendants' internet marketing of online shopping club memberships and prepaid debit cards" more generally, as the FTC would have this Court believe. *See* FTC's Introductory Statement.

On July 2, 2010, the Court issued an Order to Show Cause Why Defendants Should Not be Held in Contempt (herein "OSC Order") based on the FTC's contempt application and set a contempt hearing for October 15, 2010. Defs.' Exh. H [OSC Order]. On July 30, 2010, after the OSC issued, and after Defendants' Opposition to the FTC's contempt application made clear the fallacy in the FTC's arguments and the inherent weaknesses in its case (*see* FTC Ex., C), the FTC

7

attempted to broaden the scope of this contempt action by serving discovery concerning *all* shopping catalog and "no cost" debit card marketing and products, as well as additional ancillary issues such as "exit pops" and website transfers. (*see* Tucci Decl., Atts. 2 & 3).  The request was somewhat puzzling considering that Defendants had already produced most of this material to the FTC a year earlier and the FTC had spent over nine months reviewing it.  In total, the FTC served nearly 100 discovery requests and Defendants provided written responses with 125 pages of responsive material.[1]  Nearly 30 percent of these requests (27) consists of the FTC's improper attempts to expand its contempt action.

The FTC's motion to compel should be denied.  Defendants provided most of the material the FTC now seeks over a year ago.  The FTC reviewed this material and decided not to pursue contempt.  Only one conclusion can be drawn. The FTC did not find these advertising pieces problematic or in violation of the Final Order.  It is only now, after Defendants have presented strong counter evidence in opposition to the FTC's claims, that the FTC seeks to expand its narrowly-focused contempt action.  That is, the FTC is attempting to regain lost ground now that it has realized that its contempt case is not as it had initially

---

[1] The FTC served 23 requests for production of documents, 11 interrogatories, and 64 requests for admissions.  Only the production requests and interrogatories are at issue here.

appeared.  Defendants should not be ordered to reproduce material already provided to the FTC that the FTC decided not to pursue in this contempt action. Moreover, to the extent some material has not yet been provided to the FTC, the FTC had plenty of time during its two-year investigation to serve additional discovery to obtain this material (assuming it was as "crucial" to its case as it now claims) and follow-up on any issues of concern.  The FTC declined to do so, moved for contempt on only two discrete advertising pieces, and should now be held to what is noticed in its contempt application.

In short, the discovery sought by the FTC is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, overbroad, improperly noticed, duplicative, and beyond the scope of the FTC's contempt application and OSC Order.  It is patently unfair, not to mention a violation of basic due process rights of notice and reasonable time to prepare a defense, to require Defendants to chase the FTC's moving target whenever it discovers a new weakness in its case. The FTC's desperate and belated attempt to save its case and expand the scope of this contempt action after a Court-issued OSC Order should be flatly rejected.

Additionally, the FTC's efforts to burden Mr. Cleveland with a second deposition based on its desire to now expand the scope of this proceeding also should be rejected.  The FTC has provided no basis for concluding that EDP's

9

marketing has significantly changed since November 2009, when the FTC had the full and unfettered ability to question Mr. Cleveland regarding EDP's marketing and any other issues related to Defendants' compliance with the Final Order. The simple fact that Mr. Cleveland provided a declaration in support of Defendants' Opposition to the FTC's contempt application is not grounds for reopening his deposition and making him appear for a second day of deposition. If it were, every time an already-deposed witness provided a declaration in support of a party's motion for summary judgment, the other party would have the right to a second bite at the apple and a second deposition. This is not in keeping with the letter or intent of Federal Rule of Civil Procedure 30(d)(1). The FTC's motion to compel is baseless and should be denied in its entirety.

## II.    FTC'S CONTENTIONS

### A.    Defendants must supplement their responses to the FTC's Interrogatories and Requests for Production.[2]

In refusing to provide substantive responses to many of the FTC's written discovery requests, Defendants have violated the Federal Rules' most basic precept of discovery:  allowing discovery "regarding any nonprivileged matter that is

---

[2]In order to comply with LR 37-2.1, Section IV of this Joint Stipulation sets forth verbatim the interrogatories, requests for production, and responses at issue, as well as the parties' specific contentions for each. Because many of the interrogatories and requests for production involve the same issues, however, the Joint Stipulation addresses those common issues in Sections II and III.

relevant to any party's claim or defense."  Fed. R. Civ. P. 26(a).  In addition,

Defendants have violated Section V.A of the Final Order by refusing to provide

discovery requested in writing by the FTC.  For the reasons set forth below, the

FTC's motion to compel should be granted and Defendants should be ordered to

respond fully and completely to the specified discovery requests.

Moreover, Defendants should not be permitted to assert any privilege or

work-product doctrine to shield the requested material from the FTC because, as of

September 22, 2010, they have failed to produce a privilege log, as required by

Fed. R. Civ. P. 26(b)(5).  (Tucci Decl. ¶ 6.)  In General Objection 1 to their

responses to both the FTC's Interrogatories and Requests for Production,

Defendants objected "to the extent it calls for or could be construed to call for

information which is protected or privileged from disclosure under the attorney-

client privilege, attorney work product, or related doctrines."  (*Id*. ¶ 6 & Att. 4 and

5 at 1.)  Moreover, in responding to certain specific discovery requests, Defendants

objected because the request purportedly "calls for information protected by the

attorney-client privilege and/or work product protection."  (*See, e.g., id*., Att. 4 at

10-11.)  Defendants, however, failed to produce a privilege log, so the FTC is

unable to assess the basis for Defendants' privilege and work-product claims.

Defendants' failure (or at the very least, delay) in providing a privilege log is

11

particularly inappropriate here, given the limited time before the November 19, 2010 hearing date, as the FTC may have insufficient time to review and challenge any unsupported claims of privilege or work-product doctrine.

> 1.    Defendants must provide information about how consumers were directed to their Starter Credit Direct website.

Interrogatories 1, 2, and 3, and Request for Production 3 all seek information about how consumers were directed to Defendants' Starter Credit Direct website.[3] Defendants have refused to answer the interrogatories and to produce responsive documents, claiming the information sought is irrelevant. Defendants' objections are frivolous. This information is directly relevant to the contempt action. Specifically, the FTC is seeking this information to confirm that Defendants involuntarily transferred consumers from websites marketing other financial products to the Starter Credit Direct website. These involuntary and undisclosed

---

[3]Interrogatories 1, 2, and 3 ask Defendants to: "[d]escribe in detail all of the ways in which consumers reached or were directed to the Starter Credit Direct website (including through "exit pops," as described by Wilson in his November 17, 2009 deposition at 92-93, 103-06 or through other means such as hyperlinks from emails or other websites)"; identify how consumers who signed up for Century Platinum through Starter Credit Direct reached the website, through "exit pops" or otherwise; and identify any disclosures made to consumers informing them of such website transfers.  (Tucci Decl., Att. 2.)  Similarly, Document Request 3 seeks production of websites from which consumers were transferred to websites purporting to offer membership in shopping clubs.  (*Id*. Att. 3.)  In response, Defendants fail to answer the interrogatories and to produce responsive documents.

transfers – along with the misrepresentations and inadequate disclosures on the Starter Credit Direct website itself – very likely induced consumers who thought they were applying for a different product to instead sign up for Starter Credit Direct.

The FTC claims that Defendants violated the Final Order through their marketing of Starter Credit Direct, by, among other things:  misrepresenting that consumers would receive "credit" when in fact they were receiving membership in a shopping club; failing to disclose material information, including that consumers were being offered membership in a shopping club rather a general line of credit; and charging consumers a $99 application fee, along with a $14 monthly fee, without consumers' express informed consent.  (*See* Ex. B, Show Cause Memo at 3-10, 13-17, 19-20.)

The methods Defendants used to drive consumers to the Starter Credit Direct website are directly relevant to these claims.  Consumers who mistakenly believed they were still on a website that actually did offer credit would have been far more vulnerable to misrepresentations that a shopping club is credit.  Moreover, Defendants' failure to inform consumers that they were being transferred to a different website would have exacerbated the inadequate disclosures on the Starter Credit Direct website.  Finally, consumers did not give their express informed

13

consent if they believed they were applying for one product on one website but in fact were ordering a different product from a different website that they were sent to involuntarily.

Indeed, the evidence already obtained by the FTC strongly suggests that Defendants' methods for transferring consumers to the Starter Credit Direct website played a crucial role in Defendants' violative scheme to extract fees from vulnerable consumers.  Specifically, Defendants testified in deposition that they used "exit pops" in their Internet marketing, *i.e.*, that they transferred consumers involuntarily from one website to another.  (Tucci Decl., Att. 1 (Wilson Dep. 92:20-94:7, 95:17-19).)  Thus, a consumer who applied for a payday loan might get "exit popped" to a separate website marketing another financial product, such as a shopping club.  However, Defendants testified that they did not know whether they used "exit pops" to transfer consumers to Starter Credit Direct and would have to check their records.  (*Id*. at 95:24-25, 96:1-8.)

Consumer complaints strongly suggest that the Defendants did in fact use "exit pops" to direct consumers to the Starter Credit Direct website.  Many of the consumers Defendants charged for Starter Credit Direct complained that they thought they were applying for a different product, such as a loan, a payday loan, a cash advance, or a credit card and not for membership in a shopping club. (Ex.E,

14

(Parnes Decl.) ¶ 7; Ex. F (Parnes Decl. ¶¶ 5, 7).)  Thus, the consumer complaints indicate that the "exit pops," along with Defendants' misrepresentations and inadequate disclosures on the Starter Credit Direct website, induced many consumers who thought they were applying for a different product to mistakenly apply for a shopping club membership on Starter Credit Direct.

Defendants disingenuously claim that the FTC did not raise the issue of how consumers were directed to the Starter Credit Direct website in its Application for an Order to Show Cause Why Defendants Should Not Be Held in Contempt and that discovery requests on this issue therefore are not relevant.  In fact, the FTC raised this issue multiple times in its supporting memorandum.  (*See* Ex. B at 3-4 (noting that Defendants involuntarily transferred consumers who applied for one financial product to other websites marketing other products such as shopping clubs); *id*. at 8-9, 13-14, 19-20 (noting that many consumers complained to Defendants that they did know why they were charged and thought they were applying for loans, payday loans, cash advances, or credit cards); *see also* Ex. E ¶ 7; Ex. F ¶¶ 5, 7.)  The information sought is directly relevant to these allegations. Defendants' objections are frivolous and should be denied.

Defendants also make the bizarre claim that the FTC may not obtain discovery on this issue because the term "exit pops" is not mentioned in the Final

Order.[4]  Defendants do not and cannot point to any authority supporting such an absurdly narrow view of discovery.  Simply put, there is no requirement that a party take discovery only on terms that are specifically referenced in a consent decree.  Rather, under Rule 26(a), the discovery sought need only be relevant to the claims and defenses at issue here.  As demonstrated above, the FTC's discovery requests easily satisfy that standard.

Moreover, Section V.A of the Final Order requires Defendants to "submit additional written reports, sworn to under penalty of perjury; [and] produce documents for inspection and copying."  (Ex. A, § V.A.)  The FTC triggered this provision through its propounding of discovery requests to Defendants.  (Compare with Section V.B (allowing the FTC to take discovery from "any person").)  Defendants' failure to respond fully to these requests violates the Final Order.

---

[4]In any event, the Final Order clearly does cover Defendants' use of "exit pops" to market their products.  Section I applies "in connection with the advertising, promotion, marketing, offering, or sale of goods or services by Internet or otherwise."  (Ex. A, § I.)  Defendants admittedly used "exit pops" in "marketing" their products.  Subsections I.A. and I.F. bar Defendants from charging or debiting consumers without their express informed consent.  Defendants' use of "exit pops," in combination with the misrepresentations and inadequate disclosures on the Starter Credit Direct website, likely prevented many consumers from giving Defendants their "express informed consent" to the charges for Starter Credit Direct.  Similarly, as noted above, Defendants' use of "exit pops" may have contributed substantially to Defendants' misrepresentations (Subsection I.B) and inadequate disclosures (Subsection I.E.5).

2.    <u>Defendants must provide discovery about their similar
marketing of other shopping clubs and "no cost" debit cards
because it relates to the FTC's claims and Defendants'
defenses.</u>

In response to Interrogatories 6, 7, 8, 10, and 11 and Document Requests 1, 2, 3, 4, 5, 6, 7, 11, 14, and 15, Defendants refused to provide discovery on EDP's marketing of shopping clubs beyond EDP's marketing of Century Platinum, the online shopping club membership (with onerous down payment requirements) that consumers received when they applied for the "line of credit" through Starter Credit Direct, even though Defendants' discovery responses make clear that they marketed the same product through other EDP websites. (*See* Tucci Decl., Att. 4 at 7-10.)  Defendants similarly refused to produce documents in response to Document Requests 16, 17, 18, 19, 20, 21, 22, and 23 regarding their marketing of no-cost debit cards other than that "related to the debit card offered by Netspend that EDP marketed in conjunction with the ePlatinum+ catalogue membership on ePlatinumDirect.com."  (*See, e.g.,* Tucci Decl. Att. 5 at 20-21.)

Defendants' effort to limit discovery to these narrow topics lacks merit, and the requested discovery should be produced in full.  First, the information sought relates directly to Defendants' defense of substantial compliance, and in particular whether the alleged Order violations pervaded Defendants' marketing of shopping

17

clubs and debit cards.  To the extent that Defendants argue that any violations are merely technical or isolated and that they substantially complied with the Final Order, evidence that Defendants instead engaged in widespread violative marketing unquestionably would be relevant.  With respect to the marketing of other shopping clubs, Defendants have maintained that they modeled their marketing after a website that was vetted by the FTC.  (*See* Tucci Decl., Att. 4 at 20-21.)   Information regarding their marketing of shopping clubs on other websites would certainly shed light on Defendants' claim that their marketing of shopping clubs was based on a single model.  Similarly, Defendants' refusal to provide discovery on other "no cost" debit cards is unsupportable in light of Defendants' contention in their Opposition that their violations of the Final Order from their debit card marketing resulted from a brief aberration triggered by some type of technical glitch.   (Ex. C at 19.)  Production of the requested discovery on "no cost" debit cards would certainly shed light on the scope of Defendants' violation.

Second, information regarding EDP's marketing of shopping clubs and "no cost" debit cards is reasonably calculated to lead to the discovery of admissible evidence regarding whether Defendants violated the Final Order as alleged in the Show Cause Memo.  The FTC's Show Cause Memo put Defendants on notice of

18

its contempt claims, including the FTC's allegation that Defendants' marketing of shopping clubs as "credit" violated the Final Order.[5]  Specifically, the evidence regarding shopping clubs relates directly to the FTC's claims that Defendants violated the Final Order by:  (1) making material representations regarding "credit" in marketing the shopping club and regarding the "no cost" cards; (2) failing to make clear and conspicuous disclosures regarding the "credit" offered through the shopping club and the costs and fees associated with "no cost" cards; and (3) failing to obtained express informed consent before debiting consumers' financial accounts for application and monthly fees for the shopping club.  Thus, the FTC may properly obtain discovery on whether Defendants employed the same or similar marketing for other shopping clubs as the marketing they used for Starter Credit Direct.

With respect to the FTC's requested discovery regarding Defendants' alleged use of websites other than the Starter Credit Direct website to market the

---

[5]The alternatives – requiring the FTC to bring a separate contempt action later for the same or similar marketing of other shopping clubs and "no cost" debit cards or requiring the FTC to conduct a complete investigation of all shopping clubs and "no cost" debit cards before bringing the contempt action – are clearly inefficient options.  The former would require the parties and the Court to conduct multiple proceedings, even though they involved the same or similar issues.  The latter would require the FTC to devote substantial time and resources to fully investigating all similar marketing before bringing a contempt action, thereby leaving consumers vulnerable to deceptive marketing schemes until the FTC was certain it had identified all similar marketing.

Century Platinum shopping club, the information sought is relevant for additional

reasons.  Defendants claim that they used other websites, in addition to Starter

Credit Direct to market the Century Platinum shopping club.  However, the

company that actually operates the Century Platinum shopping club, Insite

Marketing Group, LLC, stated in response to the FTC's civil investigative demand

that they understood that all customers that Defendants' enrolled in the Century

Platinum shopping club signed up through the Starter Credit Direct website.

(Tucci Decl., Att. 10 at 2.)  Thus, the FTC is clearly entitled to take discovery on

this issue.  Moreover, to the extent that Defendant EDP did use other websites to

market the Century Platinum shopping club, it was the same Century Platinum

shopping club – with the same onerous down payment requirements and lack of

real extension of credit, EDP itself did not distinguish among the various

marketing sites internally or in working with affiliate Insite Marketing Group,

LLC, and that the sites may well have had the same terms and conditions.   Thus,

the FTC is entitled to discover whether the other websites that were purportedly

marketing the Century Platinum in fact used the same or similar marketing as

Starter Credit Direct.  The requested information also goes directly to assessing

consumer harm for purposes of compensatory relief.

Third, in any event, Defendants' crabbed reading of the Federal Rules

cannot excuse them from producing documents and information pursuant to the

Final Order.  Section V.A of the Final Order requires them to provide documents

and information, under penalty of perjury, to the FTC upon ten days' written

notice.  The FTC triggered this provision through its propounding of discovery

requests to Defendants.  (*Compare with* Ex. A, § V.B (allowing the FTC to take

discovery from "any person").)

>   B.   The Court should order Defendant Dale Paul Cleveland to appear for
>        deposition.

Despite being a Defendant in this action and submitting a declaration

opposing the FTC' Application for an Order to Show Cause Why Defendants

Should Not Be Held in Contempt, Defendant Dale Paul Cleveland refuses to

appear for a deposition.  The sole basis for his refusal is that the FTC already

deposed Mr. Cleveland in November 2009 during its investigation of Defendants'

compliance with the Final Order, more than six months before this contempt action

was filed.  (*See* Tucci Decl., Att. 7 at 1-2; Att. 8, ¶ 1.)

As discussed in more detail below, Defendants' objection is wholly without

merit.  First, the Final Order requires Defendant Cleveland to appear for a

deposition, independent of the Federal Rules of Civil Procedure.  Second, even it

the Rules did apply, they would not prevent his deposition.  Mr. Cleveland's

21

November 2009 deposition occurred during the FTC's compliance investigation and prior to the initiation of this contempt action, so Fed. R. Civ. P. 30(a)(2)(A)(ii), which requires a party to obtain leave of Court before conducting a second deposition "in the case," does not apply.  Thus, to escape his obligation to appear for deposition, Mr. Cleveland must seek a protective order – but he cannot satisfy the standard for a protective order under Rule 26(c).  In any event, even if the FTC were required to obtain leave to depose Mr. Cleveland under Fed. R. Civ. P. 30(a)(2)(A)(ii), the FTC has ample justification for leave.  Since his deposition in November 2009, the FTC has filed its contempt action identifying the conduct for which it is seeking contempt, the Defendants have raised numerous defenses, Mr. Cleveland has provided a declaration in opposition to the FTC's application for an order to show cause, and the Court has issued an Order to Show Cause.  Mr. Cleveland's deposition therefore is necessary for the FTC to explore the factual bases for the defenses raised by Defendants and their factual allegations in opposition to the FTC's claims.  The FTC therefore requests an order requiring Mr. Cleveland to appear for a deposition.

        1.    <u>Background</u>

As part of its investigation into Defendants' compliance with the Final Order, on November 17, 2009, the FTC deposed Defendant Cleveland.  (Tucci

Decl. ¶ 3.)  The FTC conducted the deposition pursuant to Section V.A of the Final Order, which requires Cleveland and the other Defendants to appear for depositions on ten days' written notice.  The FTC deposed Mr. Cleveland both in his capacity as CEO and in his individual capacity.  The entire deposition lasted less than three hours, and the deposition of Mr. Cleveland in his individual capacity lasted less than one-half hour.  (*Id*.)

More than six months later, on May 27, 2010, the FTC filed its Application for an Order to Show Cause.  On June 14, 2010, Defendants filed their Opposition to the FTC's application.  In support of their Opposition, Defendants submitted the declaration of Mr. Cleveland.  (*See* Ex. D.)  Among other things, his declaration contains a number of factual assertions that purportedly support various defenses raised by Defendants, including estoppel and substantial compliance.[6]  Among other things, Cleveland asserts that Defendants conscientiously sought to comply with the Final Order and implemented changes suggested by FTC staff and changes based on threatened FTC enforcement action against third parties (*Id.* ¶¶ 4-5); that the shopping club marketed through the Starter Credit Direct website

---

[6]In response to the FTC's interrogatory 9, Defendants indicated that they will raise a number of defenses, including estoppel, substantial compliance, and "reasonable efforts to comply/diligence/good faith and reasonable interpretation of the Final Order."  (Tucci Decl., Att. 4 at 19-25.)  As indicated in his declaration, Mr. Cleveland possesses relevant information about each of these purported defenses.

was operated by a third party and that Defendants did not possess the online

catalog or have access to customer activity or complaints in connection with the

shopping club (*Id.* ¶ 6); and that the marketing of the shopping club on the Starter

Credit Direct website and of the "no cost" ePlatinum debit card were modeled after

the Ultimate Platinum website that was "vetted" by the FTC (*Id.* ¶¶ 7, 9, 16).

On August 25, 2010, the FTC noticed Mr. Cleveland's deposition for

September 15, 2010.  (Tucci Decl. ¶ 7.)  On September 8, 2010, Michael Mallow,

counsel for Defendants, objected to Mr. Cleveland's deposition, citing Fed. Rule

Civ. P. 30(d)(1) and noting that the FTC had deposed Mr. Cleveland in November

2009.   (*Id.*, Att. 7.)  In a September 9, 2010 letter to Defendants' counsel, FTC

counsel argued that Mr. Cleveland's deposition should go forward, noting that at

the time of Mr. Cleveland's deposition "the FTC was conducting a general

compliance investigation, and no contempt claims or defenses were before the

Court" and that Mr. Cleveland had submitted a declaration in opposition to the

FTC's application for an order to show cause, "that addresses the particular claims

and defenses of this proceeding." (*Id.*, Att. 9 at 2.)  On September 13, 2010,

Defendants formally objected to Mr. Cleveland's deposition, citing both Fed. R.

Civ. P. 30(a)(2)(A)(ii) and 30(d)(1).  (*Id.*, Att. 8 ¶ 1.)   The parties held a

conference on September 15, 2010, to discuss, among other matters, Mr.

Cleveland's deposition but were unable to resolve the issue. (*Id.* ¶ 10.)

2.   The Final Order requires Cleveland to appear for depositions.

Defendant Cleveland has violated the Final Order by refusing to appear for deposition.  He agreed to a consent decree that requires him to appear for depositions on ten days' notice, independent of any obligation under the Federal Rules of Civil Procedure.  Specifically, Section V of the Final Order, entitled "Compliance Monitoring," provides that "for the purpose of monitoring and investigating compliance with any provision of this Order:  (A.) Within ten (10) days of receipt of written notice from a representative of the Commission, Dale Paul Cleveland . . . shall ... appear for deposition." (Ex. A, § V.A.)  Section V.A does not impose any limitations on the number of times Mr. Cleveland must appear for a deposition.[7]

3.   Defendant Cleveland is not entitled to a protective order.

Even if the Federal Rules of Civil Procedure, rather than Section V.A of the Final Order, governed the FTC's request to depose Mr. Cleveland, he cannot avoid appearing for his deposition because he has no basis for a protective order.  To

---

[7]If the FTC were unreasonably requiring Mr. Cleveland to appear for multiple depositions without justification, Defendants could seek relief from the Court under Rule 60(b).  That is not the case here.  Mr. Cleveland appeared for one brief deposition more than ten months ago during the FTC's compliance investigation, before the FTC filed this contempt action.  The FTC now seeks a second deposition to explore the specific claims and defenses raised in that action.

shield the FTC from deposing him about the claims and defenses at issue in this proceeding, Mr. Cleveland points to Rule 30(a)(2)(A)(ii) (requiring leave of court if deponent "has already been deposed in this case") and Rule 30(d)(1) (limiting deposition to "1 day of 7 hours"). However, these protections do not apply here because Mr. Cleveland's November 2009 deposition occurred during the FTC's compliance investigation, before this contempt action began. Thus, in order to avoid his deposition, Mr. Cleveland should have sought a protective order – but he has no grounds for a protective order.

In its November 2009 deposition, the FTC was merely exercising its right, provided in Section V.A., to depose Defendant Cleveland for "the purpose of monitoring and investigating compliance with" the Final Order. The FTC had not filed its application for an order to show cause and Defendants had not raised any defenses, so the deposition did not cover the specific claims and defenses of this contempt action. As a result, Mr. Cleveland's November 2009 deposition is not a deposition "in the case" under Rule 30(a)(2)(A)(ii), and a new deposition would not be part of the same deposition under Rule 30(d)(1). The FTC therefore does not need to obtain leave of Court to depose Mr. Cleveland in this contempt proceeding.

In order to avoid his deposition, Mr. Cleveland therefore must show that he

1
2
3
4
5
6
7
8
9
10
11

is entitled to a protective order under Rule 26(c).  To obtain a protective order, Cleveland must establish that the order is necessary to protect him from "annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  Mr. Cleveland cannot show any of these.  Rather, as discussed above, the FTC seeks this deposition to inquire into Mr. Cleveland's knowledge about the specific claims and defenses at issue in this contempt proceeding, including factual assertions he made in his own declaration.  Thus, Mr. Cleveland has no basis for a protective order.

12
13
14

        4.     <u>Even if Cleveland had "already been deposed in the case" under Rule 30(a)(2)(A)(ii), the Court should grant leave for his deposition.</u>

15
16
17
18
19
20
21
22
23
24
25
26
27
28

Even if Mr. Cleveland's previous deposition means that he "has already been deposed in the case," under Fed. R. Civ. P. 30(a)(2)(A)(ii), the FTC has ample grounds for leave to depose Defendant Cleveland.  Other courts have granted leave where, as here, the deposition would cover issues not addressed in the previous deposition.  *See Gipson v. Wells Fargo Bank N.A.*, 239 F.R.D. 280, 281 (D.D.C. 2006) (allowing second deposition of defendant's witness where defendant raised affirmative defense at close of discovery); *Collins v. International Dairy Queen*, 189 F.R.D. 496 497-98 (M.D. Ga. 1999) (granting leave where Plaintiffs filed amended complaint); *Christy v. Pennsylvania Turnpike Comm'n*,

27

160 F.R.D. 51, 52-53 (E.D. Pa. 1995) (allowing second deposition after plaintiff

filed amended complaint adding new claims and parties).

