# EXHIBIT D

MICHAEL L. MALLOW (SBN 188745)
mmallow@loeb.com
KAREN R. THORLAND (SBN 172092)
kthorland@loeb.com
CHRISTINE M. REILLY (SBN 226388)
creilly@loeb.com
LOEB & LOEB LLP
10100 Santa Monica Boulevard, Suite 2200
Los Angeles, California 90067-4120
Telephone: 310-282-2000
Facsimile: 310-282-2200

Attorneys for Defendants
EDEBITPAY, LLC; DALE PAUL
CLEVELAND; and WILLIAM
RICHARD WILSON

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 07-4880 ODW (AJWx) |
| Plaintiff, | Assigned to Hon. Otis D. Wright II |
| v. | |
| EDEBITPAY, LLC; EDP REPORTING, LLC; EDP TEHNOLOGIES CORPORATION; SECURE DEPOSIT CARD, INC.; DALE PAUL CLEVELAND; and WILLIAM RICHARD WILSON, | **DECLARATION OF DALE PAUL CLEVELAND IN SUPPORT OF DEFENDANTS' OPPOSITION TO THE FEDERAL TRADE COMMISSION'S APPLICATION FOR AN ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT** |
| Defendants. | Date: July 12, 2010<br>Time: 1:30 p.m.<br>Ctrm: 11<br><br>**[FILED UNDER SEAL]** |

LA2054751.2
211465-10001

DECLARATION OF DALE PAUL CLEVELAND IN SUPPORT OF DEFENDANTS'
OPPOSITION TO FTC'S OSC APPLICATION RE CONTEMPT

## DECLARATION OF DALE PAUL CLEVELAND

I, DALE PAUL CLEVELAND, declare as follows:

1. I am a founder of EDebitPay, LLC ("EDP") and its Chief Executive Officer. I am a Defendant in the above-captioned matter. I make this declaration in support of Defendants' Opposition to the FTC's Application for an Order to Show Cause Why Defendants Should Not be Held in Contempt. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, I could and would testify competently to such facts under oath.

2. EDP's business was brought to a screeching halt on August 1, 2007 when the U.S. Marshal, FTC, and Court-appointed Receiver conducted a raid on the business premises and served the Temporary Restraining Order ("TRO") on Defendants, which had been obtained without notice or an opportunity for Defendants to be heard. EDP was in the process of moving to its new offices and members of my family, including my son and daughter, were present.

3. The Receiver and FTC seized all of EDP's marketing material and documents and imaged our hard drives. Both the FTC and Receiver had every single piece of EDP marketing material that existed at that time, including creatives for Starter Credit Direct. Defendants were not permitted to engage in any business activities or transactions during this time, other than to comply with the requirements and obligations of the TRO Order which included, among other things, the production of all marketing material to the FTC and Court-appointed Receiver. EDP worked diligently with the FTC and Court-appointed Receiver to get EDP's marketing material compliant with the law. On or about August 13, 2007, the FTC and Receiver, with Court approval, permitted EDP to resume operations, which included the continued marketing of Starter Credit. EDP continued to market Starter Credit throughout the Receivership through entry of the Settlement

1

1 Agreement and Stipulated Final Order For Permanent Injunction and Monetary
2 Relief ("Final Order") entered on January 22, 2008.

3     4.    EDP, Bill Wilson, and I take seriously our obligations under the Final
4 Order and have been very conscientious about our compliance efforts. We have
5 expressed to Mr. Mallow, our counsel, often and consistently our desire to comply
6 with the directives of the Final Order in every way possible. To that end, we have
7 been fully responsive to any and all requests for information, have satisfied all
8 reporting and notice requirements, and have been fully open and transparent about
9 our business operations. Moreover, to the extent possible, we have implemented all
10 suggested operational and marketing changes suggested by FTC staff in order to
11 avoid the very kind of contempt action the FTC seeks here.

12     5.    We also have voluntarily implemented changes to our marketing
13 material based on information that became available through FTC enforcement and
14 threatened enforcement actions against unrelated and unaffiliated third parties. For
15 example, Mr. Mallow shared with me information that David Vladeck, the Director
16 of the Bureau of Consumer Protection, expressed concern regarding the marketing
17 of a line of credit that depicted a credit card because consumers did not actually
18 receive a card. Upon learning of Mr. Vladeck's concerns, EDP immediately and
19 voluntarily made adjustments to its own marketing material. Specifically, we
20 changed the depiction of a credit card in our Ultimate Platinum marketing to a
21 circle, as to not give consumers the mistaken impression that they would be
22 receiving a card in the mail.

