# EXHIBIT E

# DECLARATION OF NAOMI PARNES
## Pursuant to 28 U.S.C. § 1746

I, Naomi Parnes, declare and state as follows:

1. My name is Naomi Parnes. I am over 18 years of age and I am a citizen of the United States. I am employed by the Federal Trade Commission (FTC) as an Honors Paralegal in the Bureau of Consumer Protection. My work address is 600 Pennsylvania Ave. NW, Washington, DC 20580. I have worked at the FTC since July 2009. I have personal knowledge of the facts set forth herein.

2. Staff with the Bureau of Consumer of Protection, Division of Enforcement, asked me for assistance on the matter of *FTC v. EDebitPay, LLC, et al.*, CV-07-4880 ODW (AJWx) (C.D. Cal.). In particular, staff asked me to review and summarize voluminous complaints received by EDebitPay, LLC ("EDP") in connection with the Century Platinum online shopping club, which EDP marketed on its website, StarterCreditDirect.com ("Starter Credit Direct") and the Monterey County Bank prepaid debit card ("debit card").

3. I was instructed to review a copy of two Microsoft Excel spreadsheets that the FTC received from EDP on or about October 2009. I determined that the spreadsheets contained 6,257 descriptions of consumer complaints relating to two products marketed by EDP, Starter Credit Direct and the debit card.

4. I was instructed to carefully review each complaint and identify whether it related to Starter Credit Direct, the debit card, neither, or both. I was also instructed to identify complaints that fell within one or more categories, including but not limited to:

Parnes Decl.

EXHIBIT 6
-122-

a. Consumers who indicated that they thought they applied for or were getting a loan;
b. Consumers who indicated that they thought they applied for or were getting a payday loan or cash advance;
c. Consumers who indicated that they thought they applied for or were getting a credit card;
d. Consumers who said that they did not apply for Starter Credit Direct or authorize charges relating to it;
e. Consumers who did not understand why they were charged by EDP;
f. Consumers who wanted to know where the charge on their bill was coming from; and
g. Consumers who mentioned that they had insufficient funds ("NSF") as a result of EDP charges or consumers who were informed about EDP's NSF policy.

5. Pursuant to the instructions described above, I carefully reviewed each consumer complaint description and I noted in a column on the spreadsheets whether each complaint was related to Starter Credit Direct, the debit card, neither, or both. In addition, I placed each complaint into one or more categories, including but not limited to those identified in Paragraph 4.

6. I consolidated the two spreadsheets into one file and sorted the complaints based on what offer they related to (*e.g.*, Starter Credit Direct, the debit card, neither, or both). Then, using an Excel formula, I calculated the number of complaints in each category for each product and the total number of Starter Credit Direct complaints (2,497).

7. With regard to the Starter Credit Direct complaints, I determined that:
a. 417 complaint descriptions indicated that consumers thought they were applying for a loan, payday loan, cash advance, or credit card;
b. 540 complaint descriptions, excluding those counted in Paragraph 7.a,

Parnes Decl. 2

EXHIBIT 6
-123-

1     indicated that consumers either did not apply for Starter Credit Direct,
2     did not authorize charges relating to Starter Credit Direct, did not
3     understand why they were charged by EDP, or wanted to know where
4     the charge on their bill was coming from; and

5   c.    569 complaint descriptions mentioned insufficient funds charges.

7 I declare under penalty of perjury that the foregoing is true and correct.

9 Executed on May 25, 2010.        /s/ Naomi Parnes
10                                           Naomi Parnes

Parnes Decl.              3

EXHIBIT 6
-124-