# DECLARATION OF ELIZABETH TUCCI

## DECLARATION OF ELIZABETH TUCCI

### Pursuant to 28 U.S.C. § 1746

I, Elizabeth Tucci, declare and state as follows:

1.  My name is Elizabeth Tucci, I am over 18 years of age, and I am a citizen of the United States.  I am employed by the Federal Trade Commission ("FTC") as an attorney in the Enforcement Division of the Bureau of Consumer Protection.  My work address is 600 Pennsylvania Ave. NW, Washington, DC 20580, No. M-8102B.  I have worked at the FTC since 2005.  I have personal knowledge of the facts set forth herein.

2.  Following the entry of a final district court order in an FTC case brought by the Bureau of Consumer Protection, the Enforcement Division assigns an attorney to monitor compliance with that order.  On March 2, 2008, I was assigned to monitor Defendants' compliance with the Final Order entered January 22, 2008 ("Final Order").  I have worked on this matter since that time.

3.  On November 17, 2009 – during the FTC's compliance investigation and prior to the FTC's May 27, 2010 filing of its Application for an Order to Show Cause – I deposed Defendant Dale Paul Cleveland.  The entire deposition of Mr. Cleveland took less than 3 hours.  The deposition of Mr. Cleveland in his individual capacity (as opposed to a Rule 30(b)(6) deponent) lasted less than one-half hour.

4.  That same day, November 17, 2009, I also deposed Defendant William Richard Wilson.  Excerpts from Mr. Wilson's deposition are attached hereto as Attachment 1.

5.  Following the filing of the FTC's Application for an Order to Show Cause against Defendants, the FTC propounded written discovery requests to

Defendants.  Copies of those Interrogatories and Requests for Production are attached hereto as Attachments 2 and 3, respectively.  Defendants, according to the certificate of service, sent their responses to the FTC's interrogatories and requests for production on September 2, 2010 by overnight mail.  I was out of the office on Friday, September 3 and did not receive the responses until the following week.  Copies of Defendants' responses to the Interrogatories and Requests for Production are attached as Attachments 4 and 5, respectively.

6.   On September 14, 2010, per agreement of the parties, the FTC received a production of documents from Defendants.  Although, in response to both the FTC's Interrogatories and its Requests for Production, Defendants (a) included in their "General Objections" an objection to the extent that the discovery requested privileged documents; and (b) raised objections based on privilege to certain individual interrogatories and requests for production, Defendants did not provide a privilege log.

7.   On August 25, 2010, the FTC served a Notice of Deposition on Paul Cleveland.  A true and correct copy is attached hereto as Attachment 6.

8.   On September 8, 2010, I received a letter from Michael Mallow, counsel for Defendants, which, among other things, stated that Mr. Cleveland would not be produced for deposition and requested that the parties meet and confer on this issue.  A true and correct copy of Mr. Mallow's letter is attached hereto as Attachment 7.  Defendants also served Objections to the Notice of Deposition on September 13, 2010.  A true and correct copy of the Objections is attached hereto as Attachment 8.

9.   On September 9, 2010, I sent a letter to counsel for Defendants objecting to their refusal to produce Mr. Cleveland for a deposition and stating that the FTC would seek an order for his deposition.  My letter also detailed the inadequacies of Defendants' responses to the FTC's interrogatories and

requests for production and requested that they meet and confer regarding these responses.  Appended to the letter was a copy of *FTC v. Burnlounge, Inc.*, Case 2:07-cv-03654-GW-FMO (C.D. Cal. March 3, 2008), which sets out the appropriate parameters for a protective order covering financial information produced in discovery.  A true and correct copy of my letter is attached hereto as Attachment 9.

10.  On September 15, 2010, the parties met and conferred regarding Defendants' failure to produce Mr. Cleveland for deposition and their responses to the FTC's interrogatories and requests for production.  The parties were unable to resolve these issues.

11.  During the September 15, 2010, I stated, as I had in my September 9, 2010, letter, that a hyperlink Defendants had provided that linked to certain discovery responses, https://builderimpact.com/FTCProd/century/startercreditdirect/20081015-20080123/index_short.asp, did not work.  Defense counsel indicated that they would check and remedy this situation, but as of this date the hyperlink still does not work.

12.  On June 25, 2010, counsel for Insite Marketing Group, LLC, supplemented Insite's earlier response to a Civil Investigative Demand from the FTC.  The letter from counsel is attached hereto as Attachment 10.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____September 22_____, 2010.      _____/ s/_____

                                                                            Elizabeth Tucci

ATTACHMENT 1

1                    UNITED STATES DISTRICT COURT

2                   CENTRAL DISTRICT OF CALIFORNIA

3

4     Federal Trade Commission,        )
                                        )
5                     Plaintiff,        )
                                        )
6          vs.                          )     No. CV-07-4880
                                        )         ODW (AJWx)
7     EDebitPay, LLC, et al.,           )
                                        )
8                     Defendants.       )
                                        )
9

10

11

12                 DEPOSITION OF BILL WILSON

13

14

15          DATE & TIME:  Tuesday, November 17, 2009
                          9:11 a.m. - 2:25 p.m.
16

17          LOCATION:     10877 Wilshire Boulevard
                          Suite 700
18                        Los Angeles, California

19

            REPORTER:     Christina Kim-Campos, CSR
20                        Certificate No. 12598

21

22

23

24

25

1    propriety software.

2         Can you state -- if you don't agree with

3    that, can you state it better?

4    A.   Yes.

5    Q.   All right.

6    A.    It's correct.  It's a software, a database,

7    and we, on behalf of our affiliates, we are tracking

8    that, meaning we can track visitors.

9         So we call it a software, as in a -- as the

10   lingo.  You would call it a software.  You could

11   also call it a database tracking, that basically

12   tracks A through E, that we discussed.  It tracks --

13   it tracks the visitors.  The application is

14   completed through the system.

15   Q.   Is it fair to say that the ability of EDP to

16   monitor this traffic is key to EDebitPay's business?

17   A.   Can you be more specific?

18   Q.   Sure.

19        I mean, it sounds like EDebitPay is working

20   through all these different entities and websites

21   and e-mails and links, and the way that EDebitPay

22   knows what is -- it deserves, right, is -- is by

23   monitoring these click-throughs, by monitoring

24   completed applications.  And if EDebitPay didn't

25   have the ability to track all of those things

1    accurately, EDebitPay wouldn't be able to make

2    money.

3        A.    Correct.

4        Q.    Okay.  And what do you think of the quality

5    of EDebitPay Network's software in terms of its

6    ability to track performance metrics?  In

7    particular, user traffic?

8        A.    It is a market accepted software and

9    process, meaning people in the online marketing

10   world, as in -- as described in "A" through "E" --

11   understand what we do and utilize.  So it's

12   accepted.  It's an accepted process in -- in the

13   type of marketing that we do.

14       Q.    Is -- this document states that it's

15   propriety.

16           Is it patented software?

17       A.    There's two parts.  So we do have a part

18   that we proprietarily built ourselves to track, and

19   then there's a part that we licensed, which was

20   Direct Track.  So there's -- our processes, we

21   consider sometimes proprietary, as in the nature of

22   how we do it and how we track it.

23           So we utilize the word "proprietary," but

24   there's two types of softwares that we do have to be

25   clear.

1          One is Direct Track, that we license.  It's

2    an affiliate tracking system, but we also call it

3    EDP Network.  And then we have another system that

4    we built, that is more or less database driven, that

5    is propriety, that we built, that also tracks clicks

6    and leads.  It's kind of a backup secondary tracking

7    system.

8       Q.   It tracks -- are you saying that your

9    in-house system tracks the same information that

10   Direct Track monitors?

11      A.   Similar.  Not all specifically.

12      Q.   And there's a major difference in what they

13   track?

14      A.   Yes.  The non-propriety -- I mean, the

15   proprietary does not have the billing information of

16   the marketing partner.  It's just really raw

17   database tracking; whereas in Direct Track,

18   specifically has all the billing information on the

19   publisher and the affiliate marketer, so we know

20   specifically who we have to pay.

21      Q.   With Direct Track, does EDP have a contract

22   with Direct Track?

23      A.   Yes.

24      Q.   And what is the form of payment for the

25   Direct Track contract?

1    will do -- describe later.

2        Q.    And I understand you don't have them now,

3    but do -- with you, but would EDebitPay have

4    examples of these pages that would appear in the

5    case of the -- would you have examples of thank you

6    pages?

7        A.    We -- we could provide.

8        Q.    Okay.

9        A.    We may have.  That's what I'm thinking.  We

10   may have provided in the box of information we

11   provided to you before.  I'm not sure.  I didn't

12   look at all of it.

13       Q.    And you're saying may have provided in

14   response to the July 23rd request; is that correct?

15       A.    Potentially.

16       Q.    Is there any other way that -- you've --

17   you've described one way in which EDebitPay

18   monetizes the consumer data, and that is via a

19   banner placed on the thank you page.

20            Is there any other way that EDebitPay

21   monetizes that consumer data?

22       A.    Yes.

23       Q.    Tell me about that.

24       A.    We may -- for example, we may pop a website.

25   For example, a person leaves the website, and we may

1    pop auto loan website and say, hey, are you

2    interested -- not are you interested.  Just pops.

3    They're called pops, exit pops.  So that's a

4    methodology.

5        Q.   So -- so for the consumer, it's almost -- it

6    will look like they're just jumping to another page?

7        A.   Yeah.  Totally separate product.

8        Q.   And again, would the consumer receive a

9    message saying that the consumer is leaving X

10   website and going to another website?

11       A.   Some browsers will have a pop locker and ask

12   you to allow or not allow for another product to

13   pop.  So it depends on the customer's computer.

14       Q.   So -- okay.  So you're saying sometimes it

15   won't pop at all?

16       A.   Sometimes they won't -- they won't see it,

17   or because all -- all people at their web -- at

18   their computers have different situations, so in

19   general, we -- if we pop the offer, we don't say

20   this is a different -- like you said, we're not

21   saying, hey, this isn't the same offer, but we're

22   popping an offer, let's say, of an auto loan for a

23   Paydayloan.  We're popping that offer, that website

24   URL in front of the customer.

25            Some customers may have a popup window that

1    not be able to see the popup.  They may want to be

2    asked if they want to view the popup.

3         What I want to talk about is what EDebitPay

4    pays does, if anything, to communicate that they're

5    going from one website to another.  They're going

6    from the thank you page or -- they're going from the

7    thank you page to the new popup.

8         Does EDebitPay tell the computer that?

9         MS. REILLY:  Objection.  Asked and answered,

10   but you can answer.

11        THE WITNESS:  We call something a general

12   pop, so if he we pop an auto loan off a cash

13   advance, we -- we don't usually.  It usually pops to

14   a whole new unique website with a whole new unique

15   URL.

16   BY MS. TUCCI:

17        Q.   And could one of the pops be

18   startercreditdirect.com?

19        A.   It could be.

20        Q.   Is that one that EDebitPay has used as a

21   pop?

22        MS. REILLY:  Objection.  Vague.

23   BY MS. TUCCI:

24        Q.   Is startercreditdirect a website that

25   EDebitPay has used as a pop, following a failed

1    application?

2        A.    Startercredit, I'm not sure about

3    startercredit, if we have.

4        Q.    And who would have that information?

5        A.    It -- it would still be me.  It would still

6    be just a matter of looking in affiliate tracking

7    software and seeing, potentially, where the offer

8    was popped from.

9        Q.    So is it -- is it information that EDebitPay

10    tracks, even though you don't know off the top of

11    your head?

12        A.    We -- we track how many visitors come to the

13    website and what the conversion rates are, what the

14    earnings per visitor are.  And at time to time we

15    pop different offers, third party product offers,

16    our offers of websites, whichever seem more relevant

17    to a customer visiting a website, whichever offers

18    do well.

19            So it it's always changing.  There's --

20    there's no consistent pop that we would place on a

21    website.

22        Q.    But it sounds -- is it correct that it's

23    automated; right?  That if the -- if the application

24    has certain features, it's -- you're going to send

25    it to one website, one popup, versus, another?

1    consumers?

2         A.   I would say correct.

3         Q.   And is there -- therefore, are there

4    computer records at EDebitPay that would indicate,

5    for example, when startercreditdirect would pop up?

6         A.   There should be.

7         Q.   And who would have access to those records?

8         A.   It would -- it would, again, be me or the

9    company in general.

10        Q.   And do I understand you to say that you --

11   you track the success of the popups, of different

12   popups?

13             MS. REILLY:   Objection.   Vague.

14   BY MS. TUCCI:

15        Q.   You've indicated that first you -- you have

16   a certain type of applicant, and you decide you're

17   going to try three different popups with that type

18   of rejected applicant; is that correct?

19        A.   Correct.

20        Q.   And you essentially program it in, that

21   applicants with these variables are going to get

22   these popups.   And it's -- and you've also indicated

23   that it's not just one popup that you will try on

24   "X" type of consumer; is that correct?

25        A.   Correct.

1     applicant, for whatever reason, does not complete

2     the application.

3              In that scenario, can the applicant then get

4     a popup from EDebitPay?

5     A.   If they don't complete the application, it

6     would mean that they didn't submit it.  They left

7     their -- meaning they don't submit the application.

8     So that means that their information hasn't been

9     obtained by us or we haven't begun the -- the

10    matching process with third party lenders.

11             If they leave that web page, yes, it goes

12    back to exit pops.  We may exit pop them, for

13    example, on auto loan website.  It goes right back

14    to exactly what we had discussed earlier on exit

15    pops and monetization.

16    Q.   Let me understand what you're saying.

17    You're saying if the consumer leaves the website,

18    you mean the consumer leaves the website before

19    hitting the submit button?

20    A.   Correct.

21    Q.   So they filled out the application.  They

22    don't hit submit.

23    A.   Okay.

24    Q.   And then EDP sends that person a popup?

25    A.   Okay.  Correct.

1     Q.    That happens?

2     A.    Correct.

3     Q.    Okay.

4     A.    They didn't submit it.  They left the web

5     page.  That's called an exit pop.  The consumer

6     exited the website.  We exit popped an offer, but

7     they didn't submit the application, so it didn't go.

8     None of that particular information -- for example,

9     we had talked about bank account information and

10    matching processes been started, so we -- we didn't

11    even collect that information.  The consumer left

12    the website.

13          So in general, it's exit pops.  Whenever you

14    leave the website, we call it an exit pop.

15    Q.    I'm sorry to be obtuse here, but with an

16    exit popup -- let me -- let me just try to think

17    about how it looks to the consumer.

18          So the consumer goes to the website, fills

19    out the application on page 1.  That applica- -- and

20    as I understand it, that application would not

21    include information such as bank account

22    information; is that correct?

23    A.    Correct.

24    Q.    But it could include the name, address,

25    e-mail address?

1       A.   Correct.

2       Q.   At that point, the applicant leaves the

3   website.

4            When you say leaves the website, do you mean

5   hits the "X" button to close it out?

6       A.   Either they hit the "X" button to close out

7   the browser or they go to the browser and enter a

8   new domain name.  So they're exiting the website.

9       Q.   And at the point that they do either of

10   those acts to exit the website, either by closing it

11   out or by putting in a new browser -- name of the

12   browser, that's the point at which the popup comes?

13       A.   It -- it may.  Not all of our websites have

14   exit pops, but based on the examples and the

15   description, yes, that's when the exit pop would --

16   would pop.

17       Q.   Okay.

18       A.   It's called the exit pop because -- it's a

19   general term that we use because when people are

20   exiting a website, we call it an exit pop.

21       Q.   And which EDP websites use exit pops?

22       A.   Most websites that EDP develops has exit

23   pops.

24       Q.   And again, in this scenario of an exit pop,

25   the consumer -- the EDP does not send that consumer

1    a message saying, "You are being directed to another

2    website"?

3        A.   On an exit pop, a general exit pop, no.

4        Q.   I'm going to stick with the same paragraph,

5    the business model paragraph on Exhibit 4, and back

6    up a couple of sentences to the one that starts with

7    "Targeted consumers."  And this sentence:

8                     "Targeted consumers are directed

9             to one of the Company's card websites

10            (landing pages) to complete an

11            application and purchase a card."

12            In this context, what is a card?

13       A.   A debit card.

14            This was written, I think, three years ago.

15       Q.   Is it still accurate today?

16       A.   I can't -- I can't say in detail 'cause I

17   haven't read all of it.

18       Q.   You can -- you can take a minute to read the

19   paragraph.

20       A.   Yeah, I can't say for sure.

21       Q.   Well, are targeted consumers still directed

22   to first -- let me strike that.

23            Does the company still have card websites?

24       A.   We have what we call catalog card websites,

25   mostly.

ATTACHMENT 2

MARK MORELLI
mmorelli@ftc.gov, (202) 326-2601 (tel.)
ELIZABETH TUCCI
etucci@ftc.gov, (202) 326-2402 (tel.)
ZACHARY V. HUNTER
zhunter@ftc.gov, (202) 326-3235 (tel.)
Federal Trade Commission
600 Pennsylvania Avenue, NW, Rm. M-8102B
Washington, DC 20580
(202) 326-2558 (fax)

JOHN D. JACOBS, Bar No. 134154
jjacobs@ftc.gov, (310) 824-4343 (tel.)
Federal Trade Commission
10877 Wilshire Boulevard, Suite 700
Los Angeles, CA 90024
(310) 824-4380 (fax)

ATTORNEYS FOR PLAINTIFF
FEDERAL TRADE COMMISSION

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**, <br><br> Plaintiff, <br><br> v. <br><br> **EDEBITPAY, LLC, _et al._,** <br><br> Defendants. | CV-07-4880 ODW (AJWx) <br><br> **FEDERAL TRADE COMMISSION'S INTERROGATORIES TO DEFENDANTS** <br><br> July 30, 2010 <br> Judge: Hon. Otis D. Wright II |

Plaintiff, Federal Trade Commission ("FTC") submits the following

Interrogatories to Defendants EDebitPay, LLC,  ("EDP"); Dale Paul Cleveland

("Cleveland"); and William Richard Wilson ("Wilson"), pursuant to Section V.B.1 of the January 22, 2008 Stipulated Final Order for Permanent Injunction and Monetary Relief ("Order") and Rules 26 and 33 of the Federal Rules of Civil Procedure.

## **DEFINITIONS**

A.  "Complaint" means the Complaint filed by the FTC in the instant matter on July 30, 2007.

B.  "Communication(s)" includes, but is not limited to, any and all conversations, meetings, discussions and any other exchange, whether in person, by telephone, or electronically, as well as all letters, memoranda, telegrams, cables, and other writings or documents.

C.  "Contempt Proceeding" means the legal proceedings resulting from the FTC's Application for an Order to Show Cause Why Defendants Should Not Be Held in Contempt, filed on May 27, 2010.

D.  "Concerning" means relating to, referring to, describing, evidencing or constituting.

E.  "Creative" means email content, banner ads, Internet websites and other forms of created advertising, whether HTML, text, or images, used in marketing.

2

F.   "Document" means the complete original and any non-identical copy (whether different from the original because of notations on the copy or otherwise), regardless of origin or location, of any written, typed, printed, transcribed, taped, recorded, filmed, punched, computer-stored, or graphic matter of every type and description, however and by whomever prepared, produced, disseminated or made, including but not limited to any advertisement, book, pamphlet, periodical, contract, file, invoice, memorandum, note, telegram, report, record, handwritten note, working paper, routing slip, package insert, sticker, web page, chart, graph, paper, index, map, tabulation, manual, guide, outline, script, abstract, history, calendar, diary, agenda, minute, code book, data compilation, tests, reports, clinical studies, test reports, scientific literature, articles, expert opinions, handwritten notes, correspondence, communications, electronic mail, electronically stored data, computer (including handheld computer) material (including print-outs, cards, magnetic or electronic tapes, discs and such codes or instructions as will transform such computer materials into easily understandable form), and video and audio recordings.

G.   "Identify," "identifying," and "identification" mean:

(a)   when referring to a natural person, state the full name,

3

present business address and telephone number, or if a present

business affiliation or business address is not known, by the

last known business and home addresses and business and

home telephone numbers;

(b)     when referring to any other entity, such as a business or

organization, state the legal name as well as any other names

under which the entity has done business, as well as the

address, telephone number and contact person; and

(c)     when referring to a document or communication, state

the full name(s) of the author(s) or preparer(s), the full name

of the recipient(s), addressee(s), and/or person(s) designated

to receive copies, the title or subject line of the document or

communication, a brief description of the subject matter of the

document or communication, the date it was prepared, its

present location, and its present custodian.

H.    "Include(s)" and "including" mean "without limitation," or "including but

not limited to," so as to avoid excluding any information that might

otherwise be construed to be within the scope of any interrogatory.

I.    "Receiver" refers to Howard Camhi, the receiver appointed by the Court in

4

the instant matter, and his agents, accountants, representatives, and attorneys.

J.   The singular shall be construed to include the plural, and the plural shall be construed to include the singular.

K.   The word "and" shall be construed to include the word "or," and the word "or" shall be construed to include the word "and."

L.   The word "each" shall be construed to include the word "every," and the word "every" shall be construed to include the word "each."

M.   The word "any" shall be construed to include the word "all," and the word "all" shall be construed to include the word "any."

N.   The use of a verb in any tense shall be construed as the use of the verb in all other tenses, whenever necessary, to bring within the scope of these Interrogatories all responses that might otherwise be construed to be outside their scope.


## **INSTRUCTIONS**

A.   Defendants should answer each interrogatory separately and fully in writing under oath and sign the answer.

B.   The time period covered by these interrogatories is January 22, 2008

5

through the conclusion of the Contempt Hearing in this case, unless otherwise specified.

C.  For the purposes of these interrogatories the words "you" and "your" refer to Defendants EDebitPay, LLC; Dale Paul Cleveland; William Richard Wilson; and any entity that is controlled by any of them, individually or collectively.

D.  In responding to these interrogatories, furnish all information in your possession, custody, or control, or in the possession, custody, or control of your attorneys, accountants, agents, directors, officers, consultants, employees, independent contractors, bailees, or other representatives of you, and any companies for which you have access to documents or information related to these interrogatories

E.  These interrogatories are intended as continuing interrogatories, requiring you to supplement your answers with any information within the scope of the interrogatories as may be acquired by you, your attorneys, accountants, agents, directors, officers, consultants, employees, independent contractors, bailees, or other representatives of you, any companies for which you have access to documents or information related to these interrogatories, or any other source.

6

F.    Where an individual interrogatory calls for an answer that involves more than one part, each part of the answer should be identified and clearly set out so that it is understandable.

G.    If you cannot answer all or part of any interrogatory in full after exercising due diligence to secure the full information to do so or for any other reason, so state and answer to the extent possible, specifying your inability to answer the remainder, stating whatever information or knowledge you have concerning the unanswered portion, and detailing what you did in attempting to secure the unknown information.

H.    If you assert a claim of privilege in responding to or objecting to any interrogatory, you shall provide a privilege log including the following information:

(i)    for documents:

    (a)    The custodian of the document;

    (b)    The type of document (*e.g.*, letter, memorandum);

    (c)    The date of the document;

    (d)    The general subject matter of the document;

    (e)    The sender, author, and all recipients of the document; and

    (f)    The basis on which you contend you are entitled to withhold

7

the document from production.

 (ii) for oral communications:

  (a) the name of the person making the communication and the names of the persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication;

  (b) the date and place of communication; and

  (c) the general subject matter of the communication.

I. If you object to any part of an interrogatory, answer all parts of the interrogatory to which you do not object.

## **INTERROGATORIES**

1. Describe in detail all of the ways in which consumers reached or were directed to the Starter Credit Direct website (including through "exit pops," as described by Wilson in his November 17, 2009 deposition at 92-93, 103-06 or through other means such as hyperlinks from emails or other websites).

2. For each consumer who signed up for the Century Platinum shopping club through Starter Credit Direct, identify how the consumer reached or was directed to the Starter Credit Direct website, including the website (and

8

whether it is an EDP website), email, or other Internet advertising from which the consumer was directed or "exit popped" to the Starter Credit Direct website, if applicable.

3.   Identify all statements disclosing to consumers that they were or may have been transferred to the Starter Credit Direct website from another website, including the websites and dates on which such statements appeared.

4.   Identify all changes to the marketing of Starter Credit Direct.

5.   Identify all communications and documents related to the changes to the marketing of Starter Credit Direct.

6.   Identify each website through which EDP marketed the Century Platinum shopping club.  For each website provide:

   a.   The number of consumers who applied for the Century Platinum shopping club, the number of consumers who enrolled in the Century Platinum shopping club and the date on which they enrolled.

   b.   The total amount consumers were charged (along with any refunds, credits, or chargebacks).

   c.   The total amount of revenue received by EDP.

7.   Describe in detail all steps you took to ensure that your marketing of the

9

Century Platinum shopping club did not misrepresent any material fact and/or fail to disclose the material attributes of the product or service offered or marketed.

8.     If you contend that your marketing of the Century Platinum shopping club clearly and conspicuously (as defined in the Order) disclosed the material attributes of the product or service offered or marketed:

a.     Identify all such marketing, including the dates that marketing was live or in use.

b.     Identify all documents and communications that support your contention.

c.     State all facts that support your contention.

9.     If you contend that a defense (e.g., substantial compliance, estoppel) excuses or limits your liability for one or more violations of the Order, for each defense:

a.     Identify all documents and communications that support your contention.

b.     State all facts that support your contention.

10.    If you contend that the Receiver and/or the FTC represented to you at any time after the Complaint that your marketing of the Century Platinum

shopping club complied with the Order:

a.     Identify every such representation.

b.     Identify all documents and communications that support your

       contention.

c.     State all facts that support your contention.

11.   If you contend that, at any time after the Complaint, you reasonably relied

      on representations by the Receiver and/or the FTC that your marketing of

      the Century Platinum shopping club complied with the Order:

a.     Identify every representation on which you contend that you

       reasonably relied.

b.     Identify all documents and communications that support your

       contention.

c.     State all facts that support your contention.

