# ATTACHMENT 2

# TO REILLY DECL.

# L. DESA DRAFT DEPO TRANSCRIPT

```
 1                UNITED STATES DISTRICT COURT
 2        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION
 3
 4   FEDERAL TRADE COMMISSION,      )
                                    )
 5              Plaintiff,          )
                                    )
 6        vs.                       )   No. 07-4880 ODW
                                    )        (AJWx)
 7                                  )
     EDEBITPAY, LLC; EDP            )
 8   REPORTING, LLC; EDP            )
     TECHNOLOGIES CORPORATION;      )
 9   SECURE DEPOSIT CARD, INC.;     )
     DALE PAUL CLEVELAND; and       )
10   WILLIAM RICHARD WILSON         )
                                    )
11              Defendants.         )
                                    )
12
13
14
15               DEPOSITION OF LORIS DESA
16
17
18        DATE & TIME:  Monday, September 27, 2010
                        9:53 a.m. - 3:40 p.m.
19
20        LOCATION:     10877 Wilshire Boulevard
                        Suite 700
21                      Los Angeles, California
22
          REPORTER:     Christina Kim-Campos, CSR
23                      Certificate No. 12598
24
25                  Draft Copy
```

FTC v. Edebitpay, LLC, et al.    Desa                             9/27/2010

2

```
 1                  UNITED STATES DISTRICT COURT
 2        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION
 3
 4   FEDERAL TRADE COMMISSION,       )
                                     )
 5              Plaintiff,           )
                                     )
 6        vs.                        )   No. 07-4880 ODW
                                     )
 7                                   )
     EDEBITPAY, LLC; EDP             )
 8   REPORTING, LLC; EDP             )
     TECHNOLOGIES CORPORATION;       )
 9   SECURE DEPOSIT CARD, INC.;      )
     DALE PAUL CLEVELAND; and        )
10   WILLIAM RICHARD WILSON          )
                                     )
11              Defendants.          )
                                     )
12
13
14
15        DEPOSITION OF LORIS DESA, taken on behalf of
16   the Plaintiff, at 10877 Wilshire Boulevard, Suite
17   700, Los Angeles, California, commencing at
18   9:53 a.m., and concluding at 3:40 p.m., on Monday,
19   September 27, 2010, pursuant to Notice, before
20   CHRISTINA KIM-CAMPOS, CSR No. 12598, a Certified
21   Shorthand Reporter, in and for the State of
22   California.
23                           ***
24
25                      Draft Copy
```

FTC v. Edebitpay, LLC, et al.     Desa                     9/27/2010

```
 1      A.   No.
 2      Q.   Going back to the pops one more time, is it
 3  possible for a consumer to be popped to an EDP
 4  website from a non EDP website?
 5           MS. REILLY:  Objection vague.
 6           THE WITNESS:  It is possible.
 7  BY MR. HUNTER:
 8      Q.   Do you know of any instances where an EDP
 9  website was popped from a non EDP website?
10      A.   No, I do not know.
11      Q.   You've never encountered a EDP website being
12  popped from a non EDP website?
13      A.   No.
14      Q.   Do you keep records of what's EDP website a
15  consumer originated at before being popped to the
16  second EDP website?
17           MS. REILLY:  Objection vague.
18           THE WITNESS:  Yeah I didn't understand that
19  question.
20  BY MR. HUNTER:
21      Q.   Sure.  So a consumer starts at EDP website
22  one we'll call it and leaves the website and goes to
23  EDP website two.  Would there be any way for you to
24  record that the consumer came from EDP website one?
25      A.   No
```

