# ATTACHMENT 6

# TO REILLY DECL.

# FTC LTR AND REQUEST FOR DOCS

# DATED 07/23/09



UNITED STATES OF AMERICA
FEDERAL TRADE COMMISSION
WASHINGTON, D.C. 20580

Bureau of Consumer Protection
Division of Enforcement

Elizabeth Tucci
Attorney

Direct Dial:
(202) 326-2402

Fax:
(202) 326-2558

July 23, 2009

**Via email to mmallow@loeb.com**

Michael Mallow, Esq.
Loeb & Loeb, LLP
10100 Santa Monica Boulevard
Suite 2200
Los Angeles, California 90067

      Re:    *Federal Trade Commission v. EDebitPay, LLC, et al.,*
               Civil Action No. CV 07-4880 ODW (AJWx) (C.D. Calif.)
               FTC Matter No. X070038

Dear Mr. Mallow:

      I write to you in your capacity as counsel for defendants EDebitPay, LLC, EDP Reporting, LLC, EDP Technologies Corporation, Secure Deposit Card, Inc. (collectively, "EDP"), Dale Paul Cleveland, and William Richard Wilson in the above-cited case.

      The Stipulated Final Order ("Final Order") entered in this case requires defendants to submit to the Federal Trade Commission, "written reports, sworn to under penalty of perjury [and] produce documents for inspection and copying" within ten days of receipt of written notice. (Paragraph V.) Pursuant to this provision, please provide the information and documents as specified in the attachment **no later than August 6, 2009.**

You may send your response directly to me at the Federal Trade Commission, 600 Pennsylvania Avenue, N.W., Mailstop NJ-2122, Washington, DC 20580. Delivery via courier service, such as Federal Express, is preferable because of delay and possible damage caused by U.S. Postal Service security screening procedures. If you have any questions, please contact me at 202-326-2402.

Sincerely,

Elizabeth Tucci
Attorney
Division of Enforcement

Attachment

2

## Request for Documents and Information

1. With regard to Marketing Affiliates, as defined in the Final Order:
   a. Provide copies of any and all contracts, including revisions and addendums, that are now or have been in effect at any time during the last twelve months between EDP and any Marketing Affiliate.
   b. Provide copies of all notices and acknowledgments of receipt of the Final Order from each such Marketing Affiliate, as required by Paragraph I.H of the Final Order.
   c. Fully describe EDP's compliance with Paragraph I.H of the Final Order as to each such Marketing Affiliate, including EDP's efforts, if any, to monitor and ensure the Marketing Affiliate's compliance with Paragraph IA-G of the Final Order.
   d. Provide copies of any complaints[1] received by EDP in the last twelve months, whether received directly or indirectly, regarding each such Marketing Affiliate. Describe any actions taken to resolve each such complaint.

2. With regard to the websites listed on Attachment 1 to this request and any business entities controlling such websites (hereinafter "website/business entity"):
   a. Fully describe any business relationship, if any exists or has existed at any time in the last twelve months, between the website/business entity and EDP, including whether and how EDP derives revenue from that relationship.
   b. Provide copies of any contracts including revisions and addendums, that are now or have been in effect at any time during the last twelve months, between the website/business entity and EDP.
   c. To the extent that EDP has or has had at any time in the last twelve months a business relationship with the website/business entity:
      i. Provide copies of all notices and acknowledgments of receipt of the Final Order provided to or by the website/entity, pursuant to Paragraph I.H of the Final Order; and
      ii. Fully describe EDP's compliance with Paragraph I.H of the Final Order as to each such website/business entity, including EDP's efforts, if any, to monitor and ensure the website/entity's compliance with Paragraph IA-G of the Final Order.
   d. Provide copies of any complaints (as defined in fn.1) received by EDP in the last twelve months, whether received directly or indirectly, regarding each such websites/business entity. Describe any actions taken to resolve each such complaint.