An order for leave to conduct a second deposition should be granted "to the

extent consistent with Rule 26(b)(2)"[8]  Here, none of these factors in Rule 26(b)(2)

support Defendants' attempt to avoid Mr. Cleveland's deposition.  The discovery

sought is not "unreasonably cumulative or duplicative" and cannot be obtained

from another, better source.  *See* Fed. R. Civ. P. 26(b)(2)(C)(i).  At the time of the

previous deposition, the FTC had not filed this contempt action and so obviously

could not explore the specific claims and defenses in this action, including the

assertions in Mr. Cleveland's declaration.  The FTC has sought to use written

discovery to obtain information about Defendants' responses to the contempt

allegations and their defenses, but this discovery is insufficient, particularly where:

(1) Mr. Cleveland is a Defendant and has offered testimony via his declaration; and

(2) Defendants' responses to the written discovery have been, as shown above,

woefully nonresponsive and imprecise.  Similarly, the FTC has not had "ample

opportunity to obtain the information by discovery in the action."  *See* Fed. R. Civ.

---

[8]To the extent Defendants are relying on Rule 30(d)(1)'s "1 day of 7 hours"
limit, an additional day of Mr. Cleveland's deposition is necessary "to fairly
examine the deponent," *see* Fed. R. Civ. P. 30(d)(1).  The same reasons that justify
leave for the FTC to conduct an additional deposition of Mr. Cleveland also justify
leave under Rule 30(d)(1).  Moreover, as noted above, Mr. Cleveland's November
2009 deposition lasted less than three hours.

P. 26(b)(2)(C)(ii).  Again, the FTC did not file this contempt action until May 27, 2010, so the FTC has had limited opportunities to conduct discovery – and could not examine Mr. Cleveland at his previous deposition – about the specific claims and defenses at issue.  Finally, the "burden or expense" for Mr. Cleveland is minimal, and his testimony is crucial in this action.  *See* Fed. R. Civ. P. 26(b)(2)(C)(iii).  The depositions will take place in Los Angeles, near where he works and resides.  He is one of the Defendants in this case, he has already submitted one declaration in this action, and he clearly has knowledge about the claims and defenses.

The FTC therefore requests an Order granting the FTC leave to conduct Mr. Cleveland's deposition and ordering him to appear for deposition.

**III.  DEFENDANTS' RESPONSE**

**1.  <u>Defendants Have Not Violated the "Compliance Monitoring"
Provision of the Final Order By Not Providing Certain Discovery</u>**

In a prime example of the FTC overstepping its authority and seeking more than that to which it is entitled, the FTC claims for the first time, at the outset of its motion to compel and throughout, that Defendants have committed yet another violation of the Final Order by refusing to provide the discovery that serves as the basis for its motion.  According to the FTC, "Defendants' obfuscation runs afoul"

of Section V.A. of the Final Order.

Section V.A., entitled "Compliance Monitoring," provides that "***for the purpose of monitoring and investigating compliance with any provision of this Order,***" Defendants shall produce documents, appear for deposition, and/or provide entry to the business upon ten days written notice. *See* FTC Exh. A [Final Order]. This section of the Final Order is inapplicable to the FTC's motion, as the discovery served by the FTC in late July 2010 was clearly not "Compliance Monitoring" or "for the purpose of monitoring and investigating compliance." That kind of discovery was served by the FTC back in July 2009. The discovery at issue here, served several weeks after the Court issued its OSC and several weeks after the FTC had time to digest Defendants' opposition papers, was served for a fundamentally different purpose—for litigation/prosecutorial purposes.

Once the FTC filed its contempt action on May 27, 2010, the "Compliance Monitoring" provision of the Final Order was rendered inoperative because the FTC was no longer investigating; it was prosecuting. The fact that the FTC's discovery was served ***after*** the Court issued its OSC Order and set a contempt trial date conclusively demonstrates that Section V.A.'s investigatory discovery provision has no applicability to this contempt proceeding whatsoever. This kind of overbearing and overreaching is exactly the type of conduct that plagues the

30

FTC's motion to compel.

Moreover, the FTC waived this argument several months ago when it conceded that Defendants had 30 days pursuant to the Federal Rules of Civil Procedure ("FRCP") to respond to discovery, not 10 days pursuant to Section V.A. of the Final Order.  The FTC did not once claim that Defendants had only 10 days to respond and did not object on the basis of timeliness to three separate sets of discovery responses Defendants served within the timeframe set by the FRCP. Similarly, the FTC responded to Defendants' discovery responses within the same 30-day period.  Neither did the FTC raise this argument in its meet and confer letters or the parties' meet and confer conferences.  Reilly Decl., ¶ 10.  In sum, Defendants have not violated Section V.A. of the Final Order by not producing information in response to the FTC's belated discovery requests, and in any case, the argument has been waived.

### 2. Defendants Have Not Waived the Attorney-Client Privilege or Work Product Doctrine

The FTC now asks this Court to make the highly draconian finding that "Defendants should not be permitted to assert any privilege or work-product doctrine to shield the requested material" because they have not yet provided a privilege log.  (Section II(A).)  However, the FTC's contention that it is unable to

31

assess the basis for Defendants' privilege and work-product claims rings hallow based on the fact that they *only* seek documents and information from Defendants from the period of time following the commencement of this litigation.

On July 30, 2007, the FTC filed its complaint and *ex parte* application for a temporary restraining order against Defendants.  Since that time, the communications between Defendants and their litigation counsel have been presumptively privileged.  Moreover, as the FTC is well aware, EDP has no in-house counsel.  The FTC's discovery seeks only information from the time period of "January 22, 2008 through the conclusion of the Contempt Hearing in this case." Tucci Decl., Att. 2 at 5-6 (Instructions ¶ B); Att. 3 at 5 (Instructions ¶ A). Accordingly, the information sought by the FTC in its written discovery pertains to a time when Defendants' communications with their counsel in this action were presumptively privileged.

When Defendants became aware of the FTC's draconian position, Defendants' counsel pointed out that the only implicated documents and information comes from the time after the FTC's July 23, 2009 request for documents and information and that the bulk of the requested information comes from the time after the filing of the FTC's contempt application.  Reilly Decl., ¶ 11, Att. 9.  In good faith, Defendants' counsel stated that she was "sure the FTC

was not intending for the request[s] to encompass attorney-client privileged communications regarding contempt defenses." *Id.*  Three days later, the FTC informed Defendants that it refused to recognize the privileged nature of communications between Defendants and their litigation counsel even after the filing of the contempt proceeding, stating that "[f]or example, in their opposition to the Order to Show Cause, the Defendants specifically relied on communications between themselves and their attorney to support their contention that they took various steps to modify their marketing to address the FTC's concerns about third-party marketing of similar products."  The FTC contended that it is "entitled to discovery of those communications and any related documents…"  Reilly Decl., ¶ 12, Att. 10.  Defendants are not aware of any attorney-client communications relied on to support the contention that they took various steps to modify their marketing to address the FTC's concerns.  Rather, Defendants relied on non-privileged communications ***with the FTC or the Receiver***, which included their counsel forwarding website links to advertising pieces for FTC and Receiver review and comment.  FTC Ex. C [Defs.' Opposition Brief], pp. 22-26; Mallow Decl., ¶ 3, Atts. 1-7.

The Court should refuse to find that Defendants have waived the attorney-client privilege and/or the work product protection.  In *Burlington Northern,* the

33

Ninth Circuit recognized that Rule 26 does not necessarily correlate its

requirements for the proper assertion of privilege with the bright line timeliness

requirement in Rule 34 (30 days), nor does it explicitly articulate a waiver rule.

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont*., 408 F.3d

1142, 1147 (9th Cir. 2005).  For this reason, the Ninth Circuit rejected a *per se*

waiver rule that deems a privilege waived if a privilege log is not produced within

Rule 34's 30-day time limit.  *Id.* at 1149.  The *Burlington Northern* court held that

the "district court should make a case-by-case determination" and apply a "holistic

reasonableness analysis, intended to forestall needless waste of time and resources,

as well as tactical manipulation of the rules and the discovery process."  *Id.*

Applying such a holistic analysis, requiring Defendants to log each and every

individual communication with their litigation counsel since the entry of the Final

Order would be a needless waste of time and resources, particularly where

Defendants have informed the FTC of the general categories of privileged

communications.  Reilly Decl., ¶ 11, Att. 9.

The Court "must limit the frequency or extent of discovery" if "the burden

or expense of the proposed discovery outweighs its likely benefit." Fed R. Civ. P.

26(b)(2)(C).  Where the burden of preparing a privilege log outweighs its benefits,

such as where the communications at issue are presumptively privileged, the courts

34

have been unwilling to order the production of a log, let alone find a waiver of the privileges.  *See, e.g. Ryan Inv. Corp. v. Pedregal de Cabo San Lucas*, Case No. C 06-3219 JW (RS), 2009 WL 5114077 * 3 (N.D. Cal., Dec. 18, 2009) (denying motion to compel a privilege log to the extent it seeks to require a log of post-litigation counsel communications and work product, which are presumptively privileged and need not be included on any privilege log); *Mattel, Inc. v. MGA Entertainment, Inc.*, Case No. CV 04-9049 DOC (RNBx), 2010 WL 3705782 *1 (C.D. Cal., Aug 03, 2010) (refusing to order preparation of a privilege log where the court was "satisfied that it has been the long-standing practice between the parties that post-filing documents need not be marked as privileged" and the court protected the moving party from such burden); *Christensen v. Provident Life and Acc. Ins. Co.*, Case No. C07-04789JF(HRL), 2009 WL 1636020 *4 (N.D. Cal., Jun 09, 2009) ("The court is also not convinced that the burden of requiring plaintiff to generate a privilege log at this time would provide any particular benefit under the circumstances").

While the Defendants believe that the burden of producing a privilege log in the circumstances here greatly outweighs the benefit of such a log, Defendants recognize that there may have been a *brief window* of time when Defendants were not actively involved in litigation with the FTC or aware that further litigation with

35

the FTC was likely forthcoming – i.e., the period from the entry of the Final Order on January 22, 2008 until no later than the FTC's July 23, 2009 Request for Documents and Information (when its compliance investigation was in full swing). Defendants are willing to prepare a log in connection with this period of time to the extent these communications are relevant to the FTC's discovery requests.[9]

### 3.   The FTC is Not Entitled to Information About How Consumers May Have Arrived at the Starter Credit Direct Website

The manner in which consumers arrived at the StarterCreditDirect.com website is irrelevant to the claims made in the FTC's contempt application.  The FTC alleges that (1) Defendants misrepresented the nature of the Starter Credit Direct line of credit and that the terms were not clearly and conspicuously disclosed; (2) the line of credit offered was "worthless" because most purchases required a substantial down payment that often exceeded the full price of the

---

[9]  While Defendants propose such a log as an effort to compromise, in no event should Defendants be required to log the hundreds of email communications between Defendants and their counsel after the filing of the FTC's contempt application, which communications expressly related to Defendants' defense of the contempt proceeding and included communications with their counsel on such subjects as the preparation of their opposition brief, their responses to the nearly 100 discovery requests propounded by the FTC, preparation for depositions in the case, overall defense strategy, potential settlement terms and other such undeniably privileged issues. *See* Reilly Decl., ¶ 13.  The burden of logging such privileged communications, especially up to the day of the contempt hearing on November 19, 2010, would significantly outstrip the value to the FTC.

36

product offered through other online retailers; (3) Defendants did not clearly and conspicuously disclose a $15 initial processing fee by Century Platinum (which the FTC appears to have abandoned after realizing that consumers were never charged this fee, and which the FTC could have discovered had it undertook minimal due diligence); and (4) Defendants failed to obtain consumers' express informed consent because consumers did not understand what they were purchasing based on (1)-(3) above.  FTC Exh. B (FTC contempt application), pp. 12-19.  Neither the issue of whether the disclosures on the Starter Credit Direct website were adequate nor the issue of whether the credit line was "illusory" pertain to how the consumer may have arrived at the Starter Credit Direct website.  Rather, they concern events occurring once the consumer had already arrived at the Starter Credit Direct website.  Therefore, it is the advertising on the Starter Credit Direct website that is at issue here, not how consumers may have arrived at the website.

The FTC's reliance on Mr. Wilson's deposition testimony is a red-herring. Mr. Wilson did not testify that consumers were "involuntarily" transferred.  Mr. Wilson merely testified that when a consumer elects to leave a website, they may receive an "exit pop-up" window, if the computer allows pop-ups, that offers the consumer a "totally separate product."  Reilly Decl., Att. 1 (Bill Wilson Deposition

Transcript for November 17, 2009), pp. 92:20-95:17-19.[10]  This testimony was

recently clarified by EDP's Chief Technology Officer, who testified that both a

"transfer" from one website to another and a "pop-up" are voluntary.[11]  That is, the

consumer must take some sort of action by either clicking a button to go to the next

website, clicking a button to visit the website, or clicking a button to exit the

website.  Reilly Decl., Att. 2 [Draft Transcript of Loris Desa Deposition on

September 27, 2010], pp. 97:3-100:12.

      Not only is Mr. Wilson's testimony a red-herring, but so too are the FTC's

statistics on the number of consumers who were purportedly "confused."  In its

contempt application, the FTC argued that 2,303 consumers complained that they

had not authorized the charges or believed they had applied for another product.

FTC Exh. B [FTC contempt application], pp. 13, 20.  Putting aside the fact that this

number is inflated for a number of reasons not applicable here, the 2,303 figure

represented only 6.7% of signups (34,340) for the Century Platinum product

marketed through EDP websites and only 2.8% lodged such complaints with EDP.

FTC Exh. C [Opposition Brief], p. 15 & n.14.  Further, the purportedly "significant

_____

[10] Defendants are attaching the complete portions of Mr. Wilson's testimony
since the FTC's attachment did not contain all pages cited.
[11]  A "transfer" is when a consumer is brought to a new webpage within the
same browser and a "pop-up" is when a consumer is presented with an
entirely new website browser.  Reilly Decl., Att. B [Draft Transcript of Loris
Desa Deposition on September 27, 2010], pp. 98:7-13.

number of consumers" who contacted EDP and thought they had applied for another product, such as a loan, cash advance, or credit card (417), represented only 1.2% of all Century Platinum customers who signed up for the shopping catalog through EDP websites.  FTC Ex. B [FTC contempt application], p. 14. These statistics are hardly shocking or provide cause for concern, let alone a basis for the FTC to expand its noticed contempt application after an OSC has issued.

Moreover, if "exit pops" were such a crucial part of the FTC's case, as it now claims, the FTC would have alleged that exit pops constituted violations of the Final Order in their contempt application and, at the very least, would have issued further discovery on the issue *before* filing a contempt application.  The FTC has known about "exit-pops" or "pop-ups" since at least November 2009.  Reilly Decl., Att. 3 [Transcript of Paul Cleveland Deposition on November 17, 2009], pp. 61:23-62:10; 69:21-72:5; Reilly Decl., Att. 1 [Transcript of Bill Wilson Deposition on November 17, 2009], pp. 92:16-101:18, 102:11-106:3, 109:21-110:6, 152:13-156:1.  The FTC could have followed up or initiated further discovery on this issue in the six months prior to filing its contempt application if this issue was as "crucial" as the FTC claims, particularly since Mr. Wilson testified that he was not sure whether there were "exit-pops" of the Starter Credit Direct website but there would be records to answer this question.  Tucci Decl., Att 1 [Wilson Deposition

Transcript Excerpts], pp. 95:17-99:9.[12]  The fact that the FTC did not further inquire is telling.

Finally, the Final Order is devoid of any language concerning "exit-pops" and demonstrates, in addition to the specific claims made in the FTC's contempt application, that this issue is not relevant to this proceeding.  The FTC addresses "pop-ups" in settlement agreements when appropriate.  Mallow Decl., ¶ 6, Att. 9 [Digital Enterprises, Inc. Settlement Agreement and Stipulated Final Order for Permanent Injunction and Monetary Relief], pp. 6, 9-11, 21 (placing restrictions on "pop-ups" in defendants' advertising); Att. 10 [D-Squared Solutions, LLC Stipulated Final Order]; Att. 11 [Zango, Inc. Agreement Containing Consent Order].  In fact, Defense counsel provided a draft of one such settlement agreement

_____

[12] Q: And could one of the pops be startercreditdirect.com?
A: It could be.
…
Q: Is startercreditdirect.com a website that EDebitPay has used as a pop, following a failed application?
A: Startercredit, I'm not sure about startercredit, if we have.
Q: And who would have that information?
A: It --- it would still be me.  It would still be just a matter of looking in affiliate tracking software and seeing, potentially, where the offer was popped from.
…
Q: And is there --- therefore, are there computer records at EDebitPay that would indicate, for example, when startercreditdirect would pop up?
A: There should be.
Q: And who would have access to those records?
A: It would --- it would, again, be me or the company in general.

40

at the start of negotiations in this case.  Mallow Decl. ¶ 6, Att. 12 [August 13, 2007 email from Michael Mallow, Esq. to FTC Attorney Raymond McKown, Esq. attaching draft Digital Enterprises, Inc. settlement agreement], pp. 6, 9-11, 21. Here, no language about "pop-ups" or "exit-pops" was inserted into the Final Order or discussed during settlement.  Mallow Decl., ¶ 6.

## 4. The FTC is Not Entitled to Discovery Regarding Defendants' Marketing of Other Shopping Catalog Clubs or Debit Cards Not Noticed in the FTC's Contempt Application

As the FTC stated in its reply in support of its contempt application, "[t]he FTC's original case had nothing to do with sites such as Starter Credit that purportedly offered credit lines but actually sold memberships in online shopping clubs.  Rather, '[f]ees associated with obtaining EDP's stored value debit card were the focus of the initial case against EDP.'"  Defs.' Exh. I [FTC Reply Brief], p. 5 (citation omitted).  Despite this admission, not only does the FTC's contempt application concern a product that was not the subject matter of the underlying action, but the FTC now seeks discovery on ***all other*** shopping catalog clubs and "no cost" debit cards not noticed in its contempt application.

There are several reasons why the FTC is not entitled to discovery on the marketing of "other shopping catalog clubs" not noticed in its contempt application (i.e., marketing other than the marketing of the Century Platinum product on the

41

StarterCreditDirect.com website).  First, the StarterCreditDirect.com marketing is not a proper basis for contempt because it is beyond the scope of the Final Order. In considering contempt proceedings, the Court must in fairness consider the prior proceedings and determinations. *Federal Trade Commission v. Henry Broch & Co.*, 368 U.S. 360, 366 (1962).  Based on the totality of the facts, the courts are "free to construe the order as designed strictly to cope with the threat of future violations identical with or like or related to the violation" previously determined to have been committed, or "as forbidding 'no activities except those which if continued would directly aid in perpetuating the same old unlawful practices.'" *Id.* (citations omitted); *see also Trans World Accounts, Inc. v. Federal Trade Commission*, 594 F.2d 212, 216 (1979) ("[The] Federal Trade Commission's power to fashion remedies for deceptive practices does not carry with it the concomitant power to be deceptive or ambiguous in dealing with persons and businesses subject to its jurisdiction.").

Accordingly, in contempt proceedings, courts should not try alleged violations of the Act not in controversy or other violations which are not similar to the unlawful practices previously established.  *Nat'l Labor Relations Board v. Express Pub. Co.*, 312 U.S. 426, 435 (1941).  Defendants' shopping catalog club marketing and whether the Century Platinum product offered "illusory" credit are

42

certainly not "the same old unlawful practices" because, as the FTC readily concedes, "[t]he FTC's original case had nothing to do with sites such as Starter Credit that purportedly offered credit lines but actually sold memberships in online shopping clubs." Defs.' Exh. I [FTC Reply Brief], p. 5. Shopping catalog club advertising was never litigated, settled or even noticed in the underlying action. Whether Defendants can be held liable for contempt based on a wholly different product and type of marketing need not be decided here but will be determined at the contempt trial.

Second, the FTC had ample opportunity to pursue contempt on "other shopping catalog clubs," as well as other debit cards, but chose not to because it did not find such marketing objectionable. The FTC has been on notice of Defendants' "other" shopping catalog club advertising since at least August 2009 when Defendants provided information about several EDP websites marketing shopping catalog club products, such as SuperEliteOffer.com (marketing the Century Platinum product), Vue3Source.com, ePlatinumDirect.com, AlliancePlatinumOffer.com, and UltimatePlatinum.com. Reilly Decl., Att. 7 [Defendants' Response to FTC's July 23, 2009 Request for Documents and Information] (see Responses to Requests 1.c., 2.c.ii., 3.e.ii., 4.f.ii., 5.e.ii., 5.f., 5.g.ii., 6.a., 6.d., 7.e., and 8.e.ii.). Similarly, since at least August 2009, the FTC

has been on notice about at least nine EDP websites marketing debit cards at "no cost." *Id.* (see Responses to Requests 5.e.ii., 5.f., 6.a., 6.d., 7.c., 7.e., and 8.e.ii.). In fact, over **one-third** of the FTC's July 23, 2009 Requests pertained to "no cost" debit cards (22 Requests in total). *Id.* (see Responses to Requests 5-7 and all subparts).

Other shopping catalog and debit card products and advertising were also discussed during the depositions of Mssrs. Cleveland and Wilson in November 2009. Reilly Decl., Att. 3 [Transcript of Paul Cleveland Deposition on November 17, 2009], pp. 39:2-40:14 (discussing EDP's other shopping catalog club websites); Reilly Decl., Att. 1 [Transcript of Bill Wilson Deposition on November 17, 2009], pp. 123:21-124:16 (discussing marketing of another no cost debit card); 106:21-108:4, 118:8-14, 119:24-121:6, 123:14-20, 129:5-9 (discussing EDP's other shopping catalog club websites). The FTC did not seek further discovery regarding these shopping catalog and debit card advertisements and products in the several months preceding the filing of its contempt application. Instead, it opted to pursue contempt for the Starter Credit and Netspend marketing pieces alone. The FTC cannot lie in the weeds with respect to this marketing and then belatedly seek to include it in its contempt action, the parameters of which already have been set.

The FTC's argument that Defendants were put on notice of the expansion it

44

now seeks is simply wrong and is a mischaracterization of the FTC's contempt application.  A plain reading of the FTC's contempt application demonstrates that the FTC only gave Defendants notice of the Century Platinum/Starter Credit and Netspend/ePlatinumDirect marketing.  The same is true of Defendants' communications with the FTC pre-contempt filing.  Mallow Decl.,¶ 5, Att. 8 [Email communications with FTC Attorney Zachary Hunter, Esq. on May 11 and 14, 2010 confirming that the FTC intends to move for contempt based only on the Starter Credit and Netspend marketing pieces].  All of the FTC's allegations are with regard to these two specific marketing pieces advertising two specific products (i.e., Defendants made material misrepresentations regarding the Century Platinum product and did not clearly and conspicuously disclose the nature of the product's credit line on the StarterCreditDirect.com website and the fees associated with the Netspend debit card on the ePlatinumDirect.com website).

It would be fundamentally unfair and unjust, not to mention a violation of due process, for the FTC to expand the scope of its contempt application at this stage of the proceedings.  Due process requires that Defendants receive sufficient notice to respond to the FTC's allegations and reasonable time to prepare a defense.  *See International Union, UMWA v. Bagwell*, 512 U.S. 821, 827 (1994); *U.S. v. Powers*, 629 F.2d 619, 626 (9th Cir. 1980) ("[T]he contemnor is entitled to

45

necessary due process protections….This circuit has held that in a contempt proceeding, whether denominated civil or criminal, the alleged contemnor is entitled to the procedural safeguards of notice and a reasonable time to prepare a defense."); *see also Mercer v. Mitchell*, 908 F.2d 763, 766-67 (11th Cir. 1990); *United States v. City of Yonkers*, 856 F.2d 444, 452 (2d Cir. 1988), *rev'd on other grounds*, 493 U.S. 265 (1990).  Defendants would not have sufficient time to retrieve and review responsive documents, amend their discovery responses, and prepare their memoranda of points and authorities, on which they will rely at the show cause hearing, due on October 29.  Mallow Decl., ¶ 7.

Accordingly, Defendants would be greatly prejudiced if the FTC's motion is granted, particularly in light of the remedies the FTC seeks (compensatory sanctions and modifications of the Final Order that would destroy the livelihoods of Mssrs. Cleveland and Wilson and put EDP out of business).[13]  *See Federal Trade Commission v. Colgate-Palmolive Co.*, 380 U.S. 374, 391 (1965) (Court

---

[13]  The FTC argues that despite improper notice, it should be permitted to expand its contempt action at this late stage of the proceeding because it does not want to bring a separate contempt action for "similar marketing" later on.  In other words, it would be easier for the FTC (and less work) if it could sneak these claims in now.  But convenience to the FTC is not the standard and that is not what due process requires.  Moreover, while the FTC may be raising issues concerning similar types of products and marketing, each marketing piece must be considered separately and examined based on its own specific design and content.  To the extent the claims are similar, the Court will have the necessary background for any subsequent application.

46

acknowledged that where the record does not put defendants on notice as to the possible violations and controversies, respondents can be "prejudicially misled"); *Grine v. Coombs*, 214 F.R.D. 312, 344, 365, 367 (W.D. Pa. 2003) (limiting scope of contempt inquiry to factual allegations raised by plaintiffs in their contempt motion "in order to allow all parties to properly prepare for the hearing and avoid unfair surprise" and noting that plaintiff's "ever-burgeoning" allegations of misconduct have the practical effect of convoluting matters, slowing the progress of proceedings, and prejudicing defendants); *TNT Marketing, Inc. v. Agresti*, 796 F.2d 276, 278-79 (9th Cir. 1986) (noting that where "the order to show cause [does] not provide adequate notice of possible liability . . . [t]he lack of such notice may" prejudice the defendant and remanding case because defendant was not on notice that he might be liable for damages).

Further, the contempt hearing has already been continued from October 15 to November 19, 2010, at the request of the FTC. Defendants would be severely prejudiced if the contempt hearing was continued yet again. Defendants are in negotiations to sell EDP to a bona fide third party purchaser. This pending transaction has been held hostage due to the FTC's contempt application. A further continuation of the contempt hearing could jeopardize the sale of EDP. Mallow Decl., ¶ 8.