23     6.    Starter Credit Direct was a website and marketing piece EDP used to
24 advertise a line of credit in connection with an online shopping club called Century
25 Platinum, which was a product offered by a third party, Insite Marketing Group,
26 LLC ("Insite"). Starter Credit was just one avenue Insite used to market its Century
27 Platinum product. EDP did not own or sell the Century Platinum shopping club or
28

2

LA2054751.2
211465-10001
DECLARATION OF DALE PAUL CLEVELAND IN SUPPORT OF DEFENDANTS' OPPOSITION TO FTC'S OSC APPLICATION RE CONTEMPT

products sold through Century Platinum, did not set catalog prices, downpayment amounts or methods, or determine catalog items. Rather, EDP merely marketed the product for Insite. As a result, EDP did not have possession of the online catalog or have access to customer activity or complaints in connection with the shopping club (i.e., length of membership, membership cancellation/termination, credit offered and used, products purchased, downpayments made, etc.). All customer-related inquiries, complaints, product returns, etc. were directed to Insite. Further, EDP did not derive any revenue from the catalog purchases and had no reason to track them.

7. The basic design elements for the Starter Credit marketing piece were based on the Ultimate Platinum site vetted by FTC staff. Marketing for this third party product began in July 2007 before the FTC action was filed. In late July 2007 when the FTC action was filed, EDP's operations came to a halt, but EDP was permitted to continue marketing Starter Credit when it resumed business operations in August 2007. EDP continued to market Starter Credit while it was under the watchful eye and control of the FTC and Court-appointed Receiver and after the Final Order was entered in January 2008.

8. After the FTC began inquiring about Starter Credit in July 2009, EDP voluntarily offered to remove this marketing material, in the event the FTC had any concerns. I understand from Mr. Mallow that the FTC had expressly requested that EDP continue marketing Starter Credit and not sever its relationship with Insite. We heeded the FTC's request. With the FTC's permission, EDP ceased marketing Starter Credit in November 2009, after Bill and I were deposed.

9. Defendants have worked closely with the FTC and Receiver to make revisions to various EDP marketing material (including the Ultimate Platinum website vetted by FTC staff) both during and after the Receivership. To my knowledge, at no time since this action began nearly three years ago did the FTC raise issues concerning the Starter Credit marketing or suggest or request changes to

3

its creatives. As a result, Defendants had no reason or basis to believe that the Starter Credit advertising posed any issue to the FTC (other than perhaps an inquiry the FTC made nearly a year ago) and were shocked to learn that the Starter Credit marketing was the primary basis of the FTC's contempt application.

10. The FTC alleges in its contempt application that EDP did not clearly and conspicuously disclose a purported one-time $15 initial processing fee. EDP never charged Starter Credit consumers a $15 fee. The only one-time fee charged was a $99 application fee that was prominently disclosed on the website. It would not have made sense for both EDP and Insite to have each charged consumers a "one-time" application fee.

11. Defendants believe that before Insite began marketing the Century Platinum club membership with EDP, it charged consumers a one-time $15 fee. When EDP began marketing the product for Insite, the one-time $15 fee paid to Insite was replaced by a one-time fee of $99 paid to EDP. The one-time fee of $15 was correctly changed to $99 under the fee schedule in the Century Platinum Terms and Conditions, where all fees are listed, but was apparently inadvertently not changed in the Disclaimer paragraph.

12. The ePlatinum Debit Card (the "Debit Card") is a product of Netspend, a third party, and was marketed in conjunction with the ePlatinum+ catalogue membership. Beginning in or around August 2009, this Debit Card was described as "No Cost" in EDP's creatives. To receive the physical Debit Card, a consumer pays nothing, such that the marketing materials for the Debit Card accurately reflect that there is "no cost" to "get" the card itself. In fact, at the time the card is received, the consumer is at least two steps away from incurring any obligation to pay any fees. The steps that a consumer must take before any costs are incurred distinguishes the ePlatinum Debit Card from many other cards. Based on my knowledge and experience in the industry, I am aware of many debit card products