Date: July 30, 2010                              Respectfully submitted,


                                           _____/s/_____
                                           Mark Morelli
                                           Elizabeth Tucci
                                           Zachary V. Hunter
                                           John D. Jacobs
                                           Attorneys for Plaintiff
                                           FEDERAL TRADE COMMISSION

11

**PROOF OF SERVICE**

I am a resident of the District of Columbia and over the age of 18 years, and I am not a party to the this action.  My business address is 600 Pennsylvania Avenue, N.W., Washington, DC 20580.  On July 30, 2010, I served via U.S. Mail FTC'S INTERROGATORIES on the following:

Michael Mallow, Esq.,
Loeb & Loeb, LLP,
10100 Santa Monica Boulevard,
Suite 2200,
Los Angeles, CA 90067

and by email to

Michael Mallow, Esq.
Karen Thorland, Esq.,
Christine Reilly, Esq.
Loeb & Loeb, LLP,

at the following email addresses:
mmallow@loeb.com
kthorland@loeb.com
creilly@loeb.com

_____
/s/
Mark Morelli
Attorney for Plaintiff
Federal Trade Commission

12

ATTACHMENT 3

MARK MORELLI
mmorelli@ftc.gov, (202) 326-2601 (tel.)
ELIZABETH TUCCI
etucci@ftc.gov, (202) 326-2402 (tel.)
ZACHARY V. HUNTER
zhunter@ftc.gov, (202) 326-3235 (tel.)
Federal Trade Commission
600 Pennsylvania Avenue, NW, Rm. M-8102B
Washington, DC 20580
(202) 326-2558 (fax)

JOHN D. JACOBS, Bar No. 134154
jjacobs@ftc.gov, (310) 824-4343 (tel.)
Federal Trade Commission
10877 Wilshire Boulevard, Suite 700
Los Angeles, CA 90024
(310) 824-4380 (fax)

ATTORNEYS FOR PLAINTIFF
FEDERAL TRADE COMMISSION

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**,<br><br>                         Plaintiff,<br><br>                    v.<br><br>**EDEBITPAY, LLC, *et al.*,**<br><br>                         Defendants. | CV-07-4880 ODW (AJWx)<br><br>**FEDERAL TRADE COMMISSION'S REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS**<br><br>July 30, 2010<br>Judge: Hon. Otis D. Wright II |

Plaintiff, Federal Trade Commission ("FTC") submits the following

Request for Production of Documents to Defendants EDebitPay, LLC,  ("EDP");

Dale Paul Cleveland ("Cleveland"); and William Richard Wilson ("Wilson"),

pursuant to Section V.B.1 of the January 22, 2008 Stipulated Final Order for

Permanent Injunction and Monetary Relief ("Order") and Rule 34 of the Federal

Rules of Civil Procedure.

## **<u>DEFINITIONS</u>**

A.   "Complaint" means the Complaint filed by the FTC in the instant matter on

July 30, 2007.

B.   "Communication(s)" includes, but is not limited to, any and all

conversations, meetings, discussions and any other exchange, whether in

person, by telephone, or electronically, as well as all letters, memoranda,

telegrams, cables, and other writings or documents.

C.   "Contempt Proceeding" means the legal proceedings resulting from the

FTC's Application for an Order to Show Cause Why Defendants Should

Not Be Held in Contempt, filed on May 27, 2010.

D.   "Concerning" means relating to, referring to, describing, evidencing or

constituting.

E.   "Creative" means email content, banner ads, Internet websites and other

forms of created advertising, whether HTML, text, or images, used in

marketing.

2

F.   "Document" means the complete original and any non-identical copy (whether different from the original because of notations on the copy or otherwise), regardless of origin or location, of any written, typed, printed, transcribed, taped, recorded, filmed, punched, computer-stored, or graphic matter of every type and description, however and by whomever prepared, produced, disseminated or made, including but not limited to any advertisement, book, pamphlet, periodical, contract, file, invoice, memorandum, note, telegram, report, record, handwritten note, working paper, routing slip, package insert, sticker, web page, chart, graph, paper, index, map, tabulation, manual, guide, outline, script, abstract, history, calendar, diary, agenda, minute, code book, data compilation, tests, reports, clinical studies, test reports, scientific literature, articles, expert opinions, handwritten notes, correspondence, communications, electronic mail, electronically stored data, computer (including handheld computer) material (including print-outs, cards, magnetic or electronic tapes, discs and such codes or instructions as will transform such computer materials into easily understandable form), and video and audio recordings.

G.   "Identify," "identifying," and "identification" mean:

(a)   when referring to a natural person, state the full name,

3

present business address and telephone number, or if a present

business affiliation or business address is not known, by the

last known business and home addresses and business and

home telephone numbers;

(b)     when referring to any other entity, such as a business or

organization, state the legal name as well as any other names

under which the entity has done business, as well as the

address, telephone number and contact person; and

(c)     when referring to a document, state the full name(s) of

the author(s) or preparer(s), the full name of the recipient(s),

addressee(s), and/or person(s) designated to receive copies,

the title or subject line of the document, a brief description of

the subject matter of the document, the date it was prepared,

its present location, and its present custodian.

H.   "Include(s)" and "including" mean "without limitation," or "including but

not limited to," so as to avoid excluding any documents or information that

might otherwise be construed to be within the scope of any specification.

I.   Receiver" refers to Howard Camhi, the receiver appointed by the Court in

the instant matter, and his agents, accountants, representatives, and

4

attorneys.

J.   The singular shall be construed to include the plural, and the plural shall be construed to include the singular.

K.   The word "and" shall be construed to include the word "or," and the word "or" shall be construed to include the word "and."

L.   The word "each" shall be construed to include the word "every," and the word "every" shall be construed to include the word "each."

M.   The word "any" shall be construed to include the word "all," and the word "all" shall be construed to include the word "any."

N.   The use of a verb in any tense shall be construed as the use of the verb in all other tenses, whenever necessary, to bring within the scope of these requests all responses that might otherwise be construed to be outside their scope.

## **INSTRUCTIONS**

A.   The time period covered by these requests for production is January 22, 2008 through the conclusion of the Contempt Hearing in this case, unless otherwise specified.

B.   For the purposes of these requests for production the words "you" and "your" refer to Defendants EDebitPay, LLC; Dale Paul Cleveland; William

5

Richard Wilson; and any entity that is controlled by any of them,

individually or collectively.

C.    In responding to these requests for production, furnish all information in

your possession, custody, or control, or in the possession, custody, or

control of your attorneys, accountants, agents, directors, officers,

consultants, employees, independent contractors, bailees, or other

representatives of you, and any companies for which you have access to

documents or information related to these requests for production.

D.    Documents that may be responsive to more than one specification of these

requests for production need not be submitted more than once; however,

your response should indicate, for each document submitted, each

specification to which the document is responsive.  All information

submitted shall be clearly and precisely identified as to the specification(s)

or subspecification(s) to which it is responsive.  If any documents

responsive to these requests for production have been previously supplied

to the Commission, you may comply with these requests for production by

identifying the document(s) previously provided and the date of

submission.  In addition, number by page all documents in your

submission and indicate the total number of documents in your submission.

6

E.   These requests for production of documents are continuing in nature through the completion of the Contempt Hearing.  Responsive documents obtained or discovered after your initial response and production must be produced promptly.

F.   You should  produce all responsive documents as they are kept by you or you should organize the documents to correspond with these requests.

G.   If an objection is made to any request herein, all documents covered by the request not subject to the objection should be produced.  Similarly, if an objection is made to production of a document, the portion(s) of that document not subject to objection should be produced with the portion(s) objected to redacted and clearly indicated as redacted.

H.   If you assert a claim of privilege in responding to or objecting to any request for production, you shall provide a privilege log including the following information:

(i)    The custodian of the document;

(ii)   The type of document (*e.g.*, letter, memorandum);

(iii)  The date of the document;

(iv)   The general subject matter of the document;

(v)    The sender, author, and all recipients of the document; and

7

(vi)    The basis on which you contend you are entitled to withhold the document from production.

## REQUESTS FOR PRODUCTION

1.    Produce all non-identical versions of marketing, including creatives, for the following:

a.    Starter Credit Direct

b.    Century Platinum shopping club

c.    USA Benefits/USA shopping club

d.    E-Elite Plus shopping club

e.    ePlatinum+ shopping club

f.    Any other shopping club

2.    For each of the programs or products listed in Request 1, produce all non-identical terms and conditions.

3.    Produce all websites from which consumers were transferred (including through "exit pops" as described by Wilson in his November 17, 2009 deposition at 92-93, 103-06) to websites marketing any of the programs or products listed in Request 1.

4.    For each of the programs or products listed in Request 1, produce all complaints, requests for refunds, and requests for credits.

8

5.   Produce documents sufficient to show the number of consumers who applied (from a website or other marketing by or on behalf of Defendants) for each of the programs or products listed in Request 1.

6.   Produce documents sufficient to show the amount of revenue you received from marketing the programs or products listed in Request 1.

7.   Produce documents sufficient to show the amount of fees charged to consumers who applied (from a website or other marketing by or on behalf of Defendants) for each of the programs or products listed in Request 1.

8.   Produce all documents concerning proposed or actual changes to marketing for Starter Credit Direct.

9.   Produce all documents constituting or concerning communications between you and the Receiver regarding Starter Credit Direct since the date of the Complaint.

10.   Produce all documents constituting or concerning communications between you and the FTC regarding Starter Credit Direct since the date of the Complaint.

11.   If you contend that your marketing of the Century Platinum shopping club clearly and conspicuously (as defined in the Order) disclosed the material attributes of the product or service offered or marketed, produce all

9

documents that support your contention.

12.   If you contend that you substantially complied with the Order, produce all documents that support your contention.

13.   Produce all documents concerning your defenses in this Contempt Proceeding.

14.   If you contend that the Receiver and/or the FTC represented to you at any time after the Complaint that your marketing of the Century Platinum shopping club complied with the Order, produce all documents that support your contention.

15.   If you contend that, at any time after the Complaint, you reasonably relied on representations by the Receiver and/or the FTC that your marketing of the Century Platinum shopping club complied with the Order, produce all documents that support your contention.

16.   Produce all non-identical versions of your marketing (or marketing of others on your behalf), including creatives, for debit cards that were marketed with representations that they could be obtained for "no cost."

17.   Produce documents sufficient to show the number of consumers who applied for debit cards that were marketed with representations that they could be obtained for "no cost."

10

18.   Produce documents sufficient to show the amount of revenue you received from debit cards that were marketed with representations that they could be obtained at "no cost."

19.   Produce documents sufficient to show the amount of fees charged to consumers from debit cards that were marketed with representations that they could be obtained at "no cost."

20.   Produce all non-identical versions of your marketing (or marketing of others on your behalf), including creatives (in addition to those already produced in response to Specification 16), that represent that prepaid cards, debit cards, or credit cards can be obtained "free," without obligation, or at a reduced cost.

21.   Produce documents sufficient to show the number of consumers (in addition to those already identified in response to Specification 17) who applied for prepaid cards, debit cards, or credit cards that were marketed with representations that they could be obtained "free," without obligation, or at a reduced cost.

22.   Produce documents sufficient to show the amount of revenue (in addition to the revenue already identified in response to Specification 18) you received from marketing prepaid cards, debit cards, or credit cards that

11

were marketed with representations that they could be obtained "free," without obligation, or at a reduced cost.

23.     Produce documents sufficient to show the amount of fees (in addition to the fees already identified in response to Specification 16) charged to consumers from prepaid cards, debit cards, or credit cards that were marketed with representations that they could be obtained "free," without obligation, or at a reduced cost.


Date: July 30, 2010                              Respectfully submitted,


                                    _____/s/_____
                                    Mark Morelli
                                    Elizabeth Tucci
                                    Zachary V. Hunter
                                    John D. Jacobs
                                    Attorneys for Plaintiff
                                    FEDERAL TRADE COMMISSION

12

**PROOF OF SERVICE**

I am a resident of the District of Columbia and over the age of 18 years, and I am not a party to the this action.  My business address is 600 Pennsylvania Avenue, N.W., Washington, DC 20580.  On July 30, 2010, I served via U.S. Mail the FTC'S REQUEST FOR PRODUCTION OF DOCUMENTS on the following person:

Michael Mallow, Esq.,
Loeb & Loeb, LLP,
10100 Santa Monica Boulevard,
Suite 2200,
Los Angeles, CA 90067

and by email to

Michael Mallow, Esq.
Karen Thorland, Esq.,
Christine Reilly, Esq.
Loeb & Loeb, LLP,

at the following email addresses:
mmallow@loeb.com
kthorland@loeb.com
creilly@loeb.com


_____/s/_____
Mark Morelli
Attorney for Plaintiff
Federal Trade Commission

13

ATTACHMENT 4

1  MICHAEL L. MALLOW (SBN 188745)
   mmallow@loeb.com
2  KAREN R. THORLAND (SBN 172092)
   kthorland@loeb.com
3  CHRISTINE M. REILLY (SBN 226388)
   creilly@loeb.com
4  LOEB & LOEB LLP
   10100 Santa Monica Boulevard, Suite 2200
5  Los Angeles, California 90067-4120
   Telephone:    310-282-2000
6  Facsimile:     310-282-2200

7  Attorneys for Defendants
   EDEBITPAY, LLC,
8  DALE PAUL CLEVELAND and
   WILLIAM RICHARD WILSON

9                  UNITED STATES DISTRICT COURT

10                CENTRAL DISTRICT OF CALIFORNIA

11

12
   FEDERAL TRADE COMMISSION,          )   Case No.  2:07-CV-04880 ODW (AJWx)
13                                     )
              Plaintiff,               )   Assigned to Hon. Otis D. Wright II
14                                     )
          v.                           )   **DEFENDANTS' OBJECTIONS AND**
15                                     )   **RESPONSES TO PLAINTIFF FEDERAL**
   EDEBITPAY, LLC; EDP REPORTING, LLC; )   **TRADE COMMISSION'S FIRST SET OF**
16 EDP TEHNOLOGIES CORPORATION;        )   **INTERROGATORIES**
   SECURE DEPOSIT CARD, INC.; DALE     )
17 PAUL CLEVELAND;  and WILLIAM        )
   RICHARD WILSON,                     )
18                                     )
              Defendants.              )
19                                     )
                                       )
20                                     )
                                       )
21                                     )
                                       )
22                                     )
                                       )
23                                     )

24 **PROPOUNDING PARTY:**       **FEDERAL TRADE COMMISSION**

25 **RESPONDING PARTY:**        **DEFENDANTS**

26 **SET NO.**                  **ONE**

27

28
                                              DEFENDANTS' OBJECTIONS AND RESPONSES TO
                                              PLAINTIFF'S FIRST SET OF INTERROGATORIES

1   Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendants

2   EDebitPay LLC ("EDP"), Dale Paul Cleveland ("Cleveland"), and William Richard Wilson

3   ("Wilson") (collectively "Defendants") hereby object and respond to the Federal Trade

4   Commission's First Set of Interrogatories to Defendants (the "Interrogatories") as follows:

5                              **GENERAL OBJECTIONS**

6       1.   Defendants object to each Interrogatory to the extent it calls for or could be

7   construed to call for information which is protected or privileged from disclosure under the

8   attorney-client privilege, attorney work product, or related doctrines. Defendants object to

9   identifying any privileged or work product documents that were created on or after the filing date

10  of this contempt action because, among other reasons, it would be overly and unduly burdensome.

11  Inadvertent production of any privileged document or information otherwise immune from

12  discovery shall not be deemed a waiver of any applicable privilege or work product protection.

13      2.   Defendants object to each Interrogatory to the extent it calls for or could be

14  construed to call for the production of information containing trade secrets, proprietary or

15  confidential commercial or financial information, or information that invades or implicates the

16  privacy rights of nonparties to this litigation, such as individual consumers and/or information that

17  allows for the identification of such individuals (i.e., personal identifiable information).

18  Defendants will produce such information upon entry of a mutually agreeable Protective Order.

19      3.   Defendants object to each Interrogatory to the extent that it purports to impose

20  obligations of disclosure beyond those required by the Federal Rules of Civil Procedure and the

21  Local Rules. The Responses and objections herein are made in accordance with the Federal Rules

22  of Civil Procedure and the Local Rules only.

23      4.   Defendants object to each Interrogatory to the extent it seeks information that is

24  outside of Defendants' knowledge, possession, custody and/or control.

25      5.   Defendants object to the Interrogatories, and specifically to the time period set forth

26  in the "Instructions" in paragraph B, on the grounds that the definition of the time period as

27  extending "through the conclusion of the Contempt Hearing in this case" is overbroad, unduly

28

LA2066185.10
211465-10001

1  burdensome, unreasonable, oppressive, and premature. Defendants will provide information as of

2  July 31, 2010, unless expressly noted otherwise.

3        6.    Defendants object to the Interrogatories, and specifically to the "Instructions" in

4  paragraphs D and E on the grounds that the demanded information is overbroad, unduly

5  burdensome, unreasonable and oppressive with respect to its inclusion of information in the

6  "possession, custody, or control of ... consultants ... independent contractors, ... or other

7  representatives of you, and any companies for which you have access to documents or information

8  related to these interrogatories." Defendants expressly disavow any obligation to respond to the

9  Interrogatories beyond those required under the Federal Rules of Civil Procedure, and except as

10  otherwise set forth expressly herein. Defendants will not undertake to respond on behalf of any

11  person or entity other than Defendants themselves.

12        7.    Defendants' Responses to the Interrogatories are not intended to be and shall not be

13  deemed an admission of the matters stated, implied or assumed by any or all of the Interrogatories.

14  In responding to the Interrogatories, Defendants neither waive nor intend to waive, but expressly

15  reserve, any and all objections to the relevance, competence, materiality or admissibility of any

16  information provided.

17        8.    Defendants' investigation of information and documents that may be responsive to

18  the Interrogatories is continuing, and therefore, they reserve the right to amend, correct,

19  supplement and/or modify any and all of their Responses herein if in the course of this proceeding

20  they become aware of additional information and/or documents that are responsive to these

21  Interrogatories.

22                              **RESPONSE TO INTERROGATORIES**

23        Subject to and without waiver of the foregoing General Objections, each of which is

24  expressly incorporated in and made a part of Defendants' Responses to each of the separate

25  Interrogatories, Defendants further respond to the Interrogatories as follows:

26

27

28

1  **INTERROGATORY NO. 1**:

2       Describe in detail all of the ways in which consumers reached or were directed to the

3  Starter Credit Direct website (including through "exit pops," as described by Wilson in his

4  November 17, 2009 deposition at 92-93, 103-06 or through other means such as hyperlinks from

5  emails or other websites).

6  **RESPONSE TO INTERROGATORY NO. 1**:

7       Subject to and without waiver of the foregoing General Objections, each of which is

8  expressly incorporated herein, Defendants further object to Interrogatory No. 1 on the following

9  grounds:  First, the interrogatory is overbroad, unduly burdensome and unreasonable, and seeks

10  information that is neither relevant to the claims against Defendants in the contempt proceeding

11  nor reasonably calculated to lead to the discovery of admissible evidence.  Specifically, the

12  contempt application filed by the FTC concerns EDP's advertising for the Century Platinum

13  shopping catalog product on the startercreditdirect.com website.  It does not concern the manner in

14  which consumers "reached or were directed to" the startercreditdirect.com website.  Not only was

15  this issue not raised by the FTC in its contempt application, but nowhere in the Final Order are

16  these issues or the term "exit pops" referenced.  Nor was it discussed during settlement

17  negotiations or during the FTC's vetting of Defendants' advertising post-Final Order.  Second,

18  Defendants object to this interrogatory on the grounds that it calls for·information uniquely in the

19  possession of third party consumers.  Third, Defendants further object to this interrogatory on the

20  grounds that it is duplicative of discovery obtained by Plaintiff from Defendants prior to the filing

21  of its Application for an Order to Show Cause Why Defendants Should Not Be Held in Contempt

22  and in response to the FTC's July 23, 2009 request for information and documents to monitor

23  Defendants' compliance with the Final Order.  Fourth, the phrases "reached or were directed to"

24  and "Starter Credit Direct website" are vague and ambiguous.  Defendants understand the term

25  "Starter Credit Direct website" to mean EDP's startercreditdirect.com website.

26  **INTERROGATORY NO. 2**:

27       For each consumer who signed up for the Century Platinum shopping club through Starter

28  Credit Direct, identify how the consumer reached or was directed to the Starter Credit Direct

3

1  website, including the website (and whether it is an EDP website), email, or other Internet

2  advertising from which the consumer was directed or "exit popped" to the Starter Credit Direct

3  website, if applicable.

4  **RESPONSE TO INTERROGATORY NO. 2**:

5      Subject to and without waiver of the foregoing General Objections, each of which is

6  expressly incorporated herein, Defendants further object to Interrogatory No. 2 on the following

7  grounds:  First, the interrogatory is overbroad, unduly burdensome, harassing, and unreasonable,

8  and seeks information that is neither relevant to the claims against Defendants in the contempt

9  proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

10  Specifically, the contempt application filed by the FTC concerns EDP's advertising for the

11  Century Platinum shopping catalog product on the startercreditdirect.com website.  It does not

12  concern the manner in which a consumer "reached or was directed to" the startercreditdirect.com

13  website.  Not only was this issue not raised by the FTC in its contempt application, but nowhere in

14  the Final Order are these issues or the terms "exit pops" or "exit popped" referenced.  Nor was it

15  discussed during settlement negotiations or during the FTC's vetting of Defendants' advertising

16  post-Final Order.  Second, Defendants object to this interrogatory on the grounds that it calls for

17  information uniquely in the possession of third party consumers.  Third, the interrogatory is

18  objectionable on the basis that it is vague and ambiguous, particularly with respect to the phrases

19  "signed up for," "reached or was directed to," "Starter Credit Direct," and "Starter Credit Direct

20  website."   Defendants understand the phrases "Starter Credit Direct" and "Starter Credit Direct

21  website" to mean EDP's startercreditdirect.com website.

22  **INTERROGATORY NO. 3**:

23      Identify all statements disclosing to consumers that they were or may have been transferred

24  to the Starter Credit Direct website from another website, including the websites and dates on

25  which such statements appeared.

26  **RESPONSE TO INTERROGATORY NO. 3**:

27      Subject to and without waiver of the foregoing General Objections, each of which is

28  expressly incorporated herein, Defendants further object to Interrogatory No. 3 on the following

4

1  grounds: First, the interrogatory is overbroad, unduly burdensome and unreasonable, and seeks
2  information that is neither relevant to the claims against Defendants in the contempt proceeding
3  nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, the
4  contempt application filed by the FTC concerns EDP's advertising for the Century Platinum
5  shopping catalog product on the startercreditdirect.com website. It does not concern the manner in
6  which a consumer was "transferred" to the startercreditdirect.com website. Not only was this
7  issue not raised by the FTC in its contempt application, but nowhere in the Final Order is this issue
8  referenced. Nor can the Final Order be construed to require such disclosure. Nor was it discussed
9  during settlement negotiations or during the FTC's vetting of Defendants' advertising post-Final
10 Order. Second, Defendants object to this interrogatory on the grounds that it calls for information
11 in the possession of third parties. Third, Defendants further object to this interrogatory on the
12 grounds that it is duplicative of discovery obtained by Plaintiff from Defendants prior to the filing
13 of its Application for an Order to Show Cause Why Defendants Should Not Be Held in Contempt
14 and in response to the FTC's July 23, 2009 request for information and documents to monitor
15 Defendants' compliance with the Final Order. Fourth, the interrogatory is objectionable on the
16 basis that the terms "transferred" and "Starter Credit Direct website" are vague and ambiguous.
17 Defendants understand the phrase "Starter Credit Direct website" to mean EDP's
18 startercreditdirect.com website.

19 **INTERROGATORY NO. 4**:

20     Identify all changes to the marketing of Starter Credit Direct.

21 **RESPONSE TO INTERROGATORY NO. 4**:

22     Subject to and without waiver of the foregoing General Objections, each of which is
23 expressly incorporated herein, Defendants further object to Interrogatory No. 4 on the following
24 grounds: First, the interrogatory is overbroad, unduly burdensome and unreasonable, to the extent
25 that it seeks information that is neither relevant to the claims against Defendants in the contempt
26 proceeding nor reasonably calculated to lead to the discovery of admissible evidence. Second,
27 Defendants further object to this interrogatory on the grounds that it is duplicative of discovery
28 obtained by Plaintiff from Defendants prior to the filing of its Application for an Order to Show

1  Cause Why Defendants Should Not Be Held in Contempt and in response to the FTC's July 23,

2  2009 request for information and documents to monitor Defendants' compliance with the Final

3  Order.  The phrase "Starter Credit Direct" is also vague and ambiguous.  Defendants understand

4  the phrase "Starter Credit Direct" to mean EDP's startercreditdirect.com website.

5          Subject to and without waiver of any of the foregoing General Objections and the

6  foregoing specific objections, Defendants further respond to the interrogatory as follows:

7  Defendants exercise their option to produce documents in response to this interrogatory.

8  Documents that Defendants consider confidential will be produced following the execution by the

9  parties to the litigation and the entry by the Court of a suitable stipulation and protective order

10  limiting the dissemination of those documents.  Documents previously produced in connection

11  with Defendants' Opposition to the FTC's Contempt Application will not be produced again.

12  **INTERROGATORY NO. 5**:

13          Identify all communications and documents related to the changes to the marketing of

14  Starter Credit Direct.

15  **RESPONSE TO INTERROGATORY NO. 5**:

16          Subject to and without waiver of the foregoing General Objections, each of which is

17  expressly incorporated herein, Defendants further object to Interrogatory No. 5 on the following

18  grounds:  First, the interrogatory is overbroad, unduly burdensome and unreasonable, to the extent

19  that it seeks information that is neither relevant to the claims against Defendants in the contempt

20  proceeding nor reasonably calculated to lead to the discovery of admissible evidence.  Second,

21  Defendants further object to this interrogatory on the grounds that it is duplicative of discovery

22  obtained by Plaintiff from Defendants prior to the filing of its Application for an Order to Show

23  Cause Why Defendants Should Not Be Held in Contempt and in response to the FTC's July 23,

24  2009 request for information and documents to monitor Defendants' compliance with the Final

25  Order.  Third, Defendants object to this interrogatory on the grounds that it calls for information

26  protected by the attorney-client privilege and/or work product protection.  Fourth, the phrase

27  "Starter Credit Direct" is vague and ambiguous.  Defendants understand the phrase "Starter Credit

28  Direct" to mean EDP's startercreditdirect.com website.

1   Subject to and without waiver of any of the foregoing General Objections and the

2   foregoing specific objections, Defendants further respond to the interrogatory as follows:

3   Defendants exercise the option to produce documents regarding the credit line offered on the

4   startercreditdirect.com website in response to this interrogatory. Documents that Defendants

5   consider confidential will be produced following the execution by the parties to the litigation and

6   the entry by the Court of a suitable stipulation and protective order limiting the dissemination of

7   those documents. Documents previously produced in connection with Defendants' Opposition to

8   the FTC's Contempt Application will not be produced again.