Draft Copy

95

FTC v. Edebitpay, LLC, et al.       Desa                    9/27/2010

1     Q.    It's impossible to tell where a consumer
2  came from before reaching a second EDP sight?
3     A.    It's not impossible.  We don't record it.
4     Q.    But you don't record that?
5     A.    (Witness shakes head from side to side.)
6     Q.    Have you ever recorded that during your
7  tenure at EDebitPay?
8     A.    No.
9     Q.    Are consumers transferred to EDP websites
10 from EDP loan websites?
11          MS. REILLY:  Objection vague as to the term
12 transfer.
13 BY MR. HUNTER:
14    Q.    Are consumers popped to an EDP website from
15 another EDP website that offers a loan?
16          MS. REILLY:  Objection to the extent it
17 calls for speculation.
18          MR. HUNTER:  Let the record reflect that
19 counsel objected after a long pause from Mr. Desa.
20          MS. REILLY:  I'm not sure that matters here
21 or there but my objection still stands.  But you can
22 answer the question if you know.
23          THE WITNESS:  No I don't know.
24 BY MR. HUNTER:
25    Q.    Is there any way to determine if consumers

*Draft Copy*

97

**FTC v. Edebitpay, LLC, et al.    Desa**    9/27/2010

1    A.    The consumer was not popped to the sight.
2    He was transferred to the sight.
3    Q.    Can you explain the difference between being
4    popped to a website and transferred to a website?
5    A.    If the consumer was approved for the loan,
6    they would get a button that they would click and go
7    to the other EDP website.
8    Q.    And what does that mean? Is, when a
9    consumer would, what is your definition of
10   transferred?
11   A.    The user is taken on the same page to a
12   different website.
13   Q.    And can you give me an example of when that
14   would happen?
15   A.    When a consumer is approved or declined for
16   a loan, they would be presented with a button that
17   they click and go to a different website.
18   Q.    Does the consumer have to click the button
19   to continue to the other website?
20   A.    Yes.
21   Q.    So there are never any situations where the
22   consumer reaches the other website without being
23   presented with a button to click first?
24   A.    There could be a pop.
25   Q.    So is that, that scenario that I just

98

FTC v. Edebitpay, LLC, et al.     Desa                 9/27/2010

1    explained would be a pop?
2            MS. REILLY: Objection. Mischaracterizes
3    the witness's testimony.
4    BY MR. HUNTER:
5        Q.   Would -- you can answer.
6        A.   You can answer to it as a pop.
7        Q.   So this, was I'm trying to get at is what's
8    the distinction between being transferred to another
9    website and being popped to another website?
10       A.   Being transferred to the website would, you
11   would still be in the same browser and the other
12   website would come up. A pop would be a new
13   browser.
14       Q.   Okay. Are there any circumstances where a
15   consumer would be popped without exiting the
16   website?
17           MS. REILLY: Objection vague.
18           THE WITNESS: Yeah I didn't I don't
19   understand what it is.
20   BY MR. HUNTER:
21       Q.   Under what circumstances would a consumer be
22   popped?
23           MS. REILLY: Objection I believe we've
24   already covered this, but go ahead and answer again.
25           THE WITNESS: When someone exits off the

Draft Copy

99

FTC v. Edebitpay, LLC, et al.     Desa              9/27/2010

```
 1    website.
 2    BY MR. HUNTER:
 3        Q.   Okay.  And anything else?
 4        A.   When someone visits a website.
 5        Q.   And that's it?
 6        A.   Yes.
 7        Q.   And coming back to transfers now, I'm just
 8    really trying to understand this distinction.  So a
 9    transfer is when a consumer goes to another EDP
10    website but they're in the same browser?
11        A.   Yes.
12        Q.   And does a consumer always have to click a
13    button to go to another website to be transferred to
14    another website?
15        A.   Yes.  The consumer has to initiate that.
16        Q.   But I thought you'd just said that there are
17    circumstances where the consumer would not have to
18    click a button to be transferred?
19        A.   The only other way, the pop.
20        Q.   Okay.  Okay.  So the transfer is voluntary?
21    And when I say voluntary I mean the consumer has to
22    take an action?
23        A.   Yes.
24        Q.   And the pop is not voluntary, meaning the
25    consumer doesn't have, when I use the word voluntary I
```