---

[1] For purposes of this request, "complaints" includes formal and informal complaints from consumers (including but not limited to refund requests), the Better Business Bureau, and any state or federal agency. When providing copies of complaints, *include* each consumer's name, address, telephone number and email address, if available, but *redact* the following information wherever applicable: 1) Social Security number; 2) date of birth; 3) driver's license number, other state identification number, or foreign country equivalent; 4) passport number; 5) financial account number; and 6) credit or debit card number.

FTC's 1st Request to EDP - Page 1 of 7

3. With regard to Paul Cleveland's statement during a July 2, 2009 telephone call with FTC and EDP counsel, that EDP generates substantial revenue through "lead generation," specifically by providing leads to loan underwriters:
   a. Identify and describe all sources from which EDP generates or has generated leads at any time in the last twelve months.
   b. With regard to any and all business entities to which EDP sells or has sold leads at any time in the last twelve months:
      i. Identify each such business entity;
      ii. Provide copies of all contracts, including revisions and addendums, that are now or have been in effect at any time during the last twelve months, between EDP and said business entities; and
      iii. Fully describe how EDP derives revenue from its relationship with said business entities.
   c. To the extent EDP obtains, or has obtained at any time in the twelve months, any leads through websites:
      i. Provide domain names of all such websites and the business entities controlling said websites; and
      ii. Provide copies of disclosures to consumers, if any, advising them that their information will be forwarded to loan underwriters.
   d. Describe in detail all information about consumers that is transmitted by or through EDP to loan underwriters. To the extent that the types of consumer information that is transmitted varies, fully explain these varying circumstances and specify the information transmitted in each such circumstance.
   e. With regard to all business entities identified in response to 3.b or 3.c above,
      i. Provide copies of all notices and acknowledgments of receipt of the Final Order provided to or by the website/entity, pursuant to Paragraph I.H of the Final Order; and
      ii. Fully describe EDP's compliance with Paragraph I.H of the Final Order as to each such entity, including EDP's efforts, if any, to monitor and ensure the entity's compliance with Paragraph IA-G of the Final Order.
   f. Provide copies of any complaints (as defined in fn.1) received by EDP in the last twelve months, whether received directly or indirectly, regarding EDP's "lead generation" business. Describe any actions taken to resolve each such complaint.

4. With regard to Mr. Cleveland's statement, also during the July 2, 2009 telephone call, that EDP generates substantial revenue by sending out emails that offer "touchy-feely" products:
   a. Provide a complete description of the EDP's business activities during the last twelve months as they relate to email marketing, including how EDP generates revenue through such activities;
   b. Identify all EDP's affiliates with regard to email marketing, along with descriptions of the products sold through such affiliates;
   c. Provide copies of all contracts, including revisions and addendums, that are now or have been in effect at any time during the last twelve months, with all such affiliates;

  d. Fully describe how EDP obtains the email addresses and other personal information used with regard to said email marketing, including disclosures to consumers, if any, advising them that their email or other information will be shared;

  e. Provide representative samples of all emails sent by or on behalf of EDP offering products sold by affiliates, and explain how EDP determined the sample emails were representative;

  f. With regard to all EDP affiliates identified in response to 4.b above,
    i. Provide copies of all notices and acknowledgments of receipt of the Final Order provided to or by the affiliate, pursuant to Paragraph I.H of the Final Order; and
    ii. Fully describe EDP's compliance with Paragraph I.H of the Final Order as to each such affiliate, including EDP's efforts, if any, to monitor and ensure the affiliates compliance with Paragraph IA-G of the Final Order.

  g. Provide copies of any complaints (as defined in fn.1) received by EDP in the last twelve months, whether received directly or indirectly, regarding EDP's email marketing. Describe any actions taken to resolve each such complaint.