47

In an attempt to avoid these issues, the FTC claims that the requested discovery is relevant to Defendants' defense of substantial compliance, "and in particular whether the alleged Order violations pervaded Defendants' marketing of shopping and debit cards."  The FTC's argument is a non-starter and another red-herring because it misrepresents (or misconstrues) Defendants' substantial compliance defense.  As Defendants' lengthy discovery responses made clear, their substantial compliance argument pertains to the Starter Credit and Netspend marketing pieces as a whole and only with respect to the two websites at issue, StarterCreditDirect.com and ePlatinumDirect.com.  Tucci Decl., Att. 4, pps. 22-24, 28-30.  Specifically, Defendants argue that they have substantially complied with the Final Order when considering the marketing elements on each page of the StarterCreditDirect.com website.  Similarly, Defendants argue that the shortened fee disclosure for the Netspend debit card was the result of a technical error, and only appeared for two months, and that at all other times, the marketing on the ePlatinumDirect.com website contained the proper fee disclosure.[14]

The FTC disingenuously claims that it needs to determine if Defendants'

---

[14] The Starter Credit and Netspend marketing pieces were modeled after the UltimatePlatinum.com website vetted by local FTC staff.  *See, e.g.*, Tucci Decl., Att. 4 (Defendants' Response to Interrogatory No. 9), pp. 19-21, 24, 29.  That marketing has already been provided to the FTC.  Defendants do not claim that the Starter Credit or Netspend marketing was based on any other template or marketing piece.

48

"violative marketing" of shopping catalog clubs and debit cards is "pervasive" and

"widespread."  The FTC already knows that Defendants have not engaged in

"widespread violative marketing."  Defendants began marketing Starter Credit

even before the FTC filed its complaint.  Defendants continued to market Starter

Credit as well as other shopping catalog products under a Court-appointed

Receiver from July 30, 2007 to January 22, 2008 (when the Final Order was

signed), and thereafter.  During the Receivership, the FTC took and copied all of

Defendants' advertising.[15]  Defs.' Exh. J [First Interim Report of Federal Court

Receiver dated November 2007];[16] Reilly Decl., Att. 4, pp. 42:20-43:5 [Draft

Transcript of Martha Ortega-Leon Deposition on September 30, 2010] ("[T]he

---

[15] The TRO ordered that the Court-appointed Receiver, Howard Camhi, "assume full control" and "take exclusive custody, control, and possession of all assets and documents of [the Defendants]."  Defs.' Ex. 7 [TRO Order], Sections XVI.A & B.  The TRO authorized the FTC and Receiver to inspect, copy, and review various records maintained by Defendants, including "Defendants' advertising, promotion, marketing, offering for sale or sale of any goods or services, including but not limited to telemarketing or customer service scripts, emails, digital audio files, and Internet advertising[.]"  Id., Section IX.  The Court ordered the production of "[e]ach advertisement, solicitation, template, script, or copy used to sell or market any product or service sold or marketed by Defendants" and "[e]ach version of any script or outline used to sell or market any product or service sold by Defendants[.]"  Id., Sections XII.C. & D.

[16] *See* pp. 3-4 ("The first order of business for the FTC, after securing the premises, was to have its IT staff make forensically correct and secure copies of the Defendants computers, servers and other business related machines.  This process took several days until the FTC staff was able to copy all of the data from Defendants.")

49

FTC took control of the office and had access to everything.").  Since this case began in July 2007, Defendants' advertising has been under intense FTC scrutiny.

Had the FTC truly believed that Defendants were engaging in "widespread violative marketing," neither it nor the Receiver would have permitted Defendants to resume business after the TRO issued, which required, among other things, that EDP only be allowed back into business if its advertising was legal and compliant. Defs.' Exh. K [TRO Order];[17] Defs.' Exh. J [First Interim Report of Federal Court Receiver dated November 2007], pp. 6-7; Defs.' Exh. L [Stipulation and Order Regarding Operation of the Business Entity Defendants Under the Court's July 30, 2007 Temporary Restraining Order].[18]  Nor would the FTC or Receiver have

---

[17] One of the various duties of the Receiver was to "[d]etermine and implement the manner in which the Receivership Defendants will comply with, and prevent violations of, this Order and all other applicable laws, including but not limited to, revising sales materials and implementing monitoring procedures[.]"  Defs.' Ex. 7 [TRO Order], Section XVI.K.  The Receiver was to "[c]ontinue and conduct the business of the Receivership Defendants in such manner, to such extent, and for such duration as the Temporary Receiver may in good faith deem to be necessary or appropriate to operate the business profitably and lawfully, if at all" and was "conditioned upon the Temporary Receiver's good faith determination that the business can be lawfully operated…"  Id., Section XVI.N.

[18] pp. 2-3 ("Defendants and Receiver stipulate to the authority of the Receiver to continue certain operations of the business and seek clarification of the terms of the TRO to permit such operations. . . . The Receiver is authorized to permit individual Defendants Cleveland and Wilson to participate in certain operations of EDebitPay's business under the supervision of the Receiver.")

50

permitted the Receivership to close when the Final Order was signed.  To the

contrary, the FTC indicated to the Receiver that there was no reason to keep the

Receivership open.  Reilly Decl., Att. 5 [June 18, 2009 email from FTC Attorney

Raymond McKown, Esq. to Howard Camhi].

To the extent the FTC claims that it needs discovery on other shopping

catalog club and debit card advertising because Defendants may have engaged in

"widespread," "pervasive" violations since the Final Order was signed in January

2008, this argument also lacks merit given that the FTC requested and received this

information back in August 2009 but decided to proceed with contempt on only

*two* marketing pieces out of all the ones produced.  Lest there be any doubt, these

purportedly "pervasive" marketing pieces would have been included in the FTC's

recently filed contempt application if they in fact existed.  Moreover, if

Defendants' advertising was so offensive since the Final Order and consumers

were truly "vulnerable to [Defendants'] deceptive marketing schemes," the FTC

would not have waited two years and four months to file its contempt application.

Lastly, the FTC's "additional reasons" why discovery is needed on other

EDP websites marketing the Century Platinum product are similarly unpersuasive.

The FTC claims that since Insite, the fulfillment company that operates the Century

Platinum shopping catalog club, believed that all customers who enrolled in their

51

club through EDP signed up through the Starter Credit website, it is therefore entitled to Defendants' marketing on all other EDP websites marketing the Century Platinum product.  Insite's mistaken belief that StarterCreditDirect.com was the only EDP website is inconsequential since Defendants have since clarified that there were other sites and these different websites did not matter for revenue sharing purposes with Insite.  Reilly Decl., Att. 4, pp. 50:11-51:12 [Draft Transcript of Martha Ortega-Leon Deposition on September 30, 2010].

In any case, the FTC has already taken discovery on this issue.  It requested additional information from Insite, to which it received a response (Tucci Decl., Att. 10), and on September 30, 2010, the FTC deposed Martha Ortega-Leon, EDP's Controller.  The FTC asked questions regarding the difference in the two numbers provided by Insite and EDP.[19]  Id., pp. 58:21-59:14.  Ms. Ortega-Leon also explained that "Starter Credit" was the name EDP used for the Century Platinum product generally.  Id. at 38:24-39:6; 51:13-52:20.  Accordingly, Insite's mistaken belief provides no basis for the FTC to receive discovery on other EDP websites marketing the Century Platinum product.  Moreover, as with the other discovery it requests, the FTC already knew that the Century Platinum product was

_____

[19] The FTC's statement that "EDP itself did not distinguish among the various marketing sites" is without foundation and contradicts Ms. Ortega-Leon's deposition testimony.  Reilly Decl., Att. D [Draft Transcript of Martha Ortega-Leon Deposition on September 30, 2010], pp. 47:16-48:6.

marketed on another EDP website.  Reilly Decl., Att. 7 [Defendants' Response to FTC Request for Documents and Information] (see Response to Request 5.f. listing SuperEliteOffer.com website).

**5.**     **Mr. Cleveland Should Not be Ordered to Appear for a Second Deposition in Connection with this Contempt Action**

The FTC begins its argument regarding why the Court should order defendant Dale Paul Cleveland to appear for deposition with this misleading statement: "Despite being a Defendant in this action and submitting a declaration opposing the FTC' [sic] Application for an Order to Show Cause Why Defendants Should Not Be Held in Contempt, Defendant Dale Paul Cleveland refuses to appear for deposition."  Not so.  Let there be no doubt Mr. Cleveland has appeared for a deposition.  Mr. Cleveland does however, in keeping with the Federal Rules of Civil Procedure, refuse to appear for a second deposition absent court order.

The FTC first takes the position that "the Final Order requires Defendant Cleveland to appear for a deposition, **independent of the Federal Rules of Civil Procedure**." (Emphasis added.)  However, the FTC misinterprets the language of the Final Order, which makes plain that the Federal Rules of Civil Procedure apply to discovery taken pursuant to the Final Order.  FTC Ex. A at Section V.B(1) (allowing discovery "using the procedures proscribed by Fed. R. Civ. P. 30, 31, 33,

53

34, 36 and 45.")  The "procedures proscribed" by the Federal Rules of Civil Procedure do not allow for a second deposition of Mr. Cleveland absent leave of court.  The FTC next contends that Federal Rule of Civil Procedure 30(a)(2)(A)(ii), requiring leave of court before conducting a second deposition, does not apply because Mr. Cleveland's deposition was taken "prior to initiation of this contempt proceeding."  The FTC's apparent position that its application for an order to show cause created a new case is nonsensical.  The FTC has a single action against Defendants (i.e., there is a single case number, one assigned Judge, etc.) and the fact that at some point during that case it filed an application or a motion does not create a new case and give the FTC unfettered rights to take discovery without regard to the limitations of the Federal Rules.  The fact that the deposition took place before the FTC's Application was filed is of no relevance.  Finally, the FTC contends that even if leave were required (though notably leave was not sought by the FTC) it should be granted because Mr. Cleveland has submitted a declaration in opposition to the FTC's application.  Again, following this logic to its reasonable conclusion, a plaintiff would have the right to reopen a deposition every time the defendant filed any type of the motion supported by a declaration by the deponent. This cannot be the law.

### i. __Background__

As admitted by the FTC, on November 17, 2009, the FTC deposed Mr. Cleveland.  This deposition came after the Defendants had responded to the FTC's lengthy July 23, 2009 requests for information and documents.[20]  Reilly Decl., Att. 7.  This deposition also was proceeded by a formal deposition notice, which explicitly referenced Rule 30, thereby acknowledging the application of the Rule and its limitations, and included topics.  Reilly Decl., Att. 8 [FTC Deposition Notice].  Nowhere in its current motion or in the transcript of Mr. Cleveland's deposition does the FTC contend that Defendants somehow limited or otherwise dictated the length of Mr. Cleveland's deposition.  The fact that it "lasted less than three hours," and any ramifications thereof, must be laid squarely at the feet of the FTC.  During the deposition the FTC was free to question Mr. Cleveland on Defendants' efforts to comply with the Final Order and all of the facts that underlie the Defendants current defenses (which facts were set forth in Defendants' responses to the FTC's early request for information).  That the FTC did or did not explore issues related to whether Defendants were conscientious in their effort to comply with the Final Order, the changes made to EDP's marketing or the reasons

---

[20]  Defendants' responded to the FTC's July 23, 2009 request for information by providing written responses of totaling almost one hundred pages and by producing approximately three bankers boxes of documents.

therefore, who operated the shopping club marketed through the

startercreditdirect.com website, Defendants' contention that certain of EDP's

marketing was modeled after the Ultimate Platinum website that was "vetted" by

the FTC, or any of the issues it references as being covered in Mr. Cleveland's

declaration, is not a problem of Mr. Cleveland's making.  The FTC made its own

strategic decisions about what to ask Mr. Cleveland and how much time to spend

deposing him and Mr. Cleveland should not be punished for those strategic

decisions.  Moreover, the FTC, misleads this Court to the extent it implies that

these contentions it implies were first made in Mr. Cleveland's declaration were

not know and/or covered in the deposition of Mr. Cleveland.  By way of example,

the FTC's own topics for the deposition included "EDP's compliance with the

Final Order."  Reilly Decl., Att. 3 [Transcript of Paul Cleveland Deposition on

November 17, 2009], pp. 7:23-9:17.  Moreover, the FTC knew all about

Defendants' long-standing contention that the websites now at issue in the

contempt proceeding were modeled on Ultimate Platinum website, a site vetted by

FTC staff, prior to taking the deposition of Mr. Cleveland based on written

responses to the FTC's July 23, 2009 questions provided in advance of that

deposition.  Reilly Decl., Att. 7 (see Response to Request 2.c.ii.).  With that

contention in hand, the FTC in fact questioned Mr. Cleveland about the statement,

56

as reflected in the following questioning:

> Q. I'd like to look at the second paragraph of the [Defendants'] response.  It says:
>
>> "We design our own websites to adhere to the principles outlined in Paragraphs 1A through F of the Final Order and also ***model all our sites on http://ultimateplatinumoffer.com.  This website was specifically designed under the review and advice of Mr. Raymond McKown of the Federal Trade Commission.*** Under Mr. McKown's guidance and direction, various design elements were positioned, designed and scripted to comply with Paragraphs 1A through F of the Final Order."
>
>> Did you have any documents that show Mr. McKown providing advice to EDebitPay regarding website design?

Reilly Decl., Att. 3 [Transcript of Paul Cleveland Deposition on November 17, 2009], pp. 43:14-44:19 (emphasis added).  Again, if the FTC did not fully explore Defendants' longstanding position, now asserted as a defense to contempt, it has no one to blame but itself.

After continuing its behind the scenes investigation and collecting everything it believed it needed to prove contempt of the Final Order, six months later, on May 27, 2010, the FTC filed its Application for an Order to Show Cause. What the FTC does not state is that the FTC relied on Mr. Cleveland's deposition

in that Application such that it could not possibly have been surprised that a declaration by Mr. Cleveland was submitted in opposition to the Application. Moreover, Mr. Cleveland's declaration was in keeping with the written responses provided to the FTC in advance of his deposition, such that the FTC cannot now contend it needs for the first time to question Mr. Cleveland regarding topics such as the FTC's vetting of the Ultimate Platinum website or the fact that other websites, including those at issue in the contempt proceeding, were modeled on that site.

Prior to noticing Mr. Cleveland's deposition for a second time, the FTC served Defendants with lengthy and onerous written discovery including interrogatories, document requests and sixty-four (64) requests for admission.  For example, though the FTC now claims to need to depose Mr. Cleveland regarding the Defendants' defenses, it served an interrogatory on this issue and, in addition to producing documents, Defendants provided a substantive written response of over eleven (11) pages.  (See Tucci Decl., Att. 4 at p. 18-30.)

Based on these background facts, the Defendants justifiably objected to a second deposition of Mr. Cleveland.  Although the FTC contended in the meet and confer process that the first deposition of Mr. Cleveland somehow did not count because it was "conducting a general compliance investigation, and no contempt

58

claims or defenses were before the Court," all of the facts underlying Defendants' current defenses **were before the FTC** based on the information and documents already provided by Defendants and/or could have been discovered during that deposition.

### ii.    The Final Order Allowed For Depositions But Only As Proscribed By The Federal Rules of Civil Procedure

Mr. Cleveland has not violated the Final Order by failing to appear for a second deposition.  Mr. Cleveland appeared for deposition under his obligation of Section V of the Final Order.  He was not obligated to appear again without leave of court.  Rule 30(a)(2)(A)(ii) requires leave of court to depose witness if "the deponent has already been deposed in the case."  Fed. R. Civ. P. 30(a)(2)(A)(ii). The Final Order should not be found to supersede this requirement, particularly given that the Final Order specifically references the application of the Federal Rules and their proscriptions.  FTC Ex. A at Section V.B(1) (allowing discovery "using the procedures proscribed by Fed. R. Civ. P. 30, 31, 33, 34, 36 and 45".) Finally, the FTC did not even rely on Section V.A. of the Final Order, on which it now contends it relies, in noticing Mr. Cleveland's deposition.  Instead, it mysteriously relied on Section X of the Final Order and Rule 32 of the Federal Rules of Civil Procedure.  (See Tucci Decl., Att. 6 at 1.)

### iii.   Mr. Cleveland Need Not Seek A Protective Order Where He Already Has Been Deposed Because The FTC Is Required To Obtain Leave To Conduct Another Deposition

Absent a stipulation of the parties, a party may not be deposed a second time except with leave of court. Fed. R. Civ. P. 30(a)(2)(A)(ii).  The FTC now contends that this rule does not apply because "Mr. Cleveland's November 2009 deposition occurred during the FTC's compliance investigation, before this contempt action began[,]" such the Mr. Cleveland was allegedly required to seek a protective order. This strained argument collapses on one simple fact – there is no "contempt action," there was simply an application for *contempt filed in the existing case* in which Mr. Cleveland's deposition has already been taken.  As set forth above, the FTC's notice of Mr. Cleveland's first deposition using the caption in this case, as well as the caption page that appeared on the deposition itself and again referenced this Court and this case number, make clear that his deposition was taken in this case.  Reilly Decl., Att. 8 [FTC Deposition Notices].  There are not two cases between the FTC and Defendants.  As such, it is the FTC who was obligated to seek leave to take Mr. Cleveland's deposition again and show good cause for that relief.

Moreover, the FTC improperly raises the argument that Mr. Cleveland was obligated to seek a protective order for the first time in its motion.  During the meet

60

and confer process regarding Mr. Cleveland's deposition the FTC never took this position.  Instead, it merely stated that "[w]e intend to move the Court to order his deposition if you do not make him available."  (*See* Tucci Decl., Att. 9 at 2.) Because the parties did not confer on this issue and the Defendants were unaware of this position, the Court should not consider the issue.  However, even if Mr. Cleveland were required to show he was entitled to a protective order, which he is not, that standard could easily be met.  Mr. Cleveland was deposed and the FTC has articulated its claims against Defendants in its Application.  As with the other discovery disputed here, the FTC now seeks to harass and burden the Defendants and Mr. Cleveland individually by ongoing efforts to expand those claims and the scope of the contempt hearing such that Defendants do not have meaningful notice of the claims against them or the ability to efficiently prepare their defense to those claims.  If the deposition of Mr. Cleveland is allowed to go forward this conduct will unduly burden Mr. Cleveland and all the Defendants by requiring them to prepare to face unknown claims at the time of the contempt hearing itself.

          **iv.**    **Leave Should Not Be Granted To Depose Mr. Cleveland Again As The FTC Seeks To Take Duplicative Discovery And Had Ample Opportunity To Obtain The Information Sought**

The FTC contends that it has "ample grounds" for leave to depose Mr.

Cleveland.  However, the fact that the deposition of Mr. Cleveland would allegedly "cover issues not addressed in the previous deposition" (Section II(B)(4)) is not a grounds for a second deposition standing alone.[21]  With respect to the 1-day limit contained in Rule 30(d)(1), "[t]he party seeking a court order to extend the examination, or otherwise alter the limitations, is expected to show good cause to justify such an order."  Advisory Committee Notes, 2000 Amendment to Rule 30(d)(1).  In addressing good cause, the Court is to consider whether the discovery sought is cumulative or duplicative, or can better be obtained from some another source; whether the party seeking discovery has had ample opportunity to obtain the information pursuant to prior discovery in the action; and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Fed. R. Civ. P. 26(b)(2).  In weighing these factors, and applying them to whether the limitations of Rule 30(d)(1) should be altered, "the court should begin with the presumption that the seven-hour limit was carefully chosen and that extensions of that limit

---

[21]  This is not a case where Defendants somehow wrongfully changed their position at the eleventh hour in the litigation warranting the reopening of a deposition.  Notably, in *Gipson v. Wells Fargo Bank N.A*., 239 F.R.D. 280, 281 (D.D.C. 2006), relied on by the FTC, even where defendant raised an affirmative defense at close of discovery the plaintiff was only given ***one additional hour*** to question defendant's witness.  Similarly, in *Collins v. International Dairy Queen*, 189 F.R.D. 496 498 (M.D. Ga. 1999) where the Plaintiffs filed a fifth amended complaint with new factual allegations, the reopened dispositions were limited to four hours.

should be the exception, not the rule.  Automatic extensions eviscerate the rule."

*Roberson v. Bair*, 242 F.R.D. 130, 138 (D.D.C. 2007).  The FTC cannot meet its

burden of showing good cause under these standards.

The discovery sought from Mr. Cleveland is unreasonably duplicative and

has been and can be obtained from other sources.  As this Joint Stipulation and the

various exhibits filed herewith make clear, the FTC has propounded voluminous

written discovery and Defendants have provided detailed, substantive responses to

the vast majority of this discovery, including specifically its detailed interrogatory

response totaling over 11 pages regarding their defenses to the contempt claims as

well as a production of documents in connection therewith.  Moreover, the specific

issues that the FTC now apparently claims it needs discovery on all have been the

subject of significant discovery:

**Subject:** Mr. Cleveland's assertion that "Defendants conscientiously sought

to comply with the Final Order and implemented changes suggest by FTC staff …"

(Section II(B)(1).)

**Discovery Taken**: Prior to Mr. Cleveland's first deposition, the Defendants

explicitly summarized their efforts to comply with the final order and to implement

changes suggested by FTC staff in a written response to a request for information

from the FTC.  Reilly Decl., Att. 7 (See Response to Request 2.c.ii.).  The FTC

questioned Mr. Cleveland about the written responses and specifically the statement regarding implementation of FTC staff's suggested changes.  Reilly Decl., Att. 3 [Transcript of Paul Cleveland Deposition on November 17, 2009], pp. 43:14-44:19.  The FTC also questioned defendant William Richard Wilson regarding compliance efforts in is deposition.  Reilly Decl., Att. 1 [Transcript of Bill Wilson Deposition on November 17, 2009], pp. 165:2-172:9.  The FTC later served interrogatories directed to these issues and Defendants provided detailed responses thereto (*See* Tucci Decl., Att. 4 at 18-33.)

**Subject**:  Mr. Cleveland's assertion that the "shopping club marketed through the Starter Credit website was operated by a third party …"  (Section II(B)(1).)

**Discovery Taken**:  The FTC was aware of the entity that operated shopping club at issue, Insite Marketing Group, LLC ("Insite"), when it deposed Mr. Cleveland.  Reilly Decl., Att. 3 [Transcript of Paul Cleveland Deposition on November 17, 2009], pp. 40:15-41:17 (establishing the FTC had EDP's agreement with Insite prior to the deposition and asked questions about Insite).  The FTC has also obtained discovery directly from Insite.  (Tucci Decl., Att. 10.)

**Subject**:  Mr. Cleveland's assertion that "the marketing of the shopping club on the Starter Credit Direct website and of the 'no cost' ePlatinum debit card were

64

modeled after the Ultimate Platinum website that was 'vetted' by the FTC."

(Section II(B)(1)).

**Discovery Taken**: Again, prior to Mr. Cleveland's first deposition, the

Defendants explicitly stated that they "model all our sites on

http://ultimateplatinumoffer.com" and that "this website was specifically designed

under the review and advice of Mr. Raymond McKown of the Federal Trade

Commission" in a written response to a request for information from the FTC.

Reilly Decl., Att. 7 [Defendants' Response to FTC's July 23, 2009 Request for

Documents and Information] (See Response to Request 2.c.ii.).  The FTC

questioned Mr. Cleveland about this written response.  Reilly Decl., Att. 3

[Transcript of Paul Cleveland Deposition on November 17, 2009], pp. 43:10-

44:19.  The FTC later served interrogatories directed to these issues and

Defendants provided detailed responses thereto (*See* Tucci Decl., Att. 4 at 18-33.)

Accordingly, this Court should find that, despite the FTC's contention that it

needs to depose Mr. Cleveland regarding these factual assertions in his declaration,

deposing Mr. Cleveland on these or any subjects would be unreasonably

cumulative and duplicative such that leave of court to take his deposition a second

time is not warranted.

Additionally, the FTC has had "ample opportunity to obtain the information

by discovery in this action." The FTC conducted a lengthy investigation before it even filed its Application -- obtaining written responses to requests for information, boxes of documents and depositions.  Moreover, despite the FTC's misleading statement that "the FTC has had limited opportunities to conduct discovery" (Section II(B)(4)), since the filing of its Application the FTC served voluminous written discovery including requests for production, interrogatories and 64 requests for admission, deposed three employees of EDP, and sought and/or obtained discovery from third parties.  There can be no doubt that the FTC has had ample opportunity to obtain the information it contends it needs from Mr. Cleveland now.

Finally, as discussed above, the FTC's belated effort to expand the scope of its claims of contempt is burdensome.  Requiring Mr. Cleveland to be deposed again will unduly burden the Defendants in the preparation of their defense.  The FTC's claims should not be a moving target but the current effort to depose Mr. Cleveland for a second time is part of a larger effort by the FTC to make the contempt claims just that.

For all of the foregoing reasons the FTC should not be granted leave to depose Mr. Cleveland again.

66

## IV.   VERBATIM COPIES OF INTERROGATORIES, DOCUMENT REQUESTS, RESPONSES, AND PARTIES' CONTENTIONS

### A.   Discovery Regarding How Consumers Reached EDP Websites: Ints. 1, 2, and 3 and RFP No. 3

<u>Int. 1:</u>  Describe in detail all of the ways in which consumers reached or were directed to the Starter Credit Direct website (including through "exit pops," as described by Wilson in his November 17, 2009 deposition at 92-93, 103-06 or through other means such as hyperlinks from emails or other websites).

<u>Response:</u>  Subject to and without waiver of the foregoing General Objections, each of which is expressly incorporated herein, Defendants further object to Interrogatory No. 1 on the following grounds:  First, the interrogatory is overbroad, unduly burdensome and unreasonable, and seeks information that is neither relevant to the claims against Defendants in the contempt proceeding nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, the contempt application filed by the FTC concerns EDP's advertising for the Century Platinum shopping catalog product on the startercreditdirect.com website. It does not concern the manner in which consumers "reached or were directed to" the startercreditdirect.com website. Not only was this issue not raised by the FTC in its contempt application, but nowhere in the Final Order are these issues or the term "exit pops"  referenced.  Nor was it discussed during settlement negotiations

67

or during the FTC's vetting of Defendants' advertising post-Final Order.  Second,

Defendants object to this interrogatory on the grounds that it calls for·information

uniquely in the possession of third party consumers. Third, Defendants further

object to this interrogatory on the grounds that it is duplicative of discovery

obtained by Plaintiff from Defendants prior to the filing of its Application for an

Order to Show Cause Why Defendants Should Not Be Held in Contempt and in

response to the FTC's July 23, 2009 request for information and documents to

monitor Defendants' compliance with the Final Order.  Fourth, the phrases

"reached or were directed to" and "Starter Credit Direct website" are vague and

ambiguous.  Defendants understand the term "Starter Credit Direct website" to

mean EDP's startercreditdirect.com website.