LA2054751.2
211465-10001

DECLARATION OF DALE PAUL CLEVELAND IN SUPPORT OF DEFENDANTS' OPPOSITION TO FTC'S OSC APPLICATION RE CONTEMPT

1  sold to consumers for a fee, i.e., fees that are paid just to receive the physical card
2  with no dollar amount on the card.
3      13.    To be assessed any fees or charges in connection with the Debit Card,
4  the consumer must also call in to activate the card, and he must also load the card
5  with a specific amount of money.
6      14.    In its description of the ePlatinum Debit Card, the FTC relies on
7  content (i.e., a single creative) that was not representative or indicative of the
8  creative used to market the card. EDP believes that the FTC analyzed and relied on
9  a marketing piece that EDP never intended to be viewed by consumers, and which
10 was intended as a draft or placeholder for the technical development of the actual,
11 marketed creative.
12     15.    With the exception of perhaps the brief period from November 25,
13 2009 to January 20, 2010, the marketing piece for the Debit Card included a lengthy
14 drop down disclosure that appeared whenever a consumer indicated an interest in
15 the card, thereby ensuring that the fees associated with the loading of the Debit Card
16 would be viewed by any consumer affirmatively interested in obtaining the card.
17 Representative versions of the ePlatinum website establish that it is virtually
18 impossible for a consumer to miss the fee disclosures that appear when a consumer
19 expresses interest in the Debit Card product. In short, all versions of this creative
20 that EDP believes were intentionally marketed to consumers had appropriate fee
21 disclosures.
22     16.    The ePlatinum marketing was modeled after the Ultimate Platinum
23 marketing. I requested that Mr. Mallow provide creatives of the Ultimate Platinum
24 marketing to FTC staff for feedback in order to ensure compliance with the Final
25 Order and the FTC Act. Over the course of several months, we worked closely with
26 the FTC until it found the marketing material acceptable. To my knowledge, at no
27 time thereafter did the FTC raise issues concerning the Ultimate Platinum marketing
28

5

LA2054751.2
211465-10001
DECLARATION OF DALE PAUL CLEVELAND IN SUPPORT OF DEFENDANTS'
OPPOSITION TO FTC'S OSC APPLICATION RE CONTEMPT

or suggest or request additional changes to the creatives. As a result of this and our understanding of what was being intentionally marketed to consumers, Defendants had no reason or basis to believe that the ePlatinum Debit Card advertising posed any issue to the FTC and were shocked to learn that ePlatinum was also a basis of the FTC's contempt application.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 14th day of June, 2010, at Los Angeles, California.

/s/ Dale Paul Cleveland
DALE PAUL CLEVELAND

## PROOF OF SERVICE

I, Martha Ortiz, the undersigned, declare that:

I am employed in the County of Los Angeles, State of California, over the age of 18, and not a party to this cause. My business address is 10100 Santa Monica Boulevard, Suite 2200, Los Angeles, California 90067-4120.

On June 15, 2010, I served a true copy of the **DECLARATION OF DALE PAUL CLEVELAND IN SUPPORT OF DEFENDANTS' OPPOSITION TO THE FEDERAL TRADE COMMISSION'S APPLICATION FOR AN ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT** on the parties in this cause as follows:

[X] **(VIA FEDERAL EXPRESS)** by placing the above named document in a sealed envelope addressed as set forth below, or on the attached service list and by then placing said envelope for collection and overnight delivery via Federal Express in accordance with Loeb & Loeb's ordinary business practices.

| | |
|---|---|
| Barbara Y K Chun, Esq.<br>John David Jacobs, Esq.<br>Raymond E. McKown, Esq.<br>Federal Trade Commission<br>Western Region<br>10877 Wilshire Blvd., Suite 700<br>Los Angeles, California 90024 | Attorneys for Federal Trade Commission |
| Elizabeth Tucci, Esq.<br>Zachary Hunter, Esq.<br>Mark Morelli, Esq.<br>Alberto Rivera-Fournier, Esq.<br>Federal Trade Commission<br>600 Pennsylvania Avenue NW Room M 8102B<br>Washington, DC 20580 | Attorneys for Federal Trade Commission |

1  I am readily familiar with Loeb & Loeb LLP's practice for collecting and
2  processing correspondence for mailing with the United States Postal Service and
3  Overnight Delivery Service. That practice includes the deposit of all correspondence
4  with the United States Postal Service and/or Overnight Delivery Service the same
5  day it is collected and processed.
6  I certify that I am employed in the office of a member of the bar of this Court
7  at whose direction the service was made.
8  I declare under penalty of perjury that the foregoing is true and correct.
9  Executed on June 15, 2010, at Los Angeles, California.

*Martha Ortiz* (signed)
Martha Ortiz