9   **INTERROGATORY NO. 6**:

10  Identify each website through which EDP marketed the Century Platinum shopping club.

11  For each website provide:

12      a.    The number of consumers who applied for the Century Platinum shopping club, the

13  number of consumers who enrolled in the Century Platinum shopping club and the date on which

14  they enrolled.

15      b.    The total amount consumers were charged (along with any refunds, credits, or

16  chargebacks).

17      c.    The total amount of revenue received by EDP.

18  **RESPONSE TO INTERROGATORY NO. 6**:

19  Subject to and without waiver of the foregoing General Objections, each of which is

20  expressly incorporated herein, Defendants further object to Interrogatory No. 6 on the following

21  grounds: First, the interrogatory is overbroad, unduly burdensome and unreasonable, to the extent

22  it seeks information that is neither relevant to the claims against Defendants in the contempt

23  proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

24  Specifically, to the extent the interrogatory requests information about marketing of the Century

25  Platinum shopping catalog product through websites other than startercreditdirect.com, it requests

26  information outside the scope of this contempt proceeding. The FTC's contempt application was

27  solely directed at EDP's marketing of the Century Platinum shopping catalog product on the

28  startercreditdirect.com website. Second, Defendants object to this interrogatory on the grounds

1  that it is compound and consists of four (4) separate interrogatories. Therefore, for purposes of

2  Federal Rule of Civil Procedure 33(a)(1), each of the discrete subparts of Interrogatory No. 6 shall

3  be counted toward the FTC's limit of twenty-five (25) written interrogatories. Third, Defendants

4  further object to this interrogatory to the extent that it is duplicative of discovery obtained by

5  Plaintiff from Defendants prior to the filing of its Application for an Order to Show Cause Why

6  Defendants Should Not Be Held in Contempt and in response to the FTC's July 23, 2009 request

7  for information and documents to monitor Defendants' compliance with the Final Order. Fourth,

8  the interrogatory is objectionable to the extent that it purports to require Defendants to disclose

9  information constituting or containing, in whole or in part, trade secrets, confidential or

10 proprietary information, or nonpublic financial information related to Defendants. Fifth, the

11 phrases "applied for" and "enrolled in" are vague and ambiguous. Whether consumers who

12 submitted applications and paid the $99 application fee to EDP actually "enrolled" in the shopping

13 catalog club is unknown to EDP since EDP was only the marketer and not the fulfillment

14 company for the product. That information is in the possession, custody and control of third party

15 Insite Marketing Group, LLC. Accordingly, for purposes here, Defendants interpret "applied for"

16 to mean consumers who filled out and submitted an online application for the Century Platinum

17 shopping catalog club on EDP's startercreditdirect.com website, regardless of whether EDP

18 collected the $99 application fee. Defendants interpret "enrolled in" to mean consumers who

19 filled out and submitted an online application for the Century Platinum shopping catalog club on

20 EDP's startercreditdirect.com website and from whom EDP collected the $99 application fee. The

21 phrase "total amount of revenue" is also vague and ambiguous and can be taken to refer to gross

22 revenue or net revenue. Sixth, Defendants object to the extent this interrogatory requests

23 information in the possession, custody and control of a third party.

24        Subject to and without waiver of any of the foregoing General Objections and the

25 foregoing specific objections, Defendants respond to the interrogatory as follows: Defendants

26 further respond as follows:

27        (a)     The number of consumers who "applied for" the Century Platinum shopping

28 catalog club on the startercreditdirect.com website (i.e., consumers who filled out and submitted

1  an online application for the Century Platinum shopping catalog club on EDP's

2  startercreditdirect.com website, regardless of whether EDP collected the $99 application fee, as

3  reflected by the number of applications received by EDP) from January 22, 2008 to July 31, 2010

4  is 22,425, however, from October 1, 2008 to July 31, 2010 the number is 5,282. The number of

5  consumers who "enrolled in" the Century Platinum shopping catalog club on the

6  startercreditdirect.com website (i.e., consumers who filled out and submitted an online application

7  for the Century Platinum shopping catalog club on EDP's startercreditdirect.com website and from

8  whom EDP collected the $99 application fee, as reflected by the number of fee charges collected

9  by EDP) from January 22, 2008 to July 31, 2010 is 4,592, however, from October 1, 2008 to July

10  31, 2010 the number is 1,001. EDP collected on only 20 percent of applications submitted.

11       (b)    The total amount consumers were charged by EDP from collected

12  startercreditdirect.com applications from January 22, 2008 to July 31, 2010 was $454,608 ($99

13  one-time application fee * 4,592), however, from October 1, 2008 to July 31, 2010 the amount is

14  $99,099 ($99 one-time application fee*1001). There were 359 refunds from January 22, 2008 to

15  July 31, 201. The adjusted amount for January 22, 2008 to July 31, 2010 is therefore $419,067

16  ($454,608-[$99 * 359]). There were 62 refunds from October 1, 2008 to July 31, 2008. The

17  adjusted amount for October 1, 2008 to July 31, 2008 is therefore $92,961 ($99,099 –[$99 * 62]).

18       (c)    The total amount of gross revenue received by EDP from the

19  startercreditdirect.com website from January 22, 2008 to July 31, 2010 was $419,067 plus

20  recurring revenue from Insite for the $14 monthly shared fee charged by Insite. The monthly

21  recurring revenue checks received from Insite did not break down revenue by EDP website

22  marketing the Century Platinum shopping catalog product. Without such documentation, which is

23  not in EDP's possession, custody or control, EDP is unable to ascertain recurring revenue figures

24  for the startercreditdirect.com website with exact precision. An estimate of recurring revenue

25  attributable to the startercreditdirect.com website from February 2008 to July 2010 using a per

26  application rate analysis is $88,965.56 (total recurring revenue for all EDP Century Platinum

27  advertising divided by total number of collected applications for all EDP Century Platinum

28  advertising multiplied by total number of collected applications for startercreditdirect.com

1   website).  Therefore, the total amount of *gross* revenue for the startercreditdirect.com website is

2   estimated to be $508,032.56 ($419,067 for $99 application fee collected from 4,592 applications

3   from January 22, 2008 through July 31, 2010 + $88,965.56 for recurring revenue fees from

4   February 1, 2008 to July 31, 2010).  The total amount of *net* revenue for the

5   startercreditdirect.com website from February 2008 to July 2010 is approximately $24,661.03.

6   For the period beginning October 2008 to July 31, 2010, gross revenue attributable to the

7   startercreditdirect.com website is estimated to be $139,467 (1,001 applications @ $99 plus

8   recurring revenue estimated at $40,368.08).

9   **INTERROGATORY NO. 7**:

10       Describe in detail all steps you took to ensure that your marketing of the Century Platinum

11   shopping club did not misrepresent any material fact and/or fail to disclose the material attributes

12   of the product or service offered or marketed.

13   **RESPONSE TO INTERROGATORY NO. 7**:

14       Subject to and without waiver of the foregoing General Objections, each of which is

15   expressly incorporated herein, Defendants further object to Interrogatory No. 7 on the following

16   grounds:  First, the interrogatory is overbroad, unduly burdensome and unreasonable, to the extent

17   it seeks information that is neither relevant to the claims against Defendants in the contempt

18   proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

19   Specifically, to the extent the interrogatory requests information about marketing of the Century

20   Platinum shopping catalog product through websites other than startercreditdirect.com, it requests

21   information outside the scope of this contempt proceeding.  The FTC's contempt application was

22   solely directed at EDP's marketing of the Century Platinum shopping catalog product on the

23   startercreditdirect.com website.  Second, Defendants further object to this interrogatory to the

24   extent that it is duplicative of discovery obtained by Plaintiff from Defendants prior to the filing of

25   its Application for an Order to Show Cause Why Defendants Should Not Be Held in Contempt

26   and in response to the FTC's July 23, 2009 request for information and documents to monitor

27   Defendants' compliance with the Final Order.  Third, Defendants object to this interrogatory on

28   the grounds that it calls for information protected by the attorney-client privilege and/or work

1   product protection.  Fourth, the interrogatory requires Defendants to draw a legal conclusion as to

2   the meaning of the phrases "material fact" and "material attributes" and for this reason is also

3   vague and ambiguous.

4          Subject to and without waiver of any of the foregoing General Objections and the

5   foregoing specific objections, Defendants respond to the interrogatory as follows: Defendants

6   exercise the option to produce documents in response to this interrogatory.  Documents that

7   Defendants consider confidential will be produced following the execution by the parties to the

8   litigation and the entry by the Court of a suitable stipulation and protective order limiting the

9   dissemination of those documents.  Documents previously produced in connection with

10  Defendants' Opposition to the FTC's Contempt Application will not be produced again.

11         Defendants further respond as follows: Defendants internally review their marketing on a

12  continuous basis to ensure that it complies with the law and the Final Order.  For example, they

13  employ a full-time staff member who is responsible for reviewing and monitoring all EDP and

14  affiliate sites for compliance with the law and the Final Order, which included the Starter Credit

15  marketing when it was being marketed.  Defendants also created a compliance checklist used in

16  monitoring these sites.  EDP created the Internet Compliance Network ("ICN"), which assists

17  consumers in making informed choices when purchasing products and services on the Internet.

18  The FTC was notified of EDP's ICN concept and provided links to the ICN home page.  *See*

19  www.icomplynet.com.  The ICN icon is provided on all of EDP's websites, and was included on

20  startercreditdirect.com.

21         In their diligence to remain compliant, Defendants sought and received feedback from the

22  FTC on various marketing creatives.  Defendants worked closely with the FTC and Receiver

23  during the receivership to ensure that EDP's marketing was in compliance with the law.  In the

24  months following entry of the Final Order, local FTC staff and Defendants worked on creatives

25  for the Ultimate Platinum website, which served as a template for other EDP marketing creatives.

26  The FTC reviewed the Ultimate Platinum creatives (among various others) and offered feedback,

27  comments, and suggestions.  Defendants made the changes suggested by the FTC.  Once the FTC

28  and Defendants arrived at a mutually acceptable marketing creative for Ultimate Platinum,

1  Defendants made corresponding changes to the Starter Credit Direct website at

2  startercreditdirect.com (as well as other marketing pieces).  In short, startercreditdirect.com was

3  modeled after a marketing piece vetted by the FTC.

4      Defendant also voluntarily implemented changes to marketing material based on

5  information that became available through FTC enforcement and threatened enforcement actions

6  against unrelated and unaffiliated third parties.  For example, defense counsel shared with

7  Defendants information that David Vladeck, Director of the Bureau of Consumer Protection,

8  expressed concern regarding the marketing of a line of credit that depicted a credit card because

9  consumers did not actually receive a card.  Upon learning of Mr. Vladeck's concerns, Defendants

10  immediately and voluntarily made adjustments to their own marketing material, including

11  changing the depiction of a credit card in their Ultimate Platinum marketing to a circle, so that

12  consumers would not have the mistaken impression that they would be receiving a credit card in

13  the mail.  Defendants also changed their marketing to prominently display the words "limited" and

14  "exclusive" upon learning that Mr. Vladeck preferred these terms.

15      The Starter Credit marketing itself demonstrates the steps Defendants took to ensure

16  compliance with the Final Order, as described in response to Interrogatory No. 8, which is

17  incorporated herein by reference.

18  **INTERROGATORY NO. 8**:

19      If you contend that your marketing of the Century Platinum shopping club clearly and

20  conspicuously (as defined in the Order) disclosed the material attributes of the product or service

21  offered or marketed:

22      a.    Identify all such marketing, including the dates that marketing was live or in use.

23      b.    Identify all documents and communications that support your contention.

24      c.    State all facts that support your contention.

25  **RESPONSE TO INTERROGATORY NO. 8**:

26      Subject to and without waiver of the foregoing General Objections, each of which is

27  expressly incorporated herein, Defendants further object to Interrogatory No. 8 on the following

28  grounds:  First, the interrogatory is overbroad, unduly burdensome and unreasonable, to the extent

12        DEFENDANTS' OBJECTIONS AND RESPONSES TO
                                               PLAINTIFF'S FIRST SET OF INTERROGATORIES

1   it seeks information that is neither relevant to the claims against Defendants in this contempt

2   proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

3   Specifically, to the extent the interrogatory requests information about marketing of the Century

4   Platinum shopping catalog product through websites other than startercreditdirect.com, it requests

5   information outside the scope of this contempt proceeding.  The FTC's contempt application was

6   solely directed at EDP's marketing of the Century Platinum shopping catalog product on the

7   startercreditdirect.com website.  Second, Defendants object to this interrogatory on the grounds

8   that it is compound and consists of three (3) separate interrogatories.  Therefore, for purposes of

9   Federal Rule of Civil Procedure 33(a)(1), each of the discrete subparts of Interrogatory No. 8 shall

10  be counted toward the FTC's limit of twenty-five (25) written interrogatories.  Third, Defendants

11  further object to this interrogatory to the extent that it is duplicative of discovery obtained by

12  Plaintiff from Defendants prior to the filing of its Application for an Order to Show Cause Why

13  Defendants Should Not Be Held in Contempt and  in response to the FTC's July 23, 2009 request

14  for information and documents to monitor Defendants' compliance with the Final Order.  Fourth,

15  Defendants object to this interrogatory on the grounds that it calls for information protected by the

16  attorney-client privilege and/or work product protection.  Fifth, the interrogatory requires

17  Defendants to draw a legal conclusion as to the meaning of the phrases "clearly and

18  conspicuously" and "material attributes" and for this reason is also vague and ambiguous.  The

19  term "live or in use" is also vague and ambiguous.  Defendants interpret this phrase to mean live

20  on the internet and capable of accepting applications.

21          Subject to and without waiver of any of the foregoing General Objections and the

22  foregoing specific objections, Defendants respond to the interrogatory as follows:  Defendants

23  exercise the option to produce documents in response to subparts (a) to (c) of this interrogatory,

24  which documents shall include, but are not limited to, Defendants' Opposition to the Application

25  for an Order to Show Cause Why Defendants Should Not Be Held in Contempt and the

26  documents, communications and declarations provided to the FTC and the Court filed

27  concurrently therewith, a document with links to the startercreditdirect.com creatives that were

28  marketed to consumers, live on the internet, and capable of accepting applications, documents and

1 | communications in the possession of the FTC and/or Receiver related to startercreditdirect.com
2 | during the receivership and thereafter, documents and communications in the possession of the
3 | FTC and/or Receiver regarding the Ultimate Platinum website and marketing, and documents
4 | previously produced to the FTC in response to the FTC's July 23, 2009 request for information
5 | and documents to monitor Defendants' compliance with the Final Order. Documents that
6 | Defendants consider confidential will be produced following the execution by the parties to the
7 | litigation and the entry by the Court of a suitable stipulation and protective order limiting the
8 | dissemination of those documents. Documents previously produced in connection with
9 | Defendants' Opposition to the FTC's Contempt Application will not be produced again.

10 |      With respect to subpart (c) of this interrogatory, Defendants further respond by providing
11 | the following summary of facts: Startercreditdirect.com was a website EDP used to advertise a
12 | line of credit in connection with an online shopping catalog club called Century Platinum, which
13 | was a product offered by a third party, Insite Marketing Group, LLC. EDP did not own or operate
14 | the Century Platinum shopping club or products sold through Century Platinum, did not set
15 | catalog prices, down payment amounts or methods, or determine catalog items. Insite did not
16 | provide this information to EDP, as EDP marketed a competitor product. EDP merely marketed
17 | the product for Insite based on information it received from Insite. EDP did not have possession
18 | of the online catalog or have access to customer activity or complaints in connection with the
19 | shopping club (i.e., length of membership, membership cancellation/termination, credit offered
20 | and used, products purchased, down payments made, etc.). Accordingly, EDP had no way of
21 | knowing the percentage of consumers who signed up and purchased product (or any details related
22 | to such purchases). All customer-related inquiries, complaints, product returns, etc. were directed
23 | to Insite. Further, EDP did not derive any revenue from the catalog purchases and had no reason
24 | to track them.

25 |      The Starter Credit website clearly disclosed that it was offering a line of credit for a
26 | shopping club. An example of the pre-application webpage each consumer initially viewed when
27 | accessing the startercreditdirect.com website can be viewed at
28 |

1   https://builderimpact.com/FTCProd/century/startercreditdirect/20081015-20081023/index_short.asp. This

2   webpage was short and could be viewed in its entirety with minimal scrolling. Each consumer had

3   to review this short pre-application webpage first before they could proceed to the application

4   process or view any other information about the offer. The banner at the top of the page stated,

5   "Get an Immediate Guaranteed $10,000 Credit Line[1]" and had a footnote prominently displayed

6   next to "Credit Line." Footnote 1 specified that the credit line was "[t]o Purchase Brand Name

7   Merchandise Exclusively From Our Online Mega-Store!...This is a membership program and not a

8   debit or credit card....Century Platinum allows account holder to make merchandise purchases

9   exclusively from its online shopping site." At the top right hand corner of the page, it stated,

10  "Finally a credit line that provides me with the purchasing power towards great products." Under

11  the banner was a "Pre-Application" box for consumers to fill in personal information juxtaposed

12  next to EDP's Privacy Policy (in scrollable form, without a hyperlink). In addition to the

13  disclosures in Footnote 1, the short pre-application page also contained hyperlinks to the Century

14  Platinum Terms and Conditions and Century Platinum's Privacy Policy.

15        If a consumer inserted personal consumer data, checked the box that they had "read,

16  understood, and agree[d]" to EDP's Privacy Policy, and clicked the "Go To Application" button,

17  they were brought to an application webpage with additional information, disclosures, and options.

18  EDP's website statistics show that only 14 percent of visitors to the startercreditdirect.com website

19  proceeded to the application webpage. That is, 86 percent of startercreditdirect.com visitors only

20  viewed the short pre-application webpage.

21        An example of the application webpage can be viewed at

22  https://builderimpact.com/FTCProd/century/startercreditdirect/20081015-20081023/index.asp. The

23  application webpage contained the same banner stating, "Get an Immediate Guaranteed $10,000

24  Credit Line[1]" but also contained an orange banner about a cash advance offer across the top right

25  hand corner of the page. The page also contained the same box for consumer information

26  juxtaposed next to EDP's Privacy Policy, but this time the box was labeled "Application," rather

27  than "Pre-Application," and the fields were pre-populated based on information consumers had

28  input on the pre-application webpage. Halfway down the webpage on the right side, before the

1   request for bank account information, was a box containing prominent brand names such as

2   Samsung, LG, Sony and iPod stating "Shop Major Brands and Products!"  Below that was a check

3   box that consumers were required to check before submitting their application stating that they

4   authorized EDP to electronically debit the $99 application fee and referencing "Century

5   Platinum," "the monthly membership fee by Century Platinum," "the Century Platinum Terms &

6   Conditions," "membership usage fees," and "a membership kit with $10,000 credit line."  The

7   further disclosure in Footnote 1 contained on the short pre-application page, as detailed above,

8   appeared under this check box, along with the hyperlinks to the Century Platinum Terms and

9   Conditions and Century Platinum's Privacy Policy.

10   Once a consumer signed up for Century Platinum membership, they received an electronic

11   notice stating, "Congratulations [name]!  You are now a Century Platinum account holder with a

12   $10,000 line of credit to be used exclusively at www.centuryplatinum.com."  If a consumer did

13   not intend to join Century Platinum, they could immediately cancel their order before it was

14   processed.  Consumers also received a membership kit by regular mail.  Consumers had several

15   days to cancel their order and receive a full refund after the $99 application fee posted to their

16   accounts.

17   Defendants' compliance is also demonstrated through their communications with the FTC.

18   Defendants sought and received feedback from the FTC on various marketing creatives.

19   Defendants worked closely with the FTC and Receiver during the receivership to ensure that

20   EDP's marketing was in compliance with the law.  In the months following entry of the Final

21   Order, local FTC staff and Defendants worked on creatives for the Ultimate Platinum website,

22   which served as a template for other EDP marketing creatives.  The FTC reviewed the Ultimate

23   Platinum creatives (among various others) and offered feedback, comments, and suggestions.

24   Defendants made the changes suggested by the FTC.  Once the FTC and Defendants arrived at a

25   mutually acceptable marketing creative for Ultimate Platinum, Defendants made corresponding

26   changes to the Starter Credit Direct website at startercreditdirect.com (as well as other marketing

27   pieces).  In short, startercreditdirect.com was modeled after a marketing piece vetted by the FTC.

28

1       Defendants' compliance is further reflected in the FTC's own actions. Marketing for the

2  Century Platinum product at startercreditdirect.com began in July 2007 before the FTC action was

3  filed. When the FTC action was filed on July 30, 2007, Defendants produced all of its marketing

4  material to the FTC. Inventory listings of material seized by the FTC created by the Receiver

5  specifically included Starter Credit "website print-outs" and "banner samples." When the FTC

6  action was filed, EDP's operations came to a halt. After the Court entered the TRO, Defendants

7  and their counsel worked with the FTC and Court-appointed Receiver to modify EDP's marketing

8  material to ensure its compliance with the law. The TRO provided that the Receiver was to

9  "[c]ontinue and conduct the business of the [] Defendants in such manner, to such extent, and for

10  such duration as the Temporary Receiver may in good faith deem to be necessary or appropriate to

11  operate the business profitably and lawfully, if at all" and the "continuation and conduct of the

12  business [was] conditioned upon the Temporary Receiver's good faith determination that the

13  business can be lawfully operated..." TRO, Section XVI.N.

14       Consistent with these provisions, on or about August 13, 2007, the FTC, Receiver, and

15  Court, having found that EDP could be lawfully operated, permitted EDP to resume operations,

16  which included the continued marketing of Starter Credit. EDP marketed Starter Credit

17  throughout the receivership and supplied the Receiver with financial spreadsheets that expressly

18  identified revenue being generated from the Starter Credit marketing. Moreover, the Receiver was

19  provided a link to the Starter Credit marketing in September 2007. Both the FTC and Receiver

20  were well aware of the Starter Credit marketing beginning in at least August 2007 and allowed it

21  to be marketed throughout the receivership. Defendants and the FTC also worked together post-

22  Final Order to resolve consumer complaints specifically arising from the Starter Credit website.

23       If the Starter Credit product and marketing was a violation of the Final Order and FTC Act

24  (i.e., if it failed to "clearly and conspicuously" disclose the "material" attributes of the product or

25  service offered or marketed), then the FTC, having all of the information related to Starter Credit

26  in its possession and control prior to entry of the Final Order, would have included this marketing

27  in its initial enforcement action, would not have permitted Defendants to go back into business

28  with this marketing in August 2007, and at the least, would have voiced concerns regarding this

17

1   marketing during the receivership from August 2007 to January 2008.  Instead, the FTC

2   knowingly allowed EDP to market Starter Credit and communicated with Defendants about other

3   issues related to the Starter Credit website.  The FTC even directed Defendants to continue

4   marketing Starter Credit after Defendants voluntarily offered to cease the marketing in the event

5   the marketing piece posed any concerns to the FTC.

6          The inevitable conclusion to be reached from these facts is that neither the FTC nor the

7   Receiver believed that Starter Credit or the Starter Credit marketing was unlawful.  Why else

8   would the FTC not only allow, but direct, Defendants to continue the marketing if the Starter

9   Credit marketing was such a blatant violation that purportedly caused significant consumer harm?

10  It would destroy all notions of fundamental fairness if the FTC could permit Defendants to go

11  back into business with the Starter Credit marketing, knowingly allow Defendants to market

12  Starter Credit during the receivership, allow Defendants to continue marketing Starter Credit after

13  entry of the Final Order—all without indicating any concern whatsoever about the marketing—

14  and then pursue contempt nearly two and half years after the Final Order was entered.

15  **INTERROGATORY NO. 9**:

16         If you contend that a defense (e.g., substantial compliance, estoppel) excuses or limits your

17  liability for one or more violations of the Order, for each defense:

18         a.     Identify all documents and communications that support your contention.

19         b.     State all facts that support your contention.

20  **RESPONSE TO INTERROGATORY NO. 9**:

21         Subject to and without waiver of the foregoing General Objections, each of which is

22  expressly incorporated herein, Defendants further object to Interrogatory No. 9 on the following

23  grounds:  First, the interrogatory is overbroad, unduly burdensome and unreasonable.  Second,

24  Defendants object to this interrogatory on the grounds that it is compound and consists of two (2)

25  separate interrogatories.  Therefore, for purposes of Federal Rule of Civil Procedure 33(a)(1), each

26  of the discrete subparts of Interrogatory No. 9 shall be counted toward the FTC's limit of twenty-

27  five (25) written interrogatories.  Third, Defendants object to this interrogatory on the grounds that

28  it calls for information protected by the attorney-client privilege and/or work product protection.