*Draft Copy*

100

FTC v. Edebitpay, LLC, et al.     Desa                    9/27/2010

1   mean the consumer doesn't have to click something to
2   get a pop?
3           MS. REILLY: Objection vague and ambiguous.
4   BY MR. HUNTER:
5       Q.   Do you understand the question?
6       A.   No, sir.
7       Q.   So does a consumer have to click a
8   particular button to be popped?
9       A.   There are are two types of pops. One is
10  when they first visit and the other is when they
11  exit. So they have to make action of either
12  visiting or leaving a page.
13      Q.   But besides those two circumstances, there
14  isn't a way for a consumer to be popped on a EDP
15  website?
16      A.   No.
17      Q.   So earlier we were talking about records
18  that EDP keeps and you were telling me about records
19  that EDP keeps in relation to transfers, but now
20  that we have kind of clarified the term transfer and
21  pop I would like to revisit this area. So does EDP
22  keep records of where consumers were transferred
23  from?
24          MS. REILLY: Objection vague.
25          THE WITNESS: Yeah can you be more specific.

101

**FTC v. Edebitpay, LLC, et al.**     Desa                              9/27/2010

```
 1   BY MR. HUNTER:
 2       Q.   Sure.  So when an EDP consumer is
 3   transferred using the definition we've been using,
 4   does EDP record the sight that the consumer was
 5   transferred from?
 6            MS. REILLY:  You're not talking about exit
 7   pops; right?
 8            MR. HUNTER:  I'm talking about transfers.
 9            THE WITNESS:  We do not record for each
10   individual consumer but if we if I go back I can
11   find a record of which site transferred to which
12   sight.
13   BY MR. HUNTER:
14       Q.   Okay.  And what about exit pops?  Do you
15   keep a similar record for exit pops?
16       A.   There is no record.  I will have to go back
17   and see if we store records and have records of
18   which sight popped which sight.
19       Q.   So what you're, now tell me if I'm
20   mischaracterizing this.  You do not keep records of,
21   for each consumer of which website they were popped
22   to and popped, which website they were popped from
23   or transferred from but you do have records
24   generally of which websites transferred consumers to
25   another website or which website popped a consumer
```

Draft Copy

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

```
                                                         102
FTC v. Edebitpay, LLC, et al.     Desa              9/27/2010
```

```
 1     to another website?
 2          A.   Yes.
 3               MS. TUCCI:  Before we start this, do you
 4     want to see?
 5               MS. REILLY:  There were no updates --
 6               MR. HUNTER:  Okay.
 7               MS. REILLY:  Or changes to this.
 8               MR. HUNTER:  It's confusing with all
 9     the different --
10               MS. REILLY:  We wanted to provide you with
11     as many as we could.
12               MR. HUNTER:  Yeah, I do appreciate that you
13     updated those.
14               MS. REILLY:  No problem.
15               (Plaintiff's Exhibit 8 was marked
16                for identification by the court
17                reporter and is attached hereto.)
18     BY MR. HUNTER:
19          Q.   I'm handing you what has been marked
20     plaintiff's Exhibit 8 and also has been marked at
21     the bottom EDP FTC, dash, 03507.
22               Do you recognize this document?
23               MS. REILLY:  Before we go on maybe I'm
24     missing it but did we have an exit seven.
25               MR. HUNTER:  Can we go off the record.
```

```
                                                                    152
FTC v. Edebitpay, LLC, et al.    Desa              9/27/2010

  1                    REPORTER'S CERTIFICATE
  2
  3           I, the undersigned, a Certified Shorthand
  4   Reporter of the State of California, do hereby
  5   certify;
  6           That the foregoing proceedings were taken
  7   before me at the time and place herein set forth;
  8   that any witnesses in the foregoing proceedings,
  9   prior to testifying, were placed under oath; that a
 10   verbatim record of the proceedings was made by me
 11   using machine shorthand, which was thereafter
 12   transcribed under my direction; further, that the
 13   foregoing is an accurate transcription thereof.
 14           I further certify that I am neither
 15   financially interested in the action, nor a relative
 16   or employee of any attorney of any of the parties.
 17           IN WITNESS WHEREOF, I have this date
 18   subscribed my name.
 19
 20   Dated:
 21
 22
 23
 24                    CHRISTINA KIM-CAMPOS
 25                    CERTIFICATE NO. 12598
```

*Draft Copy*