5. With regard to Mr. Cleveland's statement during the July 2, 2009, telephone call that EDP "gives away" debit cards:

  a. Provide the number of debit cards EDP has "give[n] away" during the last twelve months and the value(s) of such cards.

  b. Identify the issuing financial institution(s) for such debit cards.

  c. Provide copies of any contracts, including revisions and addendums, that are now or have been in effect at any time during the last twelve months, regarding EDP's business practice of "giv[ing] away" debit cards, including but not limited to EDP's contracts with:
    i. any issuing financial institution(s); and
    ii. any entity through which EDP has promoted its "free" debit cards in the last twelve months.

  d. Describe the terms and conditions of the "free" debit cards, and provide copies of any disclosures of such terms and conditions to consumers.

  e. Describe what EDP receives in exchange for the "free" debit cards. To the extent that EDP obtains consumer information that it sells or uses to generate other EDP business:
    i. Provide copies of the disclosures, if any, that EDP provides to consumers who apply for or receive such debit cards; and
    ii. Describe in detail all information about consumers who apply for or receive such debit cards that EDP sells or uses to generate other EDP business. To the extent that the types of consumer information that EDP sells or uses, as described above, varies, fully explain these varying circumstances and specify the information sold or used in each such circumstance.

  f. Identify any and all websites/business entities through which EDP has promoted "free" debit cards at any time in the past twelve months, and provide representative copies of website pages, emails, telemarketing scripts, or other media through which said debit cards have been promoted. Explain how EDP determined the samples were representative.

FTC's 1st Request to EDP - Page 3 of 7

    g. With regard to all websites/business entities identified in response to 5.b, c, or f above:
        i. Provide copies of all notices and acknowledgments of receipt of the Final Order provided to or by the website/business entity, pursuant to Paragraph I.H of the Final Order; and
        ii. Fully describe EDP's compliance with Paragraph I.H of the Final Order as to each such website/business entity, including EDP's efforts, if any, to monitor and ensure the website/business entity's compliance with Paragraph IA-G of the Final Order.
    h. Provide copies of any complaints (as defined in fn.1) received by EDP in the last twelve months, whether received directly or indirectly, regarding EDP's business practice of "giv[ing] away debit cards. Describe any actions taken to resolve each such complaint.

6. With regard to EDP's marketing of debit cards issued through Palm Desert Bank:
    a. Describe, and provide documentation of, how Palm Desert Bank, EDP or third parties market said debit card, including representative copies of website pages, emails, telemarketing scripts, or other media through which the debit cards have been promoted. Explain how EDP determined the samples were representative.
    b. Provide a copy of EDP's contract, including revisions and addendums, that is or has been effect at any time in the last twelve months, with Palm Desert Bank.
    c. Provide copies of all notices and acknowledgments of receipt of the Final Order provided to or by Palm Desert Bank pursuant to Paragraph I.H of the Final Order.
    d. Fully describe EDP's compliance with Paragraph I.H of the Final Order as to Palm Desert Bank, including EDP's efforts, if any, to monitor and ensure Palm Desert Bank's compliance with Paragraph IA-G of the Final Order.
    e. Provide copies of any complaints (as defined in fn.1) received by EDP in the last twelve months, whether received directly or indirectly, regarding debit cards issued by Palm Desert Bank. Describe any actions taken to resolve each such complaint.

7. With regard to a "Prepaid MasterCard Card" (as referenced on www.startercreditdirect.com) from Monterey County Bank:
    a. Identify any business relationship that exists or has existed at any time in the last twelve months between EDP and Monterey County Bank, including but not limited to promotion of a "Prepaid MasterCard Card".
    b. Provide a copy of any contract, including revisions and addendums, that is or has been in effect at any time during the last twelve months, between EDP and Monterey County Bank.
    c. Fully describe the terms and conditions of the "Prepaid MasterCard Card" and how it is promoted to consumers. Provide representative copies of website pages, emails, telemarketing scripts, or other media through which "Prepaid MasterCard Card have been promoted. Explain how EDP determined the copies were representative.
    d. Provide copies of all notices and acknowledgments of receipt of the Final Order provided to or by Monterey County Bank pursuant to Paragraph I.H of the Final Order.
    e. Fully describe EDP's compliance with Paragraph I.H of the Final Order as to

    Monterey County Bank, including a complete description of EDP's efforts, if any, to monitor and ensure Monterey County Bank's compliance with Paragraph IA-G of the Final Order.
  f. Provide copies of any complaints (as defined in fn.1) received by EDP in the last twelve months, whether received directly or indirectly, regarding the "Prepaid MasterCard Card." Describe any actions taken to resolve each such complaint.