**FTC's contentions:  First, the request seeks relevant and discoverable
information in a manner that is not overbroad, unduly burdensome, or
unreasonable.  How consumers reached EDP's websites is directly relevant to
the claims and defenses of the parties and reasonably calculated to lead to the
discovery of admissible evidence in this contempt proceeding because evidence
suggests Defendants used deceptive practices to lead consumers to websites
that, *inter alia*, contributed to consumer confusion over what product they
were applying for and thus made it more likely that Defendants would not**

68

obtain "express, informed consent" as required by the Final Order.

Moreover, Defendants make a frivolous argument in suggesting that the term "exit pop", which Defendants used in their depositions, is not appropriate for discovery because it was not mentioned in the Final Order.  Second, the request seeks information in the Defendants' possession, not information "uniquely in the possession of third party consumers." Defendants testified in their depositions that they in fact create and maintain detailed records tracking how consumers reach their websites.  (*See* Tucci Decl. Att. 1 at 50:6-25, 51:1-25, 52:1-20, 99:3-9.)  Third, the request is *not* duplicative of previously produced information because Defendants were unable to answer this question in their depositions, stating they would have to check their records.  (*Id.* at 95:24-25, 96:1-8, 99:3-9.)  Nor do Defendants identify any such responsive information.  Fourth, Defendants' claims that certain terms are vague and ambiguous are without merit.  Defendants should be ordered to supplement their response and provide the requested information in full.

*Defendants' Contentions:*

*This request is irrelevant to the claims made in the FTC's contempt application.  The FTC alleges that (1) Defendants misrepresented the nature of the Starter Credit Direct line of credit and that the terms were not clearly and*

69

conspicuously disclosed; (2) the line of credit offered was "worthless" because most purchases required a substantial down payment that often exceeded the full price of the product offered through other online retailers; (3) Defendants did not clearly and conspicuously disclose a $15 initial processing fee by Century Platinum; and (4) Defendants failed to obtain consumers' express informed consent because consumers did not understand what they were purchasing based on (1)-(3) above.  FTC Exh. B (FTC contempt application), pp. 12-19.  Neither the issue of whether the disclosures on the Starter Credit Direct website were adequate nor the issue of whether the credit line was "illusory" pertain to how the consumer may have arrived at the Starter Credit Direct website.  Rather, they concern events occurring once the consumer had already arrived at the Starter Credit Direct website.  Therefore, it is the advertising on the Starter Credit Direct website that is at issue here, not how consumers may have arrived at the website.

If "exit pops" were such a crucial part of the FTC's case, as it now claims, the FTC would have alleged that exit pops constituted violations of the Final Order in their contempt application and, at the very least, would have issued further discovery on the issue **before** filing a contempt application.  The FTC has known about "exit-pops" or "pop-ups" since at least November 2009.  Reilly Decl., Att. 3 [Transcript of Paul Cleveland Deposition on November 17, 2009], pp. 61:23-

70

*62:10; 69:21-72:5; Reilly Decl., Att. 1 [Transcript of Bill Wilson Deposition on November 17, 2009], pp. 92:16-101:18, 102:11-106:3, 109:21-110:6, 152:13-156:1. The FTC could have followed up or initiated further discovery on this issue in the six months prior to filing its contempt application if this issue was as "crucial" as the FTC claims, particularly since Mr. Wilson testified that he was not sure whether there were "exit-pops" of the Starter Credit Direct website but there would be records to answer this question. Tucci Decl., Att 1 [Wilson Deposition Transcript Excerpts], pp. 95:17-99:9. The fact that the FTC did not further inquire is telling.*

*Finally, the Final Order is devoid of any language concerning "exit-pops" and demonstrates, in addition to the specific claims made in the FTC's contempt application, that this issue is not relevant to this proceeding. The FTC addresses "pop-ups" in settlement agreements when appropriate. See Mallow Decl., ¶ 6, Atts. 9-11. Here, no language about "pop-ups" or "exit-pops" was inserted into the Final Order or discussed during settlement. Mallow Decl., ¶ 6. The FTC's request should be denied.*

Int. 2:  For each consumer who signed up for the Century Platinum shopping club through Starter Credit Direct, identify how the consumer reached or was directed to the Starter Credit Direct website, including the website (and whether it

71

is an EDP website), email, or other Internet advertising from which the consumer

was directed or "exit popped" to the Starter Credit Direct website, if applicable.

Response:  Subject to and without waiver of the foregoing General

Objections, each of which is expressly incorporated herein, Defendants further

object to Interrogatory No. 2 on the following grounds:  First, the interrogatory is

overbroad, unduly burdensome, harassing, and unreasonable, and seeks

information that is neither relevant to the claims against Defendants in the

contempt proceeding nor reasonably calculated to lead to the discovery of

admissible evidence.  Specifically, the contempt application filed by the FTC

concerns EDP's advertising for the Century Platinum shopping catalog product on

the startercreditdirect.com website. It does not concern the manner in which a

consumer "reached or was directed to" the startercreditdirect.com website. Not

only was this issue not raised by the FTC in its contempt application, but nowhere

in the Final Order are these issues or the terms "exit pops" or "exit popped"

referenced.  Nor was it discussed during settlement negotiations or during the

FTC's vetting of Defendants' advertising post-Final Order.  Second, Defendants

object to this interrogatory on the grounds that it calls for information uniquely in

the possession of third party consumers. Third, the interrogatory is objectionable

on the basis that it is vague and ambiguous, particularly with respect to the phrases

72

"signed up for," "reached or was directed to," "Starter Credit Direct," and "Starter Credit Direct website."  Defendants understand the phrases "Starter Credit Direct" and "Starter Credit Direct website" to mean EDP's startercreditdirect.com website.

**FTC's contentions:  The FTC incorporates by reference its contentions with regard to Defendants' response to Int. 1.  Defendants should be ordered to supplement their response and provide the requested information in full.**

*Defendants' contentions:*

*Defendants incorporate by reference their contentions with regard to Interrogatory No. 1.  In addition, the request is overbroad, unduly burdensome, unreasonable, and harassing because it requires Defendants to examine the names of thousands of consumers and determine how each one arrived at the Starter Credit Direct website.  Moreover, recent testimony suggests that this is an impossible task as EDP does not track this information by consumer.  Reilly Decl., Att. 2 [Draft Transcript for Loris Desa Deposition on September 27, 2010], pp. 94:21-95:8, 101:2-102:2.  As such, the Request calls for information uniquely in the possession of third party consumers.*

Int. 3:  Identify all statements disclosing to consumers that they were or may have been transferred to the Starter Credit Direct website from another website, including the websites and dates on which such statements appeared.

73

Response:  Subject to and without waiver of the foregoing General Objections, each of which is expressly incorporated herein, Defendants further object to Interrogatory No. 3 on the following grounds:  First, the interrogatory is overbroad, unduly burdensome and unreasonable, and seeks information that is neither relevant to the claims against Defendants in the contempt proceeding nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, the contempt application filed by the FTC concerns EDP's advertising for the Century Platinum shopping catalog product on the startercreditdirect.com website. It does not concern the manner in which a consumer was "transferred" to the startercreditdirect.com website.  Not only was this issue not raised by the FTC in its contempt application, but nowhere in the Final Order is this issue referenced. Nor can the Final Order be construed to require such disclosure.  Nor was it discussed during settlement negotiations or during the FTC's vetting of Defendants' advertising post-Final Order. Second, Defendants object to this interrogatory on the grounds that it calls for information in the possession of third parties. Third, Defendants further object to this interrogatory on the grounds that it is duplicative of discovery obtained by Plaintiff from Defendants prior to the filing of its Application for an Order to Show Cause Why Defendants Should Not Be Held in Contempt and in response to the FTC's July 23, 2009 request for

information and documents to monitor Defendants' compliance with the Final

Order.  Fourth, the interrogatory is objectionable on the basis that the terms

"transferred" and "Starter Credit Direct website" are vague and ambiguous.

Defendants understand the phrase "Starter Credit Direct website" to mean EDP's

startercreditdirect.com website.

**FTC's contentions:  The FTC incorporates by reference its contentions with regard to Defendants' response to Int. 1.  Defendants should be ordered to supplement their response and provide the requested information in full.**

*Defendants' contentions:*

*Defendants incorporate by reference their contentions with regard to Interrogatory No. 1.  In addition, the term "statements" is vague and ambiguous.*

RFP 3:  Produce all websites from which consumers were transferred (including through "exit pops" as described by Wilson in his November 17, 2009 deposition at 92-93, 103-06) to websites marketing any of the programs or products listed in RFP 1.

Response:  Subject to, and without waiver of the foregoing General Objections, each of which is expressly incorporated herein, Defendants further object to Request for Production No. 4 on the following grounds:  First, the request is overbroad, unduly burdensome and unreasonable, and seeks documents that are

neither relevant to the claims against Defendants in the contempt proceeding nor reasonably calculated to lead to the discovery of admissible evidence.  Specifically, the request seeks documents related to the marketing of shopping clubs other than EDP's marketing of the Century Platinum shopping catalog product on the startercreditdirect.com website (subparts a and b of Request for Production No. 1). *See* subparts c-f.  The FTC's contempt application, however, was solely directed at EDP's marketing of the Century Platinum shopping catalog product on the startercreditdirect.com website.  Accordingly, documents concerning other shopping catalog clubs that EDP may have advertised are irrelevant and beyond the scope of this contempt proceeding.  Also, the contempt application filed by the FTC does not concern the manner in which consumers were "transferred" to the startercreditdirect.com website or "exit pops." Not only was this issue not raised by the FTC in its contempt application, but nowhere in the Final Order is this issue even referenced. Nor was it discussed during settlement negotiations or during the FTC's vetting of Defendants' advertising post-Final Order.  Second, Defendants object to this request to the extent that it is duplicative of discovery obtained by Plaintiff from Defendants prior to the filing of its Application for an Order to Show Cause Why Defendants Should Not Be Held in Contempt and in response to the FTC's July 23, 2009 request for information and documents to monitor

76

Defendants' compliance with the Final Order.  Third, the request is objectionable on the grounds that it is vague and ambiguous to the extent that it implies that there were unique or separate shopping catalog clubs called Starter Credit Direct, E-Elite Plus, or ePlatinum.  Fourth, the phrase "Starter Credit Direct" is vague and ambiguous.  Defendants understand the phrase "Starter Credit Direct" to mean EDP's startercreditdirect.com website, and specifically in connection with the Century Platinum shopping catalog product.  Fifth, Defendants object to this request to the extent it seeks documents or information known only by third parties.

**FTC's contentions:  The FTC incorporates by reference its contentions with regard to Defendants' response to Int. 1.**

**In addition, discovery should not be limited to the marketing of the Century Platinum shopping catalog on the startercreditdirect.com website for four reasons.  First, the request goes to a direct factual dispute.  Specifically, EDP contends that only about 6,000 of more than 34,000 consumers who used EDP websites to sign up for Century Platinum did so through startercreditdirect.com, (Ex. C, Defs' Opp'n at 15 n.14,) but marketing affiliate Insite Marketing Group, LLC, which owns the Century Platinum website, maintains that all of 34,000 of its EDP customers signed up for**

Century Platinum through startercreditdirect.com.   (Tucci Decl., Att. 10 at 2.)  Defendants' own discovery answers indicate that EDP  marketed the same Century Platinum shopping club – with the same onerous down payment requirements and lack of real extension of credit – on multiple EDP websites, that EDP itself did not distinguish among the various marketing sites internally or in working with affiliate Insite Marketing Group, LLC, and that the sites may well have had the same terms and conditions.   *See, e.g.,* Resp. to Int. 6(c) (Defendants and Insite did not break down recurring membership fees from Century Platinum according to EDP website; Resp. to RFP 3 (request is "vague and ambiguous to the extent that it implies that there were unique or separate shopping catalog clubs called Starter Credit Direct, E-Elite Plus, or ePlatinum.")

Second, the FTC's Show Cause Memo put Defendants on notice of the nature of its contempt claims.  Specifically, the Memo put Defendants on notice that Defendants' marketing of shopping clubs, including particular claims that Defendants advertised such clubs as offering a form a credit, violated the Final Order.

Third, EDP's potentially violative marketing of shopping clubs (whether Century Platinum or a similar club) on various sites relates directly to

78

Defendants' defense of substantial compliance, as the marketing used on these other sites may well indicate the pervasive nature of Defendants' violations. Moreover, Defendants have maintained that they modeled their marketing after a ultimateplatinum.com, a shopping club website that was vetted by the FTC.  (*See* Tucci Decl., Att. 4 at 20-21.)   Information regarding their marketing of shopping clubs on other websites would certainly shed light on Defendants' claim that their marketing of shopping clubs was based on a single model.

Fourth, the Final Order requires Defendants to turn over all such information on ten days' notice to the FTC.

Defendants should be ordered to supplement their response and produce all of the requested documents.

*Defendants' contentions:*

*Defendants incorporate by reference their contentions with regard to Interrogatory No. 1.  In addition, there are several reasons why the FTC is not entitled to discovery on the marketing of "other shopping catalog clubs" not noticed in its contempt application (i.e., marketing other than the marketing of the Century Platinum product on the StarterCreditDirect.com website).  First, the StarterCreditDirect.com marketing is not a proper basis for contempt because it is*

79

*beyond the scope of the Final Order.  In considering contempt proceedings, the Court must in fairness consider the prior proceedings and determinations. Federal Trade Commission v. Henry Broch & Co., 368 U.S. 360, 366 (1962). Based on the totality of the facts, the courts are "free to construe the order as designed strictly to cope with the threat of future violations identical with or like or related to the violation" previously determined to have been committed, or "as forbidding 'no activities except those which if continued would directly aid in perpetuating the same old unlawful practices.'" Id. (citations omitted); see also Trans World Accounts, Inc. v. Federal Trade Commission, 594 F.2d 212, 216 (1979) ("[The] Federal Trade Commission's power to fashion remedies for deceptive practices does not carry with it the concomitant power to be deceptive or ambiguous in dealing with persons and businesses subject to its jurisdiction.").*

*Accordingly, in contempt proceedings, courts should not try alleged violations of the Act not in controversy or other violations which are not similar to the unlawful practices previously established.  Nat'l Labor Relations Board v. Express Pub. Co., 312 U.S. 426, 435 (1941). Defendants' shopping catalog club marketing and whether the Century Platinum product offered "illusory" credit are certainly not "the same old*

*unlawful practices" because, as the FTC readily concedes, "[t]he FTC's original case had nothing to do with sites such as Starter Credit that purportedly offered credit lines but actually sold memberships in online shopping clubs." Defs.' Exh. I [FTC Reply Brief], p. 5. Shopping catalog club advertising was never litigated, settled or even noticed in the underlying action. Whether Defendants can be held liable for contempt based on a wholly different product and type of marketing need not be decided here but will be determined at the contempt trial.*

*Second, the FTC had ample opportunity to pursue contempt on "other shopping catalog clubs," as well as other debit cards, but chose not to because it did not find such marketing objectionable. The Request is duplicative of prior discovery between the parties. The FTC has been on notice of Defendants' "other" shopping catalog club advertising since at least August 2009 when Defendants provided information about several EDP websites marketing shopping catalog club products, such as SuperEliteOffer.com (marketing the Century Platinum product), Vue3Source.com, ePlatinumDirect.com, AlliancePlatinumOffer.com, and UltimatePlatinum.com. Reilly Decl., Att. 7 [Defendants' Response to FTC's July 23, 2009 Request for Documents and Information] (see*

81

*Responses to Requests 1.c., 2.c.ii., 3.e.ii., 4.f.ii., 5.e.ii., 5.f., 5.g.ii., 6.a.,*

*6.d., 7.e., and 8.e.ii.).  Similarly, since at least August 2009, the FTC has*

*been on notice about at least nine EDP websites marketing debit cards at*

*"no cost."  Id. (see Responses to Requests 5.e.ii., 5.f., 6.a., 6.d., 7.c., 7.e.,*

*and 8.e.ii.).  In fact, over **one-third** of the FTC's July 23, 2009 Requests*

*pertained to "no cost" debit cards (22 Requests in total).  Id. (see*

*Responses to Requests 5-7 and all subparts).  Other shopping catalog and*

*debit card products and advertising were also discussed during the*

*depositions of Mssrs. Cleveland and Wilson in November 2009.  Reilly*

*Decl., Att. 3 [Transcript of Paul Cleveland Deposition on November 17,*

*2009], pp. 39:2-40:14 (discussing EDP's other shopping catalog club*

*websites); Reilly Decl., Att. 1 [Transcript of Bill Wilson Deposition on*

*November 17, 2009], pp. 123:21-124:16 (discussing marketing of another*

*no cost debit card); 106:21-108:4, 118:8-14, 119:24-121:6, 123:14-20,*

*129:5-9 (discussing EDP's other shopping catalog club websites).  The*

*FTC did not seek further discovery regarding these shopping catalog and*

*debit card advertisements and products in the several months preceding the*

*filing of its contempt application.  Instead, it opted to pursue contempt for*

*the Starter Credit and Netspend marketing pieces alone.*

82

*The FTC's argument that Defendants were put on notice of the expansion it now seeks is simply wrong and is a mischaracterization of the FTC's contempt application.  A plain reading of the FTC's contempt application demonstrates that the FTC only gave Defendants notice of the Century Platinum/Starter Credit and Netspend/ePlatinumDirect marketing. The same is true of Defendants' communications with the FTC pre-contempt filing.  Mallow Decl.,¶ 5, Att. 8 [Email communications with FTC Attorney Zachary Hunter, Esq. on May 11 and 14, 2010 confirming that the FTC intends to move for contempt based only on the Starter Credit and Netspend marketing pieces]. All of the FTC's allegations are with regard to these two specific marketing pieces advertising two specific products (i.e., Defendants made material misrepresentations regarding the Century Platinum product and did not clearly and conspicuously disclose the nature of the product's credit line on the StarterCreditDirect.com website and the fees associated with the Netspend debit card on the ePlatinumDirect.com website).*

*It would be fundamentally unfair and unjust, not to mention a violation of due process, for the FTC to expand the scope of its contempt application at this stage of the proceedings.  Due process requires that*

83

*Defendants receive sufficient notice to respond to the FTC's allegations*

*and reasonable time to prepare a defense.  See International Union, UMWA*

*v. Bagwell, 512 U.S. 821, 827 (1994); U.S. v. Powers, 629 F.2d 619, 626*

*(9th Cir. 1980) ("[T]he contemnor is entitled to necessary due process*

*protections….This circuit has held that in a contempt proceeding, whether*

*denominated civil or criminal, the alleged contemnor is entitled to the*

*procedural safeguards of notice and a reasonable time to prepare a*

*defense."); see also Mercer v. Mitchell, 908 F.2d 763, 766-67 (11th Cir.*

*1990); United States v. City of Yonkers, 856 F.2d 444, 452 (2d Cir. 1988),*

*rev'd on other grounds, 493 U.S. 265 (1990).  Defendants would not have*

*sufficient time to retrieve and review responsive documents, amend their*

*discovery responses, and prepare their trial brief due on October 29.*

*Mallow Decl., ¶ 7.*

*Accordingly, Defendants would be greatly prejudiced if the FTC's*

*motion is granted, particularly in light of the remedies the FTC seeks*

*(compensatory sanctions and modifications of the Final Order that would*

*destroy the livelihoods of Mssrs. Cleveland and Wilson and put EDP out of*

*business).  See Federal Trade Commission v. Colgate-Palmolive Co., 380*

*U.S. 374, 391 (1965) (Court acknowledged that where the record does not put*

*defendants on notice as to the possible violations and controversies, respondents can be "prejudicially misled"); Grine v. Coombs, 214 F.R.D. 312, 344, 365, 367 (W.D. Pa. 2003) (limiting scope of contempt inquiry to factual allegations raised by plaintiffs in their contempt motion "in order to allow all parties to properly prepare for the hearing and avoid unfair surprise" and noting that plaintiff's "ever-burgeoning" allegations of misconduct have the practical effect of convoluting matters, slowing the progress of proceedings, and prejudicing defendants); TNT Marketing, Inc. v. Agresti, 796 F.2d 276, 278-79 (9th Cir. 1986) (noting that where "the order to show cause [does] not provide adequate notice of possible liability . . . [t]he lack of such notice may" prejudice the defendant and remanding case because defendant was not on notice that he might be liable for damages).*

*Further, the contempt hearing has already been continued from October 15 to November 19, 2010, at the request of the FTC. Defendants would be severely prejudiced if the contempt hearing was continued yet again. Defendants are in negotiations to sell EDP to a bona fide third party purchaser. This pending transaction has been held hostage due to the FTC's contempt application. A further continuation of the contempt hearing could jeopardize the sale of EDP. Mallow Decl., ¶ 8.*

85

*In an attempt to avoid these issues, the FTC claims that the requested discovery is relevant to Defendants' defense of substantial compliance, "and in particular whether the alleged Order violations pervaded Defendants' marketing of shopping and debit cards."  The FTC's argument is a non-starter and another red-herring because it misrepresents (or misconstrues) Defendants' substantial compliance defense.  As Defendants' lengthy discovery responses made clear, their substantial compliance argument pertains to the Starter Credit and Netspend marketing pieces as a whole and only with respect to the two websites at issue, StarterCreditDirect.com and ePlatinumDirect.com.  Tucci Decl., Att. 4, pps. 22-24, 28-30.  Specifically, Defendants argue that they have substantially complied with the Final Order when considering the marketing elements on each page of the StarterCreditDirect.com website.  Similarly, Defendants argue that the shortened fee disclosure for the Netspend debit card was the result of a technical error, and only appeared for two months, and that at all other times, the marketing on the ePlatinumDirect.com website contained the proper fee disclosure.[22]*

*The FTC disingenuously claims that it needs to determine if Defendants'*

---

[22] *The Starter Credit and Netspend marketing pieces were modeled after the UltimatePlatinum.com website vetted by local FTC staff.  See, e.g., Tucci Decl., Att. 4 (Defendants' Response to Interrogatory No. 9), pp. 19-21, 24, 29.  That marketing has already been provided to the FTC.  Defendants do not claim that the Starter Credit or Netspend marketing was based on any other template or marketing piece.*

86

"*violative marketing*" *of shopping catalog clubs and debit cards is "pervasive"*

*and "widespread."  The FTC already knows that Defendants have not engaged in*

*"widespread violative marketing."  Defendants began marketing Starter Credit*

*even before the FTC filed its complaint.  Defendants continued to market Starter*

*Credit as well as other shopping catalog products under a Court-appointed*

*Receiver from July 30, 2007 to January 22, 2008 (when the Final Order was*

*signed), and thereafter.  During the Receivership, the FTC took and copied all of*

*Defendants' advertising.  Defs.' Exh. J [First Interim Report of Federal Court*

*Receiver dated November 2007]; Reilly Decl., Att. 4, pp. 42:20-43:5 [Draft*

*Transcript of Martha Ortega-Leon Deposition on September 30, 2010] ("[T]he*

*FTC took control of the office and had access to everything.").  Since this case*

*began in July 2007, Defendants' advertising has been under intense FTC scrutiny.*

*Had the FTC truly believed that Defendants were engaging in "widespread*

*violative marketing," neither it nor the Receiver would have permitted Defendants*

*to resume business after the TRO issued, which required, among other things, that*

*EDP only be allowed back into business if its advertising was legal and compliant.*

*Defs.' Exh. K [TRO Order]; Defs.' Exh. J [First Interim Report of Federal Court*

*Receiver dated November 2007], pp. 6-7; Defs.' Exh. L [Stipulation and Order*

*Regarding Operation of the Business Entity Defendants Under the Court's July 30,*

87

*2007 Temporary Restraining Order].  Nor would the FTC or Receiver have permitted the Receivership to close when the Final Order was signed.  To the contrary, the FTC indicated to the Receiver that there was no reason to keep the Receivership open.  Reilly Decl., Att. 5 [June 18, 2009 email from FTC Attorney Raymond McKown, Esq. to Howard Camhi].*

*To the extent the FTC claims that it needs discovery on other shopping catalog club and debit card advertising because Defendants may have engaged in "widespread," "pervasive" violations since the Final Order was signed in January 2008, this argument also lacks merit given that the FTC requested and received this information back in August 2009 but decided to proceed with contempt on only **two** marketing pieces out of all the ones produced. Lest there be any doubt, these purportedly "pervasive" marketing pieces would have been included in the FTC's recently filed contempt application if they in fact existed. Moreover, if Defendants' advertising was so offensive since the Final Order and consumers were truly "vulnerable to [Defendants'] deceptive marketing schemes," the FTC would not have waited two years and four months to file its contempt application.*

*Lastly, the FTC's "additional reasons" why discovery is needed on other EDP websites marketing the Century Platinum product are similarly unpersuasive.*

88

*The FTC claims that since Insite, the fulfillment company that operates the Century*

*Platinum shopping catalog club, believed that all customers who enrolled in their*

*club through EDP signed up through the Starter Credit website, it is therefore*

*entitled to Defendants' marketing on all other EDP websites marketing the*

*Century Platinum product. Insite's mistaken belief that StarterCreditDirect.com*

*was the only EDP website is inconsequential since Defendants have since clarified*

*that there were other sites and these different websites did not matter for revenue*

*sharing purposes with Insite. Reilly Decl., Att. 4, pp. 50:11-51:12 [Draft*

*Transcript of Martha Ortega-Leon Deposition on September 30, 2010].*

*In any case, the FTC has already taken discovery on this issue. It requested*

*additional information from Insite, to which it received a response (Tucci Decl.,*

*Att. 10), and on September 30, 2010, the FTC deposed Martha Ortega-Leon,*

*EDP's Controller. The FTC asked questions regarding the difference in the two*

*numbers provided by Insite and EDP.[23] Id., pp. 58:21-59:14. Ms. Ortega-Leon*

*also explained that "Starter Credit" was the name EDP used for the Century*

*Platinum product generally. Id. at 38:24-39:6; 51:13-52:20. Accordingly, Insite's*

*mistaken belief provides no basis for the FTC to receive discovery on other EDP*

---

*[23] The FTC's statement that "EDP itself did not distinguish among the various
marketing sites" is without foundation and contradicts Ms. Ortega-Leon's
deposition testimony. Reilly Decl., Att. D [Draft Transcript of Martha Ortega-
Leon Deposition on September 30, 2010], pp. 47:16-48:6.*

*websites marketing the Century Platinum product.  Moreover, as with the other discovery it requests, the FTC already knew that the Century Platinum product was marketed on another EDP website.  Reilly Decl., Att. 7 [Defendants' Response to FTC Request for Documents and Information] (see Response to Request 5.f. listing SuperEliteOffer.com website).*

*Next, Defendants were not required to provide the information requested on ten days notice from the FTC.  Section V.A. of the Final Order, entitled "Compliance Monitoring," provides that "**for the purpose of monitoring and investigating compliance with any provision of this Order,**" Defendants shall produce documents, appear for deposition, and/or provide entry to the business upon ten days written notice.  See FTC Exh. A [Final Order].  This section of the Final Order is inapplicable to the FTC's motion, as the discovery served by the FTC in late July 2010 was clearly not "Compliance Monitoring" or "for the purpose of monitoring and investigating compliance."  That kind of discovery was served by the FTC back in July 2009.  The discovery at issue here, served several weeks after the Court issued its OSC and several weeks after the FTC had time to digest Defendants' opposition papers, was served for a fundamentally different purpose—for litigation/prosecutorial purposes.*

*Once the FTC filed its contempt action on May 27, 2010, the "Compliance*

*Monitoring" provision of the Final Order was rendered inoperative because the FTC was no longer investigating; it was prosecuting.  The fact that the FTC's discovery was served after the Court issued its OSC Order and set a hearing date alone demonstrates that this discovery provision has no applicability to this contempt proceeding whatsoever.  This kind of overbearing and overreaching is exactly the type of conduct that plagues the FTC's motion to compel.*

*Moreover, the FTC waived this argument several months ago when it conceded that Defendants had 30 days pursuant to the Federal Rules of Civil Procedure ("FRCP") to respond to discovery, not 10 days pursuant to Section V.A. of the Final Order.  The FTC did not once claim that Defendants had only 10 days to respond and did not object on the basis of timeliness to three separate sets of discovery responses Defendants served within the timeframe set by the FRCP.  Similarly, the FTC responded to Defendants' discovery responses within the same 30-day period.  Neither did the FTC raise this argument in its meet and confer letters or the parties' meet and confer conferences.  Reilly Decl., ¶ 10.  In sum, Defendants have not violated Section V.A. of the Final Order by not producing information in response to the FTC's belated discovery requests, and in any case, the argument has been waived.*

91

*Lastly, the Request is objectionable to the extent it seeks information in the possession of third party marketing affiliates.*

**B.   Written Discovery Re. Defendants' Marketing of Century Platinum Shopping Club Through Means Other than Startercreditdirect Website: Ints. 6, 7, 8, 10, and 11, and RFPs 1, 2, 3, 4, 5, 6, 7, 11, 14, and 15**

Int. 6:  Identify each website through which EDP marketed the Century Platinum shopping club.  For each website provide:

    a.    The number of consumers who applied for the Century Platinum shopping club, the number of consumers who enrolled in the Century Platinum shopping club and the date on which they enrolled.

    b.    The total amount consumers were charged (along with any refunds, credits, or chargebacks).

    c.    The total amount of revenue received by EDP.