1    Subject to and without waiver of any of the foregoing General Objections and the
2  foregoing specific objections, Defendants respond to the interrogatory as follows:  Defendants
3  exercise the option to produce documents in response to subparts (a) to (b) of this interrogatory,
4  which documents shall include, but are not limited to, Defendants' Opposition to the Application
5  for an Order to Show Cause Why Defendants Should Not Be Held in Contempt and the
6  documents, communications and declarations provided to the FTC and the Court filed
7  concurrently therewith, a document with links to the startercreditdirect.com creatives that were
8  marketed to consumers, live on the internet, and capable of accepting applications, documents and
9  communications in the possession of the FTC and/or Receiver related to startercreditdirect.com
10  during the receivership and thereafter, documents and communications in the possession of the
11  FTC and/or Receiver regarding the Ultimate Platinum website and marketing, and documents
12  previously produced to the FTC in response to the FTC's July 23, 2009 request for information
13  and documents to monitor Defendants' compliance with the Final Order.  Documents that
14  Defendants consider confidential will be produced following the execution by the parties to the
15  litigation and the entry by the Court of a suitable stipulation and protective order limiting the
16  dissemination of those documents.  Documents previously produced in connection with
17  Defendants' Opposition to the FTC's Contempt Application will not be produced again.

18    With respect to subpart (b) of this interrogatory, Defendants incorporate by reference their
19  responses to Interrogatory Nos. 7 and 8.  Defendants further respond by providing the following
20  summary of facts related to Defendants' defenses:

21  **A.    Defenses as to Starter Credit Direct Marketing**

22    **1.    Equitable Estoppel/Entrapment/Waiver**

23    Marketing for the Century Platinum product at startercreditdirect.com began in July 2007
24  before the FTC action was filed.  When the FTC action was filed on July 30, 2007, Defendants
25  produced all of its marketing material to the FTC.  Inventory listings of material seized by the
26  FTC created by the Receiver specifically included Starter Credit "website print-outs" and "banner
27  samples."  When the FTC action was filed, EDP's operations came to a halt.  After the Court
28  entered the TRO, Defendants and their counsel worked with the FTC and Court-appointed

1  Receiver to modify EDP's marketing material to ensure its compliance with the law. The TRO

2  provided that the Receiver was to "[c]ontinue and conduct the business of the [] Defendants in

3  such manner, to such extent, and for such duration as the Temporary Receiver may in good faith

4  deem to be necessary or appropriate to operate the business profitably and lawfully, if at all" and

5  the "continuation and conduct of the business [was] conditioned upon the Temporary Receiver's

6  good faith determination that the business can be lawfully operated…" TRO, Section XVI.N.

7      Neither the FTC nor court-appointed Receiver objected to the Starter Credit marketing

8  after they collected, pursuant to the Court's TRO Order, all Starter Credit marketing material and

9  creatives. To the contrary, the FTC and Receiver, with Court approval, allowed EDP to resume

10  marketing Starter Credit in August 2007. They allowed Starter Credit to be marketed despite

11  being ordered by the Court to review EDP marketing material, revise EDP marketing material to

12  comply with, and prevent violations of, the Final Order and applicable law, and to permit EDP to

13  continue doing business only if it could be done legally. The FTC and Receiver were well aware

14  of the Starter Credit marketing beginning in at least August 2007 and allowed it to be marketed

15  throughout the receivership. The Receiver regularly requested and was provided financial

16  information that expressly disclosed revenue being generated from the Starter Credit marketing,

17  and was also provided a link to the startercreditdirect.com website in September 2007. Not only

18  did the FTC and Receiver allow Defendants to market Starter Credit under their watch, the FTC

19  allowed Defendants to continue marketing Starter Credit after entry of the Final Order.

20  Defendants in fact worked with the FTC to resolve consumer complaints specifically arising from

21  the Starter Credit website.

22      In the months following entry of the Final Order, local FTC staff and Defendants worked

23  on creatives for various marketing pieces, including the Ultimate Platinum website. The FTC

24  reviewed creatives for the Ultimate Platinum website (among others) and offered feedback,

25  comments, and suggestions. Defendants made the changes suggested by the FTC. Once the FTC

26  and Defendants arrived at a mutually acceptable marketing creative for Ultimate Platinum,

27  Defendants made corresponding changes to the Starter Credit marketing (as well as other

28

20

1  marketing pieces).  The Starter Credit marketing is therefore modeled after a marketing template
2  sanctioned by the FTC.

3          For approximately 22 months following entry of the Final Order, the FTC voiced no
4  concern about Starter Credit notwithstanding its knowledge that EDP marketed Starter Credit
5  throughout the receivership and continued to do so after entry of the Final Order and despite
6  contacting Defendants about issues related to Starter Credit.  At no time did the FTC suggest or
7  request changes to the Starter Credit creatives in its possession.  This is significant considering
8  that Defendants' advertising had been under intense scrutiny by the FTC since at least July 2007,
9  and by a Court-appointed Receiver for several of those months.

10          The inevitable conclusion to be reached from these facts is that neither the FTC nor the
11  Receiver believed that Starter Credit or the Starter Credit marketing was unlawful.  The FTC's
12  current position is entirely inconsistent with its past actions regarding the Starter Credit marketing.
13  The inconsistency is not entirely surprising given the appointment of Jon Leibowitz to FTC
14  Chairman in March 2009 and the appointment of David Vladeck to Director for the Bureau of
15  Consumer Protection in April 2009, and their express objections to online shopping catalogs.  The
16  new leadership at the FTC has taken issue with shopping catalog products, despite these products
17  being marketed for over a decade and despite knowing about Defendants' Starter Credit marketing
18  for years.  Until just recently, the FTC simply did not consider shopping catalog clubs to be
19  problematic or questionable.

20          That the FTC may have changed its tune, however, cannot detract from the fact that
21  Defendants reasonably relied on the actions (or omissions) of the FTC and Receiver in their
22  marketing of the Starter Credit website.  Defendants had no reason or basis to believe that the
23  Starter Credit advertising posed any issue to the FTC whatsoever.  Defendants justifiably relied on
24  the FTC and the Receiver, both experts in consumer protection, in reaching the understanding that
25  the Starter Credit marketing was in compliance with the FTC Act and the Final Order.  If the FTC
26  has now concluded otherwise, it, at best, mistakenly and prejudicially misled Defendants into what
27  it now claims is a contemptuous violation of the Final Order.

28

1    The FTC should not be able to reverse course mid-stream and hold Defendants liable for

2  conduct that it clearly did not take issue with for years, at least not without giving Defendants

3  notice and an opportunity to conform with the FTC's new opinions on shopping catalog products.

4  No notice was given to Defendants here. No cease and desist letter was sent. No request to

5  change or discontinue the marketing was made. Instead, when Defendants voluntarily offered to

6  discontinue the marketing when the FTC began making inquiry, the FTC expressly requested that

7  EDP continue the Starter Credit marketing, further lulling Defendants into a false sense of

8  security. And when Defendants asked for the complaints the FTC said they were receiving with

9  respect to the Starter Credit marketing, the FTC steadfastly refused to provide them despite

10  multiple requests. In fact, those complaints still have yet to be produced.

11    For all of the facts and reasons discussed above, the FTC's objections to the Starter Credit

12  marketing have long been waived and the FTC is now estopped and/or barred from pursuing

13  contempt sanctions against Defendants based on the Starter Credit marketing.

14    **2.    Substantial Compliance**

15    The Starter Credit website clearly disclosed that it was offering a line of credit for a

16  shopping club. An example of the pre-application webpage each consumer initially viewed when

17  accessing the startercreditdirect.com website can be viewed at

18  https://builderimpact.com/FTCProd/century/startercreditdirect/20081015-20081023/index_short.asp. This

19  webpage was short and could be viewed in its entirety with minimal scrolling. Each consumer had

20  to review this short pre-application webpage first before they could proceed to the application

21  process or view any other information about the offer. The banner at the top of the page stated,

22  "Get an Immediate Guaranteed $10,000 Credit Line[1]" and had a footnote prominently displayed

23  next to "Credit Line." Footnote 1 specified that the credit line was "[t]o Purchase Brand Name

24  Merchandise Exclusively From Our Online Mega-Store!...This is a membership program and not a

25  debit or credit card....Century Platinum allows account holder to make merchandise purchases

26  exclusively from its online shopping site." At the top right hand corner of the page, it stated,

27  "Finally a credit line that provides me with the purchasing power towards great products." Under

28  the banner was a "Pre-Application" box for consumers to fill in personal information juxtaposed

1  next to EDP's Privacy Policy (in scrollable form, without a hyperlink). In addition to the

2  disclosures in Footnote 1, the short pre-application page also contained hyperlinks to the Century

3  Platinum Terms and Conditions and Century Platinum's Privacy Policy. Defendants' pre-

4  application webpage substantially complied with the Final Order, and for most all of consumers,

5  this was the only Starter Credit marketing they viewed. Only 14 percent of visitors to the

6  startercreditdirect.com website proceeded to the application webpage. That is, 86 percent of

7  startercreditdirect.com visitors only viewed the short pre-application webpage.

8      If a consumer inserted personal consumer data, checked the box that they had "read,

9  understood, and agree[d]" to EDP's Privacy Policy, and clicked the "Go To Application" button,

10  they were brought to an application webpage with additional information, disclosures, and options.

11  An example of the application webpage can be viewed at

12  https://builderimpact.com/FTCProd/century/startercreditdirect/20081015-20081023/index.asp. The

13  application webpage contained the same banner, stating "Get an Immediate Guaranteed $10,000

14  Credit Line[1]" but also contained an orange banner about a cash advance offer across the top right

15  hand corner of the page. The page also contained the same box for consumer information

16  juxtaposed next to EDP's Privacy Policy, but this time the box was labeled "Application," rather

17  than "Pre-Application," and the fields were pre-populated based on information consumers had

18  input on the pre-application webpage. Halfway down the webpage on the right side, before the

19  request for bank account information, was a box containing prominent brand names such as

20  Samsung, LG, Sony and iPod stating "Shop Major Brands and Products!" Below that was a check

21  box that consumers were required to check before submitting their application stating that they

22  authorized EDP to electronically debit the $99 application fee and referencing "Century

23  Platinum," "the monthly membership fee by Century Platinum," "the Century Platinum Terms &

24  Conditions," "membership usage fees," and "a membership kit with $10,000 credit line." The

25  further disclosure in Footnote 1 contained on the short pre-application page, as detailed above,

26  appeared under this check box, along with the hyperlinks to the Century Platinum Terms and

27  Conditions and Century Platinum's Privacy Policy. Defendants' application webpage also

28  substantially complied with the Final Order.

1    The FTC thought so too. Why else would the FTC not only allow, but direct, Defendants

2   to continue the Starter Credit marketing, particularly in the face of Defendants' unsolicited offer to

3   cease the marketing, if it was such a blatant violation that purportedly caused such significant

4   consumer harm? Since October 2008, when the FTC claims the Starter Credit marketing took a

5   turn for the worse, until the marketing ceased in December 2009, 1001 applications were

6   submitted through startercreditdirect.com, 62 of which received full refunds of the $99 application

7   fee. The amount of revenue generated from the $99 application fee during this time was $92,961.

8   The amount EDP has collected from the $14 shared recurring revenue charged by Insite for the

9   startercreditdirect.com website since October 2008 using a per application rate analysis (total

10   recurring revenue for all EDP Century Platinum advertising divided by total number of collected

11   applications for all EDP Century Platinum advertising multiplied by total number of collected

12   applications for startercreditdirect.com website) is approximately $41,157.02. In addition, total

13   collected applications from the startercreditdirect.com website accounted for only 9% of total

14   collected applications from all EDP websites advertising the Century Platinum shopping catalog

15   product. More importantly, revenue from startercreditdirect.com represents only .47% of EDP's

16   total gross revenue from all advertising since October 2008. In other words, approximately 99.5%

17   of EDP's business complies with the Final Order. These facts further demonstrate Defendants'

18   substantial compliance with the Final Order.

19       **3.    Reasonable Efforts to Comply/Diligence/Good Faith and Reasonable**

20           **Interpretation of the Final Order**

21    Defendants believed in good faith that the Starter Credit marketing was in compliance with

22   the Final Order. Based on the facts and reasons discussed in Section A.1 and in response to

23   Interrogatory Nos. 7-8, incorporated herein by reference, Defendants made all reasonable efforts

24   to comply with the Final Order and were diligent and conscientious in their compliance efforts,

25   including making changes to their marketing creatives based on FTC feedback and incorporating

26   changes to the Starter Credit marketing based on a marketing template sanctioned by local FTC

27   staff. Defendants have been fully responsive to any and all requests for information, have satisfied

28   all reporting and notice requirements, and have been fully open and transparent about their

1  business operations. Moreover, to the extent possible, Defendants have implemented all suggested

2  operational and marketing changes suggested by FTC staff and have also voluntarily implemented

3  changes to their marketing material based on information that became available through FTC

4  enforcement and threatened enforcement actions against unrelated and unaffiliated third parties.

5  Further, for the facts and reasons discussed in Section A.1 and in response to Interrogatory Nos. 7-

6  8, incorporated herein by reference, Defendants' advertising was based on a good faith and

7  reasonable interpretation of the Final Order.

8      **4.    Overbroad and Ambiguous Final Order That is Neither "Specific" nor**

9             **"Definite"/Beyond the Scope/Inadequate Notice/Violation of Due Process**

10      Civil contempt is a party's disobedience of a specific and definite court order by failure to

11  take all reasonable steps within the party's power to comply. A court order is required to be clear

12  and precise in order that it may be understood by those who are ordered to follow it. Specificity is

13  also required because of the severity of penalties for a finding of contempt.

14      The underlying action wholly concerned the use of debit cards. As the FTC stated in its

15  reply in support of its contempt application, "The FTC's original case had nothing to do with sites

16  such as Starter Credit that purportedly offered credit lines but actually sold memberships in online

17  shopping clubs. Rather, "[f]ees associated with obtaining EDP's stored value debit card were the

18  focus of the initial case against EDP." Reply, p. 5. As a result, the parties negotiated a settlement

19  with the intent to resolve allegations pertaining to EDP's advertisement of debit cards and solely

20  framed a settlement agreement around this issue. In turn, the final negotiated settlement, which

21  the Court approved, addressed debit card products. Though some of the Final Order's language

22  could, if taken out of context of the entire order, be misconstrued to broadly apply to any business

23  practice, shopping catalogs or clubs were clearly not specifically contemplated, nor prohibited

24  under the terms of the Order. As a result, no where in the Final Order is "shopping catalog" or

25  "shopping club" referenced, nor were these products referenced as part of the settlement

26  negotiations.

27      The FTC's contempt allegations as to the Starter Credit marketing are outside the scope of

28  the Final Order. Defendants cannot be penalized for advertising that was not at issue in the

1  original proceeding, never litigated or settled (let alone noticed), never found by the Court to be in

2  violation of the FTC Act, and never envisioned as part of the Court's Final Order. Defendants

3  cannot be subjected to contempt for allegedly committing a new violation unlike and unrelated to

4  the original case and negotiated settlement. Defendants' interpretation of the Final Order as

5  addressing marketing with respect to debit card products is a good faith and reasonable

6  interpretation of the Final Order. The FTC's interpretation of the Final Order, on the other hand,

7  renders it overly broad and neither specific nor definite. To hold Defendants liable for the Starter

8  Credit marketing would deprive Defendants of fair notice, offend fundamental due process rights,

9  cause severe prejudice, and constitute an extreme injustice, particularly in light of the remedies the

10 FTC seeks (compensatory sanctions and a modification of the Final Order that would destroy the

11 livelihoods of Mssrs. Cleveland and Wilson and put EDP out of business).

12         The Final Order is not "specific and definite" or "clear and precise" as it relates to the

13 marketing of products other than "prepaid cards, debit cards, or credit cards." *See* Final Order,

14 Sections I.A-E. The provisions relied on by the FTC in seeking contempt for the Starter Credit

15 advertising are ambiguous as applied to products other than the debit card products that were the

16 subject of the underlying litigation. They are even more ambiguous in light of the FTC's

17 allegations that Defendants are in contempt for failing to investigate Insite's Century Platinum

18 shopping catalog product and perform an in-depth price comparison analysis of products between

19 Insite and its competitors to determine if Insite's representation to EDP that credit was extended

20 was in fact true prior to advertising the product. The terms of the Final Order do not remotely

21 suggest, either directly or impliedly, that Defendants are required to undertake such a herculean

22 task prior to marketing a third-party product, particularly where EDP does not retain, and the

23 third-party provider does not share for competitive reasons among others, the information

24 necessary to perform such an analysis. The FTC's "illusory credit" allegation with respect to

25 Insite's Century Platinum shopping catalog club has no relation to the allegations previously made

26 and settled with respect to debit cards and the Final Order cannot be construed, broadly or

27 otherwise, to require Defendants to investigate such shopping catalog products in the manner

28 suggested by the FTC.

1          For these reasons, Defendants cannot be held in contempt for the Starter Credit marketing.

2 This action is concluded except for enforcement of the Court's Final Order as it relates to debit

3 card products. Enforcement of unrelated allegations does not begin here.

4       **5.     Improper Party**

5          The FTC alleges that Defendants failed to disclose, clearly and conspicuously, that the line

6 of credit offered by Insite was "no real extension of credit" and was "worthless" because most

7 purchases required a substantial down payment that often exceeded the full price of the product

8 offered through other online retailers. Though the FTC acknowledges that Century Platinum was

9 "operated" by Insite, the FTC disregards the fact that the Century Platinum online shopping club

10 was not a product owned by EDP and that EDP had no access to the statistics the FTC obtained

11 from Insite pursuant to its Civil Investigative Demand.

12          EDP did not own or operate the Century Platinum shopping club or products sold through

13 Century Platinum, did not set catalog prices, down payment amounts or methods, or determine

14 catalog items. Insite did not provide this information to EDP, as EDP marketed a competitor

15 product. EDP merely marketed the product for Insite based on information it received from Insite.

16 EDP did not have possession of the online catalog or have access to customer activity or

17 complaints in connection with the shopping club (i.e., length of membership, membership

18 cancellation/termination, credit offered and used, products purchased, down payments made, etc.).

19 Accordingly, EDP had no way of knowing the percentage of consumers who signed up and

20 purchased product (or any details related to such purchases). All customer-related inquiries,

21 complaints, product returns, etc. were directed to Insite. Further, EDP did not derive any revenue

22 from the catalog purchases and had no reason to track them.

23          The FTC's theory is that Defendants should be held accountable for marketing a third

24 party product that, in the estimation of the FTC, is a "bad deal" for consumers. Neither the Final

25 Order nor Section 5 of the FTC Act requires Defendants, or any other marketer, to retain a

26 professional economist to evaluate a third party product or service, compare that product or

27 service to what is otherwise available in the marketplace, and then analyze the specific terms and

28 conditions to determine whether the third party's goods or services are a "good deal" for

1   consumers before marketing them.  If the FTC takes issue with the "inflated" prices and down

2   payments associated with the Century Platinum membership offered by Insite, that concern should

3   be directed at Insite, not EDP.  In short, Defendants are not a proper party to this claim.

4        **5.**    **$15 Fee Not Charged to Consumers**

5        The FTC alleges that Defendants did not clearly and conspicuously disclose a purported

6   one-time $15 initial processing fee, but EDP never charged Starter Credit consumers a $15 fee.

7   Based on information and belief, neither did Insite.  The only one-time fee charged by EDP was a

8   $99 application fee that was prominently disclosed in several places on the website and to which

9   the FTC does not take issue.

10   **B.**    **ePlatinum Direct Defenses**

11        As to the Netspend debit card that EDP marketed in conjunction with the ePlatinum+

12   catalogue membership on ePlatinumDirect.com (the "Debit Card"), there was no

13   misrepresentation or failure to clearly and conspicuously disclose material attributes of the product

14   because there was, in fact, "no cost" to obtain the Debit Card.  The Debit Card was sent to

15   consumers free of charge.  This distinguished the Debit Card from other pre-paid debit cards

16   where consumers pay to receive the physical card, even if the card is not yet capable of use.

17        At the time the Debit Card was received by the consumer (assuming the consumer

18   requested a card and received it), the consumer was at least two steps away from incurring any

19   obligation to pay fees.  The consumer had to first call to activate the card, and then needed to load

20   the card with a specific amount of money.  Based on Netspend's production of documents in

21   response to EDP's subpoena in this proceeding, and Defendants' interpretation thereof, Defendants

22   are informed and believe that additional disclosures regarding any fees associated with the Debit

23   Card were made by Netspend before consumers incurred any fees.  Specifically, the online

24   activation and account setup process and the activation process by phone included disclosures of

25   Netspend's "fee plans," including the $9.95 monthly fee plan and the pay-as-you-go options and

26   related fees.  Defendants are informed and believe that the default fee plan was "pay-as-you-go,"

27   such that no monthly fees were paid and fees were only incurred if and when money was loaded

28   on the card.  Additionally, Netspend's terms and conditions disclosed the fees related to the Debit

1  Card in a clear, easy-to-read chart format prominently displayed from the remainder of the terms

2  and conditions in paragraph form.

3        Moreover, the costs that could have been incurred by a consumer in the future if they had

4  activated the card and loaded it with funds were clearly and conspicuously disclosed by EDP in

5  text that appeared immediately below the words "no cost" once the consumer indicated interest in

6  the card. In other words, the disclosures were made in close proximity to the words "no cost,"

7  such that a hyperlink was not required to view the costs, nor were the fee disclosures buried "in

8  the middle of a 4,720-word hyperlinked document." Moreover, the fee disclosures used for the

9  ePlatinum Debit Card marketing were based on the Ultimate Platinum template vetted by local

10  FTC staff.

11        The FTC's contention that Defendants failed to disclose fees for the card are based on an

12  anomaly in the ePlatinum marketing, which the FTC knows to be the case based on its extensive

13  compliance investigation which took over a year and a half to complete. It appears that a draft

14  creative that was never intended to be viewed by the public or capable of accepting applications

15  was inadvertently made live for a short period. Defendants believe the creative found by the FTC

16  was a draft or placeholder for the technical development of the actual, marketed creative and was

17  not intended to be marketed to consumers. Specifically, with the possible exception of a period

18  from late November 2009 to late January 2010, when an erroneous creative was posted, at all other

19  times, Defendants marketed the full fee disclosure that replicated the Ultimate Platinum marketing

20  vetted by the FTC. During this short window, only 89 applications were accepted and only $44.50

21  in revenue generated to EDP.

22        To the extent there can be any violation of the Final Order in connection with the Debit

23  Card, it was a harmless technical violation because, with few exceptions, consumers who viewed

24  the marketing related to the Debit Card viewed a creative with the full fee disclosure that was

25  based on a marketing piece sanctioned by the FTC. For those few who did not, they received

26  further fee disclosures and took several proactive steps before they were obligated to pay any fees.

27  These facts demonstrate that Defendants substantially complied with the Final Order, the actions

28  taken were based on a good faith and reasonable interpretation of the Final Order, Defendants

1   were diligent in their compliance efforts (including incorporating the fee disclosure from the

2   Ultimate Platinum marketing sanctioned by the FTC), and Defendants made every reasonable

3   effort to comply with the terms of the Final Order.  Contempt cannot lie against Defendants based

4   on the Netspend Debit Card marketing.

5   **INTERROGATORY NO. 10**:

6         If you contend that the Receiver and/or the FTC represented to you at any time after the

7   Complaint that your marketing of the Century Platinum shopping club complied with the Order:

8         a.     Identify every such representation.

9         b.     Identify all documents and communications that support your contention.

10         c.     State all facts that support your contention.

11   **RESPONSE TO INTERROGATORY NO. 10**:

12         Subject to and without waiver of the foregoing General Objections, each of which is

13   expressly incorporated herein, Defendants further object to Interrogatory No. 10 on the following

14   grounds:  First, the interrogatory is overbroad, unduly burdensome and unreasonable, to the extent

15   it seeks information that is neither relevant to the claims against Defendants in the contempt

16   proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

17   Specifically, to the extent the interrogatory requests information about marketing of the Century

18   Platinum shopping catalog product through websites other than startercreditdirect.com, it requests

19   information outside the scope of this contempt proceeding.  The FTC's contempt application was

20   solely directed at EDP's marketing of the Century Platinum shopping catalog product on the

21   startercreditdirect.com website.  Second, Defendants object to this interrogatory on the grounds

22   that it is compound and consists of three (3) separate interrogatories.  Therefore, for purposes of

23   Federal Rule of Civil Procedure 33(a)(1), each of the discrete subparts of Interrogatory No. 10

24   shall be counted toward the FTC's limit of twenty-five (25) written interrogatories.  Third,

25   Defendants object to this interrogatory on the grounds that it calls for information protected by the

26   attorney-client privilege and/or work product protection.  Fourth, Defendant objects to this

27   interrogatory on the grounds that it calls for information that is in the possession and knowledge of

28   the FTC and Receiver.

1    Subject to and without waiver of any of the foregoing General Objections and the

2 foregoing specific objections, Defendants further respond to the interrogatory as follows:

3 Defendants exercise the option to produce documents in response to subparts (a) to (c) of this

4 interrogatory, which documents shall include, but are not limited to, Defendants' Opposition to the

5 Application for an Order to Show Cause Why Defendants Should Not Be Held in Contempt and

6 the documents, communications and declarations provided to the FTC and the Court filed

7 concurrently therewith, documents and communications in the possession of the FTC and/or

8 Receiver related to startercreditdirect.com during the receivership and thereafter, documents and

9 communications in the possession of the FTC and/or Receiver regarding the Ultimate Platinum

10 website and marketing, and documents previously produced to the FTC in response to the FTC's

11 July 23, 2009 request for information and documents to monitor Defendants' compliance with the

12 Final Order.  Documents that Defendants consider confidential will be produced following the

13 execution by the parties to the litigation and the entry by the Court of a suitable stipulation and

14 protective order limiting the dissemination of those documents.  Documents that Defendants

15 consider confidential will be produced following the execution by the parties to the litigation and

16 the entry by the Court of a suitable stipulation and protective order limiting the dissemination of

17 those documents.  Documents previously produced in connection with Defendants' Opposition to

18 the FTC's Contempt Application will not be produced again.

19    With respect to subpart (c) of this interrogatory, Defendants further respond by

20 incorporating herein by reference their responses to Interrogatory Nos. 7-8, and the portions of

21 their response to Interrogatory No. 9 related to the startercreditdirect.com marketing.

22 **INTERROGATORY NO. 11**:

23   If you contend that, at any time after the Complaint, you reasonably relied on

24 representations by the Receiver and/or the FTC that your marketing of the Century Platinum

25 shopping club complied with the Order:

26   a.  Identify every representation on which you contend that you reasonably relied.