8. With regard to the EDP site, www.startercreditdirect.com (terms in quotation marks are from the website as of 7/22/2009):
   a. Provide a catalog of all products or services offered to consumers who obtain "credit" to an "online mega-store" through www.startercredirect.com. Include pricing information and the "down payment," if any, required for each product or service. To the extent the catalog has materially changed at any time in the last twelve months, provide representative copies of each version of the catalog and identify the dates that version was or is in effect.
   b. Identify any and all business entities to which EDP has sold consumer information collected on www.startercreditdirect.com at any time in the last twelve months. Describe in detail all information about consumers sold to such business entities. To the extent that the types of consumer information that EDP sells or has sold varies, fully explain these varying circumstances and specify the information sold in each such circumstance.
   c. Describe the terms and conditions of the "Century Platinum" "credit," and its relationship, if any, to the "Prepaid MasterCard Card" referenced in 7 above.
   d. Provide a copy of any contract, including revisions and addendums, with any business entity through which EDP at any time in the last twelve months has promoted or provided services in connection with www.startercreditdirect.com.
   e. With regard to all business entity identified in response to 8.d above:
      i. Provide copies of all notices and acknowledgments of receipt of the Final Order provided to or by the business entity, pursuant to Paragraph I.H of the Final Order; and
      ii. Fully describe EDP's compliance with Paragraph I.H of the Final Order as to each such business entity, including a description of EDP's efforts, if any, to monitor and ensure the website/business entity's compliance with Paragraph IA-G of the Final Order.
   f. Provide representative copies of any welcome emails, reminder emails, or other communications consumers receive as a result of applying for or joining www.startercreditdirect.com. Explain how EDP determined the copies were representative.
   g. Provide the name, address, telephone number, and email address of each consumer who has applied for "credit" through www.startercreditdirect.com in the last twelve months.
   h. For each such consumer, provide:
      i. length of membership;
      ii. whether EDP or the consumer terminated the membership;

FTC's 1st Request to EDP - Page 5 of 7

       iii.    amount purchased on "credit" via online store and amount paid up front in "down payments" for products/ services;
       iv.    whether, and when, each consumer ultimately obtained the full $10,000 "credit line";
       v.    whether the consumer applied for, and obtained, the "FREE Laptop Computer, $2,500 Credit Line AND Medical Discounts";
       vi.    whether the consumer applied for, and obtained, the "AIG Identify Theft Protection Plan";
       vii.    whether the consumer applied for, and obtained, the separate "Cash Advance" and the amount of the cash advance ultimately received; and
       viii.    whether the consumer disputed charges with www.startercreditdirect.com /EDP, sought a refund, or filed a complaint.

i.    Provide copies of any complaints (as defined in fn.1) received by EDP in the last twelve months, whether received directly or indirectly, regarding www.startercreditdirect.com and any affiliated products or services. Describe any actions taken to resolve each such complaint.

**Attachment 1**
**Websites/Business Entities Referenced in Request 2**

1. www.creditloan.com
2. www.EZPayDayCash.com
3. www.paydayloans.com
4. www.pacificpaydayloans.com
5. www.loanshop.com
6. www.hydra.com
7. www.superbillsaver.com
8. www.creditrepair.com
9. www.EverybodyGetsCreditNews.com
10. www.creditattorney.com
11. www.lexingtonlaw.com
12. www.superbillsaver.com