Response:  Subject to and without waiver of the foregoing General Objections, each of which is expressly incorporated herein, Defendants further object to Interrogatory No. 6 on the following grounds:  First, the interrogatory is overbroad, unduly burdensome and unreasonable to the extent it seeks information that is neither relevant to the claims against Defendants in the contempt proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

92

Specifically, to the extent the interrogatory requests information about marketing

of the Century Platinum shopping catalog product through websites other than

startercreditdirect.com, it requests information outside the scope of this contempt

proceeding.  The FTC's contempt application was solely directed at EDP's

marketing of the Century Platinum shopping catalog product on the

startercreditdirect.com website.  Second, Defendants object to this interrogatory on

the grounds that it is compound and consists of four (4) separate interrogatories.

Therefore, for purposes of Federal Rule of Civil Procedure 33(a)(1), each of the

discrete subparts of Interrogatory No. 6 shall be counted toward the FTC's limit of

twenty-five (25) written interrogatories.  Third, Defendants further object to this

interrogatory to the extent that it is duplicative of discovery obtained by Plaintiff

from Defendants prior to the filing of its Application for an Order to Show Cause

Why Defendants Should Not Be Held in Contempt and in response to the FTC's

July 23, 2009 request for information and documents to monitor Defendants'

compliance with the Final Order.  Fourth, the interrogatory is objectionable to the

extent that it purports to require Defendants to disclose information constituting or

containing, in whole or in part, trade secrets, confidential or proprietary

information, or nonpublic financial information related to Defendants.  Fifth, the

phrases "applied for" and "enrolled in" are vague and ambiguous.  Whether

93

consumers who submitted applications and paid the $99 application fee to EDP

actually "enrolled" in the shopping catalog club is unknown to EDP since EDP was

only the marketer and not the fulfillment company for the product.  That

information is in the possession, custody, and control of third party Insite

Marketing Group, LLC.  Accordingly, for purposes here, Defendants interpret

"applied for" to mean consumers who filled out and submitted an online

application for the Century Platinum shopping catalog site on EDP's

startercreditdirect.com website, regardless of whether EDP collected the $99

application fee.  Defendants interpret "enrolled in" to mean consumers who filled

out and submitted an online application for the Century Platinum shopping catalog

club on EDP's startercreditdirect.com website and from whom EDP collected the

$99 application fee.  The phrase "total amount of revenue" is also vague and

ambiguous and can be taken to refer to gross revenue or net revenue.  Sixth,

Defendants object to the extent this interrogatory requests information in the

possession, custody and control of a third party.

Subject to and without waiver of any of the foregoing General Objections

and the foregoing specific objections, Defendants response to the interrogatory as

follows: Defendants further respond as follows: [stet]

(a)     The number of consumers who "applied for" the Century Platinum shopping club on startercreditdirect.com website (i.e. consumers who filled out and submitted an online application for the Century Platinum shopping club on EDP's startercreditdirect.com website, regardless of whether EDP collected the $99 application fee, as reflected by the number of applications received by EDP) from January 22, 2008 to July 31, 2010 is 22,425, however, from October 1, 2008 to July 31, 2010 the number is 5,282.  The number of consumers who "enrolled in" the Century Platinum shopping catalog club on the startercreditdirect.com website (i.e., consumers who filled out and submitted an online application for the Century Platinum shopping catalog club on EDP's startercreditdirect.com website and from whom EDP collected the $99 application fee, as reflected by the number of fees charges collected by EDP) from January 22, 2008 to July 31, 2010 is 4,592, however, from October 1, 2008 to July 31, 2010 the number is 1,001.  EDP collected on only 20 percent of applications submitted.

(b)     The total amount consumers were charged by EDP from collected startercreditdirect.com applications from January 22, 2008 to July 31,

95

2010, was $454,608 ($99 one-time application fee *4,592, however, from October 1, 2008 to July 31, 2010 the amount is $99,099 ($99 one-time application fee * 1001).  There were 359 refunds from January 22, 2008, to July 31, 2001.  The adjusted amount for January 22, 2008 to July 31, 2010 is therefore $419,067 ($454,608-[$99 * 359]).  There were 62 refunds from October 1, 2008 to July 31, 2008.  The adjusted amount for October 1, 2008 to July 31, 2008 is therefore $92,961 ($99,099 -[$99 * 62]).

(c)   The total amount of gross revenue received by EDP from the startercreditdirect.com website from January 22, 2008 to July 31, 2010 was $419,067 plus recurring revenue from Insite for the $14 monthly shared fee charged by Insite.  The monthly recurring revenue checks received from Insite did not break down revenue by EDP website marketing the Century Platinum shopping catalog product.  Without such documentation, which is not in EDP's possession, custody or control, EDP is unable to ascertain recurring revenue figures to the startercreditdirect.com website with exact precision.  An estimate of recurring revenue attributable to the startercreditdirect.com website  from February 2008 to July 2010

96

using a per application rate analysis is $88,965.56 (total recurring revenue for all EDP Century Platinum advertising divided by total number of collected applications for all EDP Century Platinum advertising multiplied by total number of collected applications for startercreditdirect.com website).  Therefore, the total amount of ***gross*** revenue for the startercreditdirect.com website is estimated to be $508,032.56 ($419,067 for $99 application fee collected from 4,592 applications from January 22, 2008 through July 31, 2010 + $88,965.56 for recurring revenue fees from February 1, 2008 to July 31, 2010).  The total amount of ***net*** revenue for the startercreditdirect.com website from February 2008 to July 2010 is approximately $24,661.03.  For the period beginning October 2008 to July 31, 2010, gross revenue attributable to the startercreditdirect.com website is estimated to be $139,467 (1,001 applications @ $99 plus recurring revenue estimated at $40,368.08).

**FTC's contentions:  First, as described above, the request seeks relevant and discoverable information in a manner that is not overbroad, unduly burdensome, or unreasonable.  The amount of revenue EDP received from Defendants' violative practices goes directly to the determination of an**

appropriate compensatory remedy in this proceeding.  Similarly, the number of affected consumers is relevant to the scope of Defendants' violations and their defense of substantial compliance.  As described in the FTC's Contentions Re. Request for Production No. 3, herein incorporated by reference, discovery should permitted on all of EDP's marketing of the Century Platinum shopping club.  Moreover, the FTC is entitled to this information anyway pursuant to Section V of the Final Order.

Defendants' response fails to provide responsive information as to the revenue obtained from the marketing of Century Platinum through shopping club sites other than startercreditdirect.com.  Indeed, Defendants' answer to part (c) is a calculation of undisclosed, underlying figures – regarding total recurring revenue from Century Platinum, the information the FTC sought – that is obviously in Defendants' possession.

Second, the request is not duplicative of previously produced information.  Notably, Defendants do not identify any such responsive information.

Third, the fact that an interrogatory requests financial information is not a basis for not responding to that discovery.  To the extent Defendants seek protection of such information, it is their burden to show good cause.

The FTC in its meet-and-confer letter provided defense counsel with the proper standards for such a protective order, as set out *FTC v. Burnlounge, Inc.*,  Case 2:07-cv-03654-GW-FMO (C.D. Cal. March 3, 2008).  (Tucci Decl. Att. 9.)

Fourth, Defendants raise the frivolous claim that certain terms are vague and ambiguous and then construe these terms contrary to their plain meaning in order to avoid a complete response.  For example, Defendants construe "applied for" to mean consumers who applied for membership in Century Platinum through startercreditdirect.com, even though the interrogatory specifically states that for "*each website* through which EDP marketed the Century Platinum shopping club . . . provide . . . [t]he number of consumers who applied for the Century Platinum shopping club."  Resp. to Int. 6 (emphasis added).  Defendants similarly raise a frivolous vagueness objection to the term "enrolled in" so as to limit the interrogatory contrary to its plain terms.

Defendants should be ordered to supplement their response and provide the requested information in full.

*Defendants' contentions:*

99

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Defendants incorporate by reference their contentions with regard to Request for Production No. 3, explaining the reasons why information concerning shopping catalog clubs generally and specifically with respect to EDP websites that marketed the Century Platinum product other than the StarterCreditDirect.com website are irrelevant to this lawsuit.  Defendants also incorporate by this same reference the reasons why Defendants did not violate Section V.A. of the Final Order.  In addition, Defendants object to subpart B to the extent it requests information in the possession, custody or control of third party fulfillment companies that offered the products sold.  The FTC has also been subsequently supplied with the underlying recurring revenue figures from Century Platinum.  Next, the request is duplicative of information provided by Defendants in response to the FTC's July 23, 2009 Request for Documents and Information. Reilly Decl., Att. 7 [Defendants' Response to FTC Request for Documents and Information] (see Responses to Request 5.f.  listing SuperEliteOffer.com website and Request 8, including all subparts).  Lastly, the FTC's response to Defendants' vague objections is nonsensical.  How Defendants have interpreted the ambiguous phrases "applied for" and "enrolled in" has nothing to do with the FTC's request regarding "each website."  As explained above, Defendants object to "each website" on relevancy grounds.*

100

Int. 7:  Describe in detail all steps you took to ensure that your marketing of the Century Platinum shopping club did not misrepresent any material fact and/or fail to disclose the material attributes of the product or service offered or marketed.

Response:  Subject to and without waiver of the foregoing General Objections, each of which is expressly incorporated herein, Defendants further object to Interrogatory No. 7 on the following grounds:  First, the interrogatory is overbroad, unduly burdensome and unreasonable to the extent it seeks information that is neither relevant to the claims against Defendants in the contempt proceeding nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, to the extent the interrogatory requests information about marketing of the Century Platinum shopping catalog product through websites other than startercreditdirect.com, it requests information outside the scope of this contempt proceeding.  The FTC's contempt application was solely directed at EDP's marketing of the Century Platinum shopping catalog product on the startercreditdirect.com website. Second, Defendants further object to this interrogatory to the extent that it is duplicative of discovery obtained by Plaintiff from Defendants prior to the filing of its Application for an Order to Show Cause Why Defendants Should Not Be Held in Contempt and in response to the FTC's July 23, 2009 request for information and documents to monitor Defendants'

101

compliance with the Final Order.  Third, Defendants object to this interrogatory on the grounds that it calls for information protected by the attorney-client privilege and/or work product protection.  Fourth, the interrogatory requires Defendants to draw a legal conclusion as to the meaning of the phrases "material fact" and "material attributes" and for this reason is also vague and ambiguous.

Subject to and without waiver of any of the foregoing General Objections and the foregoing specific objections, Defendants respond to the interrogatory as follows: Defendants exercise the option to produce documents in response to this interrogatory.  Documents that Defendants consider confidential will be produced following the execution by the parties to the litigation and the entry by the Court of a suitable stipulation and protective order limiting the dissemination of those documents.  Documents previously produced in connection with Defendants' Opposition to the FTC's Contempt Application will not be produced again.

Defendants further respond as follows:  Defendants internally review their marketing on a continuous basis to ensure that it complies with the law and the Final Order.  For example, they employ a full-time staff member who is responsible for reviewing and monitoring all EDP and affiliate sites for compliance with the law and the Final Order, which included the Starter Credit marketing when it was being marketed. Defendants also created a compliance checklist used

102

in monitoring these sites. EDP created the Internet Compliance Network ("ICN"), which assists consumers in making informed choices when purchasing products and services on the Internet.  The FTC was notified of EDP's ICN concept and provided links to the ICN home page. *See* www.icomplynet.com. The ICN icon is provided on all of EDP's websites, and was included on startercreditdirect.com. In their diligence to remain compliant, Defendants sought and received feedback from the FTC on various marketing creatives. Defendants worked closely with the FTC and Receiver during the receivership to ensure that EDP's marketing was in compliance with the law. In the months following entry of the Final Order, local FTC staff and Defendants worked on creatives for the Ultimate Platinum website, which served as a template for other EDP marketing creatives.  The FTC reviewed the Ultimate Platinum creatives (among various others) and offered feedback, comments, and suggestions. Defendants made the changes suggested by the FTC. Once the FTC and Defendants arrived at a mutually acceptable marketing creative for Ultimate Platinum, Defendants made corresponding changes to the Starter Credit Direct website at startercreditdirect.com (as well as other marketing pieces). In short, startercreditdirect.com was modeled after a marketing piece vetted by the FTC.  Defendant also voluntarily implemented changes to marketing material based on information that became available through FTC enforcement and

103

threatened enforcement actions  against unrelated and unaffiliated third parties. For example, defense counsel shared with Defendants information that David Vladeck, Director of the Bureau of Consumer Protection, expressed concern regarding the marketing of a line of credit that depicted a credit card because consumers did not actually receive a card. Upon learning of Mr. Vladeck's concerns, Defendants immediately and voluntarily made adjustments to their own marketing material, including changing the depiction of a credit card in their Ultimate Platinum marketing to a circle, so that consumers would not have the mistaken impression that they would be receiving a credit card in the mail. Defendants also changed their marketing to prominently display the words "limited" and "exclusive" upon learning that Mr. Vladeck preferred these terms.

The Starter Credit marketing itself demonstrates the steps Defendants took to ensure compliance with the Final Order, as described in response to Interrogatory No. 8, which is incorporated herein by reference.

**FTC's contentions:  First, as described above, the request seeks relevant and discoverable information in a manner that is not overbroad, unduly burdensome, or unreasonable.  The steps Defendants purportedly took to ensure that its marketing of the Century Platinum shopping club did not violate the Final Order goes directly to the FTC's claims as well as**

Defendants' substantial compliance defense.  *See* FTC's Contentions re. Request for Production No. 4, herein incorporated by reference.  Indeed, it is striking that even as Defendants claim that discovery should be limited to startercreditdirect.com, Defendants refer in the above response to the Ultimate Platinum shopping club website and to the changes Defendants made to "other marketing pieces."

Second, the request is not duplicative of previously produced information.  Notably, Defendants do not identify any such responsive information.

Third, Defendants object on the grounds of attorney-client privilege and/or work product but inexplicably failed to provide a privilege log describing the withheld documents, as required by Fed. R. Civ. P. 26(b)(5)(A).

Fourth, Defendants' claim that the terms "material fact" and "material attributes" are vague and ambiguous is groundless.

Fifth, Defendants claim to "exercise the option" to produce documents in lieu of providing requested information, but Defendants fail to "specify[ ] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could."  Fed. R. Civ. P. 33(d).  In fact, Defendants specify no documents.

105

**Sixth, Defendants' claims that certain terms are vague and ambiguous are without merit.**

**Defendants should be ordered to supplement their response and provide the requested information in full.**

*Defendants' contentions:*

*Defendants incorporate by reference their contentions with regard to Request for Production No. 3, explaining the reasons why information concerning shopping catalog clubs generally and specifically with respect to EDP websites that marketed the Century Platinum product other than the StarterCreditDirect.com website are irrelevant to this lawsuit. Defendants also incorporate by same reference Defendants' contentions regarding its substantial compliance defense. Next, the request is duplicative of information provided by Defendants in response to the FTC's July 23, 2009 Request for Documents and Information. Reilly Decl., Att. 7 [Defendants' Response to FTC Request for Documents and Information] (see Responses to Request 5.f. listing SuperEliteOffer.com website and Request 8, including all subparts). Upon further consideration, Defendants do not believe this request calls for privileged information. Lastly, Defendants have agreed to provide bates numbers to responsive documents.*

106

<u>Int. 8:</u>  If you contend that your marketing of the Century Platinum shopping club clearly and conspicuously (as defined in the Order) disclosed the material attributes of the product or service offered or marketed:

    a.      Identify all such marketing, including the dates that marketing was live or in use.

    b.      Identify all documents and communications that support your contention.

    c.      State all facts that support your contention.

<u>Response:</u>  Subject to and without waiver of the foregoing General Objections, each of which is expressly incorporated herein, Defendants further object to Interrogatory No. 8 on the following grounds:  First, the interrogatory is overbroad, unduly burdensome and unreasonable to the extent it seeks information that is neither relevant to claims against Defendants in the contempt proceeding nor reasonably calculated to lead to the discovery of admissible evidence.  Specifically, to the extent the interrogatory requests information about marketing of the Century Platinum shopping catalog product through websites other than startercreditdirect.com, it requests information outside the scope of this contempt proceeding.  The FTC's contempt application was solely directed at EDP's marketing of the Century Platinum shopping catalog product on the

107

startercreditdirect.com website. Second, Defendants object to this interrogatory on

the grounds that it is compound and comprised of three (3) separate interrogatories.

Therefore, for purposes of Federal Rule of Civil Procedure 33(a)(1), each of the

discrete subparts of Interrogatory No. 8 shall be counted toward the FTC's limit of

twenty-five (25) written interrogatories.  Third, Defendants further object to this

interrogatory to the extent that it is duplicative of discovery obtained by Plaintiff

from Defendants prior to the filing of its Application for an Order to Show Cause

Why Defendants Should Not Be Held in Contempt and in response to the FTC's

July 23, 2009 request for information and documents to monitor Defendants'

compliance with the Final Order. Fourth, Defendants object to this interrogatory on

the grounds that it calls for information protected by the attorney-client privilege

and/or work product protection.  Fifth, the interrogatory requires Defendants to

draw a legal conclusion as to the meaning of the phrases "material fact" and

"material attributes" and for this reason is also vague and ambiguous.  The term

"live and in use" is also vague and ambiguous.  Defendants interpret this phrase to

mean live on the internet and capable of accepting applications.

    Subject to and without waiver of any of the foregoing General Objections

and the foregoing specific objections, Defendants respond to this interrogatory as

follows: Defendants exercise the option to produce documents in response to

subparts (a) to (c) of this interrogatory, which documents shall include, but are not limited to, Defendants' Opposition to the Application for an Order to Show Cause Why Defendants Should Not Be Held in Contempt, and the documents, communications and declarations provided to the FTC and the Court filed concurrently therewith, a document with links to the startercreditdirect.com creatives that were marketed to consumers, live on the internet, and capable of accepting applications, documents and communications in the possession of the FTC and/or Receiver related to startercreditdirect.com during the receivership and thereafter, documents and communications in the possession of the FTC and/or Receiver regarding the Ultimate Platinum website and marketing, and documents previously produced to the FTC in response to the FTC's July 23, 2009 request for information and documents to monitor Defendants' compliance with the Final Order. Documents that Defendants consider confidential will be produced following the execution by the parties to the litigation and the entry by the Court of a suitable stipulation and protective order limiting the dissemination of those documents. Documents previously produced in connection with Defendants' Opposition to the FTC's Contempt Application will not be produced again.

With respect to subpart (c) of this interrogatory, Defendants further respond by providing the following summary of facts: Startercreditdirect.com was a

109

website EDP used to advertise a line of credit in connection with an online shopping catalog club called Century Platinum, which was a product offered by a third party, Insite Marketing Group, LLC. EDP did not own or operate the Century Platinum shopping club or products sold through Century Platinum, did not set catalog prices, down payment amounts or methods, or determine catalog items. Insite did not provide this information to EDP, as EDP marketed a competitor product. EDP merely marketed the product for Insite based on information it received from Insite.  EDP did not have possession of the online catalog or have access to customer activity or complaints in connection with the shopping club (i.e., length of membership, membership cancellation/termination, credit offered and used, products purchased, down payments made, etc.). Accordingly, EDP had no way of  knowing the percentage of consumers who signed up and purchased product (or any details related to such purchases). All customer-related inquiries, complaints, product returns, etc. were directed to Insite. Further, EDP did not derive any revenue from the catalog purchases and had no reason to track them.

        The Starter Credit website clearly disclosed that it was offering a line of credit for a shopping club. An example of the pre-application webpage each consumer initially viewed when accessing the startercreditdirect.com website can be viewed at

https://builderimpact.com/FTCProd/century/startercreditdirect/20081015-

20080123/index_short.asp.  This webpage was short and could be viewed in its

entirety with minimal scrolling. Each consumer had to review this short pre-

application webpage first before they could proceed to the application process or

view any other information about the offer. The banner at the top of the page

stated, "Get Immediate Guaranteed $10,000 Credit Line[n]" and had a footnote

prominently displayed next to "Credit Line."  Footnote 1 specified that the credit

line was "[t]o Purchase Brand Name Merchandise Exclusively From Our Online

Mega-Store! ... This is a membership program and not a debit or credit card ....

Century Platinum allows account holder to make merchandise purchases

exclusively from its online shopping site." At the top right hand corner of the page,

it stated, "Finally a credit line that provides me with the purchasing power towards

great products."  Under the banner was a "Pre-Application" box for consumers to

fill in personal information juxtaposed next to EDP's Privacy Policy (in scrollable

form, without a hyperlink). In addition to the disclosures in Footnote 1, the short

pre-application page also contained hyperlinks to the Century Platinum Terms and

Conditions and Century Platinum's Privacy Policy.

  If a consumer inserted personal consumer data, checked the box that they

had "read, understood, and agree[d]" to EDP's Privacy Policy, and clicked the "Go

111

To Application" button, they were brought to an application webpage with additional information, disclosures, and options.  EDP's website statistics show that only 14 percent of visitors to the startercreditdirect.com website proceeded to the application webpage. That is, 86 percent of startercreditdirect.com visitors only viewed the short pre-application webpage.

An example of the application webpage can be viewed at https://builderimpact.com/FTCProd/century/startercreditdirect/20081015-20081023/index.asp. The application webpage contained the same banner stating, "Get an Immediate Guaranteed $10,000 Credit Line[n]" but also contained an orange banner about a cash advance offer across the top right hand corner of the page. The page also contained the same box for consumer information juxtaposed next to EDP's Privacy Policy, but this time the box was labeled "Application," rather than "Pre-Application," and the fields were pre-populated based on information consumers had input on the pre-application webpage.  Halfway down the webpage on the right side, before the request for bank account information, was a box containing prominent brand names such as Samsung, LG, Sony and iPod stating "Shop Major Brands and Products!"  Below that was a check box that consumers were required to check before submitting their application stating that they authorized EDP to electronically debit the $99 application fee and referencing

112

"Century Platinum," "the monthly membership fee by Century Platinum," "the Century Platinum Terms & Conditions," "membership usage fees," and "a membership kit with $10,000 credit line."  The further disclosure in Footnote 1 contained on the short pre-application page, as detailed above, appeared under this check box, along with the hyperlinks to the Century Platinum Terms and Conditions and Century Platinum's Privacy Policy.

Once a consumer signed up for Century Platinum membership, they received an electronic notice stating, "Congratulations [name]! You are now a Century Platinum account holder with a $10,000 line of credit to be used exclusively at www.centuryplatinum.com ... If a consumer did not intend to join Century Platinum, they could immediately cancel their order before it was processed. Consumers also received a membership kit by regular mail. Consumers had several days to cancel their order and receive a full refund after the $99 application fee posted to their accounts.

Defendants' compliance is also demonstrated through their communications with the FTC.  Defendants sought and received feedback from the FTC on various marketing creatives.  Defendants worked closely with the FTC and Receiver during the receivership to ensure that EDP's marketing was in compliance with the law. In the months following entry of the Final Order, local FTC staff and Defendants

113

worked on creatives for the Ultimate Platinum website, which served as a template for other EDP marketing creatives. The FTC reviewed the Ultimate

Platinum creatives (among various others) and offered feedback, comments, and suggestions.  Defendants made the changes suggested by the FTC. Once the FTC and Defendants arrived at a mutually acceptable marketing creative for Ultimate Platinum, Defendants made corresponding changes to the Starter Credit Direct website at startercreditdirect.com (as well as other marketing pieces). In short, startercreditdirect.com was modeled after a marketing piece vetted by the FTC.