27   b.  Identify all documents and communications that support your contention.

28   c.  State all facts that support your contention.

1 | **RESPONSE TO INTERROGATORY NO. 11**:

2      Subject to and without waiver of the foregoing General Objections, each of which is

3 expressly incorporated herein, Defendants further object to Interrogatory No. 11 on the following

4 grounds:  First, the interrogatory is overbroad, unduly burdensome and unreasonable, to the extent

5 it seeks information that is neither relevant to the claims against Defendants in the contempt

6 proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

7 Specifically, to the extent the interrogatory requests information about marketing of the Century

8 Platinum shopping catalog product through websites other than startercreditdirect.com, it requests

9 information outside the scope of this contempt proceeding.  The FTC's contempt application was

10 solely directed at EDP's marketing of the Century Platinum shopping catalog product on the

11 startercreditdirect.com website.  Second, Defendants object to this interrogatory on the grounds

12 that it is compound and consists of three (3) separate interrogatories.  Therefore, for purposes of

13 Federal Rule of Civil Procedure 33(a)(1), each of the discrete subparts of Interrogatory No. 11

14 shall be counted toward the FTC's limit of twenty-five (25) written interrogatories.  Third,

15 Defendants object to this interrogatory on the grounds that it calls for information protected by the

16 attorney-client privilege and/or work product protection.

17      Subject to and without waiver of any of the foregoing General Objections and the

18 foregoing specific objections, Defendants further respond to the interrogatory as follows:

19 Defendants exercise the option to produce documents in response to subparts (a) to (c) of this

20 interrogatory, which documents shall include, but are not limited to, Defendants' Opposition to the

21 Application for an Order to Show Cause Why Defendants Should Not Be Held in Contempt and

22 the documents, communications and declarations provided to the FTC and the Court filed

23 concurrently therewith, documents and communications in the possession of the FTC and/or

24 Receiver related to startercreditdirect.com during the receivership and thereafter, documents and

25 communications in the possession of the FTC and/or Receiver regarding the Ultimate Platinum

26 website and marketing, and documents previously produced to the FTC in response to the FTC's

27 July 23, 2009 request for information and documents to monitor Defendants' compliance with the

28 Final Order.  Documents that Defendants consider confidential will be produced following the

32

1   execution by the parties to the litigation and the entry by the Court of a suitable stipulation and

2   protective order limiting the dissemination of those documents.  Documents that Defendants

3   consider confidential will be produced following the execution by the parties to the litigation and

4   the entry by the Court of a suitable stipulation and protective order limiting the dissemination of

5   those documents.  Documents previously produced in connection with Defendants' Opposition to

6   the FTC's Contempt Application will not be produced again.

7         With respect to subpart (c) of this interrogatory, Defendants further respond by

8   incorporating herein by reference their responses to Interrogatory Nos. 7-8, and the portions of

9   their response to Interrogatory No. 9 related to the startercreditdirect.com marketing.

10

11  Dated:  September 2, 2010               LOEB & LOEB LLP
                                            MICHAEL L. MALLOW
                                            KAREN R. THORLAND
12                                          CHRISTINE M. REILLY

13

14                                          By: /s/ Michael L. Mallow
                                                Michael L. Mallow
15                                              Attorneys for Defendants
                                                EDEBITPAY, LLC,
16                                              DALE PAUL CLEVELAND and
                                                WILLIAM RICHARD WILSON

17

18

19

20

21

22

23

24

25

26

27

28

## VERIFICATION

1

2     I, DALE PAUL CLEVELAND, declare as follows:

3

4     I am the Chief Executive Officer of EDebitPay, LLC and am authorized to make this

5 verification for and on behalf of the Defendants. I have read the Defendants' response to the

6 FTC's First Set of Interrogatories dated July 30, 2009 and know its contents. I am informed and

7 believe, to the best of my knowledge, that the contents thereof are true and correct. My

8 information and belief is based on my own personal knowledge, statements, reports and records of

9 other employees of EDebitPay, LLC, upon whom I customarily rely, and/or the documents,

10 records and information possessed Defendants.

11

12     I declare under penalty of perjury under the laws of the United States that the foregoing is

13 true and correct.

14

15     Executed on September 2, 2010, at Sherman Oaks, California.

16

17                                             DALE PAUL CLEVELAND

18

19

20

21

22

23

24

25

26

27

28

    DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

## PROOF OF SERVICE

I, Vicki S. Henderson, the undersigned, declare that:

I am employed in the County of Los Angeles, State of California, over the age of 18, and not a party to this cause. My business address is 10100 Santa Monica Boulevard, Suite 2200, Los Angeles, California 90067-4120.

On September 2, 2010, I served a true copy of the **DEFENDANTS' OBJECTIONS AND RESPONSES TO FEDERAL TRADE COMMISSION'S FIRST SET OF INTERROGATORIES** on the parties in this cause

[X]  (VIA OVERNIGHT DELIVERY) by placing the above named document in a sealed envelope addressed as set forth below, or on the attached service list and by then causing said envelope to be deposited for collection and overnight delivery via Federal Express in accordance with Loeb & Loeb LLP's ordinary business practices.

| | |
|---|---|
| Mark Morelli, Esq.<br>Elizabeth Tucci, Esq.<br>Zachary V. Hunter, Esq.<br>Federal Trade Commission<br>600 Pennsylvania Avenue NW<br>Room M-8102B<br>Washington, DC  20580 | John D. Jacobs, Esq.<br>Federal Trade Commission<br>10877 Wilshire Boulevard<br>Suite 700<br>Los Angeles, CA  90024 |

I am readily familiar with Loeb & Loeb LLP's practice for collecting and processing correspondence for mailing with the United States Postal Service and Overnight Delivery Service. That practice includes the deposit of all correspondence with the United States Postal Service and/or Overnight Delivery Service the same day it is collected and processed.

I certify that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 2, 2010, at Los Angeles, California.

_____
Vicki S. Henderson

ATTACHMENT 5

1  MICHAEL L. MALLOW (SBN 188745)
   mmallow@loeb.com
2  KAREN R. THORLAND (SBN 172092)
   kthorland@loeb.com
3  CHRISTINE M. REILLY (SBN 226388)
   creilly@loeb.com
4  LOEB & LOEB LLP
   10100 Santa Monica Boulevard, Suite 2200
5  Los Angeles, California 90067-4120
   Telephone:    310-282-2000
6  Facsimile:    310-282-2200

7  Attorneys for Defendants
   EDEBITPAY, LLC,
8  DALE PAUL CLEVELAND and
   WILLIAM RICHARD WILSON

9
                    UNITED STATES DISTRICT COURT
10
                    CENTRAL DISTRICT OF CALIFORNIA
11

12
   FEDERAL TRADE COMMISSION,          )  Case No. 2:07-CV-04880 ODW (AJWx)
13                                     )
              Plaintiff,               )  Assigned to Hon. Otis D. Wright II
14                                     )
        v.                             )
15                                     )
   EDEBITPAY, LLC; EDP REPORTING, LLC; )  DEFENDANTS' OBJECTIONS AND
16 EDP TEHNOLOGIES CORPORATION;        )  RESPONSES TO FEDERAL TRADE
   SECURE DEPOSIT CARD, INC.; DALE     )  COMMISSION'S FIRST SET OF
17 PAUL CLEVELAND;  and WILLIAM        )  REQUESTS FOR PRODUCTION OF
   RICHARD WILSON,                     )  DOCUMENTS
18                                     )
              Defendants.              )
19                                     )
                                       )
20                                     )
                                       )
21                                     )
                                       )
22                                     )
                                       )
23                                     )

24
   PROPOUNDING PARTY:        FEDERAL TRADE COMMISSION
25
   RESPONDING PARTY:         DEFENDANTS
26
   SET NO.                   ONE
27

28

1    Pursuant to Rules 34 of the Federal Rules of Civil Procedure, Defendants EDebitPay LLC

2  ("EDP"), Dale Paul Cleveland ("Cleveland"), and William Richard Wilson ("Wilson")

3  (collectively "Defendants") hereby object and respond to the Federal Trade Commission's First

4  Set of Requests for Production of Documents (the "Requests for Production") as follows:

5                          **GENERAL OBJECTIONS AND DEFINITIONS**

6        The following General Objections apply to and are incorporated in each individual

7  response herein, whether or not expressly incorporated by reference in such response.

8        1.      Defendants object to each Request for Production to the extent it calls for or could

9  be construed to call for the production of documents or information which is privileged from

10  disclosure under the attorney-client privilege, attorney work product, or related doctrines or

11  privileges, including those under applicable state law.  Defendants object to identifying any

12  privileged or work product documents that were created on or after the filing date of this contempt

13  action because, among other reasons, it would be overly and unduly burdensome.  Inadvertent

14  production of any privileged document otherwise immune from discovery shall not be deemed a

15  waiver of any applicable privilege or work product protection.

16        2.      Defendants object to each Request for Production to the extent it calls for or could

17  be construed to call for the production of information containing trade secrets, proprietary or

18  confidential commercial or financial information, or information that invades or implicates the

19  privacy rights of nonparties to this litigation, such as individual consumers and/or information that

20  allows for the identification of such individuals (i.e., personal identifiable information).

21  Defendants will produce such information upon entry of a mutually agreeable Protective Order.

22        3.      Defendants object to each Request for Production on the grounds that it calls for

23  the production of documents or information that: (a) is obtainable from some other source that is

24  more convenient, less burdensome, or less expensive and/or (b) is already in the FTC's possession,

25  custody, or control, such as documents produced in connection with Defendants' Opposition to the

26  FTC's Contempt Application.  Documents previously produced will not be produced again.

27

28

LA2066192.6
211465-10001

4.      Defendants object to each Request for Production on the grounds that it imposes an undue burden or expense upon Defendants, and imposes upon Defendants obligations greater than those authorized by the Federal Rules of Civil Procedure and the Local Civil Rules of this District. The responses and objections herein are made in accordance with the Federal Rules of Civil Procedure and the Local Rules only.

5.      Defendants object to each Request for Production on the grounds that it seeks information that is not relevant, material, or reasonably calculated to lead to the discovery of relevant, material, or admissible evidence.

6.      Defendants object to each Request for Production, and specifically to the time period set forth in the "Instructions" in paragraph A, on the grounds that the definition of the time period as extending "through the conclusion of the Contempt Hearing in this case" is overbroad, unduly burdensome, unreasonable, oppressive, and premature.  Defendants will provide documents as of July 31, 2010, unless expressly noted otherwise.

7.      Defendants object to each Request for Production to the extent it seeks information that is outside of Defendants' knowledge, possession, custody and/or control.

8.      Defendants object to the Requests for Production to the extent that they call for the production of electronically stored information that is not reasonably accessible.

9.      Defendants object to the Requests for Production to the extent that they purport to seek information or documents concerning Defendants' business activities that are not part of this contempt proceeding on the grounds that such information is neither relevant to this action nor reasonably calculated to lead to the discovery of relevant, material or admissible evidence.

10.      Defendants' responses and objections made herein are not intended to be and shall not be deemed an admission of the matters stated, implied or assumed in or by any or all of the Requests for Production.  Defendants' responses made herein, and the documents produced pursuant hereto, shall not constitute a waiver of any objection by Defendants to the competency, relevancy, materiality, privilege, or admissibility of any of the Requests for Production, responses, documents or things, or the content or subject matter of any of them.

2

1    11.    Responsive documents will be produced at a mutually agreeable time and place

2  upon entry of an appropriate protective order regarding confidentiality.

3    12.    Defendants reserve the right to amend, correct, supplement and/or modify any and

4  all of their Responses herein, if in the course of this proceeding, they become aware of information

5  and/or documents that are responsive to the Requests for Production, but that were not known or

6  available at the time these Responses were made.

7    13.    A response to any Request for Production stating that responsive documents will be

8  produced is not an admission that responsive information or documents, in fact, exist.

9    14.    A response to any Request for Production that states that responsive documents

10  will be produced means either that physical copies of documents will be provided to the FTC by

11  Defendants or that physical copies of documents will be made available for inspection and

12  copying by the FTC.

13    15.    Defendants object to the "Instructions" in paragraph B on the grounds that the

14  meaning of "you" and "your" is overbroad, unduly burdensome, unreasonable and oppressive with

15  respect to its inclusion of information and documents from "any entity that is controlled by any [of

16  the Defendants], individually or collectively." Defendants expressly disavow any obligation to

17  respond to the Requests for Production beyond those posed under the Federal Rules of Civil

18  Procedure, and Defendants will not undertake to respond on behalf of any person or entity other

19  than Defendants themselves.

20    16.    Defendants object to the "Instructions" in paragraph C on the grounds that the

21  demanded information is overbroad, unduly burdensome, unreasonable and oppressive with

22  respect to its inclusion of information in the "possession, custody, or control of ... consultants ...

23  independent contractors ... or other representatives of you, and any companies for which you have

24  access to documents or information related to these requests for production." Defendants

25  expressly disavow any obligation to respond to the Requests for Production beyond those posed

26  under the Federal Rules of Civil Procedure, and Defendants will not undertake to respond on

27  behalf of any person or entity other than Defendants themselves.

28

LA2066192.6
211465-10001

3

DEFENDANTS' OBJECTIONS AND RESPONSES
TO FTC'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS

1    17.    Defendants object to the "Instructions" in paragraph D on the grounds that the

2    demanded procedure is unduly burdensome, unreasonable and oppressive.  Defendants will

3    produce records as they are kept in the ordinary course of business and have no obligation under

4    the Federal Rules of Civil Procedure to "indicate, for each document submitted, each specification

5    to which the document is responsive," whatever that phrase may mean, or to provide the other

6    information demanded.  Moreover, this "instruction" is in direct conflict with the FTC's

7    "Instructions" in paragraph F, which specifically contemplate that Defendants may produce

8    documents "as they are kept."  Defendants also object to the extent the FTC is requesting the

9    production of documents already produced to the FTC.  Documents previously produced will not

10   be produced again.

11

12                              **RESPONSES TO REQUEST FOR PRODUCTION**

13        Each of the foregoing General Objections is incorporated into each of the Responses set

14   forth below.  Subject to and without waiving such objections, Defendants respond as follows:

15

16   **REQUEST FOR PRODUCTION NO. 1**:

17        1.    Produce all non-identical versions of marketing, including creatives, for the

18   following:

19             a.    Starter Credit Direct

20             b.    Century Platinum shopping club

21             c.    USA Benefits/USA shopping club

22             d.    E-Elite Plus shopping club

23             e.    ePlatinum+ shopping club

24             f.    Any other shopping club

25   **RESPONSE TO REQUEST FOR PRODUCTION NO. 1**:

26        Subject to and without waiver of the foregoing General Objections, each of which is

27   expressly incorporated herein, Defendants further object to Request for Production No. 1 on the

28   following grounds:  First, the request is overbroad, unduly burdensome and unreasonable, and

LA2066192.6                                4                  DEFENDANTS' OBJECTIONS AND RESPONSES
211465-10001                                                  TO FTC'S FIRST SET OF REQUESTS FOR
                                                              PRODUCTION OF DOCUMENTS

1   seeks documents that are neither relevant to the claims against Defendants in the contempt

2   proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

3   Specifically, the request seeks documents concerning the marketing of shopping clubs other than

4   EDP's marketing of the Century Platinum shopping catalog product on the startercreditdirect.com

5   website (subparts a and b). *See* subparts c-f. The FTC's contempt application, however, was

6   solely directed at EDP's marketing of the Century Platinum shopping catalog product on the

7   startercreditdirect.com website. Accordingly, documents concerning other shopping catalog clubs

8   that EDP may have advertised are irrelevant and beyond the scope of this contempt proceeding.

9   Second, Defendants object to this request to the extent that it is duplicative of discovery obtained

10  by Plaintiff from Defendants prior to the filing of its Application for an Order to Show Cause Why

11  Defendants Should Not Be Held in Contempt and in response to the FTC's July 23, 2009 request

12  for information and documents to monitor Defendants' compliance with the Final Order. Third,

13  the request is objectionable on the grounds that it is vague and ambiguous to the extent that it

14  implies that there were unique or separate shopping catalog clubs called Starter Credit Direct, E-

15  Elite Plus, or ePlatinum. Fourth, the phrase "Starter Credit Direct" is vague and ambiguous.

16  Defendants understand the phrase "Starter Credit Direct" to mean EDP's startercreditdirect.com

17  website, and specifically in connection with the Century Platinum shopping catalog product.

18        Subject to and without waiver of any of the foregoing General Objections and the

19  foregoing specific objections, Defendants will produce non-privileged, responsive documents in

20  their possession, custody and control responsive to subparts (a) and (b) showing the

21  startercreditdirect.com creatives that were marketed to consumers, live on the internet, and capable

22  of accepting applications for the Century Platinum shopping catalog product. Documents that

23  Defendants consider confidential will be produced following the execution by the parties to the

24  litigation and the entry by the Court of a suitable stipulation and protective order limiting the

25  dissemination of those documents.

26  **REQUEST FOR PRODUCTION NO. 2:**

27        For each of the programs or products listed in Request 1, produce all non-identical terms

28  and conditions.

1  **RESPONSE TO REQUEST FOR PRODUCTION NO. 2**:

2      Subject to and without waiver of the foregoing General Objections, each of which is

3  expressly incorporated herein, Defendants further object to Request for Production No. 2 on the

4  following grounds: First, the request is overbroad, unduly burdensome and unreasonable, and

5  seeks documents that are neither relevant to the claims against Defendants in the contempt

6  proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

7  Specifically, the request seeks documents concerning the terms and conditions of shopping clubs

8  other than the Century Platinum shopping catalog product marketed on the startercreditdirect.com

9  website (subparts a and b of Request for Production No. 1). *See* subparts c-f. The FTC's

10  contempt application, however, was solely directed at EDP's marketing of the Century Platinum

11  shopping catalog product on the startercreditdirect.com website. Accordingly, documents

12  concerning other shopping catalog clubs that EDP may have advertised are irrelevant and beyond

13  the scope of this contempt proceeding. Second, Defendants object to this request to the extent that

14  it is duplicative of discovery obtained by Plaintiff from Defendants prior to the filing of its

15  Application for an Order to Show Cause Why Defendants Should Not Be Held in Contempt and in

16  response to the FTC's July 23, 2009 request for information and documents to monitor

17  Defendants' compliance with the Final Order. Third, the request is objectionable on the grounds

18  that it is vague and ambiguous to the extent that it implies that there were shopping catalog clubs

19  called Starter Credit Direct, E-Elite Plus, or ePlatinum with unique and separate terms and

20  conditions. Fourth, the phrase "Starter Credit Direct" is vague and ambiguous. Defendants

21  understand the phrase "Starter Credit Direct" to mean EDP's startercreditdirect.com website, and

22  specifically in connection with the Century Platinum shopping catalog product.

23      Subject to and without waiver of any of the foregoing General Objections and the

24  foregoing specific objections, Defendants will produce non-privileged, responsive documents in

25  their possession, custody and control related to the marketing of the Century Platinum shopping

26  catalog product on the startercreditdirect.com website. Documents that Defendants consider

27  confidential will be produced following the execution by the parties to the litigation and the entry

28

1    by the Court of a suitable stipulation and protective order limiting the dissemination of those

2    documents.

3    **REQUEST FOR PRODUCTION NO. 3**:

4          Produce all websites from which consumers were transferred (including through "exit

5    pops" as described by Wilson in his November 17, 2009 deposition at 92-93, 103-06) to websites

6    marketing any of the programs or products listed in Request 1.

7    **RESPONSE TO REQUEST FOR PRODUCTION NO. 3**:

8          Subject to and without waiver of the foregoing General Objections, each of which is

9    expressly incorporated herein, Defendants further object to Request for Production No. 3 on the

10    following grounds: First, the request is overbroad, unduly burdensome and unreasonable, and

11    seeks documents that are neither relevant to the claims against Defendants in the contempt

12    proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

13    Specifically, the request seeks documents related to the marketing of shopping clubs other than

14    EDP's marketing of the Century Platinum shopping catalog product on the startercreditdirect.com

15    website (subparts a and b of Request for Production No. 1). *See* subparts c-f. The FTC's

16    contempt application, however, was solely directed at EDP's marketing of the Century Platinum

17    shopping catalog product on the startercreditdirect.com website. Accordingly, documents

18    concerning other shopping catalog clubs that EDP may have advertised are irrelevant and beyond

19    the scope of this contempt proceeding. Also, the contempt application filed by the FTC does not

20    concern the manner in which consumers were "transferred" to the startercreditdirect.com website

21    or "exit pops." Not only was this issue not raised by the FTC in its contempt application, but

22    nowhere in the Final Order is this issue even referenced. Nor was it discussed during settlement

23    negotiations or during the FTC's vetting of Defendants' advertising post-Final Order. Second,

24    Defendants object to this request to the extent that it is duplicative of discovery obtained by

25    Plaintiff from Defendants prior to the filing of its Application for an Order to Show Cause Why

26    Defendants Should Not Be Held in Contempt and in response to the FTC's July 23, 2009 request

27    for information and documents to monitor Defendants' compliance with the Final Order. Third,

28    the request is objectionable on the grounds that it is vague and ambiguous to the extent that it

1  implies that there were unique or separate shopping catalog clubs called Starter Credit Direct, E-

2  Elite Plus, or ePlatinum.  Fourth, the phrase "Starter Credit Direct" is vague and ambiguous.

3  Defendants understand the phrase "Starter Credit Direct" to mean EDP's startercreditdirect.com

4  website, and specifically in connection with the Century Platinum shopping catalog product.

5  Fifth, Defendants object to this request to the extent it seeks documents or information known

6  only by third parties.

7  **REQUEST FOR PRODUCTION NO. 4**:

8        For each of the programs or products listed in Request 1, produce all complaints, requests

9  for refunds, and requests for credits.

10  **RESPONSE TO REQUEST FOR PRODUCTION NO. 4**:

11        Subject to and without waiver of the foregoing General Objections, each of which is

12  expressly incorporated herein, Defendants further object to Request for Production No. 4 on the

13  following grounds:  First, the request is overbroad, unduly burdensome and unreasonable, and

14  seeks documents that are neither relevant to the claims against Defendants in the contempt

15  proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

16  Specifically, the request seeks documents related to complaints regarding shopping clubs other

17  than the Century Platinum shopping catalog product marketed on the startercreditdirect.com

18  website (subparts a and b of Request for Production No. 1).  *See* subparts c-f.  The FTC's

19  contempt application, however, was solely directed at EDP's marketing of the Century Platinum

20  shopping catalog product on the startercreditdirect.com website.  Accordingly, documents

21  concerning other shopping catalog clubs that EDP may have advertised are irrelevant and beyond

22  the scope of this contempt proceeding.  Second, Defendants object to this request to the extent that

23  it is duplicative of discovery obtained by Plaintiff from Defendants prior to the filing of its

24  Application for an Order to Show Cause Why Defendants Should Not Be Held in Contempt and in

25  response to the FTC's July 23, 2009 request for information and documents to monitor

26  Defendants' compliance with the Final Order.  Third, the request is objectionable on the grounds

27  that it is vague and ambiguous to the extent that it implies that there were unique or separate

28  shopping catalog clubs called Starter Credit Direct, E-Elite Plus, or ePlatinum.  Fourth, the phrase

1   "Starter Credit Direct" is vague and ambiguous.  Defendants understand the phrase "Starter Credit

2   Direct" to mean EDP's startercreditdirect.com website, and specifically in connection with the

3   Century Platinum shopping catalog product.

4        Subject to and without waiver of any of the foregoing General Objections and the

5   foregoing specific objections, Defendants will produce non-privileged, responsive documents in

6   their possession, custody and control related to the marketing of the Century Platinum shopping

7   catalog product on the startercreditdirect.com website.  Documents that Defendants consider

8   confidential will be produced following the execution by the parties to the litigation and the entry

9   by the Court of a suitable stipulation and protective order limiting the dissemination of those

10  documents.

11  **REQUEST FOR PRODUCTION NO. 5:**

12       Produce documents sufficient to show the number of consumers who applied (from a

13  website or other marketing by or on behalf of Defendants) for each of the programs or products

14  listed in Request 1.

15  **RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

16       Subject to and without waiver of the foregoing General Objections, each of which is

17  expressly incorporated herein, Defendants further object to Request for Production No. 5 on the

18  following grounds:  First, the request is overbroad, unduly burdensome and unreasonable, and

19  seeks documents that are neither relevant to the claims against Defendants in the contempt

20  proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

21  Specifically, the request seeks documents related to applications for shopping clubs other than the

22  Century Platinum shopping catalog product marketed on the startercreditdirect.com website

23  (subparts a and b of Request for Production No. 1).  *See* subparts c-f.  The FTC's contempt

24  application, however, was solely directed at EDP's marketing of the Century Platinum shopping

25  catalog product on the startercreditdirect.com website.  Accordingly, documents concerning other

26  shopping catalog clubs that EDP may have advertised are irrelevant and beyond the scope of this

27  contempt proceeding.  Second, Defendants object to this request to the extent that it is duplicative

28  of discovery obtained by Plaintiff from Defendants prior to the filing of its Application for an

1   Order to Show Cause Why Defendants Should Not Be Held in Contempt and in response to the

2   FTC's July 23, 2009 request for information and documents to monitor Defendants' compliance

3   with the Final Order.  Third, the request is objectionable on the grounds that it is vague and

4   ambiguous to the extent that it implies that there were unique or separate shopping catalog clubs

5   called Starter Credit Direct, E-Elite Plus, or ePlatinum.  Fourth, the request is vague and

6   ambiguous with respect to the phrases "documents sufficient to show" and "applied for" because

7   not all consumers who apply for a shopping club actually pay for or gain membership.  Defendants

8   interpret "applied for" to mean consumers who filled out and submitted an online application for

9   the Century Platinum shopping catalog club on EDP's startercreditdirect.com website, regardless

10  of whether EDP collected the $99 application fee.  Fifth, this request is duplicative of

11  Interrogatory No. 6(a), which requests the total number of consumers who "applied for" the

12  Century Platinum shopping catalog club on the startercreditdirect.com website from January 22,

13  2008 to July 31, 2010.  Defendants have already provided a substantive response to Interrogatory

14  No. 6(a).  Sixth, to the extent the FTC is requesting the production of each application, the request

15  is unreasonable, unduly burdensome and harassing, as there were over 22,000 applications

16  submitted during this time period.