Defendants' compliance is further reflected in the FTC's own actions. Marketing for the Century Platinum product at startercreditdirect.com began in July 2007 before the FTC action was filed. When the FTC action was filed on July 30,2007, Defendants produced all of its marketing material to the FTC. Inventory listings of material seized by the FTC created by the Receiver specifically included Starter Credit "website print-outs" and "banner samples." When the FTC action was filed, EDP's operations came to a halt. After the Court entered the TRO, Defendants and their counsel worked with the FTC and Court-appointed Receiver to modify EDP's marketing material to ensure its compliance with the law. The TRO provided that the Receiver was to "[cJontinue and conduct the business of the

114

[] Defendants in such manner, to such extent, and for such duration as the Temporary Receiver may in good faith deem to be necessary or appropriate to operate the business profitably and lawfully, if at all" and the "continuation and conduct of the business [was] conditioned upon the Temporary Receiver's good faith determination that the business can be lawfully operated ... " TRO, Section XVI.N.

Consistent with these provisions, on or about August 13, 2007, the FTC, Receiver, and Court, having found that EDP could be lawfully operated, permitted EDP to resume operations, which included the continued marketing of Starter Credit. EDP marketed Starter Credit throughout the receivership and supplied the Receiver with financial spreadsheets that expressly identified revenue being generated from the Starter Credit marketing. Moreover, the Receiver was provided a link to the Starter Credit marketing in September 2007.  Both the FTC and Receiver were well aware of the Starter Credit marketing beginning in at least August 2007 and allowed it to be marketed throughout the receivership. Defendants and the FTC also worked together post-Final Order to resolve consumer complaints specifically arising from the Starter Credit website.

If the Starter Credit product and marketing was a violation of the Final Order and FTC Act (i.e., it failed to "clearly and conspicuously" disclose the "material"

115

attributes of the product or service offered or marketed), then the FTC, having all of the information related to Starter Credit in its possession and control prior to entry of the Final Order, would have included this marketing in its initial enforcement action, would not have permitted Defendants to go back into business with this marketing in August 2007, and at the least, would have voiced concerns regarding this marketing during the receivership from August 2007 to January 2008.  Instead, the FTC knowingly allowed EDP to market Starter Credit and communicated with Defendants about other issues related to the Starter Credit website. The FTC even directed Defendants to continue marketing Starter Credit after Defendants voluntarily offered to cease the marketing in the event the marketing piece posed any concerns to the FTC.

The inevitable conclusion to be reached from these facts is that neither the FTC nor the Receiver believed that Starter Credit or the Starter Credit marketing was unlawful. Why else would the FTC not only allow, but direct, Defendants to continue the marketing if the Starter Credit marketing was such a blatant violation that purportedly caused significant consumer harm?  It would destroy all notions of fundamental fairness if the FTC could permit Defendants to go back into business with the Starter Credit marketing, knowingly allow Defendants to market Starter Credit during the receivership, allow Defendants to continue marketing Starter

116

Credit after entry of the Final Order– all without indicating any concern whatsoever about the marketing – and then pursue contempt nearly two and half years after the Final Order was entered.

**FTC's contentions:  First, as described above, the request seeks relevant and discoverable information in a manner that is not overbroad, unduly burdensome, or unreasonable.  Whether Defendants' marketing of the Century Platinum shopping club, through startercreditdirect.com and other EDP websites, made clear and conspicuous disclosures as required by the Final Order goes directly to the FTC's claims as well as Defendants' substantial compliance defense.  *See* FTC's Contentions re. Request for Production No. 4, herein incorporated by reference.  Indeed, it is striking that even as Defendants claim that discovery should be limited to startercreditdirect.com, Defendants refer in the above response to the Ultimate Platinum shopping club website and to the changes Defendants made to "other marketing pieces."**

**Second, the request is not duplicative of previously produced information.  Notably, Defendants do not identify any such responsive information.**

117

**Third, Defendants object on the grounds of attorney-client privilege and/or work product but inexplicably failed to provide a privilege log describing the withheld documents, as required by Fed. R. Civ. P. 26(b)(5)(A).**

**Fourth, Defendants' claim that the terms "material fact" and "material attributes" are vague and ambiguous is groundless.**

**Fifth, Defendants claim to "exercise the option" to produce documents in lieu of providing requested information, but Defendants fail to "specify[ ] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could."  Fed. R. Civ. P. 33(d).  Instead, Defendants generally refer to virtually every document in the case, including pre-Order documents held by the Receiver during the receivership.**

**Sixth, Defendants refer to "examples" of webpages posted on a secure website link.  However, the link does not work, and Defendants have failed to remedy this as promised in the discovery conference.  (*See* Tucci Decl. ¶ 11.)**

**Defendants should be ordered to supplement their response and provide the requested information in full.**

*Defendants' contentions:*

118

*Defendants incorporate by reference their contentions with regard to Request for Production No. 3, explaining the reasons why information concerning shopping catalog clubs generally and specifically with respect to EDP websites that marketed the Century Platinum product other than the StarterCreditDirect.com website are irrelevant to this lawsuit. Defendants also incorporate by same reference Defendants' contentions regarding its substantial compliance defense. Next, the request is duplicative of information provided by Defendants in response to the FTC's July 23, 2009 Request for Documents and Information. Reilly Decl., Att 7 [Defendants' Response to FTC Request for Documents and Information] (see Responses to Request 5.f. listing SuperEliteOffer.com website and Request 8, including all subparts). Upon further consideration, Defendants do not believe this request calls for privileged information. Further, Defendants have agreed to provide bates numbers to responsive documents. Lastly, Defendants have provided a document with hyperlinked creatives for the StarterCreditDirect.com website, which should have obviated any concerns the FTC raised with respect to "examples" provided in Defendants' response to Interrogatory No. 8. In fact, the FTC deposed Mr. Desa regarding these hyperlinks and their authenticity.*

119

<u>Int. 10</u>:  If you contend that the Receiver and/or the FTC represented to you

at any time after the Complaint that your marketing of the Century Platinum

shopping club complied with the Order:

      a.      Identify every such representation.

      b.      Identify all documents and communications that support your

             contention.

      c.      State all facts that support your contention.

<u>Response</u>:  Subject to and without waiver of the foregoing General

Objections, each of which is expressly incorporated herein, Defendants further

object to Interrogatory No. 10 on the following grounds:  First, the interrogatory is

overbroad, unduly burdensome and unreasonable, to the extent it seeks information

that is neither relevant to the claims against Defendants in the contempt proceeding

nor reasonably calculated to lead to the discovery of admissible evidence.

Specifically, to the extent the interrogatory requests information about marketing

of the Century Platinum shopping catalog product through websites other than

startercreditdirect.com, it requests information outside the scope of this contempt

proceeding.  The FTC's contempt application was solely directed at EDP's

marketing of the Century Platinum shopping catalog product on the

startercreditdirect.com website. Second, Defendants object to this interrogatory on

the grounds that it is compound and comprised of three (3) separate interrogatories. Therefore, for purposes of Federal Rule of Civil Procedure 33(a)(1), each of the discrete subparts of Interrogatory No. 10 shall be counted toward the FTC's limit of twenty-five (25) written interrogatories.  Third, Defendants object to this interrogatory on the grounds that it calls for information protected by the attorney-client privilege and/or work RFP 1product protection.  Fourth, Defendants object to this interrogatory on the grounds that it calls for information that is in the possession and knowledge of the FTC and Receiver.

Subject to and without waiver of any of the foregoing General Objections and the foregoing specific objections, Defendants respond to this interrogatory as follows: Defendants exercise the option to produce documents in response to subparts (a) to (c) of this interrogatory, which documents shall include, but are not limited to, Defendants' Opposition to the Application for an Order to Show Cause Why Defendants Should Not Be Held in Contempt, and the documents, communications and declarations provided to the FTC and the Court filed concurrently therewith, documents and communications in the possession of the FTC and/or Receiver related to startercreditdirect.com during the receivership and thereafter, documents and communications in the possession of the FTC and/or Receiver regarding the Ultimate Platinum website and marketing, and documents

previously produced to the FTC in response to the FTC's July 23, 2009 request for

information and documents to monitor Defendants' compliance with the Final

Order.  Documents that Defendants consider confidential will be produced

following the execution by the parties to the litigation and the entry by the Court of

a suitable stipulation and protective order limiting the dissemination of those

documents.  Documents that Defendants consider confidential will be produced

following the execution by the parties to the litigation and the entry by the Court of

a suitable stipulation and protective order limiting the dissemination of those

documents. Documents previously produced in connection with Defendants'

Opposition to the FTC's Contempt Application will not be produced again.

With respect to subpart (c) of this interrogatory, Defendants further respond

by incorporating herein by reference their responses to Interrogatory Nos. 7-8, and

the portions of their response to Interrogatory No. 9 related to the

startercreditdirect.com marketing.

**FTC's contentions:  The FTC incorporates by reference its contentions
with regard to Defendants' response to Int. 8.  Defendants should be required
to provide the requested information in full.**

*Defendants' contentions:*

*Defendants incorporate by reference their contentions with regard to*

*Interrogatory No. 8.*

Int. 11:   If you contend that, at any time after the Complaint, you reasonably relied on representations by the Receiver and/or the FTC that your marketing of the Century Platinum shopping club complied with the Order:

      a.      Identify every representation on which you contend that you reasonably relied.

      b.      Identify all documents and communications that support your contention.

      c.      State all facts that support your contention.

Response:   Subject to and without waiver of the foregoing General Objections, each of which is expressly incorporated herein, Defendants further object to Interrogatory No. 11 on the following grounds:  First, the interrogatory is overbroad, unduly burdensome and unreasonable, to the extent it seeks information that is neither relevant to the claims against Defendants in the contempt proceeding nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, to the extent the interrogatory requests information about marketing of the Century Platinum shopping catalog product through websites other than startercreditdirect.com, it requests information outside the scope of this contempt proceeding.  The FTC's contempt application was solely directed at EDP's

123

marketing of the Century Platinum shopping catalog product on the

startercreditdirect.com website. Second, Defendants object to this interrogatory on

the grounds that it is compound and consists of three (3) separate interrogatories.

Therefore, for purposes of Federal Rule of Civil Procedure 33(a)(1), each of the

discrete subparts of Interrogatory  No. 11 shall be counted toward the FTC's limit

of twenty-five (25) written interrogatories.  Third, Defendants object to this

interrogatory on the grounds that it calls for information protected by the RFP

1attorney-client privilege and/or work RFP 1product protection

Subject to and without waiver of any of the foregoing General Objections

and the foregoing specific objections, Defendants respond to this interrogatory as

follows: Defendants exercise the option to produce documents in response to

subparts (a) to (c) of this interrogatory, which documents shall include, but are not

limited to, Defendants' Opposition to the Application for an Order to Show Cause

Why Defendants Should Not Be Held in Contempt, and the documents,

communications and declarations provided to the FTC and the Court filed

concurrently therewith, documents and communications in the possession of the

FTC and/or Receiver related to startercreditdirect.com during the receivership and

thereafter, documents and communications in the possession of the FTC and/or

Receiver regarding the Ultimate Platinum website and marketing, and documents

124

previously produced to the FTC in response to the FTC's July 23, 2009 request for information and documents to monitor Defendants' compliance with the Final Order.  Documents that Defendants consider confidential will be produced following the execution by the parties to the litigation and the entry by the Court of a suitable stipulation and protective order limiting the dissemination of those documents.  Documents that Defendants consider confidential will be produced following the execution by the parties to the litigation and the entry by the Court of a suitable stipulation and protective order limiting the dissemination of those documents. Documents previously produced in connection with Defendants' Opposition to the FTC's Contempt Application will not be produced again.

With respect to subpart (c) of this interrogatory, Defendants further respond by incorporating herein by reference their responses to Interrogatory Nos. 7-8, and the portions of their response to Interrogatory No. 9 related to the startercreditdirect.com marketing.

**FTC's contentions:  The FTC incorporates by reference its contentions with regard to Defendants' response to Int. 8.  In addition, Defendants did not previously produce the requested information and notably fail to identify such information.  If Defendants have previously provided responsive information, they should specifically identify it.**

125

**Defendants should be ordered to supplement their response and produce the requested information in full.**

*Defendants' contentions:*

*Defendants incorporate by reference their contentions with regard to Interrogatory No. 8.  The request is duplicative of information provided by Defendants in response to the FTC's July 23, 2009 Request for Documents and Information.  See Reilly Decl., Att. 7 [Defendants' Response to FTC Request for Documents and Information] (see Responses to Request 5.f.  listing SuperEliteOffer.com website and Request 8, including all subparts).*

RFP 1:  Produce all non-identical versions of marketing, including creatives, for the following:

    a.     Starter Credit Direct

    b.     Century Platinum shopping club

    c.     USA Benefits/USA shopping club

    d.     E-Elite Plus shopping club

    e.     ePlatinum+ shopping club

    f.     Any other shopping club

Response:  Subject to, and without waiver of the foregoing General Objections, each of which is expressly incorporated herein, Defendants further

126

object to Request for Production No. 1 on the following grounds:  First, the request

is overbroad, unduly burdensome and unreasonable, and seeks documents that are

neither relevant to the claims against Defendants in the contempt proceeding nor

reasonably calculated to lead to the discovery of admissible evidence.  Specifically,

the request seeks documents concerning the marketing of shopping clubs other

than EDP's marketing of the Century Platinum shopping catalog product on the

startercreditdirect.com website (subparts a and b).  *See* subparts c-f.  The FTC's

contempt application, however, was solely directed at EDP's marketing of the

Century Platinum shopping catalog product on the startercreditdirect.com website.

Accordingly, documents concerning other shopping catalog clubs that EDP may

have advertised are irrelevant and beyond the scope of this contempt proceeding.

Second, Defendants object to this request to the extent that it is duplicative of

discovery obtained by Plaintiff from Defendants prior to the filing of its

Application for an Order to Show Cause Why Defendants Should Not Be Held in

Contempt and in response to the FTC's July 23, 2009 request for information and

documents to monitor Defendants' compliance with the Final Order.  Third, the

request is objectionable on the grounds that it is vague and ambiguous to the extent

that it implies that there were unique or separate shopping catalog clubs called

Starter Credit Direct, E-Elite Plus, or ePlatinum.  Fourth, the phrase "Starter Credit

Direct" is vague and ambiguous.  Defendants understand the phrase "Starter Credit Direct" to mean EDP's startercreditdirect.com website, and specifically in connection with the Century Platinum shopping catalog product.

Subject to and without waiver of any of the foregoing General Objections and the foregoing specific objections, Defendants will produce non-privileged, responsive documents in their possession, custody and control responsive to subparts (a) and (b) showing the startercreditdirect.com creatives that were marketed to consumers, live on the internet, and capable of accepting applications for the Century Platinum shopping catalog product.  Documents that Defendants consider confidential will be produced following the execution by the parties to the litigation and the entry by the Court of a suitable stipulation and protective order limiting the dissemination of those documents.

**FTC's contentions:  The FTC incorporates by reference its contentions with regard to Defendants' response to RFP 3.  Defendants should be ordered to supplement their response and produce all of the requested documents.**

*Defendants' contentions:*

*Defendants incorporate by reference their contentions with regard to Request for Production No. 3.*

128

<u>RFP 2:</u>  For each of the programs or products listed in RFP 1, produce all non-identical terms and conditions.

<u>Response:</u>    Subject to and without waiver of the foregoing General Objections, each of which is expressly incorporated herein, Defendants further object to Request for Production No. 2 on the following grounds:  First, the request is overbroad, unduly burdensome and unreasonable, and seeks documents that are neither relevant to the RFP 1claims against Defendants in the contempt proceeding nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, the request seeks documents concerning the terms and conditions of shopping clubs other than the Century Platinum shopping catalog product marketed on the startercreditdirect.com website (subparts a and b of Request for Production No. 1).  *See* subparts c-f.  The FTC's contempt application, however, was solely directed at EDP's marketing of the Century Platinum shopping catalog product on the startercreditdirect.com website.  Accordingly, documents concerning other shopping catalog clubs that EDP may have advertised are irrelevant and beyond the scope of this contempt proceeding.  Second, Defendants object to this request to the extent that it is duplicative of discovery obtained by Plaintiff from Defendants prior to the filing of its Application for an Order to Show Cause Why Defendants Should Not Be Held in Contempt and in response to the

129

FTC's July 23, 2009 request for information and documents to monitor Defendants' compliance with the Final Order.  Third, the request is objectionable on the grounds that it is vague and ambiguous to the extent that it implies that there were shopping catalog clubs called Starter Credit Direct, E-Elite Plus, or ePlatinum RFP 1with unique and separate terms and conditions.  Fourth, the phrase "Starter Credit Direct" is vague and ambiguous.  Defendants understand the phrase "Starter Credit Direct" to mean EDP's startercreditdirect.com website, and specifically in connection with the Century Platinum shopping catalog product.

Subject to and without waiver of any of the foregoing General Objections and the foregoing specific objections, Defendants will produce non-privileged, responsive documents in their possession, custody and control RFP 1related to the marketing of the Century Platinum shopping catalog product on the startercreditdirect.com website.  Documents that Defendants consider confidential will be produced following the execution by the parties to the litigation and the entry by the Court of a suitable stipulation and protective order limiting the dissemination of those documents.

**FTC's contentions:  The FTC incorporates by reference its contentions with regard to Defendants' response to RFP 3.  Defendants should be ordered to supplement their response and produce all of the requested documents.**

130

*Defendants' contentions:*

*Defendants incorporate by reference their contentions with regard to Request for Production No. 3.*

RFP 3: [See Part IV.A above, which addresses RFP 3]

RFP 4:  For each of the programs or products listed in RFP 1, produce all complaints, requests for refunds, and requests for credits.

Response:  Subject to and without waiver of the foregoing General Objections, each of which is expressly incorporated herein, Defendants further object to Request for Production No. 4 on the following grounds:  First, the request is overbroad, unduly burdensome and unreasonable, and seeks documents that are neither relevant to the RFP 1claims against Defendants in the contempt proceeding nor reasonably calculated to lead to the discovery of admissible evidence.  Specifically, the request seeks documents related to complaints regarding shopping clubs other than the Century Platinum shopping catalog product marketed on the startercreditdirect.com website (subparts a and b of Request for Production No. 1).  *See* subparts c-f.  The FTC's contempt application, however, was solely directed at EDP's marketing of the Century Platinum shopping catalog product on the startercreditdirect.com website.  Accordingly, documents concerning other shopping catalog clubs that EDP may have advertised are irrelevant and beyond the

131

scope of this contempt proceeding.  Second, Defendants object to this request to the extent that it is duplicative of discovery obtained by Plaintiff from Defendants prior to the filing of its Application for an Order to Show Cause Why Defendants Should Not Be Held in Contempt and in response to the FTC's July 23, 2009 request for information and documents to monitor Defendants' compliance with the Final Order.  Third, the request is objectionable on the grounds that it is vague and ambiguous to the extent that it implied that there were unique or separate shopping catalog clubs called Starter Credit Direct, E-Elite Plus, or ePlatinum.  Fourth, the phrase "Starter Credit Direct" is vague and ambiguous.  Defendants understand the phrase "Starter Credit Direct" to mean EDP's startercreditdirect.com website, and specifically in connection with the Century Platinum shopping catalog product.

Subject to and without waiver of any of the foregoing General Objections and the foregoing specific objections, Defendants will produce non-privileged, responsive documents in their possession, custody and control RFP 1related to the marketing of the Century Platinum shopping catalog product on the startercreditdirect.com website.  Documents that Defendants consider confidential will be produced following the execution by the parties to the litigation and the

entry by the Court of a suitable stipulation and protective order limiting the

dissemination of those documents.

**FTC's contentions:  The FTC incorporates by reference its contentions**

**with regard to Defendants' response to RFP 3.  Defendants should be ordered**

**to supplement their response and produce all of the requested documents.**

*Defendants' contentions:*

*Defendants incorporate by reference their contentions with regard to*

*Request for Production No. 3.*

RFP 5:  Produce documents sufficient to show the number of consumers

who applied (from a website or other marketing by or on behalf of Defendants) for

each of the programs or products listed in RFP 1.

Response:  Subject to and without waiver of the foregoing General

Objections, each of which is expressly incorporated herein, Defendants further

object to Request for Production No. 5 on the following grounds:  First, the request

is overbroad, unduly burdensome and unreasonable, and seeks documents that are

neither relevant to the RFP 1claims against Defendants in the contempt proceeding

nor reasonably calculated to lead to the discovery of admissible evidence.

Specifically, the request seeks documents related to applications for shopping clubs

other than the Century Platinum shopping catalog product marketed on the

startercreditdirect.com website (subparts a and b of Request for Production No. 1). *See* subparts c-f.  The FTC's contempt application, however, was solely directed at EDP's marketing of the Century Platinum shopping catalog product on the startercreditdirect.com website.  Accordingly, documents concerning other shopping catalog clubs that EDP may have advertised are irrelevant and beyond the scope of this contempt proceeding.  Second, Defendants object to this request to the extent that it is duplicative of discovery obtained by Plaintiff from Defendants prior to the filing of its Application for an Order to Show Cause Why Defendants Should Not Be Held in Contempt and in response to the FTC's July 23, 2009 request for information and documents to monitor Defendants' compliance with the Final Order.  Third, the request is objectionable on the grounds that it is vague and ambiguous to the extent that it implied that there were unique or separate shopping catalog clubs called Starter Credit Direct, E-Elite Plus, or ePlatinum.  Fourth, the request is vague and ambiguous with respect to the phrases "documents sufficient to show" and "applied for" because not all consumers who apply for a shopping club actually pay for or gain membership.  Defendants interpret "applied for" to mean consumers who filled out and submitted an online application for the Century Platinum shopping catalog club on EDP's startercreditdirect.com website, regardless of whether EDP collected the $99 application fee.  Fifth, this request is

134

duplicative of Interrogatory 6(a), which requests the total number of consumers who "applied for" the Century Platinum website from January 22, 2008 to July 31, 2010.  Defendants have already provided a substantive response to Interrogatory 6(a).  Sixth, to the extent the FTC is requesting the production of each application, the request is unreasonable, unduly burdensome and harassing, as there were over 22,000 applications submitted during this time period.

Subject to and without waiver of any of the foregoing General Objections and the foregoing specific objections, Defendants will produce non-privileged, responsive documents, if any, in their possession, custody and control RFP 1related to the marketing of the Century Platinum shopping catalog product on the startercreditdirect.com website.  Documents that Defendants consider confidential will be produced following the execution by the parties to the litigation and the entry by the Court of a suitable stipulation and protective order limiting the dissemination of those documents.

**FTC's contentions:  The FTC incorporates by reference its contentions with regard to Defendants' response to RFP 3.  Further, Defendants' response to this RFP, as well as Int. 6, fails to provide responsive information as to the revenue obtained from the marketing of shopping clubs other than through startercreditdirect.com, and the information sought by the FTC is obviously**

135

**in Defendants' possession.  Moreover, the Final Order requires Defendants to maintain the requested consumer information and to produce such information on ten days' request from the FTC, so Defendants' suggestion that such a request is harassing is unfounded.   Finally, Defendants' claims that certain terms are vague and ambiguous are without merit.  Defendants should be ordered to supplement their response and provide the requested information in full.**

*Defendants' contentions:*

*Defendants incorporate by reference their contentions with regard to Request for Production No. 3, explaining the reasons why information concerning other shopping catalog club marketing or other EDP websites that marketed the Century Platinum product other than the StarterCreditDirect.com website are irrelevant to this lawsuit.  Defendants also incorporate by this same reference the reasons why Defendants did not violate Section V.A. of the Final Order.  Further, to the extent the FTC is requesting the production of each application, the request is unreasonable, unduly burdensome and harassing, as there were over 22,000 applications submitted during this time period.  The FTC does not dispute that it is seeking each application.*

RFP 6:   Produce documents sufficient to show the amount of revenue you received from marketing the programs or products listed in RFP 1.

Response:   Subject to and without waiver of the foregoing General Objections, each of which is expressly incorporated herein, Defendants further object to Request for Production No. 6 on the following grounds:  First, the request is overbroad, unduly burdensome and unreasonable, and seeks documents that are neither relevant to the RFP 1claims against Defendants in the contempt proceeding nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, the request seeks documents related to revenues from shopping clubs other than the Century Platinum shopping catalog product marketed on the startercreditdirect.com website (subparts a and b of Request for Production No. 1). *See* subparts c-f.  The FTC's contempt application, however, was solely directed at EDP's marketing of the Century Platinum shopping catalog product on the startercreditdirect.com website.  Accordingly, documents concerning other shopping catalog clubs that EDP may have advertised are irrelevant and beyond the scope of this contempt proceeding.  Second, Defendants object to this request to the extent that it is duplicative of discovery obtained by Plaintiff from Defendants prior to the filing of its Application for an Order to Show Cause Why Defendants Should Not Be Held in Contempt and in response to the FTC's July 23, 2009

137

request for information and documents to monitor Defendants' compliance with the Final Order.  Third, the request is objectionable on the grounds that it is vague and ambiguous to the extent that it implied that there were unique or separate shopping catalog clubs called Starter Credit Direct, EElite Plus, or ePlatinum. Fourth, the request is vague and ambiguous with respect to the phrases "documents sufficient to show" and "amount of revenue," which is undefined and can be taken to refer to gross revenue or net revenue.  Fifth, this request is duplicative of Interrogatory No. 6(c), which requests the total amount of revenue received by EDP for the Century Platinum shopping catalog club on the startercreditdirect.com website from January 22, 2008 to July 31, 2010.  Defendants have already provided a substantive response to Interrogatory No. 6(c).

Subject to and without waiver of any of the foregoing General Objections and the foregoing specific objections, Defendants will produce non-privileged, responsive documents in their possession, custody and control, if any, related to the marketing of the Century Platinum shopping catalog product on the startercreditdirect.com website.  Documents that Defendants consider confidential will be produced following the execution by the parties to the litigation and the entry by the Court of a suitable stipulation and protective order limiting the dissemination of those documents.