17          Subject to and without waiver of any of the foregoing General Objections and the

18  foregoing specific objections, Defendants will produce non-privileged, responsive documents, if

19  any, in their possession, custody and control related to the marketing of the Century Platinum

20  shopping catalog product on the startercreditdirect.com website.  Documents that Defendants

21  consider confidential will be produced following the execution by the parties to the litigation and

22  the entry by the Court of a suitable stipulation and protective order limiting the dissemination of

23  those documents.

24  **REQUEST FOR PRODUCTION NO. 6**:

25  ~~Produce documents sufficient to show the amount of revenue you received from marketing~~

26  the programs or products listed in Request 1.

27

28

LA2066192.6
211465-10001

10

DEFENDANTS' OBJECTIONS AND RESPONSES
TO FTC'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6**:

Subject to and without waiver of the foregoing General Objections, each of which is expressly incorporated herein, Defendants further object to Request for Production No. 6 on the following grounds: First, the request is overbroad, unduly burdensome and unreasonable, and seeks documents that are neither relevant to the claims against Defendants in the contempt proceeding nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, the request seeks documents related to revenues from shopping clubs other than the Century Platinum shopping catalog product marketed on the startercreditdirect.com website (subparts a and b of Request for Production No. 1). *See* subparts c-f. The FTC's contempt application, however, was solely directed at EDP's marketing of the Century Platinum shopping catalog product on the startercreditdirect.com website. Accordingly, documents concerning other shopping catalog clubs that EDP may have advertised are irrelevant and beyond the scope of this contempt proceeding. Second, Defendants object to this request to the extent that it is duplicative of discovery obtained by Plaintiff from Defendants prior to the filing of its Application for an Order to Show Cause Why Defendants Should Not Be Held in Contempt and in response to the FTC's July 23, 2009 request for information and documents to monitor Defendants' compliance with the Final Order. Third, the request is objectionable on the grounds that it is vague and ambiguous to the extent that it implies that there were unique or separate shopping catalog clubs called Starter Credit Direct, E-Elite Plus, or ePlatinum. Fourth, the request is vague and ambiguous with respect to the phrases "documents sufficient to show" and "amount of revenue," which is undefined and can be taken to refer to gross revenue or net revenue. Fifth, this request is duplicative of Interrogatory No. 6(c), which requests the total amount of revenue received by EDP for the Century Platinum shopping catalog club on the startercreditdirect.com website from January 22, 2008 to July 31, 2010. Defendants have already provided a substantive response to Interrogatory No. 6(c).

Subject to and without waiver of any of the foregoing General Objections and the foregoing specific objections, Defendants will produce non-privileged, responsive documents, if any, in their possession, custody and control related to the marketing of the Century Platinum

1   shopping catalog product on the startercreditdirect.com website.  Documents that Defendants

2   consider confidential will be produced following the execution by the parties to the litigation and

3   the entry by the Court of a suitable stipulation and protective order limiting the dissemination of

4   those documents.

5   **REQUEST FOR PRODUCTION NO. 7:**

6        Produce documents sufficient to show the amount of fees charged to consumers who

7   applied (from a website or other marketing by or on behalf of Defendants) for each of the

8   programs or products listed in Request 1.

9   **RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

10        Subject to and without waiver of the foregoing General Objections, each of which is

11   expressly incorporated herein, Defendants further object to Request for Production No. 7 on the

12   following grounds:  First, the request is overbroad, unduly burdensome and unreasonable, and

13   seeks documents that are neither relevant to the claims against Defendants in the contempt

14   proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

15   Specifically, the request seeks documents related to the amount of fees charged by EDP for

16   shopping clubs other than the Century Platinum shopping catalog product marketed on the

17   startercreditdirect.com website (subparts a and b of Request for Production No. 1).  *See* subparts c-

18   f.  The FTC's contempt application, however, was solely directed at EDP's marketing of the

19   Century Platinum shopping catalog product on the startercreditdirect.com website.  Accordingly,

20   documents concerning other shopping catalog clubs that EDP may have advertised are irrelevant

21   and beyond the scope of this contempt proceeding.  Second, Defendants object to this request to

22   the extent that it is duplicative of discovery obtained by Plaintiff from Defendants prior to the

23   filing of its Application for an Order to Show Cause Why Defendants Should Not Be Held in

24   Contempt and in response to the FTC's July 23, 2009 request for information and documents to

25   monitor Defendants' compliance with the Final Order.  Third, the request is objectionable on the

26   grounds that it is vague and ambiguous to the extent that it implies that there were unique or

27   separate shopping catalog clubs called Starter Credit Direct, E-Elite Plus, or ePlatinum.  Fourth,

28   the request is vague and ambiguous with respect to the phrases "documents sufficient to show"

1 and "applied for" because not all consumers who apply for a shopping club actually pay for or

2 gain membership. "Applied for" would mean consumers who filled out and submitted an online

3 application for the Century Platinum shopping catalog club on EDP's startercreditdirect.com

4 website, regardless of whether EDP collected the $99 application fee. Defendants therefore

5 interpret this request to mean the amount of fees EDP collected from startercreditdirect.com

6 applications. Fourth, the term "fees" is also vague and ambiguous because it could be interpreted

7 to include revenues, making this request duplicative of Request No. 6. Fifth, this request is

8 duplicative of Interrogatory No. 6(b), which requests the total amount consumers were charged by

9 EDP along with any refunds, credits or chargebacks. Defendants have already provided a

10 substantive response to Interrogatory No. 6(b).

11         Subject to and without waiver of any of the foregoing General Objections and the

12 foregoing specific objections, Defendants will produce non-privileged, responsive documents, if

13 any, in their possession, custody and control related to the marketing of the Century Platinum

14 shopping catalog product on the startercreditdirect.com website. Documents that Defendants

15 consider confidential will be produced following the execution by the parties to the litigation and

16 the entry by the Court of a suitable stipulation and protective order limiting the dissemination of

17 those documents.

18 **REQUEST FOR PRODUCTION NO. 8**:

19         Produce all documents concerning proposed or actual changes to marketing for Starter

20 Credit Direct.

21 **RESPONSE TO REQUEST FOR PRODUCTION NO. 8**:

22         Subject to and without waiver of the foregoing General Objections, each of which is

23 expressly incorporated herein, Defendants further object to Request for Production No. 8 on the

24 following grounds: First, the request is overbroad, unduly burdensome and unreasonable, to the

25 extent it seeks the production of "proposed" changes to the startercreditdirect.com marketing since

26 "proposed" changes, by definition, were not marketed to consumers, and are therefore neither

27 relevant to the claims against Defendants in the contempt proceeding nor reasonably calculated to

28 lead to the discovery of admissible evidence. Second, Defendants object to this request to the

1    extent that it is duplicative of discovery obtained by Plaintiff from Defendants prior to the filing of

2    its Application for an Order to Show Cause Why Defendants Should Not Be Held in Contempt

3    and in response to the FTC's July 23, 2009 request for information and documents to monitor

4    Defendants' compliance with the Final Order.  Third, the phrase "Starter Credit Direct" is vague

5    and ambiguous.  Defendants understand the phrase "Starter Credit Direct" to mean EDP's

6    startercreditdirect.com website, and specifically in connection with the Century Platinum shopping

7    catalog product.

8        Subject to and without waiver of any of the foregoing General Objections and the

9    foregoing specific objections, Defendants will produce non-privileged, responsive documents in

10    their possession, custody and control.  Documents that Defendants consider confidential will be

11    produced following the execution by the parties to the litigation and the entry by the Court of a

12    suitable stipulation and protective order limiting the dissemination of those documents.

13    **REQUEST FOR PRODUCTION NO. 9:**

14        Produce all documents constituting or concerning communications between you and the

15    Receiver regarding Starter Credit Direct since the date of the Complaint.

16    **RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

17        Subject to and without waiver of the foregoing General Objections, each of which is

18    expressly incorporated herein, Defendants further object to Request for Production No. 9 on the

19    following grounds:  First, Defendants object to the request to the extent that it seeks documents

20    previously produced to Plaintiff in connection with this contempt proceeding.  Second, the phrase

21    "Starter Credit Direct" is vague and ambiguous.  Defendants understand the phrase "Starter Credit

22    Direct" to mean EDP's startercreditdirect.com website, and specifically in connection with the

23    Century Platinum shopping catalog product.  Third, Defendants object to the extent the request

24    calls for documents protected by the attorney-client privilege and/or work product protection.

25    Fourth, Defendants object to this Request to the extent it calls for documents in the FTC's

26    possession, custody or control.

27

28

1      Subject to and without waiver of any of the foregoing General Objections and the

2  foregoing specific objections, Defendants will produce non-privileged, responsive documents in

3  their possession, custody and control.

4  **REQUEST FOR PRODUCTION NO. 10**:

5      Produce all documents constituting or concerning communications between you and the

6  FTC regarding Starter Credit Direct since the date of the Complaint.

7  **RESPONSE TO REQUEST FOR PRODUCTION NO. 10**:

8      Subject to and without waiver of the foregoing General Objections, each of which is

9  expressly incorporated herein, Defendants further object to Request for Production No. 9 on the

10  following grounds:  First, Defendants object to the request to the extent that it seeks documents

11  previously produced to Plaintiff in connection with this contempt proceeding.  Second, the phrase

12  "Starter Credit Direct" is vague and ambiguous.  Defendants understand the phrase "Starter Credit

13  Direct" to mean EDP's startercreditdirect.com website, and specifically in connection with the

14  Century Platinum shopping catalog product.  Third, Defendants object to the extent the request

15  calls for documents protected by the attorney-client privilege and/or work product protection.

16  Fourth, Defendants object on the basis that this request calls for documents in the FTC's

17  possession, custody or control.  Fifth, Defendants object to this request to the extent that it is

18  duplicative of discovery obtained by Plaintiff from Defendants prior to the filing of its Application

19  for an Order to Show Cause Why Defendants Should Not Be Held in Contempt and in response to

20  the FTC's July 23, 2009 request for information and documents to monitor Defendants'

21  compliance with the Final Order.  Subject to and without waiver of any of the foregoing General

22  Objections and the foregoing specific objections, Defendants will produce non-privileged,

23  responsive documents in their possession, custody and control up to and including July 22, 2009.

24  **REQUEST FOR PRODUCTION NO. 11**:

25  ~~If you contend that your marketing of the Century Platinum shopping club clearly and~~

26  conspicuously (as defined in the Order) disclosed the material attributes of the product or service

27  offered or marketed, produce all documents that support your contention.

28

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11**:

Subject to and without waiver of the foregoing General Objections, each of which is expressly incorporated herein, Defendants further object to Request for Production No. 11 on the following grounds:  First, the request is overbroad, unduly burdensome and unreasonable, to the extent it requests documents that are neither relevant to the claims against Defendants in this contempt proceeding nor reasonably calculated to lead to the discovery of admissible evidence.  Specifically, to the extent the request seeks documents about marketing of the Century Platinum shopping catalog product through websites other than startercreditdirect.com, it requests information outside of the scope of this contempt proceeding.  The FTC's contempt application was solely directed at EDP's marketing of the Century Platinum shopping catalog product on the startercreditdirect.com website.  Second, Defendants object to the request to the extent that it is duplicative of discovery obtained by Plaintiff from Defendants prior to the filing of its Application for an Order to Show Cause Why Defendants Should Not Be Held in Contempt and in response to the FTC's July 23, 2009 request for information and documents to monitor Defendants' compliance with the Final Order.  Third, Defendants object to this request to the extent that it seeks documents previously disclosed to Plaintiff in connection with this contempt proceeding.

Subject to and without waiver of any of the foregoing General Objections and the foregoing specific objections, Defendants will produce non-privileged, responsive documents in their possession, custody and control related to the marketing of the Century Platinum shopping catalog product on the startercreditdirect.com website.  Documents that Defendants consider confidential will be produced following the execution by the parties to the litigation and the entry by the Court of a suitable stipulation and protective order limiting the dissemination of those documents.

**REQUEST FOR PRODUCTION NO. 12**:

If you contend that you substantially complied with the Order, produce all documents that support your contention.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12**:

Subject to and without waiver of the foregoing General Objections, each of which is expressly incorporated herein, Defendants further object to Request for Production No. 12 on the following grounds:  First, the request is overbroad, unduly burdensome and unreasonable, to the extent that it seeks documents that are neither relevant to the claims against Defendants in this contempt proceeding nor reasonably calculated to lead to the discovery of admissible evidence. For example, there are many requirements of the Final Order as to which there has been no claim of contempt made by the FTC.  Second, the request is overbroad, unduly burdensome and unreasonable to the extent the request can be read to call for every single document related to Defendants' business and marketing.  Third, Defendants object to this request to the extent that it is duplicative of discovery obtained by Plaintiff from Defendants prior to the filing of its Application for an Order to Show Cause Why Defendants Should Not Be Held in Contempt and in response to the FTC's July 23, 2009 request for information and documents to monitor Defendants' compliance with the Final Order.  Fourth, Defendants further object to the request to the extent that it seeks documents previously disclosed to Plaintiff in connection with this contempt proceeding.

Subject to and without waiver of any of the foregoing General Objections and the foregoing specific objections, Defendants will produce non-privileged, responsive documents in their possession, custody and control that support Defendants' contention that their marketing of the Century Platinum shopping club product on the startercreditdirect.com website and the Netspend Debit Card on the eplatinumdirect.com website substantially complied with the Final Order.  Documents that Defendants consider confidential will be produced following the execution by the parties to the litigation and the entry by the Court of a suitable stipulation and protective order limiting the dissemination of those documents.

**REQUEST FOR PRODUCTION NO. 13**:

Produce all documents concerning your defenses in this Contempt Proceeding.

1  **RESPONSE TO REQUEST FOR PRODUCTION NO. 13**:

2       Subject to and without waiver of the foregoing General Objections, each of which is

3  expressly incorporated herein, Defendants further object to Request for Production No. 13 on the

4  following grounds:  First, Defendants object to this request to the extent that it is duplicative of

5  discovery obtained by Plaintiff from Defendants prior to the filing of its Application for an Order

6  to Show Cause Why Defendants Should Not Be Held in Contempt and in response to the FTC's

7  July 23, 2009 request for information and documents to monitor Defendants' compliance with the

8  Final Order.  Second, Defendants object to this request to the extent that it seeks documents

9  previously disclosed to Plaintiff in connection with this contempt proceeding.  Third, Defendants

10  object to this request on the grounds that it calls for the production of documents protected from

11  disclosure by the attorney-client privilege and work product protection.

12       Subject to and without waiver of any of the foregoing General Objections and the

13  foregoing specific objections, Defendants will produce non-privileged, responsive documents in

14  their possession, custody and control.  Documents that Defendants consider confidential will be

15  produced following the execution by the parties to the litigation and the entry by the Court of a

16  suitable stipulation and protective order limiting the dissemination of those documents.

17  **REQUEST FOR PRODUCTION NO. 14**:

18       If you contend that the Receiver and/or the FTC represented to you at any time after the

19  Complaint that your marketing of the Century Platinum shopping club complied with the Order,

20  produce all documents that support your contention.

21  **RESPONSE TO REQUEST FOR PRODUCTION NO. 14**:

22       Subject to and without waiver of the foregoing General Objections, each of which is

23  expressly incorporated herein, Defendants further object to Request for Production No. 14 on the

24  following grounds:  First, the request is overbroad, unduly burdensome and unreasonable, to the

25  extent it requests documents that are neither relevant to the claims against Defendants in this

26  contempt proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

27  Specifically, to the extent the request seeks documents about marketing of the Century Platinum

28  shopping catalog product through websites other than startercreditdirect.com, it requests

1   information outside of the scope of this contempt proceeding.  The FTC's contempt application

2   was solely directed at EDP's marketing of the Century Platinum shopping catalog product on the

3   startercreditdirect.com website.  Second, Defendants object to this request to the extent that it is

4   duplicative of discovery obtained by Plaintiff from Defendants prior to the filing of its Application

5   for an Order to Show Cause Why Defendants Should Not Be Held in Contempt and in response to

6   the FTC's July 23, 2009 request for information and documents to monitor Defendants'

7   compliance with the Final Order.  Third, Defendants object to this request to the extent that it

8   seeks documents previously disclosed to Plaintiff in connection with this contempt proceeding.

9   Fourth, Defendants object to this Request to the extent it calls for documents in the FTC's

10   possession, custody or control.

11         Subject to and without waiver of any of the foregoing General Objections and the

12   foregoing specific objections, Defendants will produce non-privileged, responsive documents in

13   their possession, custody and control.  Documents that Defendants consider confidential will be

14   produced following the execution by the parties to the litigation and the entry by the Court of a

15   suitable stipulation and protective order limiting the dissemination of those documents.

16   **REQUEST FOR PRODUCTION NO. 15**:

17         If you contend that, at any time after the Complaint, you reasonably relied on

18   representations by the Receiver and/or the FTC that your marketing of the Century Platinum

19   shopping club complied with the Order, produce all documents that support your contention.

20   **RESPONSE TO REQUEST FOR PRODUCTION NO. 15**:

21         Subject to and without waiver of the foregoing General Objections, each of which is

22   expressly incorporated herein, Defendants further object to Request for Production No. 15 on the

23   following grounds:  First, the request is overbroad, unduly burdensome and unreasonable, to the

24   extent it requests documents that are neither relevant to the claims against Defendants in this

25   contempt proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

26   Specifically, to the extent the request seeks documents about marketing of the Century Platinum

27   shopping catalog product through websites other than startercreditdirect.com, it requests

28   information outside of the scope of this contempt proceeding.  The FTC's contempt application

1   was solely directed at EDP's marketing of the Century Platinum shopping catalog product on the

2   startercreditdirect.com website.  Second, Defendants object to this request to the extent that it is

3   duplicative of discovery obtained by Plaintiff from Defendants prior to the filing of its Application

4   for an Order to Show Cause Why Defendants Should Not Be Held in Contempt and in response to

5   the FTC's July 23, 2009 request for information and documents to monitor Defendants'

6   compliance with the Final Order.  Third, Defendants object to this request to the extent that it

7   seeks documents previously disclosed to Plaintiff in connection with this contempt proceeding.

8   Fourth, Defendants object to this Request to the extent it calls for documents in the FTC's

9   possession, custody or control.

10          Subject to and without waiver of any of the foregoing General Objections and the

11   foregoing specific objections, Defendants will produce non-privileged, responsive documents in

12   their possession, custody and control.  Documents that Defendants consider confidential will be

13   produced following the execution by the parties to the litigation and the entry by the Court of a

14   suitable stipulation and protective order limiting the dissemination of those documents.

15   **REQUEST FOR PRODUCTION NO. 16**:

16          Produce all non-identical versions of your marketing (or marketing of others on your

17   behalf), including creatives, for debit cards that were marketed with representations that they

18   could be obtained for "no cost."

19   **RESPONSE TO REQUEST FOR PRODUCTION NO. 16**:

20          Subject to and without waiver of the foregoing General Objections, each of which is

21   expressly incorporated herein, Defendants further object to Request for Production No. 16 on the

22   following grounds:  First, the request is overbroad, unduly burdensome and unreasonable, to the

23   extent it seeks documents that are neither relevant to the claims against Defendants in the

24   contempt proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

25   Specifically, to the extent the request seeks documents related to the marketing of debit cards

26   generally (if marketed with representations that they could be obtained for "no cost"), rather than

27   the debit card offered by Netspend that EDP marketed in conjunction with the ePlatinum+

28   catalogue membership on ePlatinumDirect.com, it requests information outside the scope of this

1  contempt proceeding. The FTC's contempt application was solely directed at EDP's marketing of

2  the debit card offered by Netspend and marketed on ePlatinumDirect.com. Accordingly,

3  documents concerning other debit cards that EDP may have advertised are irrelevant and beyond

4  the scope of this contempt proceeding. The request is also overbroad, unduly burdensome,

5  unreasonable, and harassing on the basis that it requests the "marketing of others on your behalf,"

6  which Defendants understand to mean affiliate marketing. These documents are neither relevant

7  to the claims against Defendants in this contempt proceeding nor reasonably calculated to lead to

8  the discovery of admissible evidence. Further, such documents, even if relevant, may not be in the

9  possession, custody or control of Defendants. Second, Defendants object to this request to the

10  extent that it is duplicative of discovery obtained by Plaintiff from Defendants prior to the filing of

11  its Application for an Order to Show Cause Why Defendants Should Not Be Held in Contempt

12  and in response to the FTC's July 23, 2009 request for information and documents to monitor

13  Defendants' compliance with the Final Order. Third, Defendants object to this request to the

14  extent that it seeks documents previously disclosed to Plaintiff in connection with this contempt

15  proceeding. Fourth, the phrase "could be obtained at no cost" is vague and ambiguous.

16  Defendants presume this phrase to mean that consumers could physically obtain the debit card at

17  no charge before activating it and loading it with funds.

18      Subject to and without waiver of any of the foregoing General Objections and the

19  foregoing specific objections, Defendants will produce non-privileged, responsive documents in

20  their possession, custody and control related to the debit card offered by Netspend that EDP

21  marketed in conjunction with the ePlatinum+ catalogue membership on ePlatinumDirect.com.

22  Documents that Defendants consider confidential will be produced following the execution by the

23  parties to the litigation and the entry by the Court of a suitable stipulation and protective order

24  limiting the dissemination of those documents.

25  **REQUEST FOR PRODUCTION NO. 17:**

26      Produce documents sufficient to show the number of consumers who applied for debit

27  cards that were marketed with representations that they could be obtained for "no cost."

28

1    **RESPONSE TO REQUEST FOR PRODUCTION NO. 17**:

2       Subject to and without waiver of the foregoing General Objections, each of which is

3 expressly incorporated herein, Defendants further object to Request for Production No. 17 on the

4 following grounds:  First, the request is overbroad, unduly burdensome and unreasonable, to the

5 extent it seeks documents that are neither relevant to the claims against Defendants in the

6 contempt proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

7 Specifically, to the extent the request seeks documents related to the marketing of debit cards

8 generally (if marketed with representations that they could be obtained for "no cost"), rather than

9 the debit card offered by Netspend that EDP marketed in conjunction with the ePlatinum+

10 catalogue membership on ePlatinumDirect.com, it requests information outside the scope of this

11 contempt proceeding.  The FTC's contempt application was solely directed at EDP's marketing of

12 the debit card offered by Netspend and marketed on ePlatinumDirect.com.  Accordingly,

13 documents concerning other debit cards that EDP may have advertised are irrelevant and beyond

14 the scope of this contempt proceeding.  Second, the request is vague and ambiguous with respect

15 to the phrases "documents sufficient to show" and "applied for" because not all consumers who

16 requested a Netspend Debit Card received a card in the mail, activated it, loaded it with funds,

17 and/or were charged any fees.  For this additional reason, the request is also irrelevant.  Third,

18 Defendants object to this request to the extent that it is duplicative of discovery obtained by

19 Plaintiff from Defendants prior to the filing of its Application for an Order to Show Cause Why

20 Defendants Should Not Be Held in Contempt and in response to the FTC's July 23, 2009 request

21 for information and documents to monitor Defendants' compliance with the Final Order.  Fourth,

22 Defendants object to this request on the basis that it seeks information previously disclosed to

23 Plaintiff in connection with this contempt proceeding.

24       Subject to and without waiver of any of the foregoing General Objections and the

25 foregoing specific objections, Defendants will produce non-privileged, responsive documents in

26 their possession, custody and control related to the debit card offered by Netspend that EDP

27 marketed in conjunction with the ePlatinum+ catalogue membership on ePlatinumDirect.com.

28 Documents that Defendants consider confidential will be produced following the execution by the

                                        22

DEFENDANTS' OBJECTIONS AND RESPONSES
TO FTC'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS

1   parties to the litigation and the entry by the Court of a suitable stipulation and protective order

2   limiting the dissemination of those documents.

3   <u>REQUEST FOR PRODUCTION NO. 18</u>:

4       Produce documents sufficient to show the amount of revenue you received from debit

5   cards that were marketed with representations that they could be obtained at "no cost."

6   <u>RESPONSE TO REQUEST FOR PRODUCTION NO. 18</u>:

7       Subject to and without waiver of the foregoing General Objections, each of which is

8   expressly incorporated herein, Defendants further object to Request for Production No. 18 on the

9   following grounds:  First, the request is overbroad, unduly burdensome and unreasonable, to the

10  extent it seeks documents that are neither relevant to the claims against Defendants in the

11  contempt proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

12  Specifically, to the extent the request seeks documents related to the marketing of debit cards

13  generally (if marketed with representations that they could be obtained for "no cost"), rather than

14  the debit card offered by Netspend that EDP marketed in conjunction with the ePlatinum+

15  catalogue membership on ePlatinumDirect.com, it requests information outside the scope of this

16  contempt proceeding.  The FTC's contempt application was solely directed at EDP's marketing of

17  the debit card offered by Netspend and marketed on ePlatinumDirect.com.  Accordingly,

18  documents concerning other debit cards that EDP may have advertised are irrelevant and beyond

19  the scope of this contempt proceeding.  Second, the request is vague and ambiguous with respect

20  to the phrases "documents sufficient to show" and "revenue," which is undefined and can refer to

21  gross revenue or net revenue.  Third, Defendants object to this request to the extent that it is

22  duplicative of discovery obtained by Plaintiff from Defendants prior to the filing of its Application

23  for an Order to Show Cause Why Defendants Should Not Be Held in Contempt and in response to

24  the FTC's July 23, 2009 request for information and documents to monitor Defendants'

25  compliance with the Final Order.  Fourth, Defendants object to this request on the basis that it

26  seeks information previously disclosed to Plaintiff in connection with this contempt proceeding.