138

**FTC's contentions:  The FTC incorporates by reference its contentions with regard to Defendants' response to RFP 3.  Further, Defendants' response to this RFP, as well as Int. 6, fails to provide responsive information as to the revenue obtained from the marketing of Century Platinum through shopping club sites other than startercreditdirect.com, and the information sought by the FTC is obviously in Defendants' possession.  To the extent that any responsive documents already have been produced, Defendants can specifically refer to those documents.  Finally, Defendants' claims that certain terms, such as "revenue," are vague and ambiguous are without merit. Defendants should be ordered to supplement their response and provide the requested information in full.**

*Defendants' contentions:*

*Defendants incorporate by reference their contentions with regard to Request for Production No. 3, explaining the reasons why information concerning other shopping catalog club marketing or other EDP websites that marketed the Century Platinum product other than the StarterCreditDirect.com website are irrelevant to this lawsuit.  The request is duplicative of information provided by Defendants in response to the FTC's July 23, 2009 Request for Documents and Information.  See Reilly Decl., Att. 7 [Defendants' Response to FTC Request for*

139

*Documents and Information] (see Responses to Request 5.f.  listing*

*SuperEliteOffer.com website and Request 8, including all subparts).*

RFP 7:  Produce documents sufficient to show the amount of fees charged to consumers who applied (from a website or other marketing by or on behalf of Defendants) for each of the programs or products listed in RFP 1.

Response:  Subject to and without waiver of the foregoing General Objections, each of which is expressly incorporated herein, Defendants further object to Request for Production No. 7 on the following grounds:  First, the request is overbroad, unduly burdensome and unreasonable, and seeks documents that are neither relevant to the RFP 1 claims against Defendants in the contempt proceeding nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, the request seeks documents related to the amount of fees charged by EDP for shopping clubs other than the Century Platinum shopping catalog product marketed on the startercreditdirect.com website (subparts a and b of Request for Production No. 1).  *See* subparts c-f.  The FTC's contempt application, however, was solely directed at EDP's marketing of the Century Platinum shopping catalog product on the startercreditdirect.com website.  Accordingly, documents concerning other shopping catalog clubs that EDP may have advertised are irrelevant and beyond the scope of this contempt proceeding.  Second, Defendants

140

object to this request to the extent that it is duplicative of discovery obtained by Plaintiff from Defendants prior to the filing of its Application for an Order to Show Cause Why Defendants Should Not Be Held in Contempt and in response to the FTC's July 23, 2009 request for information and documents to monitor Defendants' compliance with the Final Order.  Third, the request is objectionable on the grounds that it is vague and ambiguous to the extent that it implied that there were unique or separate shopping catalog clubs called Starter Credit Direct, E-Elite Plus, or ePlatinum.  Fourth, the request is vague and ambiguous with respect to the phrases "documents sufficient to show" and "applied for" because not all consumers who apply for a shopping club actually pay for or gain membership. "Applied for" would mean consumers who filled out and submitted an online application for the Century Platinum shopping catalog club on EDP's startercreditdirect.com website, regardless of whether EDP collected the $99 application fee.  Defendants therefore interpret this request to mean the amount of fees EDP collected from startercreditdirect.com applications.  Fourth, the term "fees" is also vague and ambiguous because it could be interpreted to include revenues, making this request duplicative of Request No. 6.  Fifth, this request is duplicative of Interrogatory No. 6(b), which requests the total amount consumers

141

were charged by EDP along with any refunds, credits, or chargebacks.  Defendants have already provided a substantive response to Interrogatory No. 6(b).

Subject to and without waiver of any of the foregoing General Objections and the foregoing specific objections, Defendants will produce non-privileged, responsive documents in their possession, custody and control, if any, RFP 1related to the marketing of the Century Platinum shopping catalog product on the startercreditdirect.com website.  Documents that Defendants consider confidential will be produced following the execution by the parties to the litigation and the entry by the Court of a suitable stipulation and protective order limiting the dissemination of those documents.

**FTC's contentions:  The FTC incorporates by reference its contentions with regard to Defendants' response to RFP 3.  Further, Defendants' response to this RFP, as well as Int. 6, fails to provide responsive information as to the revenue obtained from the marketing of Century Platinum through shopping club sites other than startercreditdirect.com, and the information sought by the FTC is obviously in Defendants' possession.  Finally, Defendants frivolously claim that certain terms are vague and ambiguous and then construe such claims contrary to their plain meaning to limit Defendants'**

**response.  As noted in response to RFP 4,  Defendants should be ordered to supplement their response and provide the requested information in full.**

*Defendants' contentions:*

*Defendants incorporate by reference their contentions with regard to Request for Production No. 3, explaining the reasons why information concerning other shopping catalog club marketing or other EDP websites that marketed the Century Platinum product other than the StarterCreditDirect.com website are irrelevant to this lawsuit.  Further, the term "applied for" is vague and ambiguous because not all consumers who apply for a shopping club actually pay for or gain membership.*

RFP 11:  If you contend that your marketing of the Century Platinum shopping club clearly and conspicuously (as defined in the Order) disclosed the material attributes of the product or service offered or marketed, produce all documents that support your contention.

Response:  Subject to and without waiver of the foregoing General Objections, each of which is expressly incorporated herein, Defendants further object to Request for Production No. 11 on the following grounds:  First, the request is overbroad, unduly burdensome and unreasonable, to the extent it requests documents that are neither relevant to the RFP 1claims against Defendants

143

in this contempt proceeding nor reasonably calculated to lead to the discovery of admissible evidence.  Specifically, the request seeks documents about marketing of the Century Platinum shopping catalog product through websites other than startercreditdirect.com, it requests information outside of the scope of this contempt proceeding.  The FTC's contempt application was solely directed at EDP's marketing of the Century Platinum shopping catalog product on the startercreditdirect.com website.  Second, Defendants object to this request to the extent that it is duplicative of discovery obtained by Plaintiff from Defendants prior to the filing of its Application for an Order to Show Cause Why Defendants Should Not Be Held in Contempt and in response to the FTC's July 23, 2009 request for information and documents to monitor Defendants' compliance with the Final Order. Third, Defendants object to this request to the extent that it seeks documents previously disclosed to Plaintiff in connection with this contempt proceeding.

Subject to and without waiver of any of the foregoing General Objections and the foregoing specific objections, Defendants will produce non-privileged, responsive documents in their possession, custody and control RFP 1related to the marketing of the Century Platinum shopping catalog product on the startercreditdirect.com website.  Documents that Defendants consider confidential

144

will be produced following the execution by the parties to the litigation and the entry by the Court of a suitable stipulation and protective order limiting the dissemination of those documents.

**FTC's contentions:  The FTC incorporates by reference its contentions with regard to Defendants' response to Int. 8.  In addition, Defendants have not previously disclosed all marketing of Century Platinum through shopping club sites other than startercreditdirect.com, and the information sought by the FTC is obviously in Defendants' possession.   To the extent that any responsive documents already have been produced, Defendants can specifically refer to those documents.   Defendants should be ordered to supplement their response and provide the requested information in full.**

*Defendants' contentions:*

*Defendants incorporate by reference their contentions with regard to Request for Production No. 3, explaining the reasons why information concerning shopping catalog clubs generally and specifically with respect to EDP websites that marketed the Century Platinum product other than the StarterCreditDirect.com website are irrelevant to this lawsuit.  Next, the request is duplicative of information provided by Defendants in response to the FTC's July 23, 2009 Request for Documents and Information.  See Reilly Decl., Att. 7*

145

*[Defendants' Response to FTC Request for Documents and Information] (see Responses to Request 5.f. listing SuperEliteOffer.com website and Request 8, including all subparts).*

RFP 14:  If you contend that the Receiver and/or the FTC represented to you at any time after the Complaint that your marketing of the Century Platinum shopping club complied with the Order, produce all documents that support your contention.

Response:    Subject to and without waiver of the foregoing General Objections, each of which is expressly incorporated herein, Defendants further object to Request for Production No. 14 on the following grounds:  First, the request is overbroad, unduly burdensome and unreasonable, to the extent that it seeks documents that are neither relevant to the RFP 1claims against Defendants in this contempt proceeding nor reasonably calculated to lead to the discovery of admissible evidence.  Specifically, to the extent the request seeks documents about marketing of the Century Platinum shopping catalog product through websites other than startercreditdirect.com, it requests information outside the scope of this contempt proceeding.  The FTC's contempt application was solely directed at EDP's marketing of the Century Platinum shopping catalog product on the startercreditdirect.com website.  Second, Defendants object to this request to the

extent that it is duplicative of discovery obtained by Plaintiff from Defendants prior to the filing of its Application for an Order to Show Cause Why Defendants Should Not Be Held in Contempt and in response to the FTC's July 23, 2009 request for information and documents to monitor Defendants' compliance with the Final Order. Third, Defendants object to this request to the extent that it seeks documents previously disclosed to Plaintiff in connection with this contempt proceeding. Fourth, Defendants object to this Request to the extent it calls for documents in the FTC's possession, custody or control.

Subject to and without waiver of any of the foregoing General Objections and the foregoing specific objections, Defendants will produce non-privileged, responsive documents in their possession, custody and control. Documents that Defendants consider confidential will be produced following the execution by the parties to the litigation and the entry by the Court of a suitable stipulation and protective order limiting the dissemination of those documents.

**FTC's contentions:  The FTC incorporates by reference its contentions with regard to Defendants' response to Int. 8.  Moreover, Defendants have not previously disclosed such information and do not identify any such previously produced information, which is obviously in Defendants' possession.  To the extent that any responsive documents already have been produced,**

147

**Defendants can specifically refer to those documents.  Defendants should be ordered to supplement their response and provide the requested information in full.**

*Defendants' contentions:*

*Defendants incorporate by reference their contentions with regard to Request for Production No. 3, explaining the reasons why information concerning shopping catalog clubs generally and specifically with respect to EDP websites that marketed the Century Platinum product other than the StarterCreditDirect.com website are irrelevant to this lawsuit.  Next, the request is duplicative of information provided by Defendants in response to the FTC's July 23, 2009 Request for Documents and Information.  See Reilly Decl., Att. 7 [Defendants' Response to FTC Request for Documents and Information] (see Responses to Request 5.f.  listing SuperEliteOffer.com website and Request 8, including all subparts).*

RFP 15:  If you contend that, at any time after the Complaint, you reasonably relied on representations by the Receiver and/or the FTC that your marketing of the Century Platinum shopping club complied with the Order, produce all documents that support your contention.

148

Response:  Subject to and without waiver of the foregoing General

Objections, each of which is expressly incorporated herein, Defendants further

object to Request for Production No. 15 on the following grounds:  First, the

request is overbroad, unduly burdensome and unreasonable, to the extent it

requests documents that are neither relevant to the claims against Defendants in the

contempt proceeding nor reasonably calculated to lead to the discovery of

admissible evidence.  Specifically, to the extent the request seeks documents about

marketing of the Century Platinum shopping catalog product through websites

other than startercreditdirect.com, it requests information outside the scope of this

contempt proceeding.  The FTC's contempt application was solely directed at

EDP's marketing of the Century Platinum shopping catalog product on the

startercreditdirect.com website.  Second, Defendants object to this request to the

extent that it is duplicative of discovery obtained by Plaintiff from Defendants

prior to the filing of its Application for an Order to Show Cause Why Defendants

Should Not Be Held in Contempt and in response to the FTC's July 23, 2009

request for information and documents to monitor Defendants' compliance with

the Final Order. Third, Defendants object to this request to the extent it seeks

documents previously disclosed to Plaintiff in connection with this contempt

149

proceeding. Fourth, Defendants object to this Request to the extent it calls for documents in the FTC's possession, custody or control.

Subject to and without waiver of any of the foregoing General Objections and the foregoing specific objections, Defendants will produce non-privileged, responsive documents in their possession, custody and control**.**  Documents that Defendants consider confidential will be produced following the execution by the parties to the litigation and the entry by the Court of a suitable stipulation and protective order limiting the dissemination of those documents.

**FTC's contentions:  The FTC incorporates by reference its contentions with regard to Defendants' response to Int. 8.  Moreover, Defendants have not previously disclosed such information and do not identify any such previously produced information, which is obviously in Defendants' possession.  To the extent that any responsive documents already have been produced, Defendants can specifically refer to those documents.  Defendants should be ordered to supplement their response and provide the requested information in full.**        *Defendants' contentions:*

*Defendants incorporate by reference their contentions with regard to Request for Production No. 3, explaining the reasons why information concerning shopping catalog clubs generally and specifically with respect to EDP websites*

150

*that marketed the Century Platinum product other than the*

*StarterCreditDirect.com website are irrelevant to this lawsuit.  Next, the request is*

*duplicative of information provided by Defendants in response to the FTC's July*

*23, 2009 Request for Documents and Information.  See Reilly Decl., Att. 7*

*[Defendants' Response to FTC Request for Documents and Information] (see*

*Responses to Request 5.f.  listing SuperEliteOffer.com website and Request 8,*

*including all subparts).*

C. **Requests for Documents Re. Defendants' Marketing of "No Cost" Debit Cards Through Means Other Than Netspend Card Offered with ePlatinum+ Catalog Membership on ePlatinumDirect.com: RFPs 16, 17, 18, 19, 20, 21, 22, and 23**

RFP 16:  Produce all non-identical versions of your marketing (or marketing of others on your behalf), including creatives, for debit cards that were marketed with representations that they could be obtained for "no cost."

Response:  Subject to and without waiver of the foregoing General Objections, each of which is expressly incorporated herein, Defendants further object to Request for Production No. 16 on the following grounds:  First, the request is overbroad, unduly burdensome and unreasonable, to the extent it seeks documents that are neither relevant to the claims against Defendants in the contempt proceeding nor reasonably calculated to lead to the discovery of admissible evidence.  Specifically, to the extent the request seeks documents

151

related to the marketing of debit cards generally (if marketed with representations that they could be obtained for "no cost"), rather than the debit card offered by Netspend that EDP marketed in conjunction with the ePlatinum+ catalogue membership on ePlatinumDirect.com, it requests information outside the scope of this contempt proceeding.  The FTC's contempt application was solely directed EDP's marketing of the debit card offered by Netspend and marketed on ePlatinumDirect.com.  Accordingly, documents concerning other debit cards that EDP may have advertised are irrelevant and beyond the scope of this contempt proceeding.  The request is also overbroad, unduly burdensome, unreasonable, and harassing on the basis that it requests the "marketing of others on your behalf," which Defendants understand to mean affiliate marketing.  These documents are neither relevant to the claims against Defendants in this contempt proceeding nor reasonably calculated to lead to the discovery of admissible evidence.  Further, such documents, even if relevant, may not be in the possession, custody, or control of Defendants.  Second, Defendants object to this request to the extent that it is duplicative of discovery obtained by Plaintiff from Defendants prior to the filing of its Application for an Order to Show Cause Why Defendants Should Not Be Held in Contempt and in response to the FTC's July 23, 2009 request for information and documents to monitor Defendants' compliance with the Final Order. Third,

152

Defendants object to this request to the extent that it seeks documents previously disclosed to Plaintiff in connection with this contempt proceeding. Fourth, the phrase "could be obtained at no cost" is vague and ambiguous. Defendants presume this phrase to mean that consumers could physically obtain the debit card at no charge before activating it and loading it with funds.

Subject to and without waiver of any of the foregoing General Objections and the foregoing specific objections, Defendants will produce non-privileged, responsive documents in their possession, custody and control related to the debit card offered by Netspend that EDP marketed in conjunction with the ePlatinum+ catalogue membership on ePlatinumDirect.com. Documents that Defendants consider confidential will be produced following the execution by the parties to the litigation and the entry by the Court of a suitable stipulation and protective order limiting the dissemination of those documents.

**FTC's contentions: First, the request seeks relevant and discoverable information in a manner that is not overbroad, unduly burdensome, or unreasonable. Discovery should not be limited to the marketing of the debit card offered by Netspend that EDP marketed in conjunction with the ePlatinum+ membership on ePlatinumDirect.com. The FTC's Memorandum in Support of Its Show Cause Application put Defendants on notice of the**

153

nature of its contempt claims, including the FTC's allegation that their debit card marketing violated the Final Order.  EDP's potentially violative marketing of the same or similar "no cost" debit cards on various sites relates directly to Defendants' defense of substantial compliance, as the marketing used on these other sites may well indicate the pervasive nature of Defendants' violations and may undermine Defendants' arguments that any violations from their marketing of debit cards on ePlatinumDirect.com resulted from a brief aberration triggered by some type of technical glitch.  (Opp'n to Show Cause at 19:4-8)  Production of the requested discovery on "no cost" debit cards would certainly shed light on the scope of Defendants' violation. Finally, the Final Order requires Defendants to turn over all such information on ten days' notice to the FTC.

Second, the request is not duplicative of previously produced information, and Defendants do not identify any such responsive information. To the extent that any responsive documents already have been produced, Defendants can specifically refer to those documents.

Third, Defendants' claim that the term "could be obtained at no cost" is vague and ambiguous is without merit, as that language tracks language in Section I.D of the Final Order (barring Defendants from failing to clearly and

1
2
3
4

conspicuously disclose costs, fees or charges for debit cards in close proximity to statements representing that cards can be "obtained 'free,' without obligation, or at a reduced cost").

5
6
7

Defendants should be ordered to supplement their response and provide the requested information in full.

8

*Defendants' contentions:*

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

*The FTC had ample opportunity to pursue contempt on "other shopping catalog clubs," as well as other debit cards, but chose not to because it did not find such marketing objectionable. The Request is duplicative of prior discovery between the parties. The FTC has been on notice of Defendants' "other" shopping catalog club advertising since at least August 2009 when Defendants provided information about several EDP websites marketing shopping catalog club products, such as SuperEliteOffer.com (marketing the Century Platinum product), Vue3Source.com, ePlatinumDirect.com, AlliancePlatinumOffer.com, and UltimatePlatinum.com. Reilly Decl., Att. 7 [Defendants' Response to FTC's July 23, 2009 Request for Documents and Information] (see Responses to Requests 1.c., 2.c.ii., 3.e.ii., 4.f.ii., 5.e.ii., 5.f., 5.g.ii., 6.a., 6.d., 7.e., and 8.e.ii.). Similarly, since at least August 2009, the FTC has been on notice about at least nine EDP websites marketing debit cards at "no cost." Id. (see Responses to Requests 5.e.ii., 5.f.,*

27
28

155

6.a., 6.d., 7.c., 7.e., and 8.e.ii.).  In fact, over **one-third** of the FTC's July 23, 2009 Requests pertained to "no cost" debit cards (22 Requests in total).  Id. (see Responses to Requests 5-7 and all subparts).  Other shopping catalog and debit card products and advertising were also discussed during the depositions of Mssrs. Cleveland and Wilson in November 2009.  Reilly Decl., Att. 3 [Transcript of Paul Cleveland Deposition on November 17, 2009], pp. 39:2-40:14 (discussing EDP's other shopping catalog club websites); Reilly Decl., Att. 1 [Transcript of Bill Wilson Deposition on November 17, 2009], pp. 123:21-124:16 (discussing marketing of another no cost debit card); 106:21-108:4, 118:8-14, 119:24-121:6, 123:14-20, 129:5-9 (discussing EDP's other shopping catalog club websites).  The FTC did not seek further discovery regarding these shopping catalog and debit card advertisements and products in the several months preceding the filing of its contempt application.  Instead, it opted to pursue contempt for the Starter Credit and Netspend marketing pieces alone.

The FTC's argument that Defendants were put on notice of the expansion it now seeks is simply wrong and is a mischaracterization of the FTC's contempt application.  A plain reading of the FTC's contempt application demonstrates that the FTC only gave Defendants notice of the Century Platinum/Starter Credit and Netspend/ePlatinumDirect marketing.  The same is true of Defendants'

156

*communications with the FTC pre-contempt filing.  Mallow Decl.,¶ 5, Att. 8 [Email communications with FTC Attorney Zachary Hunter, Esq. on May 11 and 14, 2010 confirming that the FTC intends to move for contempt based only on the Starter Credit and Netspend marketing pieces].  All of the FTC's allegations are with regard to these two specific marketing pieces advertising two specific products (i.e., Defendants made material misrepresentations regarding the Century Platinum product and did not clearly and conspicuously disclose the nature of the product's credit line on the StarterCreditDirect.com website and the fees associated with the Netspend debit card on the ePlatinumDirect.com website).*

*It would be fundamentally unfair and unjust, not to mention a violation of due process, for the FTC to expand the scope of its contempt application at this stage of the proceedings.  Due process requires that Defendants receive sufficient notice to respond to the FTC's allegations and reasonable time to prepare a defense.  See International Union, UMWA v. Bagwell, 512 U.S. 821, 827 (1994); U.S. v. Powers, 629 F.2d 619, 626 (9th Cir. 1980) ("[T]he contemnor is entitled to necessary due process protections.…This circuit has held that in a contempt proceeding, whether denominated civil or criminal, the alleged contemnor is entitled to the procedural safeguards of notice and a reasonable time to prepare a defense."); see also Mercer v. Mitchell, 908 F.2d 763, 766-67 (11th Cir. 1990);*

*United States v. City of Yonkers*, 856 F.2d 444, 452 (2d Cir. 1988), rev'd on other grounds, 493 U.S. 265 (1990).  Defendants would not have sufficient time to retrieve and review responsive documents, amend their discovery responses, and prepare their trial brief due on October 29.  Mallow Decl., ¶ 7.

Accordingly, Defendants would be greatly prejudiced if the FTC's motion is granted, particularly in light of the remedies the FTC seeks (compensatory sanctions and modifications of the Final Order that would destroy the livelihoods of Mssrs. Cleveland and Wilson and put EDP out of business).  *See Federal Trade Commission v. Colgate-Palmolive Co.*, 380 U.S. 374, 391 (1965) (Court acknowledged that where the record does not put defendants on notice as to the possible violations and controversies, respondents can be "prejudicially misled"); *Grine v. Coombs*, 214 F.R.D. 312, 344, 365, 367 (W.D. Pa. 2003) (limiting scope of contempt inquiry to factual allegations raised by plaintiffs in their contempt motion "in order to allow all parties to properly prepare for the hearing and avoid unfair surprise" and noting that plaintiff's "ever-burgeoning" allegations of misconduct have the practical effect of convoluting matters, slowing the progress of proceedings, and prejudicing defendants); *TNT Marketing, Inc. v. Agresti*, 796 F.2d 276, 278-79 (9th Cir. 1986) (noting that where "the order to show cause [does] not provide adequate notice of possible liability . . . [t]he lack of such

158

*notice may" prejudice the defendant and remanding case because defendant was not on notice that he might be liable for damages).*

*Further, the contempt hearing has already been continued from October 15 to November 19, 2010, at the request of the FTC.  Defendants would be severely prejudiced if the contempt hearing was continued yet again.  Defendants are in negotiations to sell EDP to a bona fide third party purchaser.  This pending transaction has been held hostage due to the FTC's contempt application.  A further continuation of the contempt hearing could jeopardize the sale of EDP.  Mallow Decl., ¶ 8.*

*In an attempt to avoid these issues, the FTC claims that the requested discovery is relevant to Defendants' defense of substantial compliance, "and in particular whether the alleged Order violations pervaded Defendants' marketing of shopping and debit cards."  The FTC's argument is a non-starter and another red-herring because it misrepresents (or misconstrues) Defendants' substantial compliance defense.  As Defendants' lengthy discovery responses made clear, their substantial compliance argument pertains to the Starter Credit and Netspend marketing pieces as a whole and only with respect to the two websites at issue, StarterCreditDirect.com and ePlatinumDirect.com.  Tucci Decl., Att. 4, pps. 22-24, 28-30.  Specifically, Defendants argue that they have substantially complied with*

159

*the Final Order when considering the marketing elements on each page of the*

*StarterCreditDirect.com website.  Similarly, Defendants argue that the shortened*

*fee disclosure for the Netspend debit card was the result of a technical error, and*

*only appeared for two months, and that at all other times, the marketing on the*

*ePlatinumDirect.com website contained the proper fee disclosure.[24]*

*The FTC disingenuously claims that it needs to determine if Defendants'*

*"violative marketing" of shopping catalog clubs and debit cards is "pervasive"*

*and "widespread."  The FTC already knows that Defendants have not engaged in*

*"widespread violative marketing."  Defendants began marketing Starter Credit*

*even before the FTC filed its complaint.  Defendants continued to market Starter*

*Credit as well as other shopping catalog products under a Court-appointed*

*Receiver from July 30, 2007 to January 22, 2008 (when the Final Order was*

*signed), and thereafter.  During the Receivership, the FTC took and copied all of*

*Defendants' advertising.  Defs.' Exh. J [First Interim Report of Federal Court*

*Receiver dated November 2007]; Reilly Decl., Att. 4, pp. 42:20-43:5 [Draft*

*Transcript of Martha Ortega-Leon Deposition on September 30, 2010] ("[T]he*

---

[24] *The Starter Credit and Netspend marketing pieces were modeled after the*
*UltimatePlatinum.com website vetted by local FTC staff.  See, e.g., Tucci Decl.,*
*Att. 4 (Defendants' Response to Interrogatory No. 9), pp. 19-21, 24, 29.  That*
*marketing has already been provided to the FTC.  Defendants do not claim that the*
*Starter Credit or Netspend marketing was based on any other template or*
*marketing piece.*

160

*FTC took control of the office and had access to everything.").  Since this case*

*began in July 2007, Defendants' advertising has been under intense FTC scrutiny.*

*Had the FTC truly believed that Defendants were engaging in "widespread*

*violative marketing," neither it nor the Receiver would have permitted Defendants*

*to resume business after the TRO issued, which required, among other things, that*

*EDP only be allowed back into business if its advertising was legal and compliant.*

*Defs.' Exh. K [TRO Order]; Defs.' Exh. J [First Interim Report of Federal Court*

*Receiver dated November 2007], pp. 6-7; Defs.' Exh. L [Stipulation and Order*

*Regarding Operation of the Business Entity Defendants Under the Court's July 30,*

*2007 Temporary Restraining Order].  Nor would the FTC or Receiver have*

*permitted the Receivership to close when the Final Order was signed.  To the*

*contrary, the FTC indicated to the Receiver that there was no reason to keep the*

*Receivership open.  Reilly Decl., Att. 5 [June 18, 2009 email from FTC Attorney*

*Raymond McKown, Esq. to Howard Camhi].*

*To the extent the FTC claims that it needs discovery on other shopping*

*catalog club and debit card advertising because Defendants may have engaged in*

*"widespread," "pervasive" violations since the Final Order was signed in*

*January 2008, this argument also lacks merit given that the FTC requested and*

*received this information back in August 2009 but decided to proceed with*

161

contempt on only **two** marketing pieces out of all the ones produced.  Lest there be any doubt, these purportedly "pervasive" marketing pieces would have been included in the FTC's recently filed contempt application if they in fact existed.  Moreover, if Defendants' advertising was so offensive since the Final Order and consumers were truly "vulnerable to [Defendants'] deceptive marketing schemes," the FTC would not have waited two years and four months to file its contempt application.