27      Subject to and without waiver of any of the foregoing General Objections and the

28  foregoing specific objections, Defendants will produce non-privileged, responsive documents in

1  their possession, custody and control related to the debit card offered by Netspend that EDP

2  marketed in conjunction with the ePlatinum+ catalogue membership on ePlatinumDirect.com.

3  Documents that Defendants consider confidential will be produced following the execution by the

4  parties to the litigation and the entry by the Court of a suitable stipulation and protective order

5  limiting the dissemination of those documents.

6  **REQUEST FOR PRODUCTION NO. 19**:

7          Produce documents sufficient to show the amount of fees charged to consumers from debit

8  cards that were marketed with representations that they could be obtained at "no cost."

9  **RESPONSE TO REQUEST FOR PRODUCTION NO. 19**:

10         Subject to and without waiver of the foregoing General Objections, each of which is

11  expressly incorporated herein, Defendants further object to Request for Production No. 19 on the

12  following grounds:  First, the request is overbroad, unduly burdensome and unreasonable, to the

13  extent it seeks documents that are neither relevant to the claims against Defendants in the

14  contempt proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

15  Specifically, to the extent the request seeks documents related to the marketing of debit cards

16  generally (if marketed with representations that they could be obtained for "no cost"), rather than

17  the debit card offered by Netspend that EDP marketed in conjunction with the ePlatinum+

18  catalogue membership on ePlatinumDirect.com, it requests information outside the scope of this

19  contempt proceeding.  The FTC's contempt application was solely directed at EDP's marketing of

20  the debit card offered by Netspend and marketed on ePlatinumDirect.com.  Accordingly,

21  documents concerning other debit cards that EDP may have advertised are irrelevant and beyond

22  the scope of this contempt proceeding.  Second, the request is vague and ambiguous with respect

23  to the phrases "documents sufficient to show" and "amount of fees charged," which Defendants

24  presume to mean fees charged by EDP to consumers.  Third, Defendants object to this request to

25  the extent that it is duplicative of discovery obtained by Plaintiff from Defendants prior to the

26  filing of its Application for an Order to Show Cause Why Defendants Should Not Be Held in

27  Contempt and in response to the FTC's July 23, 2009 request for information and documents to

28  monitor Defendants' compliance with the Final Order.  Fourth, Defendants object to this request

1 | on the basis that it seeks information previously disclosed to Plaintiff in connection with this

2 | contempt proceeding. Fifth, Defendants object to this request to the extent it requests information

3 | concerning the amount of fees charged by parties other Defendants on the basis that this

4 | information is not in Defendants' possession, custody or control.

5 | Subject to and without waiver of any of the foregoing General Objections and the

6 | foregoing specific objections, Defendants respond as follows: There are no responsive documents

7 | as Defendants did not charge consumers any fees in connection with the Netspend Debit Card

8 | marketed on the ePlatinumDirect.com website.

9 | **REQUEST FOR PRODUCTION NO. 20:**

10 | Produce all non-identical versions of your marketing (or marketing of others on your

11 | behalf), including creatives (in addition to those already produced in response to Specification 16),

12 | that represent that prepaid cards, debit cards, or credit cards can be obtained "free," without

13 | obligation, or at a reduced cost.

14 | **RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

15 | Subject to and without waiver of the foregoing General Objections, each of which is

16 | expressly incorporated herein, Defendants further object to Request for Production No. 20 on the

17 | following grounds: First, the request is overbroad, unduly burdensome and unreasonable, to the

18 | extent it seeks documents that are neither relevant to the claims against Defendants in the

19 | contempt proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

20 | Specifically, to the extent the request seeks documents related to the marketing of "prepaid cards,

21 | debit cards, or credit cards" generally (if marketed with representations that they could be obtained

22 | for "free without obligation"), rather than the debit card offered by Netspend that EDP marketed in

23 | conjunction with the ePlatinum+ catalogue membership on ePlatinumDirect.com, it requests

24 | information outside the scope of this contempt proceeding. The FTC's contempt application was

25 | solely directed at EDP's marketing of the debit card offered by Netspend and marketed on

26 | ePlatinumDirect.com. Accordingly, documents concerning other "prepaid cards, debit cards, or

27 | credit cards" that EDP may have advertised are irrelevant and beyond the scope of this contempt

28 | proceeding. The request is also overbroad, unduly burdensome, unreasonable, and harassing on

1    the basis that it requests the "marketing of others on your behalf," which Defendants understand to

2    mean affiliate marketing. These documents are neither relevant to the claims against Defendants

3    in this contempt proceeding nor reasonably calculated to lead to the discovery of admissible

4    evidence. Further, such documents, even if relevant, may not be in the possession, custody or

5    control of Defendants. Second, Defendants object to this request to the extent that it is duplicative

6    of discovery obtained by Plaintiff from Defendants prior to the filing of its Application for an

7    Order to Show Cause Why Defendants Should Not Be Held in Contempt and in response to the

8    FTC's July 23, 2009 request for information and documents to monitor Defendants' compliance

9    with the Final Order. Third, Defendants object to this request to the extent that it seeks documents

10    previously disclosed to Plaintiff in connection with this contempt proceeding. Fourth, the phrase

11    "free without obligation" is vague and ambiguous. Defendants presume this phrase to mean that

12    consumers could physically obtain the debit card at no charge before activating it and loading it

13    with funds. The term "Specification 16" is also unclear and presumably means Request for

14    Production No. 16. Fifth, Defendants object to this request on the basis that it is duplicative of

15    Request for Production No. 16.

16         Subject to and without waiver of any of the foregoing General Objections and the

17    foregoing specific objections, Defendants will produce non-privileged, responsive documents in

18    their possession, custody and control related to the debit card offered by Netspend that EDP

19    marketed in conjunction with the ePlatinum+ catalogue membership on ePlatinumDirect.com.

20    Documents that Defendants consider confidential will be produced following the execution by the

21    parties to the litigation and the entry by the Court of a suitable stipulation and protective order

22    limiting the dissemination of those documents.

23    **REQUEST FOR PRODUCTION NO. 21**:

24         Produce documents sufficient to show the number of consumers (in addition to those

25    already identified in response to Specification 17) who applied for prepaid cards, debit cards, or

26    credit cards that were marketed with representations that they could be obtained "free," without

27    obligation, or at a reduced cost.

28    **RESPONSE TO REQUEST FOR PRODUCTION NO. 21**:

1    Subject to and without waiver of the foregoing General Objections, each of which is

2    expressly incorporated herein, Defendants further object to Request for Production No. 21 on the

3    following grounds: First, the request is overbroad, unduly burdensome and unreasonable, to the

4    extent it seeks documents that are neither relevant to the claims against Defendants in the

5    contempt proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

6    Specifically, to the extent the request seeks documents related to the marketing of "prepaid cards,

7    debit cards, or credit cards" generally (if marketed with representations that they could be obtained

8    for "free without obligation"), rather than the debit card offered by Netspend that EDP marketed in

9    conjunction with the ePlatinum+ catalogue membership on ePlatinumDirect.com, it requests

10   information outside the scope of this contempt proceeding.  The FTC's contempt application was

11   solely directed at EDP's marketing of the debit card offered by Netspend and marketed on

12   ePlatinumDirect.com.  Accordingly, documents concerning other "prepaid cards, debit cards, or

13   credit cards" that EDP may have advertised are irrelevant and beyond the scope of this contempt

14   proceeding.  Second, the request is vague and ambiguous with respect to the phrases "documents

15   sufficient to show" and "applied for" because not all consumers who requested a Netspend Debit

16   Card received a card in the mail, activated it, loaded it with funds, and/or were charged any fees.

17   For this additional reason, the request is also irrelevant.  Third, Defendants object to this request to

18   the extent that it is duplicative of discovery obtained by Plaintiff from Defendants prior to the

19   filing of its Application for an Order to Show Cause Why Defendants Should Not Be Held in

20   Contempt and in response to the FTC's July 23, 2009 request for information and documents to

21   monitor Defendants' compliance with the Final Order.  Fourth, Defendants object to this request

22   to the extent that it seeks documents previously disclosed to Plaintiff in connection with this

23   contempt proceeding.  Fifth, the phrase "free without obligation" is vague and ambiguous.

24   Defendants presume this phrase to mean that consumers could physically obtain the debit card at

25   no charge before activating it and loading it with funds.  The term "Specification 17" is also

26   unclear and presumably means Request for Production No. 17.  Sixth, Defendants object to this

27   request on the basis that it is duplicative of Request for Production No. 17.

28

1    Subject to and without waiver of any of the foregoing General Objections and the

2  foregoing specific objections, Defendants will produce non-privileged, responsive documents in

3  their possession, custody and control related to the debit card offered by Netspend that EDP

4  marketed in conjunction with the ePlatinum+ catalogue membership on ePlatinumDirect.com.

5  Documents that Defendants consider confidential will be produced following the execution by the

6  parties to the litigation and the entry by the Court of a suitable stipulation and protective order

7  limiting the dissemination of those documents.

8  **REQUEST FOR PRODUCTION NO. 22:**

9    Produce documents sufficient to show the amount of revenue (in addition to the revenue

10  already identified in response to Specification 18) you received from marketing prepaid cards,

11  debit cards, or credit cards that were marketed with representations that they could be obtained

12  "free," without obligation, or at a reduced cost.

13  **RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

14    Subject to and without waiver of the foregoing General Objections, each of which is

15  expressly incorporated herein, Defendants further object to Request for Production No. 22 on the

16  following grounds: First, the request is overbroad, unduly burdensome and unreasonable, to the

17  extent it seeks documents that are neither relevant to the claims against Defendants in the

18  contempt proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

19  Specifically, to the extent the request seeks documents related to the marketing of "prepaid cards,

20  debit cards, or credit cards" generally (if marketed with representations that they could be obtained

21  for "free without obligation"), rather than the debit card offered by Netspend that EDP marketed in

22  conjunction with the ePlatinum+ catalogue membership on ePlatinumDirect.com, it requests

23  information outside the scope of this contempt proceeding. The FTC's contempt application was

24  solely directed at EDP's marketing of the debit card offered by Netspend and marketed on

25  ePlatinumDirect.com. Accordingly, documents concerning other "prepaid cards, debit cards, or

26  credit cards" that EDP may have advertised are irrelevant and beyond the scope of this contempt

27  proceeding. Second, the request is vague and ambiguous with respect to the phrases "documents

28  sufficient to show" and "amount of revenue," which is undefined and can be taken to refer to gross

1 | revenue or net revenue.  Third, Defendants object to this request to the extent that it is duplicative

2 | of discovery obtained by Plaintiff from Defendants prior to the filing of its Application for an

3 | Order to Show Cause Why Defendants Should Not Be Held in Contempt and in response to the

4 | FTC's July 23, 2009 request for information and documents to monitor Defendants' compliance

5 | with the Final Order.  Fourth, Defendants object to this request to the extent that it seeks

6 | documents previously disclosed to Plaintiff in connection with this contempt proceeding.  Fifth,

7 | the phrase "free without obligation" is vague and ambiguous.  Defendants presume this phrase to

8 | mean that consumers could physically obtain the debit card at no charge before activating it and

9 | loading it with funds.  The term "Specification 18" is also unclear and presumably means Request

10 | for Production No. 18.  Sixth, Defendants object to this request on the basis that it is duplicative of

11 | Request for Production No. 18.

12 | Subject to and without waiver of any of the foregoing General Objections and the

13 | foregoing specific objections, Defendants will produce non-privileged, responsive documents in

14 | their possession, custody and control related to the debit card offered by Netspend that EDP

15 | marketed in conjunction with the ePlatinum+ catalogue membership on ePlatinumDirect.com.

16 | Documents that Defendants consider confidential will be produced following the execution by the

17 | parties to the litigation and the entry by the Court of a suitable stipulation and protective order

18 | limiting the dissemination of those documents.

19 | **REQUEST FOR PRODUCTION NO. 23**:

20 | Produce documents sufficient to show the amount of fees (in addition to the fees already

21 | identified in response to Specification 16) charged to consumers from prepaid cards, debit cards,

22 | or credit cards that were marketed with representations that they could be obtained "free," without

23 | obligation, or at a reduced cost.

24 | **RESPONSE TO REQUEST FOR PRODUCTION NO. 23**:

25 | Subject to and without waiver of the foregoing General Objections, each of which is

26 | expressly incorporated herein, Defendants further object to Request for Production No. 23 on the

27 | following grounds: First, the request is overbroad, unduly burdensome and unreasonable, to the

28 | extent it seeks documents that are neither relevant to the claims against Defendants in the

1   contempt proceeding nor reasonably calculated to lead to the discovery of admissible evidence.

2   Specifically, to the extent the request seeks documents related to the marketing of "prepaid cards,

3   debit cards, or credit cards" generally (if marketed with representations that they could be obtained

4   for "free without obligation"), rather than the debit card offered by Netspend that EDP marketed in

5   conjunction with the ePlatinum+ catalogue membership on ePlatinumDirect.com, it requests

6   information outside the scope of this contempt proceeding.  The FTC's contempt application was

7   solely directed at EDP's marketing of the debit card offered by Netspend and marketed on

8   ePlatinumDirect.com.  Accordingly, documents concerning other "prepaid cards, debit cards, or

9   credit cards" that EDP may have advertised are irrelevant and beyond the scope of this contempt

10  proceeding.  Second, the request is vague and ambiguous with respect to the phrases "documents

11  sufficient to show" and "amount of fees charged," which Defendants presume to mean fees

12  charged by EDP to consumers.  Third, Defendants object to this request to the extent that it is

13  duplicative of discovery obtained by Plaintiff from Defendants prior to the filing of its Application

14  for an Order to Show Cause Why Defendants Should Not Be Held in Contempt and in response to

15  the FTC's July 23, 2009 request for information and documents to monitor Defendants'

16  compliance with the Final Order.  Fourth, Defendants object to this request to the extent that it

17  seeks documents previously disclosed to Plaintiff in connection with this contempt proceeding.

18  Fifth, the phrase "free without obligation" is vague and ambiguous.  Defendants presume this

19  phrase to mean that consumers could physically obtain the debit card at no charge before

20  activating it and loading it with funds.  The term "Specification 16" is also unclear and

21  presumably means Request for Production No. 16.  Sixth, Defendants object to this request on the

22  basis that it is duplicative of Request for Production No. 19.

23  / / / / /

24  / / / / /

25  / / / / /

26  / / / / /

27  / / / / /

28  / / / / /

1    Subject to and without waiver of any of the foregoing General Objections and the

2  foregoing specific objections, Defendants respond as follows:  There are no responsive documents

3  as Defendants did not charge consumers any fees in connection with the Netspend Debit Card

4  marketed on the ePlatinumDirect.com website.

5

6  Dated: September 2, 2010                    LOEB & LOEB LLP
                                                MICHAEL L. MALLOW
7                                               KAREN R. THORLAND
                                                CHRISTINE M. REILLY

8

9                                               By: /s/ Michael L. Mallow
                                                    Michael L. Mallow
10                                                  Attorneys for Defendants
                                                    EDEBITPAY, LLC,
11                                                  DALE PAUL CLEVELAND and
                                                    WILLIAM RICHARD WILSON

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

I, Vicki S. Henderson, the undersigned, declare that:

I am employed in the County of Los Angeles, State of California, over the age of 18, and not a party to this cause. My business address is 10100 Santa Monica Boulevard, Suite 2200, Los Angeles, California 90067-4120.

On September 2, 2010, I served a true copy of the **DEFENDANTS' OBJECTIONS AND RESPONSES TO FEDERAL TRADE COMMISSION'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** on the parties in this cause

[X]   (VIA OVERNIGHT DELIVERY) by placing the above named document in a sealed envelope addressed as set forth below, or on the attached service list and by then causing said envelope to be deposited for collection and overnight delivery via Federal Express in accordance with Loeb & Loeb LLP's ordinary business practices.

| | |
|---|---|
| Mark Morelli, Esq. | John D. Jacobs, Esq. |
| Elizabeth Tucci, Esq. | Federal Trade Commission |
| Zachary V. Hunter, Esq. | 10877 Wilshire Boulevard |
| Federal Trade Commission | Suite 700 |
| 600 Pennsylvania Avenue NW | Los Angeles, CA  90024 |
| Room M-8102B | |
| Washington, DC  20580 | |

I am readily familiar with Loeb & Loeb LLP's practice for collecting and processing correspondence for mailing with the United States Postal Service and Overnight Delivery Service. That practice includes the deposit of all correspondence with the United States Postal Service and/or Overnight Delivery Service the same day it is collected and processed.

I certify that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 2, 2010, at Los Angeles, California.

_____
Vicki S. Henderson

LA2064389.1
211465-10001

PROOF OF SERVICE

ATTACHMENT 6

1 | MARK MORELLI
2 | mmorelli@ftc.gov, (202) 326-2601 (tel.)
  | ELIZABETH TUCCI
3 | etucci@ftc.gov, (202) 326-2402 (tel.)
4 | ZACHARY V. HUNTER
  | zhunter@ftc.gov, (202) 326-3235 (tel.)
5 | Federal Trade Commission
6 | 600 Pennsylvania Avenue, NW, Rm. M-8102B
  | Washington, DC 20580
7 | (202) 326-2558 (fax)
8 |
9 | JOHN D. JACOBS, Bar No. 134154
  | jjacobs@ftc.gov, (310) 824-4343 (tel.)
10 | Federal Trade Commission
11 | 10877 Wilshire Boulevard, Suite 700
  | Los Angeles, CA 90024
12 | (310) 824-4380 (fax)
13 |
  | ATTORNEYS FOR PLAINTIFF
14 | FEDERAL TRADE COMMISSION
15 |
  |           UNITED STATES DISTRICT COURT
16 |           CENTRAL DISTRICT OF CALIFORNIA
17 |

| | |
|---|---|
| **Federal Trade Commission,** | CV-07-4880 ODW (AJWx) |
| Plaintiff, | **Deposition Notice of Dale Paul Cleveland** |
| v. | |
| **EDebitPay, LLC, et al.,** | Judge Otis D. Wright II |
| Defendants. | |

25 |   NOTICE IS HEREBY GIVEN that, pursuant to Section X of the Stipulated
26 | Final Order for Permanent Injunction and Monetary Relief, entered on January
27 | 22, 2008, and Rule 32 of the Federal Rules of Civil Procedure,  plaintiff Federal
28 | Trade Commission ("FTC") will take the deposition upon oral examination of

1   Dale Paul Cleveland on September 15, 2010 at 9:30 a.m., and continuing from

2   day to day until completed, at the offices of the FTC, 10877 Wilshire Boulevard,

3   Suite 700, Los Angeles, California, 90024.

4          PLEASE TAKE FURTHER NOTICE that the depositions will be recorded

5   by stenographic means, and may also be recorded by audio-visual means, before

6   an officer authorized to administer oaths.

7

8   Dated:  August 25, 2010

9

10                                          Elizabeth Tucci
                                            Attorney for Plaintiff
11                                          Federal Trade Commission

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

## Proof of Service

I am a resident of the Commonwealth of Virginia and over the age of 18 years,

and I am not a party to the this action.  My business address is 600 Pennsylvania

Avenue, N.W., Mailstop M-8108, Washington, DC 20580.  On August 25, 2010,

I served via U.S. Mail the foregoing deposition notice on the following person:

Michael Mallow, Esq.,
Loeb & Loeb, LLP,
10100 Santa Monica Boulevard,
Suite 2200,
Los Angeles, CA 90067

and by email to

Michael Mallow, Esq.
Karen Thorland, Esq.,
Christine Reilly, Esq.
Loeb & Loeb, LLP,

at the following email addresses:
mmallow@loeb.com
kthorland@loeb.com
creilly@loeb.com

Elizabeth Tucci
Attorney for Plaintiff
Federal Trade Commission

3

ATTACHMENT 7



**MICHAEL L. MALLOW**
Partner

10100 Santa Monica Blvd
Suite 2200
Los Angeles, CA 90067

**Direct**  310.282.2287
**Main**  310.282.2000
**Fax**  310.282.2200
mmallow@loeb.com

Via Email and U.S. Mail

September 8, 2010

Elizabeth Tucci, Esq.
Division of Enforcement
Federal Trade Commission
601 New Jersey Avenue, N.W.
Washington, D.C. 20580

*Re:  FTC v. EDebitPay, LLC et al.*, Case No. 07-CV-04880 ODW (AJWx)

Dear Elizabeth:

We write in response to issues raised in your letter dated September 1, 2010.

**1.   Depositions**

You have proposed four alternative dates for the deposition of Dr. Kelly, i.e., September 27, 28, 29, or 30, 2010.  We will proceed with the deposition of Dr. Kelly on the first available date, September 27, 2010.

With respect to the deposition of Mr. McKown, we are unwilling to leave this issue unresolved until the FTC sees fit to move to compel.  As such, Defendants prepared a joint stipulation related to their own motion to compel this deposition.  The joint stipulation was provided to the FTC yesterday.

With respect to the depositions that the FTC has noticed of Defendants' employees, i.e., the depositions of Ms. Murillo, Ms. Ortega-Leon, Mr. Desa and Mr. Cleveland, we are willing to agree to the FTC's proposed dates for these depositions with two exceptions.

First, unfortunately Mr. Desa is not available on September 28, 2010.  Mr. Desa will be on a previously scheduled vacation in India from September 28, 2010 through October 20, 2010.  Please let us know if you would like to proceed with his deposition on either September 20 or 23, 2010.

Second, pursuant to Local Rule 37-1, we hereby request that counsel meet and confer in good faith to discuss the issue of Mr. Cleveland's deposition.  Defendants object to the deposition of Mr. Cleveland and do not intend to produce him on September 29, 2010.  As you are well aware, the Federal Rules of Civil Procedure only allow the FTC one deposition of



Elizabeth Tucci, Esq.
September 8, 2010
Page 2

Mr. Cleveland, which deposition may only take one day (7 hours).  F.R.C.P. 30(d)(1); *see also Roberson v. Bair*, 242 F.R.D. 130, 138 (D. D.C. 2007) (court presumes 7 hour limit "was carefully chosen and that extensions of that limit should be the exception, not the rule").  On November 17, 2009, as the caption page to the transcript reflects, the FTC took the deposition of Mr. Cleveland in this case.  The FTC was free to question Mr. Cleveland on any subject and to ask any questions that it may have had at that time.  The FTC does not get a second bite at the apple.  Moreover, the FTC has even used the transcript of that deposition in its application for an order to show cause re contempt.  (*See* Exhibit 8, Attachment C to Memoranda in Support of Federal Trade Commission's Application for an Order to Show Cause Why Defendants Should Not Be Held in Contempt.)  Accordingly, Defendants object to a second deposition of Mr. Cleveland absent further order from the Court.  Please let us know when you are available to confer regarding this issue.

**2.**       **The FTC's Continued Demand that Defendants "Tee Up" Discovery Issues**

Again, we currently have no obligation to meet and confer with you regarding discovery propounded by the FTC.  If, upon review of Defendants' written responses to discovery, the FTC believes there is a dispute and wishes to initiate the meet and confer process set forth in L.R. 37-1, it is free to do so. But Defendants have no obligation to send a letter prior to responding to the FTC's discovery.  If the FTC wanted discovery disputes resolved earlier in this matter it could have served its discovery earlier.

**3.**       **The FTC's Request to Postpone the Hearing Date**

Defendants remain willing to move forward with the current hearing date.  As we previously informed you, if the FTC desires to move the hearing date it can bring its own motion to do so.  As we previously stated, Defendants will not oppose that motion by the FTC to the extent that the FTC seeks to continue the hearing to a date on or about November 15, 2010. The Defendants will oppose any longer continuance.  As we previously explained to you, delay of the hearing date will delay finalizing the sale of EDP to the detriment of Defendants.

**4.**       **Witness Attendance at the Hearing**

Please consider this formal notice that Defendants' intend to call Raymond McKown to testify in person at the hearing and to cross-examine Dr. Kelly in person at the hearing. We expect these individuals to be present at the hearing.  If you do not intend to bring these witnesses to the hearing, please immediately inform us of that fact so that we may bring the issue to the Court.  To the extent that you refuse to bring these witnesses to the hearing, we reserve the right to seek to exclude any and all affidavits from Mr. McKown and Dr. Kelly and any use of their testimony by the FTC.

LA2073053.1
211465-10001



We look forward to hearing back from you on the issues discussed above.


Sincerely,


Michael L. Mallow
Partner

cc:    Mark Morelli, Esq. (via email)
       Zachary Hunter, Esq. (via email)
       Paul Cleveland (via email)

ATTACHMENT 8

1  MICHAEL L. MALLOW (SBN 188745)
   CHRISTINE M. REILLY (SBN 226388)
2  LOEB & LOEB LLP
   10100 Santa Monica Boulevard, Suite 2200
3  Los Angeles, California 90067-4120
   Telephone:  310-282-2000
4  Facsimile:  310-282-2200

5  Attorneys for Defendants
   EDEBITPAY, LLC; DALE PAUL
6  CLEVELAND; and WILLIAM
   RICHARD WILSON
7

8

9              UNITED STATES DISTRICT COURT

10           CENTRAL DISTRICT OF CALIFORNIA

11                   WESTERN DIVISION

12

13  FEDERAL TRADE COMMISSION,       )  Case No. 07-4880 ODW (AJWx)
                                     )
14           Plaintiff,             )  **OBJECTIONS TO DEPOSITION**
                                     )  **NOTICE OF DALE PAUL**
15       v.                         )  **CLEVELAND**
                                     )
16  EDEBITPAY, LLC; EDP             )
    REPORTING, LLC; EDP             )  Date:  September 15, 2010
17  TECHNOLOGIES CORPORATION;       )
    SECURE DEPOSIT CARD, INC.;      )  Time:  9:30 a.m.
18  DALE PAUL CLEVELAND; and        )
    WILLIAM RICHARD WILSON,         )  Place:  Federal Trade Commission
19                                   )         10877 Wilshire Boulevard
             Defendants.            )         Suite 700
20                                   )         Los Angeles, CA 90024
                                     )
21                                   )
                                     )
22                                   )
                                     )
23                                   )
                                     )
24                                   )

25

26

27

28

LA2074463.1                              OBJECTION TO DEPOSITION NOTICE
211465-10001                                 OF DALE PAUL CLEVELAND

1    Defendants EDebitPay LLC, Dale Paul Cleveland, and William Richard
2  Wilson ("Defendants") hereby object to Plaintiff Federal Trade Commission's
3  ("FTC") Deposition Notice of Dale Paul Cleveland, dated August 25, 2010 (the
4  "Notice"), as follows:

5    1.    Defendants object to the deposition of Mr. Cleveland because FTC has
6  already deposed Mr. Cleveland in this matter and therefore has no basis upon which
7  to notice Mr. Cleveland to appear for a second deposition. As you are well aware,
8  the Federal Rules of Civil Procedure only allow the FTC one deposition of Mr.
9  Cleveland in this proceeding, on one day for seven hours. FED. R. CIV. P.
10  30(a)(2)(A)(ii) and 30(d)(1). On November 17, 2009, as the caption page to the
11  transcript reflects, the FTC took the deposition of Mr. Cleveland in this case. The
12  FTC was free at that time to question Mr. Cleveland on any subject and to ask any
13  questions that it may have had. The FTC does not get a second bite at the apple.
14  Moreover, the Stipulated Final Order for Permanent Injunction and Monetary Relief,
15  entered on January 22, 2008, upon which FTC also purports to base the Notice, does
16  not support a second deposition for Mr. Cleveland. Indeed, the discovery
17  mechanisms referenced in Section V ("Compliance Monitoring") are grounded upon
18  the Federal Rules of Civil Procedure, which, as shown above allow for only one
19  deposition of a witness in a proceeding without leave of court. Accordingly,
20  Defendants object to a second deposition of Mr. Cleveland absent further order from
21  the Court, and do not intend to produce Mr. Cleveland on September 15, 2010.