Next, Defendants were not required to provide the information requested on ten days notice from the FTC.  Section V.A. of the Final Order, entitled "Compliance Monitoring," provides that "**for the purpose of monitoring and investigating compliance with any provision of this Order,**" Defendants shall produce documents, appear for deposition, and/or provide entry to the business upon ten days written notice.  See FTC Exh. A [Final Order].  This section of the Final Order is inapplicable to the FTC's motion, as the discovery served by the FTC in late July 2010 was clearly not "Compliance Monitoring" or "for the purpose of monitoring and investigating compliance."  That kind of discovery was served by the FTC back in July 2009.  The discovery at issue here, served several weeks after the Court issued its OSC and several weeks after the FTC had time to

162

*digest Defendants' opposition papers, was served for a fundamentally different purpose—for litigation/prosecutorial purposes.*

*Once the FTC filed its contempt action on May 27, 2010, the "Compliance Monitoring" provision of the Final Order was rendered inoperative because the FTC was no longer investigating; it was prosecuting. The fact that the FTC's discovery was served after the Court issued its OSC Order and set a hearing date alone demonstrates that this discovery provision has no applicability to this contempt proceeding whatsoever. This kind of overbearing and overreaching is exactly the type of conduct that plagues the FTC's motion to compel.*

*Moreover, the FTC waived this argument several months ago when it conceded that Defendants had 30 days pursuant to the Federal Rules of Civil Procedure ("FRCP") to respond to discovery, not 10 days pursuant to Section V.A. of the Final Order. The FTC did not once claim that Defendants had only 10 days to respond and did not object on the basis of timeliness to three separate sets of discovery responses Defendants served within the timeframe set by the FRCP. Similarly, the FTC responded to Defendants' discovery responses within the same 30-day period. Neither did the FTC raise this argument in its meet and confer letters or the parties' meet and confer conferences. Reilly Decl., ¶ 10. In sum, Defendants have not violated Section V.A. of the Final Order by not producing*

163

*information in response to the FTC's belated discovery requests, and in any case, the argument has been waived.*

RFP 17:  Produce documents sufficient to show the number of consumers who applied for debit cards that were marketed with representations that they could be obtained for "no cost."

Response:  Subject to and without waiver of the foregoing General Objections, each of which is expressly incorporated herein, Defendants further object to Request for Production No. 17 on the following grounds:  First, the request is overbroad, unduly burdensome and unreasonable, to the extent it seeks documents that are neither relevant to the claims against Defendants in the contempt proceeding nor reasonably calculated to lead to the discovery of admissible evidence.  Specifically, to the extent the request seeks documents related to the marketing of debit cards generally (if marketed with representations that they could be obtained for "no cost"), rather than the debit card offered by Netspend that EDP marketed in conjunction with the ePlatinum+ catalogue membership on ePlatinumDirect.com, it requests information outside the scope of this contempt proceeding.  The FTC's contempt application was solely directed at EDP's marketing of the debit card offered by Netspend and marketed on ePlatinumDirect.com.  Accordingly, documents concerning other debit cards that

164

EDP may have advertised are irrelevant and beyond the scope of this contempt proceeding.  Second, the request is vague and ambiguous with respect to the phrases "documents sufficient to show" and "applied for" because not all consumers who requested a Netspend Debit Card received a card in the mail, activated it, loaded it with funds, and/or were charged any fees.  For this additional reason, the request is also irrelevant.  Third, Defendants object to this request to the extent that it is duplicative of discovery obtained by Plaintiff from Defendants prior to the filing of its Application for an Order to Show Cause Why Defendants Should Not Be Held in Contempt and in response to the FTC's July 23, 2009 request for information and documents to monitor Defendants' compliance with the Final Order.  Fourth, Defendants object to this request on the basis that it seeks documents previously disclosed to Plaintiff in connection with this contempt proceeding.

Subject to and without waiver of any of the foregoing General Objections and the foregoing specific objections, Defendants will produce non-privileged, responsive documents in their possession, custody and control related to the debit card offered by Netspend that EDP marketed in conjunction with the ePlatinum+ catalogue membership on ePlatinumDirect.com.  Documents that Defendants consider confidential will be produced following the execution by the parties to the

165

litigation and the entry by the Court of a suitable stipulation and protective order limiting the dissemination of those documents.

**FTC's contentions: The FTC incorporates by reference its contentions with regard to Defendants' response to RFP 16.**

**In addition, Defendants' claim that the terms "documents sufficient to show" and "applied for" are vague and ambiguous is without merit.**

**Defendants should be ordered to supplement their response and provide the requested information in full.**

*Defendants' contentions:*

*Defendants incorporate by reference their contentions with regard to Request for Production No. 16.  The term "applied for" is vague because not all consumers who requested a Netspend debit card received a card in the mail, activated it, loaded it with funds, and/or were charged any fees.  For this additional reason, the request is also irrelevant.*

RFP 18:  Produce documents sufficient to show the amount of revenue you received from debit cards that were marketed with representations that they could be obtained at "no cost."

Response:  Subject to and without waiver of the foregoing General Objections, each of which is expressly incorporated herein, Defendants further

166

object to Request for Production No. 18 on the following grounds:  First, the request is overbroad, unduly burdensome and unreasonable, to the extent it seeks documents that are neither relevant to the claims against Defendants in the contempt proceeding nor reasonably calculated to lead to the discovery of admissible evidence.  Specifically, to the extent the request seeks documents related to the marketing of debit cards generally (if marketed with representations that they could be obtained for "no cost"), rather than the debit card offered by Netspend that EDP marketed in conjunction with the ePlatinum+ catalogue membership on ePlatinumDirect.com, it requests information outside the scope of this contempt proceeding.  The FTC's contempt application was solely directed EDP's marketing of the debit card offered by Netspend and marketed on ePlatinumDirect.com.  Accordingly, documents concerning other debit cards that EDP may have advertised are irrelevant and beyond the scope of this contempt proceeding.  Second, the request is vague and ambiguous with respect to the phrases "documents sufficient to show" and "revenue" which is undefined and can refer to gross revenue or net revenue.  Third, Defendants object to this request to the extent that it is duplicative of discovery obtained by Plaintiff from Defendants prior to the filing of its Application for an Order to Show Cause Why Defendants Should Not Be Held in Contempt and in response to the FTC's July 23, 2009

167

request for information and documents to monitor Defendants' compliance with the Final Order. Fourth, Defendants object to this request on the basis that it seeks information previously disclosed to Plaintiff in connection with this contempt proceeding.

Subject to and without waiver of any of the foregoing General Objections and the foregoing specific objections, Defendants will produce non-privileged, responsive documents in their possession, custody and control related to the debit card offered by Netspend that EDP marketed in conjunction with the ePlatinum+ catalogue membership on ePlatinumDirect.com.  Documents that Defendants consider confidential will be produced following the execution by the parties to the litigation and the entry by the Court of a suitable stipulation and protective order limiting the dissemination of those documents.

**FTC's contentions: The FTC incorporates by reference its contentions with regard to Defendants' response to RFP 16.**

**In addition, Defendants' claim that the terms "documents sufficient to show" and "revenue" are vague and ambiguous is without merit.  Defendants should produce documents sufficient to show gross revenue and net revenue.**

**Defendants should be ordered to supplement their response and provide the requested information in full.**

168

*Defendants' contentions:*

*Defendants incorporate by reference their contentions with regard to
Request for Production No. 16.  Defendants have already produced a spreadsheet
demonstrating that Defendants made no revenue from the Netspend debit card.*

<u>RFP 19:</u>  Produce documents sufficient to show the amount of fees charged
to consumers from debit cards that were marketed with representations that they
could be obtained at "no cost."

<u>Response:</u>  Subject to and without waiver of the foregoing General
Objections, each of which is expressly incorporated herein, Defendants further
object to Request for Production No. 19 on the following grounds:  First, the
request is overbroad, unduly burdensome and unreasonable, to the extent it seeks
documents that are neither relevant to the claims against Defendants in the
contempt proceeding nor reasonably calculated to lead to the discovery of
admissible evidence.  Specifically, to the extent the request seeks documents
related to the marketing of debit cards generally (if marketed with representations
that they could be obtained for "no cost"), rather than the debit card offered by
Netspend that EDP marketed in conjunction with the ePlatinum+ catalogue
membership on ePlatinumDirect.com, it requests information outside the scope of
this contempt proceeding.  The FTC's contempt application was solely directed at

169

EDP's marketing of the debit card offered by Netspend and marketed on ePlatinumDirect.com. Accordingly, documents concerning other debit cards that EDP may have advertised are irrelevant and beyond the scope of this contempt proceeding. Second, the request is vague and ambiguous with respect to the phrases "documents sufficient to show" and "amount of fees charged" which Defendants presume to mean fees charged by EDP to consumers. Third, Defendants object to this request to the extent that it is duplicative of discovery obtained by Plaintiff from Defendants prior to the filing of its Application for an Order to Show Cause Why Defendants Should Not Be Held in Contempt and in response to the FTC's July 23, 2009 request for information and documents to monitor Defendants' compliance with the Final Order. Fourth, Defendants object to this request on the basis that it seeks information previously disclosed to Plaintiff in connection with this contempt proceeding. Fifth, Defendants object to this request to the extent it requests information concerning the amount of fees charged by parties other Defendants on the basis that this information is not in Defendants' possession, custody or control.

Subject to and without waiver of any of the foregoing General Objections and the foregoing specific objections, Defendants respond as follows: There are no responsive documents as Defendants did not charge consumers any fees in

170

connection with the Netspend Debit Card marketed on the ePlatinumDirect.com
website.

**FTC's contentions:  The FTC incorporates by reference its contentions
with regard to Defendants' response to RFP 16.**

**In addition, Defendants' claim that the terms "documents sufficient to
show" and "amount of fees charged" are vague and ambiguous is without
merit.  RFP 19 does not limit the request only to fees charged by EDP.   Thus,
to the extent that Defendants have information regarding fees charged to
consumers by any entity, they should produce that information.**

**Defendants should be ordered to supplement their response and provide
the requested information in full.**

*Defendants' contentions:*

*Defendants incorporate by reference their contentions with regard to
Request for Production No. 16.  Further, as already stated, Defendants did not
charge consumers for the Netspend card and information about charges that
Netspend or any other third party may have charged consumers is not in
Defendants' possession, custody, or control.*

RFP 20:  Produce all non-identical versions of your marketing (or marketing
of others on your behalf), including creatives (in addition to those already

171

produced in response to Specification 16), that represent that prepaid cards, debit cards, or credit cards can be obtained "free," without obligation, or at a reduced cost.

Response:  Subject to and without waiver of the foregoing General Objections, each of which is expressly incorporated herein, Defendants further object to Request for Production No. 20 on the following grounds:  First, the request is overbroad, unduly burdensome and unreasonable, to the extent it seeks documents that are neither relevant to the claims against Defendants in the contempt proceeding nor reasonably calculated to lead to the discovery of admissible evidence.  Specifically, to the extent the request seeks documents related to the marketing of "prepaid cards, debit cards, or credit cards" generally (if marketed with representations that they could be obtained for "free without obligation"), rather than the debit card offered by Netspend that EDP marketed in conjunction with the ePlatinum+ catalogue membership on ePlatinumDirect.com, it requests information outside the scope of this contempt proceeding.  The FTC's contempt application was solely directed EDP's marketing of the debit card offered by Netspend and marketed on ePlatinumDirect.com.  Accordingly, documents concerning other "prepaid cards, debit cards, or credit cards" that EDP may have advertised are irrelevant and beyond the scope of this contempt proceeding.  The

172

request is also overbroad, unduly burdensome, unreasonable, and harassing on the basis that it requests the "marketing of others on your behalf," which Defendants understand to mean affiliate marketing.  These documents are neither relevant to the claims against Defendants in this contempt proceeding nor reasonably calculated to lead to the discovery of admissible evidence.  Further, such documents, even if relevant, may not be in the possession, custody or control of Defendants.  Second, Defendants object to this request to the extent that it is duplicative of discovery obtained by Plaintiff from Defendants prior to the filing of its Application for an Order to Show Cause Why Defendants Should Not Be Held in Contempt and in response to the FTC's July 23, 2009 request for information and documents to monitor Defendants' compliance with the Final Order. Third, Defendants object to this request to the extent that it seeks documents previously disclosed to Plaintiff in connection with this contempt proceeding. Fourth, the phrase "free without obligation" is vague and ambiguous.  Defendants presume this phrase to mean that consumers could physically obtain the debit card at no charge before activating it and loading it with funds.  The term "Specification No. 16" is also unclear and presumably means Request for Production No. 16.  Fifth, Defendants object to this request on the basis that it is duplicative of Request for Production No. 16.

Subject to and without waiver of any of the foregoing General Objections and the foregoing specific objections, Defendants will produce non-privileged, responsive documents in their possession, custody and control related to the debit card offered by Netspend that EDP marketed in conjunction with the ePlatinum+ catalogue membership on ePlatinumDirect.com.  Documents that Defendants consider confidential will be produced following the execution by the parties to the litigation and the entry by the Court of a suitable stipulation and protective order limiting the dissemination of those documents.

**FTC's contentions:   The FTC incorporates by reference its contentions with regard to Defendants' response to RFP 16.**

**In addition, Defendants' claim that the terms "free" or "without obligation" are vague and ambiguous are without merit.  The language of RFP 20 tracks Section I.D of the Final Order.  Defendants' objection that RFP 20 is duplicative of RFP 16 is groundless, as they are not identical.**

**Defendants should be ordered to supplement their response and provide the requested information in full.**

*Defendants' contentions:*

*Defendants incorporate by reference their contentions with regard to Request for Production No. 16.*

174

RFP 21:  Produce documents sufficient to show the number of consumers (in addition to those already identified in response to Specification 17) who applied for prepaid cards, debit cards, or credit cards that were marketed with representations that they could be obtained "free," without obligation, or at a reduced cost.

Response:  Subject to and without waiver of the foregoing General Objections, each of which is expressly incorporated herein, Defendants further object to Request for Production No. 21 on the following grounds:  First, the request is overbroad, unduly burdensome and unreasonable, to the extent it seeks documents that are neither relevant to the claims against Defendants in the contempt proceeding nor reasonably calculated to lead to the discovery of admissible evidence.  Specifically, to the extent the request seeks documents related to the marketing of "prepaid cards, debit cards, or credit cards" generally (if marketed with representations that they could be obtained for "free without obligation"), rather than the debit card offered by Netspend that EDP marketed in conjunction with the ePlatinum+ catalogue membership on ePlatinumDirect.com, it requests information outside the scope of this contempt proceeding.  The FTC's contempt application was solely directed EDP's marketing of the debit card offered by Netspend and marketed on ePlatinumDirect.com.  Accordingly, documents

175

concerning other "prepaid cards, debit cards, or credit cards" that EDP may have advertised are irrelevant and beyond the scope of this contempt proceeding. Second, the request is vague and ambiguous with respect to the phrases "documents sufficient to show" and "applied for" because not all consumers who requested a Netspend Debit Card received a card in the mail, activated it, loaded it with funds, and/or were charged any fees. For this additional reason, the request is also irrelevant. Third, Defendants object to this request to the extent that it is duplicative of discovery obtained by Plaintiff from Defendants prior to the filing of its Application for an Order to Show Cause Why Defendants Should Not Be Held in Contempt and in response to the FTC's July 23, 2009 request for information and documents to monitor Defendants' compliance with the Final Order. Fourth, Defendants object to this request to the extent that it seeks documents previously disclosed to Plaintiff in connection with this contempt proceeding. Fifth, the phrase "free without obligation" is vague and ambiguous. Defendants presume this phrase to mean that consumers could physically obtain the debit card at no charge before activating it and loading it with funds. The term "Specification No. 16" is unclear and presumably means Request for Production No. 17. Sixth, Defendants object to this request on the basis that it is duplicative of Request for Production No. 17.

Subject to and without waiver of any of the foregoing General Objections and the foregoing specific objections, Defendants will produce non-privileged, responsive documents in their possession, custody and control related to the debit card offered by Netspend that EDP marketed in conjunction with the ePlatinum+ catalogue membership on ePlatinumDirect.com.  Documents that Defendants consider confidential will be produced following the execution by the parties to the litigation and the entry by the Court of a suitable stipulation and protective order limiting the dissemination of those documents.

**FTC's contentions:   The FTC incorporates by reference its contentions with regard to Defendants' response to RFP 16.**

**In addition, Defendants' claim that the terms "documents sufficient to show" and "applied for" are vague and ambiguous is without merit. Moreover, Defendants incorrectly claim that it is irrelevant how many consumers applied for, but did not ultimately use, the debit card. Indeed, if a much larger group of consumers applied for the card than ultimately used the card, this discrepancy could tend to show that the online disclosures were, as alleged by the FTC, insufficient to notify consumers of the true fees associated with the "no cost" card, and that consumers only realized the "no cost" card was in fact costly after receiving it and other information in the mail.**

177

**Defendants' claim that the terms "free" or "without obligation" are vague and ambiguous are also without merit.  The language of RFP 21 tracks Section I.D of the Final Order.  Defendants' objection that RFP 21 is duplicative of RFP 17 is groundless, as they are not identical.**

**Defendants should be ordered to supplement their response and provide the requested information in full.**

*Defendants' contentions:*

*Defendants incorporate by reference their contentions with regard to Request for Production No. 16.  The term "applied for" is vague because not all consumers who requested a Netspend debit card received a card in the mail, activated it, loaded it with funds, and/or were charged any fees.  For this additional reason, the request is also irrelevant.*

<u>RFP 22:</u>  Produce documents sufficient to show the amount of revenue (in addition to the revenue already identified in response to Specification 18) you received from marketing prepaid cards, debit cards, or credit cards that were marketed with representations that they could be obtained "free," without obligation, or at a reduced cost.

<u>Response:</u>  Subject to and without waiver of the foregoing General Objections, each of which is expressly incorporated herein, Defendants further

178

object to Request for Production No. 22 on the following grounds:  First, the request is overbroad, unduly burdensome and unreasonable, to the extent it seeks documents that are neither relevant to the claims against Defendants in the contempt proceeding nor reasonably calculated to lead to the discovery of admissible evidence.  Specifically, to the extent the request seeks documents related to the marketing of "prepaid cards, debit cards, or credit cards" generally (if marketed with representations that they could be obtained for "free without obligation"), rather than the debit card offered by Netspend that EDP marketed in conjunction with the ePlatinum+ catalogue membership on ePlatinumDirect.com, it requests information outside the scope of this contempt proceeding.  The FTC's contempt application was solely directed EDP's marketing of the debit card offered by Netspend and marketed on ePlatinumDirect.com.  Accordingly, documents concerning other "prepaid cards, debit cards, or credit cards" that EDP may have advertised are irrelevant and beyond the scope of this contempt proceeding.  Second, the request is vague and ambiguous with respect to the phrases "documents sufficient to show" and "amount of revenue," which is undefined and can be taken to refer to gross revenue or net revenue.  Third, Defendants object to this request to the extent that it is duplicative of discovery obtained by Plaintiff from Defendants prior to the filing of its Application for an Order to Show Cause

Why Defendants Should Not Be Held in Contempt and in response to the FTC's July 23, 2009 request for information and documents to monitor Defendants' compliance with the Final Order.  Fourth, Defendants object to this request to the extent that it seeks documents previously disclosed to Plaintiff in connection with this contempt proceeding. Fifth, the phrase "free without obligation" is vague and ambiguous.  Defendants presume this phrase to mean that consumers could physically obtain the debit card at no charge before activating it and loading it with funds.  The term "Specification No. 18" is also unclear and presumably means Request for Production No. 18.  Sixth, Defendants object to this request on the basis that it is duplicative of Request for Production No. 18.

Subject to and without waiver of any of the foregoing General Objections and the foregoing specific objections, Defendants will produce non-privileged, responsive documents in their possession, custody and control related to the debit card offered by Netspend that EDP marketed in conjunction with the ePlatinum+ catalogue membership on ePlatinumDirect.com.  Documents that Defendants consider confidential will be produced following the execution by the parties to the litigation and the entry by the Court of a suitable stipulation and protective order limiting the dissemination of those documents.

**FTC's contentions:   The FTC incorporates by reference its contentions with regard to Defendants' response to RFP 16.**

**In addition, Defendants' claim that the terms "documents sufficient to show" and "revenue" are vague and ambiguous is without merit.  Defendants should produce documents sufficient to show gross revenue and net revenue. Defendants' claim that the terms "free" or "without obligation" are vague and ambiguous are also without merit.  The language of RFP 22 tracks Section I.D of the Final Order.  Defendants' objection that RFP 22 is duplicative of RFP 18 is groundless, as they are not identical.**

**Defendants should be ordered to supplement their response and provide the requested information in full.**

*Defendants' contentions:*

*Defendants incorporate by reference their contentions with regard to Request for Production No. 16.  Defendants have already produced a spreadsheet demonstrating that Defendants made no revenue from the Netspend debit card.*

RFP 23:  Produce documents sufficient to show the amount of fees (in addition to the fees already identified in response to Specification 16) charged to consumers from prepaid cards, debit cards, or credit cards that were marketed with

181

representations that they could be obtained "free," without obligation, or at a reduced cost.

Response:  Subject to and without waiver of the foregoing General Objections, each of which is expressly incorporated herein, Defendants further object to Request for Production No. 23 on the following grounds:  First, the request is overbroad, unduly burdensome and unreasonable, to the extent it seeks documents that are neither relevant to the claims against Defendants in the contempt proceeding nor reasonably calculated to lead to the discovery of admissible evidence.  Specifically, to the extent the request seeks documents related to the marketing of "prepaid cards, debit cards, or credit cards" generally (if marketed with representations that they could be obtained for "free without obligation"), rather than the debit card offered by Netspend that EDP marketed in conjunction with the ePlatinum+ catalogue membership on ePlatinumDirect.com, it requests information outside the scope of this contempt proceeding.  The FTC's contempt application was solely directed at EDP's marketing of the debit card offered by Netspend and marketed on ePlatinumDirect.com.  Accordingly, documents concerning other "prepaid cards, debit cards, or credit cards" that EDP may have advertised are irrelevant and beyond the scope of this contempt proceeding.  Second, the request is vague and ambiguous with respect to the

182

phrases "documents sufficient to show" and "amount of fees charged," which Defendants presume to mean fees charged by EDP to consumers.  Third, Defendants object to this request to the extent that it is duplicative of discovery obtained by Plaintiff from Defendants prior to the filing of its Application for an Order to Show Cause Why Defendants Should Not Be Held in Contempt and in response to the FTC's July 23, 2009 request for information and documents to monitor Defendants' compliance with the Final Order.  Fourth, Defendants object to this request to the extent that it seeks documents previously disclosed to Plaintiff in connection with this contempt proceeding. Fifth, the phrase "free without obligation" is vague and ambiguous.  Defendants presume this phrase to mean that consumers could physically obtain the debit card at no charge before activating it and loading it with funds.  The term "Specification No. 16" is also unclear and presumably means Request for Production No. 16.  Sixth, Defendants object to this request on the basis that it is duplicative of Request for Production No. 19.

Subject to and without waiver of any of the foregoing General Objections and the foregoing specific objections, Defendants respond as follows: There are no responsive documents as Defendants did not charge consumer any fees in connection with the Netspend Debit Card marketed on the ePlatinumDirect.com website.

183

**FTC's contentions:  The FTC incorporates by reference its contentions with regard to Defendants' response to RFP 16.**

**In addition, Defendants' claim that the terms "documents sufficient to show" and "amount of fees charged" are vague and ambiguous is without merit.  RFP 23 does not limit the request only to fees charged by EDP.   Thus, to the extent that Defendants have information regarding fees charged to consumers by any entity, they should produce that information.  Defendants' claim that the terms "free" or "without obligation" are vague and ambiguous is also without merit.  The language of RFP 23 tracks Section I.D of the Final Order.  Defendants' objection that RFP 23 is duplicative of RFP 19 is groundless, as they are not identical.**

**Defendants should be ordered to supplement their response and provide the requested information in full.**

*Defendants' contentions:*

*Defendants incorporate by reference their contentions with regard to Request for Production No. 16.  Further, as already stated, Defendants did not charge consumers for the Netspend card and information about charges that Netspend or any other third party may have charged consumers is not in Defendants' possession, custody, or control.*

184

## V.   FTC'S CONCLUSION

For the reasons set forth herein, the Court should grant the FTC's motion to compel responses to the FTC's written discovery and should order Mr. Cleveland to appear for deposition.  Because the contempt hearing is set for November 19, 2010, the FTC requests that the Court order Defendants to provide their responses to the FTC's written discovery within 5 days and order Mr. Cleveland to appear for deposition at least 7 days prior to the hearing.

## VI.   DEFENDANTS' CONCLUSION

The FTC's motion to compel should be denied in its entirety.  To the extent the Court grants the FTC's motion, in whole or in part, Defendants request that the Court order Defendants to further respond by November 8, 2010.  The FTC's proposed 5-day response time is impractical, and more likely impossible.  Defense counsel will need time to gather, review, and prepare voluminous amounts of data and information for production.  Also, Defendants' trial brief is due 9 court days after the motion to compel hearing.

185

1  Date:  October 6, 2010                    Respectfully submitted,

2

3                                            FEDERAL TRADE COMMISSION

4                                            Mark Morelli
                                             Elizabeth Tucci

5                                            Zachary V. Hunter
                                             John D. Jacobs

6                                            Attorneys for Plaintiff

7

8

9                                            /s/_____

10                                           Mark Morelli
                                             Attorney for Plaintiff

11                                           FEDERAL TRADE COMMISSION

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                           186

1

2

3   Dated: October 6, 2010                    LOEB & LOEB LLP
                                              Michael L. Mallow
4                                             Karen R. Thorland
                                              Christine M. Reilly
5

6                                             By: /s/_____

7                                             Christine M. Reilly
                                              Attorneys for Defendants EDEBITPAY,
8                                             LLC, DALE PAUL CLEVELAND and
                                              WILLIAM RICHARD WILSON
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                   187