22
23
24
25
26
27
28

1      2.      Defendants also object to the Notice on the independent ground that

2  counsel for Defendants are unavailable on the date for the deposition that Plaintiff

3  unilaterally chose without consultation with the undersigned counsel of record for

4  Defendants.

5

6  Dated:  September 13, 2010                LOEB & LOEB LLP

7

8                                           By:    /s/ Michael L. Mallow
                                                   Michael L. Mallow
9                                                  Christine M. Reilly
                                                   Attorneys for Defendants
10                                                 EDEBITPAY, LLC; DALE PAUL
                                                   CLEVELAND; and WILLIAM
11                                                 RICHARD WILSON

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROOF OF SERVICE**

2    I, Jacqueline Guay, the undersigned, declare that:

3    I am employed in the County of Los Angeles, State of California, over the age

4 of 18, and not a party to this cause.  My business address is 10100 Santa Monica

5 Boulevard, Suite 2200, Los Angeles, California 90067-4120.

6    On September 13, 2010, I served a true copy of the **OBJECTIONS TO**

7 **DEPOSITION NOTICE OF DALE PAUL CLEVELAND** on the parties in this

8 cause

9 **[X]**    **(VIA US MAIL)** by placing the above named document in a sealed envelope

10 addressed as set forth below, or on the attached service list and by then causing said

11 envelope to be deposited for collection and overnight delivery via Federal Express

12 in accordance with Loeb & Loeb LLP's ordinary business practices.

13 **[X]**    **(VIA EMAIL)** I caused the transmission of the above-named document(s) to

14 the email address set forth below, or on the attached service list.

15 Mark Morelli, Esq.                          John D. Jacobs, Esq.
    Elizabeth Tucci, Esq.                        Federal Trade Commission
16 Zachary V. Hunter, Esq.                      10877 Wilshire Boulevard
    Federal Trade Commission                     Suite 700
17 600 Pennsylvania Avenue NW                   Los Angeles, CA  90024
    Room M-8102B
18 Washington, DC  20580                        Email:    **jjacobs@ftc.gov**

19 Email:    **mmorelli@ftc.gov**
              **etucci @ftc.gov**
20           **zhunter@ftc.gov**

21    I am readily familiar with Loeb & Loeb LLP's practice for collecting and

22 processing correspondence for mailing with the United States Postal Service and

23 Overnight Delivery Service.  That practice includes the deposit of all

24 correspondence with the United States Postal Service and/or Overnight Delivery

25 Service the same day it is collected and processed.

26    I certify that I am employed in the office of a member of the bar of this Court

27 at whose direction the service was made.

28

OBJECTION TO DEPOSITION NOTICE
OF DALE PAUL CLEVELAND

1    I declare under penalty of perjury that the foregoing is true and correct.

2    Executed on September 13, 2010, at Los Angeles, California.

3

4

5                          Jacqueline Guay

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT 9



UNITED STATES OF AMERICA
## FEDERAL TRADE COMMISSION
WASHINGTON, D.C. 20580

Bureau of Consumer Protection
Division of Enforcement

Elizabeth Tucci
Attorney

Direct Dial:
(202) 326-2402

Fax:
(202) 326-2558

September 9, 2010

**Via email to <u>mmallow@loeb.com</u>**

Michael Mallow, Esq.
Loeb & Loeb, LLP
10100 Santa Monica Boulevard
Suite 2200
Los Angeles, California  90067

   Re: *Federal Trade Commission v. EDebitPay, LLC, et al.*,
     Civil Action No. CV 07-4880 ODW (AJWx) (C.D. Cal.)

Dear Mr. Mallow:

   I write to you in your capacity as counsel for defendants EDebitPay, LLC, Dale Paul Cleveland, and William Richard Wilson ("Defendants") in the above-cited matter.

**Depositions**

   In response to your September 8, 2010, letter regarding, *inter alia*, depositions, we propose two alternative schedules.  If Mr. Camhi is available on September 22, 2010, and you intend to proceed with his deposition on that date, then we suggest the following:

   September 21  Murilla and Leon
   September 22  Camhi
   September 23  Desa
   September 27  Kelly

   If you do not intend to depose Mr. Camhi on September 22, 2010, we propose the following alternative schedule:

September 23  Murilla and Leon
September 24  Desa
September 27  Kelly

We are willing to defer Mr. Mallow's deposition pending the magistrate's ruling on Mr. McKown's deposition, and proceed expeditiously with both depositions if the magistrate rules that Mr. McKown's deposition is to go forward.  However, if Mr. Mallow intends to offer testimony, by declaration or otherwise, at the contempt hearing regardless of whether the magistrate permits Mr. McKown to be deposed, then we propose to renotice Mr. Mallow's deposition for September 20 or 28, 2010.  Please advise us immediately on this issue.

You also indicated that you will not make Defendant Cleveland available for deposition because the FTC deposed him last November pursuant to its compliance-monitoring authority under the Final Order entered January 22, 2008.  We intend to move the Court to order his deposition if you do not make him available.  At the time of the 2009 deposition, the FTC was conducting a general compliance investigation, and no contempt claims or defenses were before the Court.  The FTC's exercise of its monitoring rights under the Final Order should not curtail the discovery of admissible evidence in this contempt proceeding.  Moreover, you note that the Federal Rules permit up to seven hours for a deposition, and Mr. Cleveland testified for less than two hours, of which only thirty minutes was in his personal capacity.  Finally, Mr. Cleveland submitted a declaration on June 17, 2010, that addresses the particular claims and defenses of this proceeding.  Therefore, we have a right to depose him regarding these matters.

With regard to your proposed schedule regarding the Motion to Compel Mr. McKown's deposition, we would agree to such a schedule only if you agree to:

(1)    jointly move the magistrate to hear the FTC's discovery issues, as outlined herein, at the same hearing and to permit parties to file supplemental briefs regarding both parties' discovery issues within seven instead of fourteen days of the hearing date; and

(2)    hold the meet and confer on this letter by Monday, September 13, 2010 at 1 pm EDT.

**Written Discovery**

Pursuant to Local Rule 37-1, I am hereby requesting that counsel meet and confer in good faith to discuss the discovery issues outlined below.  I propose that we confer telephonically no later than Monday, September 13, 2010 at 1 pm EDT.  Time is of the essence, given your desire to expedite resolution of the discovery dispute regarding Mr. McKown's deposition and your unwillingness to move jointly to extend the contempt hearing date.

Specifically, Defendants' responses to the FTC's First Set of Interrogatories and First Request for Production of Documents are non-responsive and non-compliant with the Federal Rules for Civil Procedure.  We therefore ask that Defendants' amend their responses

2

immediately.  In addition, we find your refusal to produce Cleveland for deposition unreasonable, and we intend to move the Court to order his appearance.

With regard to general objections, Defendants object to the FTC's instructions that the stated time period, unless otherwise noted, is "January 22, 2008 through the conclusion of the Contempt Hearing in this case."  Instead, Defendants claim that they will generally limit the applicable time period to July 31, 2010.  Defendants have not put forth any legal justification for withholding the disclosure of responsive discovery information after this arbitrary deadline, particularly in light of Defendants' ongoing obligation to supplement discovery responses.  Fed. R. Civ. P. 26(e)(1)(A).

Interrogatories 1, 2, and 3 ask Defendants to:  "[d]escribe in detail all of the ways in which consumers reached or were directed to the Starter Credit Direct website (including through "exit pops," as described by Wilson in his November 17, 2009 deposition at 92-93, 103-06 or through other means such as hyperlinks from emails or other websites);" identify how consumers who signed up for Century Platinum through Starter Credit Direct reached the website, through exit-pops or otherwise; and identify any disclosures made to consumers informing them of such website transfers.  Similarly, Document Request 3 seeks production of websites from which consumers were transferred to sites purporting to offer membership in shopping clubs.  In response, Defendants fail to answer the interrogatories and to produce responsive documents.  The stated grounds stated for failing to provide this discovery are frivolous.

For example, Defendants point out that the Final Order, entered January 22, 2008, does not refer to "exit pops."  If you are aware of case law stating that each possible way of violating an order must be foreseen and precisely described in its prescriptions, please identify the relevant cases immediately.  Similarly, Defendants object to the vagueness of terms they themselves introduced in explaining their business practices in deposition.  It is unlikely a Court would be sympathetic to Defendants' claimed failure to understand their own language.

Moreover, the use of deceptive means to drive consumers to the Starter Credit Direct website and similar websites relates directly to the FTC's claim that Defendants violated the Final Order by, *inter alia*, failing to obtain consumers' express informed consent before debiting financial accounts.  Defendants testified in deposition that they used "exit pops" in their internet marketing, and that in at least some cases EDP (1) involuntarily and without notice transferred consumers from one website to another; (2) transferred consumers when they were rejected for some type of loan application, without expressly notifying them of the rejection; and (3) "exit-popped" the rejected consumers to EDP sites, prepopulating some of the consumer information from the initial loan offer to the new EDP application.  Such a practice, if used in Starter Credit Direct applications, would certainly bear on whether Defendants obtained express informed consent as required by the Order.  Yet Defendants testified in deposition that they would have to consult their records to see if Defendants used their "exit-pop" process to transfer consumers to Starter Credit Direct.  Please check your clients' records and respond fully to the interrogatories and document request.

In Interrogatories 4 and 5, Defendants decline to identify changes to the marketing of
Starter Credit Direct and related documentation.  Incredibly, Defendants raise a relevance
objection, even though you provided various versions of the marketing of Starter Credit Direct to
show Defendants' purported compliance with the Order.  Defendants propose to delay litigation
by producing such documentation only once a suitable protective order has been entered by the
Court.  Yet you provide no explanation of the need for a protective order nor a proposed
stipulation.  As you know, the party seeking protection bears the burden of showing good cause.
The attached order from Magistrate Judge Fernando M. Olguin sets out requirements and
appropriate limits for an order protecting discoverable documents.  *FTC v. Burnlounge, Inc.*,
Case 2:07-cv-03654-GW-FMO (C.D. Cal. March 3, 2008).

In response to Interrogatories 6, 7, 8, 10, and 11 and Document Requests 1, 2, 3, 4, 5, 6,
7, 11, 14, and 15, Defendants refused to provide discovery on EDP's marketing of the Century
Platinum shopping club beyond EDP's marketing of the shopping club through Starter Credit
Direct.  Defendants similarly refused to produce documents in response to Document Requests
16, 17, 18, 19, 20, 21, 22, and 23 regarding their marketing of no-cost debit cards other than that
"related to the debit card offered by Netspend that EDP marketed in conjunction with the
ePlatinum+ catalogue membership on ePlatinumDirect.com."

Defendants' effort to constrain discovery to these narrow topics lacks merit, and the
requested discovery should be produced in full.  First, information regarding EDP's marketing of
shopping clubs and "no cost" debit cards is reasonably calculated to lead to the discovery of
admissible evidence regarding whether Defendants violated the Final Order as alleged in the
Application for an Order to Show Cause.  Specifically, the evidence regarding shopping clubs
relates directly to the FTC's claims that Defendants violated the Final Order by:  (1) making
material representations regarding "credit" in marketing the shopping club and regarding the "no
cost" cards; (2) failing to make clear and conspicuous disclosures regarding the "credit" offered
through the shopping club and the costs and fees associated with "no cost" cards; and (3) failing
to obtained express informed consent before debiting consumers' financial accounts for
application and monthly fees for the shopping club.  The requested information also goes
directly to assessing consumer harm for purposes of compensatory relief.

Second, the information sought relates directly to Defendants' defense of substantial
compliance, and in particular whether the alleged Order violations pervaded Defendants'
marketing of shopping clubs and debit cards.  Indeed, Defendants themselves have pointed to
Ultimate Platinum, another EDP website purporting to offer credit through shopping club
membership, in defense of the contempt claims.  (*See, e.g.*, Response to Interrogatory No. 8,
stating that the FTC reviewed the website of Ultimate Platinum "and others.")  Indeed,
Defendants seem to define relevance in terms of whether a particular document or assertion
supports their claims and defenses.  Similarly, Defendants' refusal to provide discovery on other
"no cost" debit cards is particularly unsupportable in light of Defendants' suggestion that its
Order violation on this front resulted from a brief aberration triggered by some type of technical
glitch.  Production of the requested discovery on "no cost" debit cards would certainly shed light
on the scope of Defendants' violation.

Third, the artificial nature of Defendants' distinction among its various shopping club and debit card sites is borne out by Defendants' own records; Defendants apparently did not distinguish among its various shopping club marketing sites, as it claims not to have tracked recurring revenue from club membership on a site-by-site basis.   This leads to a particularly awkward response to Interrogatory 7, in which Defendants rely on undisclosed information in their possession, including the total recurring revenue for all EDP Century Platinum advertising and the total number of collected applications for all EDP Century Platinum advertising, in estimating recurring revenue from Starter Credit Direct.  The FTC cannot verify such a figure without the underlying data.

Fourth, the FTC is entitled to the information on other shopping club and debit card websites under Section V(A) of the Final Order.  Delaying production of information which Defendants must provide under the Order merely protracts this litigation.
.

Instead of answering interrogatories, Defendants opted to create their own "evidence" by placing carefully selected "*example[s]*" of EDP marketing on a secure website.  (*See* Response to Interrogatory 8 at 15.)  First, the links provided in the response do not work.  Second, Defendants do not have the option of producing only what they apparently deem the most favorable versions of their marketing, without any authentication of whether or when Defendants actually used the proffered versions.  If you are aware of case law permitting parties to employ this approach to responding to interrogatories, please produce it immediately.

In addition, Defendants purportedly exercised their right to produce documents in lieu of answering interrogatories in response to Interrogatories 4, 5, 7, 8, 9, 10, and 11 (or parts thereof).  Rule 33 requires that parties responding in this manner must "specif[y] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could."  Fed. R. Civ. P. 33(d)(1).  Instead of complying with this obligation, Defendants state:

Defendants exercise their option to produce documents . . . which documents shall include, *but are not limited to*, Defendants' Opposition to the Application for all Order to Show Cause Why Defendants Should Not Be Held in Contempt and the documents, communications and declarations provided to the FTC and the Court filed concurrently therewith, documents and communications in the possession of the FTC and/or Receiver related to startercreditdirect.com during the receivership and thereafter, documents and communications in the possession of the FTC and/or Receiver regarding the Ultimate Platinum website and marketing, and documents previously produced to the FTC in response to the FTC's July 23, 2009 request for information and documents to monitor Defendants' compliance with the Final Order.

Response to Interrogatory No. 11 (emphasis added).  Please amend your responses to comport with Rule 33(d)(1).

In response to Interrogatory 8, you object that the meaning of the terms "clearly and conspicuously" and "material attributes" are vague and ambiguous, even though these terms

Page 5

were quoted directly from the Final Order, which itself defines "clearly and conspicuously" and "material."  Are you suggesting that you, as the attorney who negotiated the Final Order on Defendants' behalf, allowed them to sign an order with terms you did not understand?  Again, I am skeptical that the Court will sympathize with your purported confusion over terms defined in an order you negotiated and to which your clients stipulated.

If you have any questions, please contact me at (202) 326-2402 or my co-counsel Mark Morelli at 202-326-2601.

Sincerely,

/s/


Elizabeth Tucci
Attorney
Division of Enforcement


cc:    Christine M. Reilly via email to creilly@loeb.com
       Karen Thorland via email to kthorland@loeb.com

Case 2:07-cv-04880-GBW-AJW Document 75-13 Filed 10/06/10 Page 138 of 144 Page ID
Case 2:07-cv-03654-GW-FMO Document 186 Filed 09/03/2008 Page 1 of 4 Page ID
#:2254

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | No. CV 07-3654 GW (FMOx) |
| Plaintiff, | ) | |
| v. | ) | **ORDER RE: DISCOVERY MOTION** |
| BURNLOUNGE, INC., a corporation, <u>et al.</u>, | ) | |
| Defendants. | ) | |

The court has reviewed and considered all the briefing filed with respect to the defendants'
Motion for Protective Order ("Motion" or "Joint Stip."), and concludes that oral argument is not
necessary to resolve this matter.  <u>See</u> Fed. R. Civ. P. 78; Local Rule 7-15; <u>Willis v. Pacific
Maritime Ass'n</u>, 244 F.3d 675, 684 n. 2 (9th Cir. 2001).

Although the court is inclined to enter a protective order in this case, it is unable to adopt
the "[Alternative Form of Proposed] Protective Order Re: Confidentiality " ("Protective Order")
lodged by defendants on February 12, 2008.  The court is unable to adopt the Protective Order
for the following reasons.

First, the Protective Order does not contain a statement of good cause.  (<u>See</u>, <u>generally</u>,
Protective Order at 2).  "For good cause to exist, the party seeking protection bears the burden
of showing specific prejudice or harm will result if no protective order is granted." <u>Phillips ex rel.
Byrd v. Gen. Motors Corp.</u>, 307 F.3d 1206, 1210-11 (9th Cir. 2002); <u>see</u> <u>also</u> <u>Foltz v. State Farm</u>

1  Mut. Auto. Ins. Co., 331 F.3d 1122, 1130 (9th Cir. 2003) ("A party asserting good cause bears the

2  burden, for each particular document it seeks to protect, of showing that specific prejudice or harm

3  will result if no protective order is granted."); Makar-Wellbon v. Sony Elecs., Inc., 187 F.R.D. 576,

4  577 (E.D. Wis. 1999) (even stipulated protective orders require good cause showing).  The

5  proposed Protective Order must set forth the specific prejudice or harm that will result to

6  defendants if the Protective Order is not granted as to the categories of documents or information

7  the parties seek to protect.  The statement of good cause should be preceded by a heading

8  entitled, "GOOD CAUSE STATEMENT."

9       Second, it is unclear as to what type of information the parties want to keep confidential.

10  (See Protective Order at ¶¶ 1-5).  A protective order must be narrowly tailored and cannot be

11  overbroad.  The documents, information, items or materials that are subject to the protective order

12  shall be described in a meaningful fashion (e.g., "blueprints," "customer lists," or "market surveys").

13  It is not sufficient to use conclusory terms such as "trade secrets."[1]  Statements that any producing

14  party may, "in [its] good faith opinion" may designate as confidential any document or other form

15  of evidence that "contains any trade secret, proprietary information, or other private, confidential

16  or sensitive non-public information" are insufficient. (See id. at ¶ 1).

17       Third, once a case proceeds to trial, all of the information that was designated as

18  confidential and/or kept and maintained pursuant to the terms of a protective order becomes public

19  and will be presumptively available to all members of the public, including the press, unless good

20  cause is shown to the district judge in advance of the trial to proceed otherwise.  The court will not

21  enter a protective order that extends beyond the commencement of trial.  (See Protective Order

22  at ¶ 12).

23       Fourth, the Protective Order does not contain any language relating to Local Rule 79-5,

24  which governs the filing of documents under seal.  (See Protective Order at ¶ 11).  The court will

25  not allow any documents to be filed under seal unless the party seeking to file such documents

26  _____

27     [1]  In proposing or agreeing to the protection of "trade secrets," the definition for that term in
California Civil Code § 3426.1 should be incorporated into the protective order, either by reference

28  or by quotation.

Case 2:07-cv-04880-GW-MAN Document 75-13 Filed 10/06/10 Page 140 of 144 Page ID
#:2256
Case 2:07-cv-04880-GW-MAN Document 186 Filed 09/03/2008 Page 3 of 4

complies with Local Rule 79-5. If a party seeks to file a document under seal, the party should seek leave to file under seal the specific documents the party believes is covered by the attorney-client privilege, the work-product protection and/or the applicable protective order. To the extent any party believes that portions of a proposed document should be sealed because the document quotes extensively from protected documents, the party should either separate out the arguments that quote extensively from those documents and seek to seal those portions as supplemental memorandums or simply cite to the specific portion(s) of the documents in the document that the party wants the court to review. Fifth, the court will not approve a protective order that requires the court and its employees to sign a written agreement before viewing confidential documents in this case. (See id. at ¶ 9)

Sixth, any disputes relating to the Protective Order such as the designation of confidential documents or the inadvertent disclosure of work product or attorney-client material must be done pursuant to Local Rule 37. (See, e.g., Protective Order at ¶ 10). In making or opposing any motion relating to the designation of confidential information, the party seeking to maintain a document as confidential shall bear the burden of showing that specific prejudice or harm will result if no protective order is granted. See Phillips, 307 F.3d at 1210-11.

Finally, to the extent the court qualifies as a "party in the possession of Confidential Information," (Protective Order at ¶ 14), the court will not return or destroy any confidential documents in its possession.

Based on the foregoing, IT IS ORDERED THAT:

1. Defendants' Motion for Protective Order **(Document No. 178)** is **granted and denied to the extent set forth above**.

2. The court will consider a proposed protective order that addresses the issues set forth above as well as the issues set forth by the Federal Trade Commission in its portion of the Joint Stipulation. (See Joint Stip. at 3-4, 5-6 & 13-19).

3. The parties shall attempt to resolve all their disputes relating to the scope and terms of the Protective Order and lodge, if possible, a proposed stipulated protective order. If the parties are unable to agree on the terms of the protective order, then each party shall lodge a hardcopy

Case 2:07-cv-04880-ODW-AJW   Document 75-13   Filed 10/06/10   Page 141 of 144   Page ID
Case 2:07-cv-03654-GW-FMO   Document 186   Filed 03/03/2008   Page 4 of 4
#:2257

1    of its version of the proposed protective order as well as a compact disc (CD-R/RW) in

2    WordPerfect 7.0 or higher.

3    Dated this 3rd day of March, 2008.

4                                                                    /s/
                                                        _____
                                                        Fernando M. Olguin
5                                                       United States Magistrate Judge

ATTACHMENT 10

# KLEIN ZELMAN ROTHERMEL LLP

### ATTORNEYS AT LAW

#### 485 MADISON AVENUE

#### NEW YORK, NEW YORK 10022-5803

##### TEL (212) 935-6020

##### FAX (212) 758-8101

June 25, 2010

Via Electronic Mail (zhunter@ftc.gov)
Confirmation Copy Via FedEx

Mr. Zachary Hunter
Federal Trade Commission
Bureau of Consumer Protection
Enforcement Division
600 Pennsylvania Ave., N.W., Mailstop M-8102B
Washington, D.C. 20580

      Re:    Insite Marketing Group, LLC.

Dear Mr. Hunter:

      As you are aware, this firm represents Insite Marketing Group, LLC ("Insite").

      Enclosed please find a CD-ROM, bearing production number IMG 00407, which contains consumer comments received by Insite relating to the centuryplatinum.com website. As requested, these consumer comments are separated into: (1) EDebitPay customers (i.e., customers who, as discussed in detail below, were enrolled through the EDebitPay startercreditdirect.com website); and (2) Non-EDebitPay customers (i.e., customers who signed up directly through the centuryplatinum.com website).

      Please note that the same information contained on the enclosed CD-ROM (IMG 00407) was previously produced to you as an attachment to our June 21, 2010 email. Please also note that as part of our original responsive production to the Civil Investigative Demand ("CID") served upon Insite, we produced to you a CD-ROM disc marked IMG 00405. While IMG 00405 contained the same consumer comments now being produced as IMG 00407, the comments previously produced as IMG 00405 were not specifically separated into: (1) EDebitPay customers; and (2) Non-EDebitPay customers.

      In addition to the above, all centuryplatinum.com orders, as listed in the Centuryplatinum Orders 00097145.XLS document previously produced to you (most recently as an attachment to our June 21, 2010 email), were placed by consumers that had signed up through EDebitPay's website. Also, the document entitled EDebitPay Centuryplatinum Signups (00097148).XLS, provided to you on December 2, 2009 (on a CD-

{00101607;2}

KLEIN ZELMAN ROTHERMEL LLP

ROM disc marked "EDebitPay Century Platinum Signups") represents consumers that
signed up for centuryplatinum.com through EDebitPay's website.

Finally, EDebitPay's website startercreditdirect.com is the only website that Insite is
aware of that was used by EDebitPay to sign up customers for centuryplatinum.com. All
documents previously produced by Insite referencing either EDebitPay/EDP signups or
EDebitPay/EDP Orders were for customers that signed up through EDebitPay's website
startercreditdirect.com.

Please do not hesitate to contact us should you have any further questions.

Sincerely yours,

Raffaele A. DeMarco

Enclosure

{00101607;2}

**EXHIBIT 10, ATT. A**
**-294-**